**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
ALBERT T. BEANE, JR., and all others
similarly situated,

                    Plaintiffs,

                  v.

THE BANK OF NEW YORK MELLON,
BNY CONVERGEX EXECUTION
SOLUTIONS LLC and CALLAN
ASSOCIATES, INC.,

                    Defendants.
-------------------------------------------------------------x

                    ECF Document

                    CLASS ACTION COMPLAINT

                    07 Civ. 9444 (RMB) (GWG)

This action involves the Federal-Mogul Corporation Pension Plan (the "Pension Plan"). Plaintiff Albert T. Beane, Jr., is a participant in the Pension Plan and brings this case on behalf of the Pension Plan, and a class of similarly situated pension plans, pursuant to ERISA §§ 502(a)(2), (a)(3), 29 U.S.C. §§ 1132(a)(2), (a)(3), for the relief provided in ERISA §§ 409 and 502(a)(3), 29 U.S.C. §§ 1109, 1132(a)(3).

## I. NATURE OF THE ACTION

1.     Plaintiff is a participant in the Pension Plan. The fiduciaries for the Pension Plan owe the Pension Plan and its participants and beneficiaries the highest duties known to law. Defendant Callan Associates, Inc. ("Callan") has long been a fiduciary to the Pension Plan. Among other things, Callan has served as a named co-fiduciary for the Pension Plan and as an investment advisor for a fee or other compensation.

2.     Defendant BNY ConvergEx Execution Solutions LLC ("BNY Brokerage") provided brokerage services to the Pension Plan during the Class Period, October 1998 to 2006. BNY Brokerage is an affiliate and was a wholly-owned subsidiary of Defendant Bank of New York Mellon ("BNY") during the Class Period. BNY and BNY Brokerage (collectively "BNY

Defendants") are parties in interest to the Pension Plan because they have provided services to the Pension Plan.

3.    In October 1998, Callan sold Alpha Management Inc. ("Alpha"), its affiliated broker-dealer, to BNY ESI & Co., Inc. (now BNY Brokerage), a subsidiary of BNY.

4.    As a part of the sale of Alpha, Callan and BNY Defendants entered into a Services Agreement whereby BNY Defendants agreed to pay Callan a specified amount per year for eight years, 1998 through 2006. A portion of the annual payment, 8%, was contingent on BNY Brokerage generating gross brokerage commissions above a certain minimum threshold from Callan clients. The minimum threshold, which remained constant during the entire eight-year period, was based on Alpha's brokerage commissions earned in 1998.

5.    Since 1998, Callan has referred clients to BNY Brokerage as Callan's preferred securities broker. Callan failed to disclose that it was receiving annual payments that were contingent on Callan clients generating a certain level of commissions for BNY Brokerage. Callan repeatedly recommended BNY Brokerage to its pension plan clients because Callan received kick-backs from BNY Defendants for steering clients to BNY Brokerage.

6.    Callan did not disclose its arrangement to the Pension Plan or to Callan's other pension plan clients. It steered its pension plan clients, including the Pension Plan, to BNY Brokerage and received a share of BNY Brokerage's commissions in return.

7.    Callan, thus, breached its duty of loyalty to the Pension Plan and other similarly-situated plans, by putting its own and BNY Defendants' commission-generating interests ahead of the interests of its clients. Callan also failed to disclose the true nature of its relationship to BNY Defendants.

2

8.      BNY Defendants knowingly participated in Callan's fiduciary breaches and earned substantial commissions from Callan clients that BNY Defendants shared with Callan.

9.      Plaintiff alleges that Callan breached its fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, and violated ERISA § 406, 29 U.S.C. § 1106, for which Callan is liable under ERISA § 409, 29 U.S.C. § 1109.  Plaintiff alleges that BNY Defendants knowingly participated in, aided and abetted, and benefited from Callan's breaches of duty and other violations of ERISA, for which BNY Defendants are liable under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## II. JURISDICTION AND VENUE

10.      ERISA provides for exclusive federal jurisdiction over these claims.  The Pension Plan is an "employee benefit plan" within the meaning of § 3(3) of ERISA, 29 U.S.C. § 1002(3), and Plaintiff is a "participant" within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7), who is authorized pursuant to § 502(a)(2) and (3) of ERISA, 29 U.S.C. § 1132(a)(2) and (3), to bring the present action on behalf of the participants and beneficiaries of the Pension Plan to obtain appropriate relief under §§ 502 and 409 of ERISA, 29 U.S.C. §§ 1132 and 1109.

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.      This Court has personal jurisdiction over Defendants because the Court has subject matter jurisdiction under ERISA.

13.      Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because BNY is headquartered in this district at One Wall Street, New York, New York, and BNY Brokerage's principal place of business is in New York, New York.

### III. PARTIES

**A.    Plaintiff.**

14.    **Plaintiff Albert T. Beane, Jr. ("Beane").**  Plaintiff Beane is a resident of Richmond, Virginia.  Beane is a participant in the Pension Plan.

**B.    Defendants.**

15.    **Defendant Bank of New York Mellon ("BNY").**  BNY is a national bank based in New York, New York, with its corporate headquarters and principal place of business located at One Wall Street, New York, New York.  BNY is a party in interest to the Pension Plan within the meaning of ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), because its wholly-owned subsidiary and/or affiliate BNY Brokerage performs brokerage services for the Pension Plan for which BNY Brokerage, and ultimately BNY, receives commissions or other compensation.

16.    **BNY ConvergEx Execution Solutions, LLC ("BNY Brokerage").**  BNY Brokerage is a limited liability company formed under the laws of the State of Delaware.  It maintains its principal place of business in New York, New York.  It is a member company of BNY ConvergEx Group, LLC, which, in turn, is an affiliate of BNY.  BNY Brokerage is a party in interest to the Pension Plan within the meaning of ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), because it performs brokerage services for the Pension Plan for which it receives commissions or other compensation.  BNY Brokerage is, for all purposes herein, the successor to BNY ESI & Co., Inc., because of the following changes in names and corporate form:

      a)    On or about October 8, 2002, BNY ESI & Co. changed its name to BNY Brokerage Inc.

      b)    In or about September or October 2006, BNY Brokerage Inc. changed its form from a corporation to a limited liability company becoming BNY Brokerage LLC.

In that transition, BNY Brokerage LLC assumed all assets and liabilities of BNY Brokerage Inc. The transition involved no change of ownership or control.

c)    On or about February 15, 2007, BNY Brokerage LLC changed its name to BNY ConvergEx Execution Solutions LLC, which is the name it currently uses.

d)    As explained in more detail above, BNY Brokerage formerly operated as a corporation, not a limited liability company. That corporation, known first as BNY ESI & Co., Inc., and later as BNY Brokerage Inc., was incorporated under the laws of the State of Delaware, and maintained its principal place of business in New York, New York.

17.    **Defendant Callan Associates, Inc. ("Callan").** Callan is an investment consultant based in San Francisco, California, where Callan is incorporated and maintains its principal place of business. Callan sells investment advice and services to public and private pension plan sponsors, investment management firms, financial intermediaries, and mutual fund boards of directors. Callan is a consulting firm that is registered as an investment adviser with the Securities and Exchange Commission ("SEC"). Callan provides consulting services and education services to over 270 institutional retirement plans, endowments, foundations and hospital plans with assets of over $900 billion. Callan is a fiduciary of the Pension Plan within the meaning of ERISA § 3(21)(B)(ii), 29 U.S.C. § 1002(21)(B)(ii) by virtue of its position as an investment advisor that receives a fee and other compensation for investment advice.

### IV. FACTUAL BACKGROUND

**A.    The Pension Plan.**

18.    The Pension Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined benefit plan within the meaning of

ERISA § 3(35), 29 U.S.C. § 1002(35). Pursuant to ERISA, the relief requested in this action is for the benefit of the Pension Plan.

19.     The Pension Plan covers eligible employees of Federal-Mogul Corporation.

20.     Plaintiff Beane is a participant in the Pension Plan.

21.     Callan was a named co-fiduciary or investment advisor to the Pension Plan during the Class Period.

22.     The Pension Plan pays fees to Callan for Callan's investment management services.

23.     Callan has received payments from the Pension Plan since at least 2000.

24.     In 2000, Callan conducted a search for a broker on behalf of the Pension Plan.

25.     On July 19, 2000, Callan recommended that BNY Brokerage be retained as the broker for the Pension Plan.

26.     Callan did not disclose to the Pension Plan or to the Pension Plan's other fiduciaries Callan's relationship to BNY Defendants or that Callan shared in the commissions received by BNY Defendants from Callan clients. Instead, Callan recommended BNY Brokerage after conducting a sham search.

27.     Throughout the Class Period, Callan received payments from BNY Defendants for steering brokerage business to BNY Brokerage.

**B.      Defendants' Status Under ERISA.**

28.     ERISA requires every plan to provide for one or more named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).

29.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any person who renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan.

30.    Callan is a fiduciary of the Pension Plan within the meaning of ERISA

§ 3(21)(B)(ii), 29 U.S.C. § 1002(21)(B)(ii), by virtue of its position as an investment advisor that

receives a fee and other compensation for investment advice to the Pension Plan.

31.    BNY is a party in interest to the Pension Plan within the meaning of ERISA

§ 3(14)(B), 29 U.S.C. § 1002(14)(B), because its wholly-owned subsidiary, BNY Brokerage,

performs brokerage services for the Pension Plan for which BNY Brokerage, and ultimately

BNY, receives commissions and other compensation.

32.    BNY Brokerage is a party in interest to the Pension Plan within the meaning of

ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), because it performs brokerage services for the

Pension Plan for which BNY Brokerage receives commissions and other compensation.

C.    **Callan And BNY Defendants Engaged In Hundreds Of Transactions On Behalf Of Their Client Plans Without Disclosing Their Commission-Sharing Arrangement.**

33.    In October 1998, Callan sold Alpha, its affiliated broker-dealer to a subsidiary of

BNY.

34.    As a part of that transaction, Callan and BNY Defendants entered into a Services

Agreement whereby BNY Defendants agreed to pay Callan a specified amount per year for eight

years, 1998 through 2006. A portion of the annual payment, 8%, was contingent on BNY

Brokerage's generating gross brokerage commissions above a certain minimum threshold from

Callan clients. The minimum threshold, which remained constant during the entire eight year

period, was based on Alpha's brokerage commissions earned in 1998.

35.    Pursuant to provisions of the Services Agreement, Callan was required to inform

its retirement plan clients that BNY Brokerage was its preferred broker. Callan sent annual

letters to its retirement plan clients informing them of this.

7

36.    While the annual letters to the retirement plan clients referenced the fact that Callan had sold Alpha to BNY, the letters failed to disclose that Callan was receiving compensation from BNY Defendants that depended on a certain level of commissions being generated by Callan clients.

37.    Throughout the Class Period, 1998-2006 (the duration of the Services Agreement), Callan repeatedly recommended BNY Brokerage to its pension plan clients, including recommending BNY Brokerage to the Pension Plan on July 19, 2000.

**D.    Callan And BNY Defendants Concealed Their Commission-Sharing Agreement.**

38.    As a registered investment adviser, Callan was required to amend its SEC registration statements known as Form ADV Part II ("Part II") at least annually. Under Rule 204-1(c) of the Investment Advisers Act, an adviser is deemed to have filed Part II with the SEC by maintaining a copy of the document in its files. Thus, a Part II is not a publicly available document, and is generally provided only to clients and then only on demand.

39.    Between 1999 and 2005, Callan's Part II stated that Callan was obligated by the terms of the Services Agreement to inform its pension plan clients that BNY Brokerage was its preferred broker. Callan further reported that, "[a]ccording to the terms of the transaction, BNY [Brokerage] makes periodic *fixed* payments to Callan each year." (Emphasis added.)

40.    The characterization of BNY's payments to Callan as "fixed" was misleading in that a material portion of each annual payment was contingent upon BNY's receipt of a minimum threshold of Callan client brokerage business.

41.    The Securities and Exchange Commission (SEC) investigated Callan's arrangement with BNY Defendants and entered a cease and desist order against Callan based on Callan's failure to disclose in its Part II.

42.    Callan's inaccurate and misleading Part II statements were compounded by misleading communications to Callan pension plan clients. For example, Callan's annual letters to its retirement plan clients (as required by the Services Agreement) concealed the fact that Callan was receiving compensation from BNY that depended on a certain level of commissions being generated by Callan clients.

43.    When a trustee of the San Diego city retirement system, to which Callan provided investment consulting services, asked Callan in 2002 about possible conflicts of interest, Callan responded that its fees "are not nor were ever based on trading activity with Alpha/BNY."

44.    Similarly, when queried by the Teachers' Retirement System of Illinois about the SEC's investigation into pension consultants and broker-dealer affiliates or relationships, Callan responded in 2005 that "the amount of brokerage conducted through BNY Brokerage by Callan clients does not affect the size or duration of payments from BNY Brokerage to Callan."

45.    In another example, Callan misinformed a potential client that Callan's compensation was not dependent on brokerage activity in any way. In February 2002, a potential pension plan client asked Callan whether payments from BNY to Callan were in any way dependent on future brokerage activity. A written response from a Callan employee stated, "[T]he terms of the 1998 sale to BNY [Brokerage] provided for semi-annual *fixed* payments to Callan each year. And simply put, the purchase price is being paid out over time. We once again must emphasize the semi-annual payments are not dependent whatsoever on current or future brokerage activity." (Emphasis added.)

46.    These foregoing representations were inaccurate, misleading, and untrue because the language of the Services Agreement specifically provided that payments to Callan were

dependent upon the continuation of BNY receiving from Callan clients gross brokerage commissions exceeding the minimum threshold.

47.    Callan also concealed its relationship with BNY Defendants from the Pension Plan and the Pension Plan's other fiduciaries. Callan recommended BNY Brokerage to the Pension Plan after purportedly conducting a search. Given Callan's contractual relationship with BNY Defendants, the search was a sham intended to conceal the true relationship between Callan and BNY Defendants, which was not disclosed to the Pension Plan or the Pension Plan's other fiduciaries.

48.    In sum, Callan concealed the true nature of its commission-sharing arrangement with BNY Defendants by making inaccurate and misleading statements in its public disclosures, concealing the commission-sharing in its annual letters to pension plan clients, denying in response to client inquiries that Callan's payments from BNY Defendants were in any way linked to current or future brokerage activity, and conducting purportedly objective searches for brokers on behalf of pension plan clients when Callan had determined to recommend BNY Brokerage to ensure Callan's revenue stream.

49.    BNY Defendants knowingly aided and abetted Callan's efforts to conceal the commission-sharing arrangement from Callan pension plan clients by participating in Callan's conflicts of interest, receiving commissions in connection with transactions arising out of the conflict, paying kick-backs to Callan for steering business to BNY Brokerage, and failing to reveal the true nature of the Services Agreement to pension plan clients who used BNY Brokerage based on a recommendation from Callan.

## V. ERISA'S FIDUCIARY STANDARDS & PROHIBITED TRANSACTIONS

50.    ERISA imposes strict fiduciary duties of loyalty and prudence upon the

Defendants as fiduciaries of the Plan.   ERISA § 404(a), 29 U.S.C.§ 1104(a), states, in relevant

part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —
>
> (A)    for the exclusive purpose of
>
>> (i)    providing benefits to participants and their beneficiaries; and
>>
>> (ii)    defraying reasonable expenses of administering the plan;
>
> (B)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims …

51.    The duty to conduct an independent investigation into the merits of a particular

transaction is the most basic of ERISA's investment fiduciary duties.

52.    A fiduciary's duty of loyalty requires it to avoid conflicts of interest and

compensation received from any party in interest to the plan.

53.    A fiduciary's duty of loyalty requires it to disclose conflicts of interest and

compensation received from any party in interest to the plan.

54.    A fiduciary's duties of loyalty and prudence require it act exclusively for the plan

and to exercise the high degree of care, diligence, and skill expected of a fiduciary when

selecting or recommending service providers to a plan.

55.    By causing the Pension Plan (and other similarly-situated plans) to transact with

BNY Brokerage, a party that was secretly paying Callan to steer pension plan clients its way,

Callan violated ERISA § 404(a)(1)(A) and (a)(1)(B), 29 U.S.C. § 1104(a)(1)(A) and (a)(1)(B).

A fiduciary like Callan who recommends a service-provider to a pension plan is not acting solely in the interest of the pension plan if the fiduciary is acting for its own or another's benefit. A fiduciary like Callan is not acting with the care, skill, prudence, and diligence required of a fiduciary when selecting or recommending a broker to a pension plan when the recommendation is based not on factors such as price and best execution, but on a secret commission-sharing arrangement that benefits the fiduciary.

56.    The general duties of loyalty and prudence imposed by § 404 of ERISA are supplemented by a detailed list of transactions that are expressly prohibited by § 406 of ERISA, 29 U.S.C. § 1106, and are considered "*per se*" violations because they entail a high potential for abuse. Section 406(a)(1) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> (A)    sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> * * *
>
> (C)    furnishing of goods, services, or facilities between the plan and a party in interest ... .

Section 406(b) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not—
>
> (1)    deal with the assets of the plan in his own interest or for his own account,
>
> (2)    in his individual or in any other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
>
> (3)    receive any consideration for his own account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

57.    ERISA's prohibited transaction provisions thus prohibit fiduciaries, such as the Callan, from causing plans to engage in transactions with another fiduciary or party in interest.

58.    By causing the Pension Plan (and other similarly-situated plans) to transact with BNY Brokerage, a party in interest, Callan violated ERISA § 406(a), 29 U.S.C. § 1106(a). Further, Callan violated ERISA § 406(b), 29 U.S.C. § 1106(b) by: (1) recommending Pension Plan transactions with BNY when such transactions were in the interest of Callan because Callan shared in BNY's commissions (*see* 29 U.S.C. § 1106(b)(1); (2) acting for the commission-generating benefit of BNY (and Callan itself) in Pension Plan transactions by causing the Pension Plan to use BNY as its broker (*see* 29 U.S.C. § 1106(b)(2)); and (3) sharing in the commissions generated by BNY as a result of Callan recommending that the Pension Plan use BNY as a broker (*see* 1106(b)(3)).

## VI. CLASS ALLEGATIONS

59.    Representative Plaintiff Beane brings this action on behalf of a class defined as:

> All employee benefit plans covered by ERISA and their respective participants that consulted with Callan from 1998-2006 and who used BNY Brokerage as their broker.

60.    Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

61.    The class satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. The Pension Plan itself has approximately 33,000 participants and Callan has hundreds of pension plan clients. The number of class members is so large that joinder of all its members is impracticable.

62.    Common questions of law and fact include:

A.    Whether Defendants caused the employee benefit plans to engage in brokerage transactions with BNY Brokerage;

13

B.      Whether Callan was a fiduciary responsible for advising on and recommending service-providers such as BNY Brokerage to employee benefit plans;

C.      Whether Defendants caused employee benefit plans to pay commissions to BNY Brokerage and ultimately to BNY and Callan;

D.      Whether Callan breached its fiduciary duties to employee benefit plans and engaged in prohibited transactions by causing employee benefit plans to execute brokerage transactions with BNY Brokerage for the benefit of Callan and BNY Defendants;

E.      Whether Callan breached its fiduciary duties to employee benefit plans by concealing the true nature of the commissions received from BNY Defendants under Defendants' Services Agreement;

F.      Whether BNY Defendants are liable under 502(a)(3) for knowingly aiding and abetting prohibited transactions and breaches of fiduciary duty by Callan;

G.      Whether employee benefit plans and their respective participants suffered losses as a result of Defendants' violations of ERISA.

63.    Plaintiff's claims are typical of the claims of the Class. He has no interests that are antagonistic to the claims of the Class. He understands that this matter cannot be settled without the Court's approval. Plaintiff is not aware of another suit pending against Defendants arising from the same circumstances.

64.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous representation of the Class. Plaintiff's counsel, McTigue & Porter LLP, and Rosen Preminger & Bloom LLP are experienced in class action and ERISA litigation.

14

Counsel have agreed to advance the costs of the litigation. Counsel are aware that no fee can be awarded without the Court's approval.

65.    A class action is the superior method for the fair and efficient adjudication of this controversy. Joinder of all members of the Class is impracticable. The losses suffered by some of the individual members of the Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights. Moreover, Defendants, a fiduciary and parties in interest, were obligated to treat all Class members similarly as employee benefit plans and plan participants under ERISA, which impose uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications. Plaintiff is unaware of any difficulty in the management of this action as a class action.

66.    This Class may be certified under Rule 23(b).

A.    23(b)(1). As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the defendants opposing the Class, or (B) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

B.    23(b)(2). This action is suitable as a class action under 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the Class

15

as a whole, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class.

       C.     23(b)(3). This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and this class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

## VII. CLAIMS FOR RELIEF

### COUNT I (Callan)

**Engaging in Prohibited Transactions by Causing the Pension Plan to
Execute Brokerage Transactions with BNY Brokerage.**

**(Violation of § 406 of ERISA, 29 U.S.C. § 1106, by Callan)**

      67.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

      68.     At all relevant times, Callan acted as a fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), by rendering investment advice for a fee.

      69.     Callan, by its actions and omissions in recommending or causing the Pension Plan to use BNY Brokerage as the Pension Plan's broker, caused the Pension Plan to engage in transactions that Callan knew or should have known constituted sales or exchanges of property between the Pension Plan and parties in interest, the furnishing of services by parties in interest to the Pension Plan, and transactions with and benefiting a fiduciary, Callan itself, in violation of

ERISA §§ 406(a)(1)(A), (C), 29 U.S.C. §§ 1106(a)(1)(A), (C), and §§ 406(b)(1), (2), (3), 29

U.S.C. §§ 1106(b)(1), (2), (3).

70.    As a direct and proximate result of these prohibited transaction violations, the

Pension Plan, directly or indirectly, paid substantial commissions to BNY Brokerage and,

indirectly, to Callan.

71.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a),

Callan is liable to disgorge all commissions received from BNY Defendants, including profits

earned thereon, and restore all losses suffered by the Pension Plan as a result of the prohibited

transactions.

## COUNT II (Callan)

**Breaches of Duties of Loyalty and Prudence by Causing the Pension Plan to
Execute Brokerage Transactions With BNY.**

**(Violation of § 404 of ERISA, 29 U.S.C. § 1104, by Callan)**

72.    Plaintiff incorporates the allegations contained in the previous paragraphs of this

Complaint as if fully set forth herein.

73.    At all relevant times, Callan acted as a fiduciary within the meaning of ERISA

§ 3(21), 29 U.S.C. § 1002(21), by rendering investment advice for a fee.

74.    Callan, by its actions and omissions in recommending or causing the Pension Plan

to use BNY Brokerage as its broker, breached its fiduciary duties under ERISA by placing its

and BNY Defendants' interests in commissions ahead of the Pension Plan's interests.

75.    Callan, by its actions and omissions in failing to disclose and concealing its

arrangement with BNY Defendants violated its duty of loyalty to the Pension Plan.

76.    As a direct and proximate result of these breaches of duty, the Pension Plan

suffered losses.

77.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Callan is liable to restore all losses suffered by the Pension Plan caused by its breaches of fiduciary duty and liable to disgorge all commissions received from BNY Defendants, including profits earned thereon, and restore all losses suffered by the Pension Plan as a result of the prohibited transactions.

## COUNT III (BNY Defendants)

### Aiding And Abetting Callan's Breaches of Fiduciary Duty in Connection With the Pension Plan's Transactions with BNY Brokerage.

### (§ 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), BNY Defendants)

78.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

79.    At all relevant times, Callan acted as a fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), by rendering investment advice for a fee.

80.    At all relevant times, BNY Defendants acted as parties in interest to the Pension Plan within the meaning of ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), by providing brokerage services for a fee or commission to the Pension Plan.

81.    BNY Defendants aided and abetted, even encouraged, Callan's breaches of fiduciary duty and prohibited transactions by sharing their brokerage commissions with Callan when they knew that Callan was a fiduciary to the Pension Plan and when they required Callan to steer business to BNY Brokerage whether or not it was in the best interests of Callan's pension clients.

82.    As a direct and proximate result of BNY Defendants' conduct, the Pension Plan suffered losses and other injuries.

18

77.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Callan is liable to restore all losses suffered by the Pension Plan caused by its breaches of fiduciary duty and liable to disgorge all commissions received from BNY Defendants, including profits earned thereon, and restore all losses suffered by the Pension Plan as a result of the prohibited transactions.

### COUNT III (BNY Defendants)

**Aiding And Abetting Callan's Breaches of Fiduciary Duty in Connection With the Pension Plan's Transactions with BNY Brokerage.**

**(§ 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), BNY Defendants)**

78.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

79.     At all relevant times, Callan acted as a fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), by rendering investment advice for a fee.

80.     At all relevant times, BNY Defendants acted as parties in interest to the Pension Plan within the meaning of ERISA § 3(14)(B), 29 U.S.C.§ 1002(14)(B), by providing brokerage services for a fee or commission to the Pension Plan.

81.     BNY Defendants aided and abetted, even encouraged, Callan's breaches of fiduciary duty and prohibited transactions by sharing their brokerage commissions with Callan when they knew that Callan was a fiduciary to the Pension Plan and when they required Callan to steer business to BNY Brokerage whether or not it was in the best interests of Callan's pension clients.

82.     As a direct and proximate result of BNY Defendants's conduct, the Pension Plan suffered losses and other injuries.

18

83.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), BNY Defendants are liable to the Pension Plan to disgorge brokerage commissions received by BNY Defendants, and profits earned thereon, in connection with Pension Plan transactions.

## VIII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.    Declare that Callan violated ERISA's prohibited transactions provisions;

2.    Declare that Callan breached its fiduciary duties under ERISA;

3.    Declare that BNY Defendants aided and abetted Callan's violations of ERISA;

4.    Issue an order compelling an accounting of all commissions or other compensation earned by BNY Defendants and Callan in connection with transactions involving the Pension Plan and other members of the putative class;

5.    Issue an order compelling Defendants to disgorge all fees or other compensation received by Defendants in connection with transactions involving the Pension Plan and other members of the putative class, including disgorgement of profits thereon;

6.    Issue an order compelling Callan to restore all losses to the Pension Plan and other members of the putative class caused by Callan's violations of ERISA;

7.    Order equitable restitution and other appropriate equitable monetary relief against Defendants;

8.    Award such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the Pension Plan and other members of the putative class and ordering Defendants to disclose the true nature of the Services Agreement to their respective employee benefit plan clients;

9.    Certify this action as a class action;

10.     Enjoin Defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

11.     Award Plaintiff his attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

12.     Award such other and further relief as the Court deems equitable and just.

Dated:     New York, NY                    Respectfully submitted:
           October 19, 2007

                                           ROSEN PREMINGER & BLOOM LLP


                                           By:_____
                                           David S. Preminger (DP 1057)
                                           708 Third Ave, Ste 1600
                                           New York, NY 10017-4123
                                           Tel:  (212) 682-1900
                                           Fax: (212) 867-6878

                                           *Of Counsel:*

                                           J. Brian McTigue (BM 2422)
                                           Gregory Y. Porter (GP 9605)
                                           **McTIGUE & PORTER LLP**
                                           5301 Wisconsin Avenue, NW
                                           Suite 350
                                           Washington, DC  20015
                                           Tel:  (202) 364-6900
                                           Fax: (202) 364-9960

                                           *Attorneys for Plaintiffs*

10.     Enjoin Defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

11.     Award Plaintiff his attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

12.     Award such other and further relief as the Court deems equitable and just.

Dated:     New York, NY
           October 19, 2007

                                    Respectfully submitted:

                                    ROSEN PREMINGER & BLOOM LLP


                                    By: _____
                                    David S. Preminger (DP 1057)
                                    708 Third Ave, Ste 1600
                                    New York, NY 10017-4123
                                    Tel:  (212) 682-1900
                                    Fax: (212) 867-6878

                                    *Of Counsel:*

                                    J. Brian McTigue (BM 2422)
                                    Gregory Y. Porter (GP 9605)
                                    **McTIGUE & PORTER LLP**
                                    5301 Wisconsin Avenue, NW
                                    Suite 350
                                    Washington, DC  20015
                                    Tel:  (202) 364-6900
                                    Fax: (202) 364-9960

                                    *Attorneys for Plaintiffs*