**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
ALBERT T. BEANE, JR., individually and on
behalf of all others similarly situated,

        Plaintiff,

        v.                        07-CV-0944 (RMB)

THE BANK OF NEW YORK MELLON,
BNY CONVERGEX EXECUTION
SOLUTIONS LLC and CALLAN
ASSOCIATES, INC.,

        Defendants.
--------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO CERTIFY CLASS OF ERISA PLANS**

## Table of Contents

Table of Authorities ......................................................................................................... ii

INTRODUCTION ............................................................................................................ 1

PLAINTIFF'S ERISA CLAIMS ..................................................................................... 3

  A.   Summary Of Facts .................................................................................................. 3

     1.   Callan Sells Its Brokerage to BNY Brokerage. ............................................ 3

     2.   The Pension Plan. ........................................................................................ 3

     3.   Callan And BNY Defendants Hatched A Scheme To Steer Brokerage Business To BNY Brokerage. ................................................................................................................ 4

  B.   Claims For Relief .................................................................................................. 6

ARGUMENT ................................................................................................................... 9

  A.   Plaintiff Satisfies the Requirements of Fed. R. Civ. P. 23(a). ........................... 10

     1.   The Class Is Sufficiently Numerous. ......................................................... 10

     2.   Questions Of Law And Fact Are Common To Plaintiff And The Class. ...... 11

     3.   Plaintiff's Claims Are Typical Class Claims. ............................................. 13

     4.   Plaintiff Is an Adequate Class Representative. ............................................ 14

  B.   Plaintiff Satisfies the Requirements of Fed. R. Civ. P. 23(b). ........................... 16

     1.   An Adjudication of Plaintiff's Claims Will Spare Defendants The Risk Of Varying Adjudications And Effectively Determine the Rights of All Class Members. ....................... 16

     2.   Defendants Have Acted on Grounds Generally Applicable to Class Members, Thus Making Injunctive Related Declaratory Relief Appropriate for the Class. ............................ 18

     3.   Alternatively, Class Certification Is Proper Under Subsection (b)(3). .......... 20

  C.   The Class Is Ascertainable. .................................................................................. 21

  D.   Rule 23(g) is Satisfied. ........................................................................................ 22

CONCLUSION ............................................................................................................... 24

## Table of Authorities

**Cases**

*Adair v. England*, 209 F.R.D. 5, 8 (D.D.C. 2002) ........................................................ 10

*Alves v. Harvard Pilgrim Healthcare, Inc.*, 204 F.Supp.2d 198, 205 (D. Mass. 2002)................ 10

*Amara v. CIGNA Corp.*, No. 01-2361, 2002 WL 31993224, at *2 (D. Conn. Dec. 20, 2002)11, 19

*Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003).................. 11, 21

*Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002)............................................... 13

*Bledsoe v. Emery Worldwide Airlines,* 258 F. Supp. 2d 780 (S.D. Ohio 2003) ......................... 20

*Bunnion v. Consol. Rail Corp.*, No. 97-4877, 1998 WL 372644 (E.D. Pa. May 14, 1998) ......... 18

*Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979) .................................................... 9

*Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco
   Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007) ................................................. 9

*Charter v. John Hancock Life Ins. Co.*, __ F. Supp. 2d __, 2007 WL 4874807, at *4 (D. Mass
   2007) ................................................................................................. 10

*Coan v. Kaufman*, 457 F.3d 250, 261-62 (2d Cir. 2006) ........................................... 2, 9

*Cortigiano v. Oceanview Manor Home For Adults*, 227 F.R.D. 194, 207 (E.D.N.Y. 2005) ....... 21

*Fallick v. Nationwide Mut. Life Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998)............................. 10

*Feret v. Corestates Fin. Corp.,* No. 97-6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998)......... 18

*Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101 (5th Cir. 1993) ................................. 10

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982)....................... 14

*Gerosta v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003)...................................... 8

*Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993) ........................................ 16

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998) ...................... 11, 14, 15

*Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 569 (S.D. Tex. 1997)........................... 11, 15

*In re American Medical Systems, Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996) ................. 12, 20

*In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179-80 (S.D.N.Y. 2006)............... 9

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1992) ................. 10

*In re Ikon Office Solutions*, 191 F.R.D. 457 at 465 (E.D.Pa. 2000) ................................ 14, 16, 18

*In re UNUM Provident Corp. ERISA Benefits Denial Actions*, 245 F.R.D. 317 (E.D Tenn. 2007)
........................................................................................................................................ 10, 21

*In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 259 (D.D.C. 2002) ................................ 11, 12, 14

*Jeffries v. Pension Trust Fund of Pension, Hospitalization and Benefit Plan of Electrical Indus.*,
No. 99-4174, 2007 WL 2454111, at \*14-15 (S.D.N.Y. Aug. 20, 2007) ...................................... 21

*Kane v. United Indep. Union Welfare Fund*, No. 97-1505, 1998 WL 78985, \*8
(E.D. Pa. Feb. 24, 1998)................................................................................................ 15, 18

*Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 195 (S.D. Ohio 2002) ................ 10

*Koch v. Dwyer*, No. 98-5519, 2001 WL 289972 at \*5 n.2 (S.D.N.Y. Mar. 23, 2001); ............... 16

*Kolar v. Rite Aid Corp., No. 01-1229,* 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003) ................. 18

*LaFlamme v. Carpenters Local #370 Pension Plan*, 212 F.R.D. 448, 456-57
(N.D.N.Y. 2003) ...................................................................................................................... 19

*LaScala v. Scrufari*, 479 F.3d 213, 220-21 (2d Cir. 2007) ......................................................... 1, 7

*Marisol A. ex. rel. Forbes v. Giuliani*, 929 F.Supp. 662, 690-91 (S.D.N.Y. 1996), *aff'd*,
126 F.3d 372 (2d Cir. 1997)................................................................................................ 11, 14

*Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)........................ 2, 17

*Misch v. Community Mut. Ins. Co.,* No. 94-428, 1995 WL 1055171
(S.D. Ohio Feb. 15, 1995)........................................................................................................ 10

*O'Neil v. Gencorp., Inc.*, No. 88-8498, 1991 WL 33316, at \*5 (S.D.N.Y. Mar. 1, 1991) .......... 20

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*266 F.R.D. 456, 466 (S.D.N.Y. 2005) . 11

*Richards v. FleetBoston Financial Corp.*, 238 F.R.D. 345, 353 (D. Conn. 2006) ........................ 9

*Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)................................................................. 13

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 162 (2d Cir. 2001)...................... 19

*Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co*., 140 F.R.D. 474, 478
(S.D. Ga. 1991) ...................................................................................................................... 18

*Sprague v. General Motors Corp*., 133 F.3d 388, 397 (6th Cir. 1998) ................................... 11, 12

*Staton v. Boeing Co.,* 313 F.3d at 466 ................................................................................... 11, 15

*Sutton v. Med. Serv. Assoc. of Penn.,* No. 92-4787, 1993 WL 273429

  (E.D. Pa. July 20, 1993) ................................................................... 10

*Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396 (E.D. Pa. 2001)............................ 16

*Westman v. Textron, Inc.*, 151 F.R.D. 229, 231 (D. Conn. 1993) ................................ 17

**Statutes**

29  U.S.C. §1132(a)(2) ......................................................................... 17

29 U.S.C. §1002(35) ........................................................................... 3

29 U.S.C. §1104(a)(1)(A), (B) ................................................................ 7

29 U.S.C. §§1109, 1132(a)(3) ................................................................ 1

29 U.S.C. §§1132(a)(2), (a)(3) ......................................................... *passim*

ERISA §3(2)(A) .................................................................................. 3

ERISA §3(35) ..................................................................................... 3

ERISA §404(a) .................................................................................... 7

ERISA §404(a)(1)(A), (B) ..................................................................... 7

ERISA §§409 and 502(a)(3) .................................................................. 1

ERISA §§502(a)(2), (a)(3) ..................................................................... 1

ERISA §3(21)(A)(ii) ............................................................................ 1

**Rules**

Fed. R. Civ. P. 23(a) ................................................................. 10, 11, 13, 14

Fed. R. Civ. P. 23(b) ...................................................................... 2, 10, 16

Fed. R. Civ. P. 23(b)(1)(B) ...................................................................... 2

**INTRODUCTION**

This case is ideally suited for resolution on a class-wide basis.  Plaintiff Albert T. Beane,

Jr., is a participant in the Federal-Mogul Corporation Pension Plan (the "Pension Plan").  Mr.

Beane sues on behalf of the Pension Plan, and a class of similarly situated pension plans,

pursuant to ERISA §§502(a)(2), (a)(3), 29 U.S.C. §§1132(a)(2), (a)(3), for the relief provided in

ERISA §§409 and 502(a)(3), 29 U.S.C. §§1109, 1132(a)(3).  Mr. Beane seeks to certify a class

of ERISA pension plans, and their respective participants and beneficiaries, who retained Callan

Associates, Inc. ("Callan") for pension consulting services and who used BNY ConvergEx

Execution Solutions LLC ("BNY Brokerage"), directly or indirectly, for brokerage services from

October 1998 through 2006 (the "Class Period").

Callan is a fiduciary to the Pension Plan and the other pension plans in the class.  Callan

has served as an investment advisor for a fee or other compensation, direct or indirect, to such

plans.  *See* ERISA §3(21)(A)(ii), 29 U.S.C. §1002(21)(A)(ii).  A fiduciary to a pension plan

owes the pension plan the highest duties known to law.  *See LaScala v. Scrufari*, 479 F.3d 213,

220-21 (2d Cir. 2007).

BNY Brokerage is an affiliate and was, during the Class Period, a wholly-owned

subsidiary of Bank of New York Mellon ("BNY") during the Class Period.  BNY and BNY

Brokerage (collectively "BNY Defendants") are parties in interest to the Pension Plan and the

other pension plan members of the class because they have provided services to the plans.

In 1998, Callan and BNY Defendants entered into an agreement (the "Services

Agreement") whereby BNY Defendants agreed to pay Callan a portion of BNY Brokerage's

brokerage commissions for eight years, 1998 through 2006.  Part of Callan's compensation was

dependent on the amount of commissions that BNY Brokerage earned from Callan clients.  Since

1998, Callan has told its pension plan clients that BNY Brokerage is Callan's preferred securities broker. But Callan never told these clients that the amount of the commissions that it shared with BNY Brokerage depended in part on how much brokerage business Callan clients conducted through BNY Brokerage. Instead, Callan consistently told its pension plan clients that its compensation from BNY Brokerage was fixed. After an investigation, the Securities and Exchange Commission issued a cease-and-desist order stating that Callan had materially misrepresented its arrangement with BNY Brokerage.

Mr. Beane alleges that Callan engaged in self-dealing prohibited transactions and breached its duty of loyalty to the Pension Plan and other similarly-situated plans by putting its own and BNY Defendants' commission-generating interests ahead of the interests of Callan's pension plan clients. Callan also failed to disclose to the Pension Plan and other similarly-situated plans the true nature of Callan's relationship to BNY Brokerage. And BNY Defendants knowingly participated in Callan's fiduciary breaches and earned substantial commissions from Callan clients that Callan introduced to BNY Brokerage.

Under ERISA, allegations of this sort are not individualized inquiries. Allegations that a fiduciary breached its obligations to a pension plan or to plan participants lie at the very heart of Rule 23 case law. *See*, *e.g.*, *Coan v. Kaufman*, 457 F.3d 250, 261-62 (2d Cir. 2006) (observing that a suit by a participant on behalf of a plan generally should proceed as a class action). Indeed, the Advisory Committee Notes accompanying the 1966 amendment of Fed. R. Civ. P. 23(b)(1)(B) specifically state that certification under Rule 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries, and Congress embraced the use of representative actions to enforce ERISA. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (noting Congress' clearly expressed intent that ERISA

2

"actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole").  This case is precisely the type of case that Rule 23 was enacted to address.

## PLAINTIFF'S ERISA CLAIMS

### A.    Summary Of Facts

#### 1.    Callan Sells Its Brokerage to BNY Brokerage.

In October 1998, Callan sold Alpha Management Inc. ("Alpha"), its affiliated broker-dealer, to BNY ESI & Co., Inc. (a predecessor to BNY Brokerage), a subsidiary of BNY. (Compl. ¶ 33.)  As a part of the sale of Alpha, Callan and BNY Defendants entered into a Services Agreement whereby BNY Defendants agreed to pay Callan a specified amount annually for eight years, 1998 through 2006.  (*Id.* ¶ 34.)[1]  A portion of the annual payment, 8%, was contingent on BNY Brokerage generating gross brokerage commissions above a certain minimum threshold from Callan clients.  (Compl. ¶ 34; Services Agreement at BNY-BEANE 0001330-31 (§2.03(b)(ii).)  The minimum threshold, which remained constant during the entire eight-year period, was based on Alpha's brokerage commissions earned in 1998.  (Compl. ¶ 34.)

#### 2.    The Pension Plan.

The Pension Plan covers employees of Federal-Mogul Corporation. (Compl. ¶ 19.)  Mr. Beane is a participant in the Pension Plan. (*Id.* ¶ 20.)  The Pension Plan is an "employee pension benefit plan" within the meaning of ERISA §3(2)(A), 29 U.S.C. §1002(2)(A) and a defined benefit plan within the meaning of ERISA §3(35), 29 U.S.C. §1002(35).  (*Id.* ¶ 18.)  Pursuant to ERISA, the relief requested in this action is for the benefit of the Pension Plan.  (*Id.*)

---

[1] *See* Services Agreement by and among Callan Associates Inc., BNY ESI & Co., and the Bank of New York Company, Inc. (Sept. 9, 1998) ("Services Agreement"), BNY-BEANE 0001318-57, at BNY-BEANE 0001330-31 (§2.02(b)), Ex. 1 hereto.  Pursuant to a protective order entered by the Court, Ex. 1 and Exs. 4-6 hereto have been filed under seal.

Callan was a fiduciary of the Pension Plan because Callan offered investment advice to the Pension Plan for a fee or other compensation. (*Id.* ¶¶ 29, 30.) More specifically, the Pension Plan pays fees to Callan for Callan's investment advisory and consulting services. (*Id.* ¶ 22.) Callan has received payments from the Pension Plan since at least 2000. (*Id.* ¶ 23.)

Callan sells investment advice and services to public and private pension plan sponsors and fiduciaries, investment management firms, financial intermediaries, and mutual fund boards of directors. (*Id.* ¶ 17.) Callan is registered as an investment adviser with the Securities and Exchange Commission ("SEC"). (*Id.*) Callan provides consulting and education services to over 270 institutional retirement plans, endowments, foundations and hospital plans with total assets over $900 billion. (*Id.*) Callan is a fiduciary of the Pension Plan within the meaning of ERISA §3(21)(B)(ii), 29 U.S.C. §1002(21)(B)(ii) by virtue of its position as an investment advisor that receives a fee or other compensation for investment advice. (*Id.*) Callan routinely acknowledges that it is a fiduciary under ERISA for its ERISA client plans.[2]

### 3.    Callan And BNY Defendants Hatched A Scheme To Steer Brokerage Business To BNY Brokerage.

Pursuant to provisions of the Services Agreement, Callan was required to inform its retirement plan clients that BNY Brokerage was its preferred broker. (*See* Services Agreement at BNY-BEANE 0001329 (§2.01(b).)[3] Callan also was required to "use its best efforts to introduce its Plan Sponsor Clients to BNY [Brokerage]" (Services Agreement at BNY-BEANE 0001329 (§2.01(b)) and to send annual letters to its retirement plan clients informing them that BNY Brokerage was its preferred broker (*id.*; SEC Order at 2). The Services Agreement also

---

[2] *See* Callan Associates Inc. Responses to the DOL and SEC Recommended Questions for Selecting and Monitoring Pension Consultants:  Tips for Plan Fiduciaries (June 21, 2005) ("Callan Responses"), at 3, Ex. 2 hereto.
[3] *See also In the Matter of Callan Associates*, SEC Admin. Proc. No. 3-12808, Order Instituting Administrative And Cease-And-Desist Proceedings Making Findings And A Cease-And-Desist Order Pursuant To Sections 203(e) And 203(k) Of The Investment Advisers Act Of 1940 ("SEC Order"), at 2, Ex. 3 hereto.

prohibited Callan from referring any of its clients to a broker other than BNY Brokerage. (Services Agreement at BNY-BEANE 0001342 (§4.06(a).)  Although the annual letters to Callan's pension plan clients explained that Callan had sold Alpha to BNY Brokerage, the letters failed to disclose that Callan was receiving compensation from BNY Brokerage that depended on a certain level of commissions being generated by Callan clients.  (SEC Order at 2, 3.) Throughout the Class Period, 1998-2006 (the duration of the Services Agreement), Callan repeatedly told its pension plan clients that BNY Brokerage was Callan's preferred broker. (Compl.  ¶¶ 35, 39; Callan Responses at 3.)[4]  Callan also failed to disclose in the annual letters that it had agreed to not refer clients to any broker other than BNY Brokerage, even though as a fiduciary to pension plans Callan was supposed to be acting solely in the interest of its clients including with respect to advising clients.

As a registered investment adviser, Callan was required to amend its SEC registration statements known as Form ADV Part II ("ADV Part II") at least annually.  (Compl. ¶ 38.) Between 1999 and 2005, Callan's ADV Part II stated that Callan was obligated by the terms of the Services Agreement to inform its pension plan clients that BNY Brokerage was its preferred broker.  (Compl. ¶ 39; SEC Order at 3.)  Callan further reported that, "[a]ccording to the terms of the transaction, BNY [Brokerage] makes periodic *fixed* payments to Callan each year."  (Compl. ¶ 39; SEC Order at 3, emphasis added.)  The characterization of BNY's payments to Callan as "fixed" was not true because a material portion of each annual payment was contingent upon BNY's receipt of a minimum threshold of Callan client brokerage business.  (Compl. ¶ 40; SEC Order at 3.)  The SEC investigated Callan's arrangement with BNY Brokerage and entered a cease-and-desist order against Callan, finding that Callan had "willfully" made untrue statements

---

[4] *See, e.g.*, Memorandum from Betty Lim (Callan) to Carey Pack (BNY Brokerage) (Feb. 1, 2005) (enclosing sample annual client letters), BNY-BEANE 0000600-02, Ex. 4 hereto.

of material fact by stating in its ADV Part II that BNY's payments to Callan were fixed. (Compl. ¶ 41; *See* SEC Order at 4.)  As with the annual client letters, Callan's ADV Part II failed to disclose that Callan had agreed to not recommend any broker other than BNY Brokerage.

In sum, Callan did not tell its pension plan clients about the true nature of Callan's relationship with BNY Brokerage. (Compl. ¶ 48.)  Callan used its position of trust to steer its pension plan clients to BNY Brokerage and received a share of BNY Brokerage's commissions in return. (*See* Compl. ¶¶ 5-7.)  Callan, thus, put its and BNY Defendants' commission-generating interests ahead of the interests of Callan's pension plan clients.  (*See* Compl. ¶ 7.)

BNY Defendants knowingly participated in Callan's efforts by receiving commissions in connection with transactions arising out of Callan's conflict, paying kick-backs to Callan for steering business to BNY Brokerage, and failing to reveal the true nature of the Services Agreement to pension plan clients who used BNY Brokerage based on a recommendation from Callan.  (Compl. ¶¶ 8, 49.)

**B.    Claims For Relief**

*First*, Mr. Beane alleges that Callan violated specific prohibitions imposed on fiduciaries under section 406 of ERISA, 29 U.S.C. §1106, which sets forth a detailed list of transactions that are considered *per se* violations because they entail a high potential for abuse. (Compl. ¶ 58.)  In particular, section 406(a)(1)(A) and (C) state that a fiduciary should not cause the plan to engage in a transaction if he "knows or should know that such a transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest. . . [or] (C) furnishing of goods, services, or facilities between the plan and a party in interest." (Compl. ¶ 56.)  Similarly, under section 406(b)(1) and (2) of ERISA, a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account," nor shall he "act in a

transaction involving the plan on behalf of a party . . . whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." (*Id*.)

By telling its clients that BNY Brokerage was its preferred broker and that Callan's compensation from BNY Brokerage was unrelated to the amount of business conducted by Callan clients through BNY Brokerage, Callan acted for its and BNY Brokerage's benefit in transactions involving the Pension Plan and other similarly-situated plans and caused the Pension Plan and other similarly-situated plans to engage in transactions with BNY Brokerage, a party in interest. (Compl. ¶¶ 39-40, 58.)

*Second*, Mr. Beane alleges that Callan violated ERISA §404(a), 29 U.S.C. §1104(a), which requires a fiduciary to discharge its duties "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits . . . and defraying reasonable expenses of administering the plan"; in addition, the fiduciary is to utilize the "care, skill, prudence and diligence then prevailing that a prudent man acting in a like capacity with such matters would use." ERISA §404(a)(1)(A), (B); 29 U.S.C. §1104(a)(1)(A), (B). (Compl. ¶ 55.)

It is said that duties of an ERISA fiduciary are among the highest duties known to law. *See LaScala v. Scrufari*, 479 F.3d 213, 220-21 (2d Cir. 2007). Section 404 of ERISA imposes a duty of unwavering loyalty on ERISA fiduciaries and a duty to speak truthfully, accurately, and completely. Mr. Beane alleges that Callan told its pension plan clients that BNY Brokerage was its preferred broker because it was in Callan's and BNY Brokerage's own interests to do so. Callan even agreed to not refer its pension plan clients to a broker other than BNY Brokerage no matter what the interests of those clients might be (*see* Services Agreement at BNY-BEANE 0001342 (§4.06(a)), essentially contracting away its duty of loyalty for eight years in exchange for a share of brokerage commissions. Callan compounded its disloyalty by telling its pension

7

plan clients that Callan's compensation from BNY Brokerage was fixed and did not depend on how much brokerage business Callan produced for BNY Brokerage. (Compl. ¶¶ 39, 40.)

*Third*, Mr. Beane alleges that BNY Defendants knowingly participated in and abetted Callan's violations of ERISA. (Compl. ¶¶ 49, 81.) It is well established that a claim for relief under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), including equitable monetary remedies, lies against a party in interest who engages in such conduct. *See Gerosta v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003).

A fiduciary that breaches its obligations to a pension plan is liable under section 409 of ERISA for losses that are suffered as a result of that breach and for equitable relief, including disgorgement and equitable monetary remedies. 29 U.S.C. §1109. Section 502(a)(2) of ERISA allows a participant like Mr. Beane to file suit on behalf of a plan to recover for the plan any losses suffered as a result of any breach. 29 U.S.C. §1132(a)(2). Mr. Beane seeks such plan-wide relief as well as relief on behalf of a class of similarly situated plans, asking Callan to restore all losses suffered by the class of plans and asking all defendants to disgorge fees and commissions earned under the false pretenses that Callan was acting in the best interests of its pension plan clients. (Compl. ¶¶ 71, 77, 83.)

Mr. Beane seeks to certify a class of "ERISA pension plans, and their respective participants and beneficiaries, who retained Callan Associates, Inc. ("Callan") for pension consulting services and who used BNY ConvergEx Execution Solutions LLC ("BNY Brokerage"), directly or indirectly, for brokerage services from October 1998 through 2006 (the "Class Period")." As we explain in the Argument that follows, the criteria for certification of such a class under Rule 23 have been satisfied, and this motion should be granted.

## ARGUMENT

This action presents a textbook example of a case appropriate for class action treatment. A class action is "peculiarly appropriate" when a case raises legal issues "common to the class as a whole" since in such a case, Rule 23 provides an economical vehicle for a resolution of multiple common claims. *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979).

Over the years, a consensus has emerged as to breach of fiduciary actions involving pension plans. In these cases, class certification is generally a foregone conclusion. The reported decisions considering alleged violations of fiduciary duties under ERISA have, almost without exception and for obvious reasons, held that class certification is appropriate under Rule 23(a) and at least one subsection of Rule 23(b), usually subsection (b)(1). Indeed, it is often said that ERISA claims are particularly well-suited to class certification because defendants have a statutory obligation and fiduciary responsibilities to treat all class members alike. *See In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179-80 (S.D.N.Y. 2006); *Richards v. FleetBoston Financial Corp.*, 238 F.R.D. 345, 353 (D. Conn. 2006); *see also Coan v. Kaufman*, 457 F.3d 250, 261-62 (2d Cir. 2006) (observing that a suit by a participant on behalf of a plan generally should proceed as a class action).

Although most ERISA class actions involve a class of participants in a single pension plan (or participants in a few plans sponsored by the same employer), it is well established that a class of plans and their respective participants may be certified. *See, e.g., Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007). As one court explained, "an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans."

9

*Fallick v. Nationwide Mut. Life Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998); *see id.* at 422-24 (collecting and discussing cases on classes of plans); *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101 (5th Cir. 1993); *Charter v. John Hancock Life Ins. Co.*, __ F. Supp. 2d __, 2007 WL 4874807, at *4 (D. Mass 2007); *In re UNUM Provident Corp. ERISA Benefits Denial Actions*, 245 F.R.D. 317 (E.D Tenn. 2007); *Alves v. Harvard Pilgrim Healthcare, Inc.*, 204 F.Supp.2d 198, 205 (D. Mass. 2002); *Misch v. Community Mut. Ins. Co.*, No. 94-428, 1995 WL 1055171 (S.D. Ohio Feb. 15, 1995); *Sutton v. Med. Serv. Assoc. of Penn.*, No. 92-4787, 1993 WL 273429 (E.D. Pa. July 20, 1993).  Like the plaintiffs in the foregoing authorities, Mr. Beane challenges general practices that apply to all members of the putative class, including Callan's failure to disclose the true nature of its commission-sharing arrangement with BNY Brokerage, Callan's receipt of commissions from BNY Brokerage, Callan's uniform and periodic statements to its clients that BNY Brokerage was its preferred broker, and BNY Defendants' participation in these practices.

To be certified as a class action, the proposed class must satisfy all four subsections of Fed. R. Civ. P. 23(a), and at least one subsection of Fed. R. Civ. P. 23(b).  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1992); *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 195 (S.D. Ohio 2002).  Those standards are met here, as we now explain.

**A.  Plaintiff Satisfies the Requirements of Fed. R. Civ. P. 23(a).**

**1.    The Class Is Sufficiently Numerous.**

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  A precise number is unnecessary so long as plaintiffs provide a reasonable basis for their estimate.  *Attenborough*, 238 F.R.D. at 94; *Adair v. England*, 209 F.R.D. 5, 8 (D.D.C. 2002).   "Numerosity is presumed when a class consists of forty or more

members." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 466 (S.D.N.Y. 2005). Numerosity is generally found in ERISA cases. *See Amara v. CIGNA Corp.*, No. 01-2361, 2002 WL 31993224, at *2 (D. Conn. Dec. 20, 2002); *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003).

Mr. Beane has pled that the Pension Plan has approximately 33,000 participants. (Compl. ¶ 70). This number comes from the Form 5500 for the Pension Plan, which is an annual report that ERISA plans file with the U.S. Department of Labor. The precise number of participants in the Pension Plan as of this motion is not known.

The class consists of many pension plans. Annual commission reports prepared by BNY Brokerage and provided to Callan list dozens of Callan's corporate pension plan clients (as well as many governmental pension plan clients) that executed brokerage transactions through BNY Brokerage.[5] The total number of participants in all similarly-situated pension plans likely is in the hundreds of thousands, if not millions, given that many of the pension plans that are clients of Callan are sponsored by large companies.[6] The number is certainly is too large for joinder to be practicable.

### 2.    Questions Of Law And Fact Are Common To Plaintiff And The Class.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." This standard "is not a high burden." *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 569 (S.D. Tex. 2000); *see also Marisol A. ex. rel. Forbes v. Giuliani*, 929 F.Supp. 662, 690-91 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997). Indeed, "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with

---

[5] *See, e.g.*, Callan Commission Report for Nov. 1, 2000 to Oct. 31, 2001 ("Callan Commission Report"), BNY-BEANE 0002586, Ex. 5 hereto. Plaintiff's counsel estimates that at least eighty of the plan sponsors listed in the Callan Commission Report are plans covered by ERISA.

[6] Given the confidential treatment of certain documents, plaintiff will not identify any such companies by name in this public filing.

divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Differently put, "a single common question may be sufficient to satisfy this rule" (*Marisol A.*, 929 F.Supp. at 690) when "the resolution of [that common issue] will advance the litigation." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). *See also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 259 (D.D.C. 2002); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996) ("there need be only a single issue common to all members of the class….") The standards of care imposed on Callan and BNY Defendants by ERISA are common threads in this case. Other common threads include the Services Agreement and ADV Part II whereby Callan routinely told its clients that BNY Brokerage was its preferred broker without disclosing (1) that Callan's compensation from BNY Brokerage was in part contingent on the amount of business Callan steered to BNY Brokerage, and (2) that Callan had agreed not to refer its pension plan clients to any broker other than BNY Brokerage, even if Callan's duties under ERISA might require otherwise. As the foregoing factual summary indicates, Mr. Beane has identified a series of common questions of law and fact, including:

1.      Whether Callan was a fiduciary to client pension plans;

2.      Whether BNY Defendants were parties in interest to pension plans;

3.      Whether Callan failed to disclose to its pension plan client the true nature of its relationship with BNY Defendants;

4.      Whether Callan misrepresented to its pension plan clients the true nature of its relationship with BNY Defendants;

5.      Whether Callan acted for the benefit of itself and BNY Defendants when it told its pension plan clients that BNY Brokerage was its preferred broker;

6.      Whether Callan breached its fiduciary duties to employee benefit plans by concealing the true nature of the commissions received from BNY Defendants under Defendants' Services Agreement;

7.      Whether Callan and BNY Defendants are subject to equitable monetary remedies;

8.      Whether BNY Defendants are liable under ERISA §502(a)(3) for knowingly aiding and abetting prohibited transactions and breaches of fiduciary duty by Callan, and what remedies are available against BNY Defendants;

9.      Whether employee benefit plans and their respective participants suffered losses as a result of Defendants' violations of ERISA;

10.     Whether Callan's efforts to conceal the true nature of its commission-sharing arrangement with BNY Brokerage tolls ERISA's six-year statute of limitations.

These are issues of the sort that courts have found to satisfy the commonality requirement in an ERISA context, where, as a general proposition, "the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002). *See also Kmart*, 220 F.R.D. at 517-18 (certifying common issues, including whether defendants were fiduciaries under ERISA, whether they breached their duties to participants under ERISA, whether there is co-fiduciary liability; claim for a breach of the duty of prudence said to "clearly present[ ] a common issue").

**3.      Plaintiff's Claims Are Typical Class Claims.**

Fed. R. Civ. P. 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class."  "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes

similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931,

936 (2d Cir. 1993). The "purpose of this requirement is to ensure that the class representatives

have suffered injuries in the same general fashion as absent class members." *In re Vitamins*

*Antitrust Litig.*, 209 F.R.D. at 260 (internal quotation marks and citations omitted). "Under the

rule's permissive standards, representative claims are 'typical' if they are reasonably co-

extensive with those of absent class members; they need not be substantially identical." *Hanlon,*

150 F.3d at 1020. Commonality and typicality "tend to merge [because both] serve as

guideposts for determining whether under the particular circumstances maintenance of a class

action is economical and whether the named plaintiff's claim and the class claims are so

interrelated that the interests of the class members will be fairly and adequately protected in their

absence." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

In this case, Mr. Beane's claims clearly arise from the same course of events as do the

claims of the class, namely Callan's fiduciary breaches and BNY Defendants' knowing

participation therein. This factor makes the present case particularly appropriate for class

certification, given that "the appropriate focus in a breach of fiduciary duty claim is the conduct

of the defendants." *In re Ikon Office Solutions*, 191 F.R.D. 457 at 465 (E.D.Pa. 2000), *quoted in*

*Kmart*, 220 F.R.D. at 519. Here, each class member possesses and can assert the same legal

arguments to prove defendants' liability. Therefore, Mr. Beane's claims are typical of those of

other class members.

### 4.     Plaintiff Is an Adequate Class Representative.

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately

protect the interests of the class." Two criteria for determining the adequacy of representation

are generally recognized: "First, the Court must determine whether class counsel is qualified,

experienced, and generally able to conduct the litigation. ...Next, the Court must establish that the proposed class members do not have interests antagonistic to one another." *Marisol A.*, 929 F. Supp. at 692; *see also Staton v. Boeing Co.,* 313 F.3d at 466, citing *Hanlon v. Chrysler Corp.* 150 F.3d at 1020.   As we discuss in more detail in Part D below, plaintiff has retained class counsel with significant experience in federal class actions involving ERISA.

As for the second element of Rule 23(a)(4), Mr. Beane is a participant in the Pension Plan.  (Compl. ¶¶ 1, 14).  He does not have a relationship with any of the defendants apart from that connection, nor does he have any interest that is antagonistic to the claims of the class. Indeed, as noted above, his claims are identical to the legal claims belonging to all class members, and they (or any other plaintiff) would have to prove defendants' liability on the basis of common facts underlying those claims.  *Kmart*, 220 F.R.D. at 520.  *See also Kane v. United Indep. Union Welfare Fund*, No. 97-1505, 1998 WL 78985, *8 (E.D. Pa. Feb. 24, 1998) (finding adequacy in ERISA case; "plaintiffs seek to have the fiduciaries 'personally restore to the Fund any losses incurred.' . . . The named plaintiffs' interests are the same as those of the absentee class members: all seek to increase the value of the Fund"); *Henry v. Cash Today*, 199 F.R.D. at 569 (the first prong is satisfied when the interests of the named representatives are "not [] antagonistic to those of the other class members").  Mr. Beane's interests are thus fully aligned with the interests of other participants.  In short, the requirements of Rule 23(a)(4) are met.  The situation here was well summarized by one court:

> [B]ecause the named plaintiffs are challenging the same unlawful conduct and seeking the same relief as the rest of the class, I find that the interests of the named plaintiffs are sufficiently aligned with those of the class members to satisfy the first prong of the adequacy of representation requirement. In particular, I note that the right to relief of the named plaintiffs, like that of the absent class members, depends on demonstrating that the defendants violated the terms of the plans, violated provisions of ERISA, and breached their fiduciary duties.  Second, because the named plaintiffs' attorneys have extensive experience litigating class

actions and ERISA actions . . . , the named plaintiffs' attorneys appear qualified to prosecute the action on behalf of the class. Therefore, the court concludes that plaintiffs have satisfied the requirement of Rule 23(a)(4) that they will adequately represent the class.

*Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396 (E.D. Pa. 2001).

**B.    Plaintiff Satisfies the Requirements of Fed. R. Civ. P. 23(b).**

Plaintiff also satisfies all three of the additional criteria set forth in Rule 23(b), even though a party seeking class certification must prove that only one of those situations is present.

**1.    An Adjudication of Plaintiff's Claims Will Spare Defendants The Risk Of Varying Adjudications And Effectively Determine the Rights of All Class Members.**

Under Rule 23(b)(1), a class may be certified if:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *Ikon Office Solutions*, 191 F.R.D. at 466.

**Subsection (b)(1)(A).** In ERISA actions, courts often deem it unnecessary to reach subsection (b)(1)(A) or the other potentially applicable subsections of Rule 23(b) because they routinely certify ERISA classes under (b)(1)(B). *E.g.*, *Koch v. Dwyer*, No. 98-5519, 2001 WL 289972 at *5 n.2 (S.D.N.Y. Mar. 23, 2001); *Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993). Other courts, however, certify ERISA class actions under both subsections (b)(1)(B) and

(b)(1)(A).  *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 545 (E.D. Mich 2004); *Kmart*, 220

F.R.D. at 522; *Rite Aid*, 2003 WL 1257272, at *3 ("a (b)(1) class is a perfect vehicle for

resolving complex ERISA issues such as these involved here").

In this case, class certification is proper under subsection (b)(1)(A) and (b)(1)(B).  If the

pension plan members of the class were required to sue defendants separately as to the same acts

challenged by Mr. Beane here, there could be inconsistent or varying adjudications which would

establish incompatible standards of conduct for defendants.  *Westman v. Textron, Inc.*, 151

F.R.D. 229, 231 (D. Conn. 1993).   The defendants, in particular Callan as a fiduciary, should not

be held to different standards, yet that is a risk if class certification is denied.

**Subsection (b)(1)(B).**  Subsection (b)(1)(B) is tailor-made for allegations of a breach of

defendants' fiduciary obligations to the plaintiffs.  As stated in the Advisory Committee Notes

accompanying the 1966 amendments to Rule 23:

> This [(b)(1)(B)] clause takes in situations where the judgment in a non-class
> action by or against an individual member of the class, while not technically
> concluding[7] the other members, might do so as a practical matter.  The vice of
> an individual action would lie in the fact that the other members of the class, thus
> practically concluded, would have had no representation in the lawsuit . . . *[This]*
> *reasoning applies to an action which charges a breach of trust by an indenture*
> *trustee or other fiduciary similarly affecting the members of a large class of*
> *security holders or other beneficiaries, and which requires an accounting or like*
> *measures to restore the subject of the trust.*

(emphasis added).  Indeed, most courts have accepted this reasoning in deciding to certify a class

in ERISA suits alleging a breach of defendants' fiduciary obligations.  Under 29 U.S.C.

§1132(a)(2), participants or beneficiaries of an ERISA plan have standing to sue for appropriate

relief under 29 U.S.C. §1109 (1988), imposing liability for breaches of fiduciary duty.  An action

to enforce fiduciary duties is brought in a representative capacity on behalf of the plan as a

---

[7] "Concluding" is used here in the now obsolete sense of binding or estopping.  *See Black's Law Dictionary* 284 (7th
Ed. 1999).

whole.  *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. at 142 n.9.  Any relief

granted by a court to remedy a breach of fiduciary duty "inures to the benefit of the plan as a

whole" rather than to the individual plaintiffs.  *Id.* at 140.  "Because a plan participant or

beneficiary may bring an action to remedy breaches of fiduciary duty only in a representative

capacity, such an action affects all participants and beneficiaries, albeit indirectly."  *Specialty*

*Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.*, 140 F.R.D. 474, 478 (S.D. Ga.

1991); *see also CMS Energy ERISA Litig.*, 225 F.R.D. at 545.

    In *Ikon Office Solutions* the court made the same point, namely, that "given the nature of

an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class

would leave future plaintiffs without relief."  *Ikon,* 191 F.R.D. at 466 (citations omitted); *see also*

*Kmart*, 220 F.R.D. at 523 ("adjudication of Rankin's claims will likely be dispositive of the

claims of other potential class members -- the basis for certification under (b)(1)(B)").[8]  Because

of ERISA's distinctive "representative capacity" and remedial provisions, this is a paradigmatic

case for class treatment under Rule 23(b)(1)(B).

**2.    Defendants Have Acted on Grounds Generally Applicable to Class Members, Thus Making Injunctive Related Declaratory Relief Appropriate for the Class.**

    Apart from the bases for certification set out in Rule 23(b)(1), a class may be certified

under Rule 23(b)(2) if:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]

---

[8] Other ERISA breach of fiduciary duty cases granting class certification under subsection (b)(1)(B) include *Kolar v. Rite Aid Corp., No. 01-1229,* 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003); *SmithKline Beecham*, 201 F.R.D. at 397 (E.D. Pa. 2001); *Feret v. Corestates Fin. Corp.,* No. 97-6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998); *Bunnion v. Consol. Rail Corp.*, No. 97-4877, 1998 WL 372644 (E.D. Pa. May 14, 1998); *Kane*, 1998 WL 78985 (E.D. Pa. Feb. 24, 1998).

"The (b)(2) class action is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 162 (2d Cir. 2001). "Where class-wide injunctive or declaratory relief is sought in a (b)(2) class action for an alleged group harm, there is a presumption of cohesion and unity between absent class members and the class representatives such that adequate representation will generally safeguard absent class members' interests and thereby satisfy the strictures of due process." *Id. at* 165 (citations omitted).

As discussed above, Mr. Beane's claims rest on defendants' conduct that is generally applicable to the class as a whole, *i.e.*, that Callan breached its fiduciary duties and engaged in prohibited transactions by (i) acting for its own and BNY Defendants' benefit in transactions involving client pension plans (Compl. ¶¶ 55, 58), and (ii) failing to disclose the true nature of its commission-sharing arrangement with BNY Brokerage to Callan's pension plan clients (Compl. ¶¶ 7, 39-42), and that BNY Defendants knowingly participated and abetted Callan's breaches of duty (Compl. ¶¶ 8-9, 49). These violations of ERISA affected all of Callan's pension plan clients (and their respective participants and beneficiaries) equally, and it cannot be seriously disputed that this conduct was "generally applicable to the class." *See Amara*, 2002 WL 31993224, at *4 (claim for plan-wide relief under ERISA falls squarely within the purview of subsection (b)(2)); *LaFlamme v. Carpenters Local #370 Pension Plan*, 212 F.R.D. 448, 456-57 (N.D.N.Y. 2003), (certifying ERISA class under (b)(2) where plaintiffs challenged defendants' conduct generally applicable to the class and sought declaratory relief that defendants had violated ERISA).

A ruling by the Court that Callan engaged in a prohibited transaction as to Mr. Beane and the Pension Plan would necessarily imply a ruling that defendants violated ERISA as to all class

members.  Similarly, a ruling that Callan breached its duties of loyalty to Mr. Beane and the

Pension Plan would warrant declaratory and injunctive relief that will redound to the benefit of

all class members.  ERISA §409(a), 29 U.S.C. §1109(a).  By the same token, rulings that BNY

Defendants knowingly participated in and abetted Callan's violations of ERISA as to Mr. Beane

and the Pension Plan would necessarily imply a ruling that BNY Defendants violated ERISA as

to all class members and warrant declaratory and equitable relief that will redound to the benefit

of all class members.  Thus Mr. Beane's claims are properly certified under Rule 23(b)(2).

### 3.    Alternatively, Class Certification Is Proper Under Subsection (b)(3).

Rule 23(b)(3) permits class certification if "the court finds that the questions of law or

fact common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy."  Here, the common issues are numerous and dominant:

the defendants' conduct is the single overarching question of fact.  Likewise, dominant questions

of law are presented, including whether Callan is a fiduciary of the pension plan members of the

class, and their respective participants and beneficiaries, whether BNY Defendants are parties in

interest to the pension plan members of the class, and their respective participants and

beneficiaries, whether Callan breached its fiduciary duties and engaged in prohibited transactions

under ERISA, and whether equitable monetary remedies are available against Callan and BNY

Defendants.  These common issues plainly predominate over individual issues.

To satisfy Rule 23(b)(3), a class action must also be superior to other case management

tools.  Here, the class is comprised of dozens of pension plans and hundreds of thousands of

participants and beneficiaries, whose ERISA claims can be resolved in this single proceeding.

Class certification offers the only practical way to assert claims for class-wide relief.  In this

case, class certification is superior to all other alternatives. *See O'Neil v. Gencorp., Inc.*, No. 88-8498, 1991 WL 33316, at *5 (S.D.N.Y. Mar. 1, 1991) (certifying class of retirement plan participants under (b)(3)); *Bledsoe v. Emery Worldwide Airlines,* 258 F. Supp. 2d 780 (S.D. Ohio 2003) (certifying class under (b)(3)); *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. at 131-32 (certifying ERISA class under subsections (b)(3) and (b)(1)).

## C.    **The Class Is Ascertainable.**

In addition to the requirements of Rule 23(a) and (b), courts have implied a requirement that there be "an identifiable class." A plaintiff can satisfy this requirement, known as "ascertainability," if the class members can be identified by reference to objective criteria. Class members need not be ascertained prior to class certification, but must be ascertainable at some point in the case. *See Jeffries v. Pension Trust Fund of Pension, Hospitalization and Benefit Plan of Electrical Indus.*, No. 99-4174, 2007 WL 2454111, at *14-15 (S.D.N.Y. Aug. 20, 2007); *Cortigiano v. Oceanview Manor Home For Adults*, 227 F.R.D. 194, 207 (E.D.N.Y. 2005). Here, the proposed class is defined as "ERISA pension plans, and their respective participants and beneficiaries, who retained Callan Associates, Inc. ("Callan") for pension consulting services and who used BNY ConvergEx Execution Solutions LLC ("BNY Brokerage"), directly or indirectly, for brokerage services from October 1998 through 2006 (the "Class Period")." It should be a simple matter to identify members of the Class. First, BNY Brokerage generated an annual "Callan Commission Report" listing all Callan clients that executed securities transactions through BNY Brokerage. (*See, e.g.*, Callan Commission Report, Ex. 5 hereto.) Second, other documents such as the Callan Integrated Client System identify which Callan clients are ERISA

plans.[9] *Cf. In re UNUM Provident Corp. ERISA Benefits Denial Actions*, 245 F.R.D. 317, 322-23 (E.D Tenn. 2007) (holding that class consisting of participants in "ERISA-governed long term disability plans" was sufficiently definite).

**D.       Rule 23(g) is Satisfied.**

Rule 23(g) complements Rule 23(a)(4)'s requirement that class representatives will adequately represent the interest of class members by focusing on the qualifications of class counsel.  Rule 23(g)(1)(C) requires that a court:

(i)     must consider:

- the work counsel has done in identifying or investigating potential claims in the action,
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
- counsel's knowledge of the applicable law, and
- the resources counsel will commit to representing the class;

(ii)    may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(iii)   may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and

(iv)    may make further orders in connection with the appointment.

Exhibits accompanying this memorandum demonstrate that each of these considerations weighs in favor of class counsel's adequacy.  *See* Declaration of Gregory Y. Porter ("Porter Decl.") attached hereto.  Proposed class counsel are very experienced in successfully handling class actions, specifically ERISA class actions. McTigue & Porter LLP was formed in 1997 to represent pension plan participants and confines itself to the litigation of complex class actions under federal pension law.  McTigue & Porter attorneys have litigated many ERISA class

---

[9] *See* Callan Integrated Contact System Main Form, Tenneco Master Retirement B (Feb. 12, 1999), BNY-BEANE 0022717, Ex. 6 hereto (identifying "Organization Type", including three types of sponsors ("Corporate Pension/Retirement," "Corporate Profit Sharing," and "Taft-Hartley/Multi Employer") whose plans are subject to ERISA.)

actions.  In addition, the firm has served or is serving as lead counsel or co-lead counsel for

classes in numerous ERISA cases alleging breaches of defendants' fiduciary obligations.  Details

about the firm's experience are summarized in Porter Decl. ¶¶ 2-3, as well as the firm resume

attached thereto.

In particular, the firm has represented over 70,000 pension plan participants in cases

where ERISA class actions where the firm has been named as lead counsel or co-lead counsel,

and the firm has recovered more than $119 million on behalf of plan participants in those cases.

(Porter Decl. ¶ 3.)  This depth of experience renders proposed class counsel highly

knowledgeable of the applicable law, and the proposed class counsel have devoted significant

effort to identifying or investigating the potential claims in this action.  This effort has included

researching filings with the U.S. Department of Labor and the Securities & Exchange

Commission regarding the pension plans at issue here, interviewing Mr. Beane, and conferring

with an expert consultant regarding possible claims and valuation of those claims.

McTigue & Porter are assisted in the case by David M. Preminger of Rosen Preminger &

Bloom LLP, which firm is located at 708 Third Avenue, Suite 1600, New York, New York

10017 within this District..  Mr. Preminger has overt twenty years of experience in litigating

complex ERISA actions.  (Porter Decl. at ¶ 9.)  Mr. Preminger's resume is submitted as an

exhibit to Porter Decl.

The Court has sufficient information to appoint class counsel who will fairly and

adequately represent the interests of the Class, as required by Rule 23(g)(1)(B).

## <u>CONCLUSION</u>

For these reasons, Mr. Beane respectfully requests that his motion to certify a class be granted.

Respectfully submitted,

DATED:  Washington, DC
          This 15th day of February, 2008

**McTIGUE & PORTER LLP**

By: <u>/s/ Gregory Y. Porter</u>
Gregory Y. Porter (GP 9605)
5301 Wisconsin Avenue, NW
Suite 350
Washington, DC  20015
Tel:  (202) 364-6900
Fax: (202) 364-9960

David S. Preminger (DP 1057)
ROSEN PREMINGER & BLOOM LLP
708 Third Ave, Ste 1600
New York, NY 10017-4123
Tel:  (212) 682-1900
Fax: (212) 867-6878

*Attorneys for Plaintiffs*

24

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Plaintiff's Memorandum of Law in Support of Motion for Certification of Class of ERISA** Plans was filed electronically with the Court and served this same day via the Court's ECF notification system upon the following:

**David Steven Preminger**
Rosen Preminger & Bloom LLP
708 Third Avenue, Suite 1600
New York, NY 10017
212-422-1001
Fax: 212-363-4436
Email: dpreminger@rpblawny.com

**Dorothy Heyl**
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
(212)530-5000
Fax: (212)530-5219
Email: dheyl@milbank.com

**Paul Blankenstein**
**William J. Kilberg**
Gibson, Dunn and Crutcher (DC)
1050 Connecticut Ave. NW.,
Washington, DC 20008
(202)-955-8693
Fax: (202)-530-9532
Email: pblankenstein@gibsondunn.com
      wkilberg@gibsondunn.com

**Thomas A. Arena**
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
(212)-530-5828
Fax: (212)-822-5828
Email: tarena@milbank.com

February 15, 2008

David T. Bond
**McTigue & Porter LLP**