UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                       :

ALBERT T. BEANE, JR.,           :

         Plaintiff,        :

    v.                   :

THE BANK OF NEW YORK MELLON, BNY   :   07-cv-9444 (RMB)
CONVERGEX EXECUTION SOLUTIONS LLC  :
and CALLAN ASSOCIATES, INC.,     :

         Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# DEFENDANTS' JOINT MEMORANDUM OF LAW
# IN SUPPORT OF THEIR MOTION TO DISMISS AND
# IN OPPOSITION TO PLAINTIFF'S MOTION
# TO CERTIFY CLASS OF ERISA PLANS

Thomas A. Arena (TA-4613)
Dorothy Heyl (DH-1601)
MILBANK, TWEED, HADLEY
& McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Counsel for BNY Defendants*

William Kilberg (WK-0792)
Paul Blankenstein (PB-8583)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Callan Associates, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iv

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................. 5

    The Parties ................................................................................................ 5

    The Plan .................................................................................................... 6

    The Complaint .......................................................................................... 6

    The Sale of Alpha Assets ......................................................................... 9

    The Commission Recapture Agreements ................................................. 10

    The Proposed Class .................................................................................. 11

ARGUMENT ....................................................................................................... 13

    I.    THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT
        AGAINST ALL DEFENDANTS. ...................................................... 13

        A.    Standard Of Review ....................................................................... 15

        B.    Plaintiff Lacks Standing Under Article III .................................... 17

            1.    Plaintiff Has Failed To Allege That He Personally Has
                Sustained The Injury-In-Fact Necessary For Article III
                Standing. ........................................................................... 17

            2.    The Complaint Does Not Even Sufficiently Allege Injury
                To The Plan. ...................................................................... 22

        C.    Plaintiff's Claims Should Be Dismissed Because He Has Not
            Adequately Alleged Causation. ...................................................... 23

            1.    Plaintiff Does Not Allege Transaction Causation: That The
                Plan Would Not Have Retained BNY ConvergEx Had
                Callan Disclosed The Payment Arrangement ................................ 24

            2.    Plaintiff Has Not Sufficiently Alleged That Callan's
                Asserted Violations of ERISA Caused Any Losses To The
                Plan .................................................................................. 26

i

D.    Plaintiff's Section 502(a)(3) Claim Against The BNY Defendants Should Be Dismissed. ..................................................................27

    1.    Section 502(a)(3) Is Limited To Equitable Relief Against A Non-Fiduciary. ..............................................................................27

    2.    The Complaint Does Not Adequately Allege A Basis For Disgorgement Or Restitution Against The BNY Defendants ........29

II.    NO CLASS SHOULD BE CERTIFIED AS PLAINTIFF HAS NOT MET THE REQUIREMENTS OF RULE 23. ....................................................31

A.    Standards For Certification Of A Class Action. .........................................33

B.    In A Suit Based Upon ERISA Section 502(a)(2), Plaintiff May Not Represent Plans In Which He Is Not A Participant. ...................................34

C.    Plaintiff Has Not Satisfied The Criteria Of Rule 23(a) ............................37

    1.    Plaintiff Has Not Demonstrated That The Proposed Class Is So Numerous That Joinder Would Be Impractical. .......................37

    2.    Plaintiff Cannot Satisfy Commonality and Typicality Because Issues Of Fiduciary Status And Reliance Require Individualized Determinations. ....................................................41

        (a)    Plaintiff Cannot Establish Callan's Fiduciary Status With Respect To Other Plans Based On Its Contract With The Federal-Mogul Plan. .........................................43

        (b)    Plaintiff Cannot Provide Class-Wide Proof Of Reliance On Callan's Alleged Misrepresentations. ...........46

D.    The Putative Class Is Not Certifiable Under Any Subdivision Of Rule 23(b). ................................................................................................48

    1.    A Class Should Not Be Certified Under Rule 23(b)(1). ...............48

        (a)    Separate Lawsuits Will Not Result In Incompatible Standards Of Conduct For Defendants. .............................48

        (b)    Adjudication Of The Rights Of One ERISA Plan Would Not Be Dispositive Of The Rights Of Any Other ERISA Plan. .............................................................50

    2.    A Class Should Not Be Certified Under Rule 23(b)(2). ...............52

        (a)    The Monetary Relief Sought By Plaintiff Overwhelms His Requested Injunctive Relief ..................53

          (b)      Plaintiff's Requested Injunctive Relief Is Either Moot Or Not Appropriate For Class Action Resolution. ........................................................................55

    3.      A Class Should Not Be Certified Under Rule 23(b)(3). ...............57

          (a)      Individual Issues Predominate Over Common Issues. ...............................................................................58

          (b)      A Class Action Is Not Superior To Individual Lawsuits Brought By Each ERISA Plan...........................60

CONCLUSION .......................................................................................................63

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acosta v. Pacific Enters.*,
   950 F.2d 611 (9th Cir. 1991) ............................................... 35

*Akerman v. Oryx Commc'ns, Inc.*,
   609 F. Supp. 363 (S.D.N.Y. 1984)............................................... 35

*Allison v. Bank One-Denver*,
   289 F.3d 1223 (10th Cir. 2002) ............................................... 23

*Amara v. CIGNA Corp.*,
   No. 01 Civ. 2361, 2002 WL 31993224 (D. Conn. Dec. 20, 2002)........................................... 56

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................... 48, 57, 58, 61

*Amron v. Morgan Stanley Inv. Advisors, Inc.*,
   464 F.3d 338 (2d Cir. 2006)............................................... 27

*Andrews v. AT&T*,
   95 F.3d 1014 (11th Cir. 1996) ............................................... 59

*Arizonans for Official English v. Ariz.*,
   520 U.S. 43 (1997)............................................... 19

*Babcock v. Computer Assocs., Int'l, Inc.*,
   212 F.R.D. 126 (E.D.N.Y. 2003) ............................................... 62

*Barnes v. Am. Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998)............................................... 55, 57

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007)............................................... 15, 16, 22, 25, 27

*Blatt v. Marshall & Lassman*,
   812 F.2d 810 (2d Cir. 1987)............................................... 43, 44

*Bledsoe v. Emery Worldwide Airlines*,
   258 F. Supp. 2d 780 (S.D. Ohio 2003) ............................................... 55

*Bona v. Barasch*,
   No. 01 Civ. 2289 (MBM), 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003)............................................... 29

*Bouboulis v. Transp. Workers Union of Am.*,
   442 F.3d 55 (2d Cir. 2006)............................................... 43

*Cent. States, Se & Sw Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)............................................................................... 36, 41

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care L.L.C.*,
    433 F.3d 181 (2d Cir. 2005)............................................................... 17, 18, 19, 22

*Conley v. Gibson*,
    355 U.S. 41 (1957)........................................................................................... 16

*Conn. v. Physicians Health Servs. of Conn., Inc.*,
    287 F.3d 110 (2d Cir. 2002).......................................................................... 17, 34

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)................................................................................ 32

*Daigle v. Shell Oil Co.*,
    133 F.R.D. 600 (D. Colo. 1990) ....................................................................... 41

*De Jesus v. Sears, Roebuck & Co.*,
    87 F.3d 65 (2d Cir. 1996) ................................................................................. 15

*Dickerson v. Feldman*,
    426 F. Supp. 2d 130 (S.D.N.Y. 2006)................................................................ 17

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
    974 F.2d 270 (2d Cir. 1992)............................................................. 23, 24, 25, 26

*Dunnigan v. Metropolitan Life Ins.*,
    214 F.R.D. 128 (S.D.N.Y. 2003) ...................................................................... 62

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)..................................................................................... 23, 27

*Fallick v. Nationwide Mut. Life Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998) ............................................................................ 36

*Field Day, LLC v. County of Suffolk*,
    463 F.3d 167 (2d Cir. 2006).............................................................................. 15

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989).......................................................................................... 26

*Fisher v. J.P. Morgan Chase & Co.*,
    230 F.R.D. 370 (S.D.N.Y. 2005) ...................................................................... 35

*Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
    174 F.R.D. 332 (D.N.J. 1997)........................................................................... 50

*Geller v. County Line Auto Sales, Inc.*,
   86 F.3d 18 (2d Cir. 1996) ........................................................... 28, 29

*General Tel. Co. v. Falcon*,
   457 U.S. 147 (1982) ..................................................................... 33, 42

*Getty Petroleum Corp. v. Bartco Petroleum Corp.*,
   858 F.2d 103 (2d Cir. 1988) .............................................................. 36

*Glanton v. AdvancePCS, Inc.*,
   465 F.3d 1123 (9th Cir. 2006), *cert denied*, 128  S. Ct. 126 (2007) ................................... 19, 21

*Grandon v. Merrill Lynch & Co., Inc.*,
   No. 95 Civ. 10742 (SWK), 2003 WL 22118979 (S.D.N.Y. Sept. 13, 2003) .......................... 62

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ..................................................................... 27, 28

*Harley v. Minnesota Mining & Mfg.*,
   284 F.3d 901 (8th Cir. 2002) ............................................. 18, 19, 20, 59

*Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*,
   530 U.S. 238 (2000) ..................................................................... 29, 34

*Heerwagen v. Clear Channel Commc'ns.*,
   435 F.3d 219 (2d Cir. 2006) ............................................................. 34

*Horvath v. Keystone Health Plan E.*,
   *333* F.3d 450 (3d Cir. 2003) ....................................................... 19, 21

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999) ..................................................................... 6, 20

*In re "Agent Orange" Prod. Liab. Litig.*,
   100 F.R.D. 718 (E.D.N.Y. 1983), *aff'd in part and rev'd in part on other grounds*, *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) ........................................... 48

*In re American Med. Sys. Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ............................................................ 42

*In re CMS Energy ERISA Litig.*,
   225 F.R.D. 539 (E.D. Mich. 2004) ..................................................... 51

*In re Elec. Data Sys. Corp. "ERISA" Litig.*,
   224 F.R.D. 613 (E.D. Tex. 2004) ................................................... 46, 58

*In re Enron Corp. Sec. Deriv. & ERISA Litig.*,
   284 F. Supp. 2d 511 (S.D. Tex. 2003) ................................................. 28

*In re Global Crossing Secs. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................ 48, 50

*In re Ikon Office Solutions, Inc. Secs. Litig.*,
   191 F.R.D. 457 (E. D. Pa. 2000) ..................................................................... 50

*In re Marsh ERISA Litig.*,
   No. 04 Civ. 8157 (SWK), 2006 WL 3706169 (S.D.N.Y. Dec. 14, 2006) .............................. 29

*In re Mutual Funds Investment Litigation*,
   519 F. Supp. 2d 580 (D. Md. 2007) ................................................................. 35

*In re Sch. Asbestos Litig.*,
   789 F.2d 996 (3d Cir. 1986) ......................................................................... 53

*In re Simon II Litig.*,
   407 F.3d 125 (2d Cir. 2005) ......................................................................... 48

*In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*,
   280 F.3d 124 (2d Cir. 2001) ..................................................................... 53, 58

*In re WorldCom, Inc. ERISA Litig.*,
   No. 02 Civ. 4816 (DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ............................... 57

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007) ..................................................................... 16, 25

*ITPE Pension Fund v. Hall*,
   334 F.3d 1011 (11th Cir. 2003) ...................................................................... 45

*Kauffman v. Dreyfus Fund, Inc.*,
   434 F.2d 727 (3rd Cir. 1970) ..................................................................... 35, 36

*Kolar v. Rite Aid Corp.*,
   Civ. A. 01-1229, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003) .......................................... 51

*Kuper v. Iovenko*,
   66 F.3d 1447 (6th Cir. 1995) ......................................................................... 23

*LaFlamme v. Carpenters Local # 370 Pension Plan*,
   212 F.R.D. 448 (N.D.N.Y. 2003) ...................................................................... 57

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ..................................................................... 46, 54

*LaRue v. DeWolff, Boberg & Assocs.*,
   128 S. Ct. 1020 (2008) ........................................................................... 20, 37

*Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*,
216 F.3d 577 (7th Cir. 2000) ................................................................. 53, 57

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005)........................................................... 23, 24, 26

*Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*,
211 F.R.D. 228 (S.D.N.Y. 2002) ....................................................... 62

*Lively v. Dynegy, Inc.*,
No. 05-CV-00063, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007) ................ 52

*Los Angeles v. Lyons*,
461 U.S. 95 (1983)............................................................................. 19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................... 17

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985)........................................................................... 37

*McMorgan & Co. v. First Cal. Mortgage Co.*,
916 F. Supp. 966 (N.D. Cal. 1995) .................................................... 44

*Md. Highways Contractors Ass'n, Inc. v. Maryland*,
933 F.2d 1246 (4th Cir. 1991) ........................................................... 56

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993).......................................................... 27, 28, 29, 43

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
471 F.3d 24 (2d Cir. 2006)................................................................. 34

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002)......................................... 46, 47, 58, 62

*Movitz v. First Nat'l Bank of Chicago*,
148 F.3d 760 (7th Cir. 1998) ............................................................. 23

*Nelson v. IPALCO Enters., Inc.*,
No. IPO2-477CHK, 2003 WL 23101792 (S.D. Ind. Sept. 30, 2003) ....... 52

*New Orleans ILA Pensions Ass'n v. Board of Trustees of New Orleans Empl'rs Int'l Ass'n AFL-CIO Pension Fund*,
Civ. A. No. 07-6349, 2008 WL 215654 (E.D. La. Jan. 24, 2008) ........... 21

*New York District Council of Carpenters Pension Plan v. Savasta*,
No. 99 CV 11362 (GBD), 2005 WL 22872 (S.D.N.Y. Jan. 4, 2005) ....... 30

*New York State Teamsters Council Health & Hosp. Fund v. DePerno*,
  18 F.3d 179 (2d Cir. 1994).......................................................................... 59

*Novella v. Westchester County, N.Y. Carpenters' Pension Fund*,
  02 Civ. 2192 (MBM), 2004 U.S. Dist. LEXIS 26149 (S.D.N.Y. Dec. 29, 2004) ................... 19

*Nowak v. Ironworkers Local 6 Pension Fund*,
  81 F.3d 1182 (2d Cir. 1996)........................................................................ 15

*O'Neil v. Gencorp., Inc.*,
  No. 88-8498, 1991 WL 33316 (S.D.N.Y. Mar. 1, 1991)........................................... 62

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)................................................................................ 31

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)................................................................................ 50

*Parker v. Time Warner Entm't Co.*,
  331 F.3d 13 (2d Cir. 2003)......................................................................... 55

*Peregrine Myanmar Ltd. v. Segal*,
  89 F.3d 41 (2d Cir. 1996) .......................................................................... 31

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
  Docket No. 06-4908-cv, 2007 U.S. App. LEXIS 24728 (2d Cir. Oct. 23, 2007)............... 16, 22

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
  226 F.R.D. 456 (S.D.N.Y. 2005) .............................................................. 37, 40, 52

*Raines v. Byrd*,
  521 U.S. 811 (1997)................................................................................ 18

*Rankin v. Rots*,
  220 F.R.D. 511 (E.D. Mich. 2004) ................................................................. 51

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)........................................................................ 37

*Robinson v. Metro-N. Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001)................................................................ 41, 45, 52, 53

*Rothwell v. Chubb Life Ins. Co. of Am.*,
  191 F.R.D. 25 (D.N.H. 1998) ...................................................................... 59

*Saey v. Xerox Corp.*,
  31 F. Supp. 2d 692 (E.D. Mo. 1998)................................................................ 44

*Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.*,
   319 F.3d 205 (5th Cir. 2003) ........................................................... 58

*Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*,
   869 F. Supp. 278 (D.N.J. 1994) ..................................................... 44

*Sirota v. Solitron Devices, Inc.*,
   673 F.2d 566 (2d Cir. 1982)........................................................... 33

*Siskind v. Sperry Retirement Program*,
   47 F.3d 498 (2d Cir. 1995)............................................................. 43

*Spann v. AOL Time Warner*,
   219 F.R.D. 307 (S.D.N.Y. 2003) ......................................... 49, 57, 61

*Sprague v. GMC*,
   133 F.3d 388 (6th Cir. 1998) ..................................... 41, 42, 43, 46, 47

*State Employees Bargaining Agent Coalition v. Rowland*,
   494 F.3d 71 (2d Cir. 2007)............................................................. 15

*Tex. v. Cobb*,
   532 U.S. 162 (2001)....................................................................... 36

*Thomas v. Aris Corp. of Am.*,
   219 F.R.D. 338 (M.D. Pa. 2003)..................................................... 46

*Tootle v. Arinc, Inc.*,
   222 F.R.D. 88 (D. Md. 2004)......................................................... 45

*Trautz v. Weisman*,
   846 F. Supp. 1160 (S.D.N.Y. 1994) ............................................... 51

*Trustees of Laborers' Local 72 Pension Fund v. Nationwide Life Ins. Co.*,
   *783* F. Supp. 899 (D.N.J. 1992) ................................................... 44

*Varity Corp v. Howe*,
   516 U.S. 489 (1996)................................................................. 26, 34

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
   529 U.S. 765 (2000)................................................................. 17, 18

*Warth v. Seldin*,
   422 U.S. 490 (1975)....................................................................... 18

*Westman v. Textron, Inc.*,
   151 F.R.D. 229 (D. Conn. 1993)..................................................... 52

*Wiseman v. First Citizens Bank & Trust Co.*,
  215 F.R.D. 507 (W.D.N.C. 2003) ...................................................... 42

*Wright v. Oregon Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ......................................................... 23

*Wsol v. Fiduciary Mgmt. Assocs., Inc.*,
  266 F.3d 654 (7th Cir. 2001) ........................................................... 30

*Yak v. Bank Brussels Lambert*,
  252 F.3d 127 (2d Cir. 2001) .............................................................. 7

*Zucker v. AIM Advisors, Inc.*,
  371 F. Supp. 2d 845 (S.D. Tex. 2005) ............................................ 35

**Statutes**

15 U.S.C. § 80a-35(b) ....................................................................... 35

29 U.S.C. § 1001, *et seq.* .................................................................... 1

29 U.S.C. § 1002(2)(A) ........................................................................ 6

29 U.S.C. § 1002(21)(A) ..................................................................... 44

29 U.S.C. § 1002(35) ...................................................................... 6, 20

29 U.S.C. § 1102(a)(2) ....................................................................... 43

29 U.S.C. § 1104 ............................................................................... 2, 8

29 U.S.C. § 1106 ............................................................................... 2, 8

29 U.S.C. § 1108 ............................................................................... 59

29 U.S.C. § 1108(b)(1) ....................................................................... 59

29 U.S.C. § 1108(b)(2) ....................................................................... 59

29 U.S.C. § 1109(a) ...................................................................... 14, 23

29 U.S.C. § 1132(a) ............................................................................ 17

29 U.S.C. § 1132(a)(2) ..................................................... 3, 34, 35, 36, 51

29 U.S.C. § 1132(a)(3) ........................................................... 3, 8, 27, 50

Restatement (Second) of Trusts § 212 cmt. e ................................... 26

**Other Authorities**

1 Herbert B. Newberg, *Newberg on Class Actions:  A Manual for Group Litigation at Federal and State Levels* § 3.06 (2d ed. 1985) ...................................................................................... 37

1 Herbert B. Newberg, *Newberg on Class Actions:  A Manual for Group Litigation at Federal and State Levels* § 3:6 at 250-52 (4th ed. 2002) ...................................................................... 40

7A Charles Alan Wright et al., Federal Practice and Procedure § 1775 (3d ed. 2005) ................ 55

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................... 2, 14

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 25

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 15

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 7, 15

Fed. R. Civ. P. 23 ................................................................................ 3, 32, 34, 35, 36, 57

Fed. R. Civ. P. 23(a) ............................................................... 1, 3, 32, 36, 42, 47

Fed. R. Civ. P. 23(a)(1) ................................................................................................... 37, 40

Fed. R. Civ. P. 23(a)(2) ......................................................................................................... 41

Fed. R. Civ. P. 23(a)(3) ......................................................................................................... 41

Fed. R. Civ. P. 23(b) ............................................................................................ 1, 4, 33, 47

Fed. R. Civ. P. 23(b)(1) .......................................................................................... 47, 51, 52, 56

Fed. R. Civ. P. 23(b)(1)(A) .............................................................................. 4, 33, 47, 48, 50

Fed. R. Civ. P. 23(b)(1)(B) ............................................................................... 4, 33, 48, 50

Fed. R. Civ. P. 23(b)(2) .......................................................................... 4, 33, 52, 54, 55, 56, 57

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 5, 33, 57, 61

Fed. R. Civ. P. 65(d) .............................................................................................................. 31

**Constitutional Provisions**

U.S. Const., art. III ...................................................................... 1, 2, 17, 18, 19, 21, 22

Defendants Bank of New York Mellon ("BNY"), BNY ConvergEx Execution Solutions LLC ("BNY ConvergEx") (collectively, the "BNY Defendants"), and Callan Associates Inc. ("Callan") have each moved to dismiss the complaint of the plaintiff Albert T. Beane, Jr., because (1) the plaintiff lacks standing to sue under Article III of the United States Constitution, and (2) he has not adequately pleaded a cause of action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against any of the defendants. The defendants also oppose plaintiff's motion for class certification because plaintiff has failed to satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b). Pursuant to this Court's direction at the status conference on December 18, 2007, defendants jointly submit this combined memorandum of law in support of their motion to dismiss and in support of their opposition to plaintiff's motion for class certification.

## PRELIMINARY STATEMENT

Plaintiff, a participant in the Federal-Mogul Corporation Pension Plan (the "Federal-Mogul plan" or the "Plan"), purports to bring claims under ERISA on behalf of a putative class of pension plans against Callan, an investment consultant, and the "BNY Defendants. The complaint arises out of a 1998 transaction in which BNY ConvergEx purchased the assets of Alpha Management, Inc. ("Alpha"), a broker-dealer affiliated with Callan. In a separate agreement between the BNY Defendants and Callan, the BNY Defendants agreed to make annual payments to Callan from 1998 through 2006. A portion of the annual payments—approximately 8 percent—would become payable in the event BNY ConvergEx generated brokerage commissions above a minimum threshold from certain pension plans that had been clients of Callan or Alpha prior to the sale. Plaintiff claims that Callan, aided and abetted by the BNY Defendants, failed adequately to disclose the contingent nature of a minor portion of the

BNY Defendants' payment obligations to Callan, in violation of ERISA section 404, and that the payments constituted prohibited transactions, in violation of ERISA section 406.

Plaintiff's claims should be dismissed with prejudice and without leave to replead.[1]

*First*, plaintiff does not have Article III standing to bring this lawsuit. Plaintiff has failed to allege that he suffered *any* personal injury on account of the defendants' alleged conduct. Plaintiff does not allege that he has not received the benefits to which he is entitled under the Plan or that any losses suffered by the Plan will impair his right to receive the promised level of benefits in the future. Indeed, plaintiff makes plain that he is not suing to redress any personal injury, but affirmatively alleges that the relief he seeks "is for the benefit of the Pension Plan." D.E. 1, Complaint ("Compl.") ¶ 18. Every federal court of appeals to consider this precise issue—including the Second Circuit—has determined that a plan participant cannot in these circumstances sue under ERISA without showing individualized harm, sufficient to satisfy Article III's injury-in-fact requirement.

*Second*, plaintiff has failed adequately to allege the requisite causation to sustain a claim under ERISA. The complaint does not adequately plead facts sufficient to establish "transaction causation" or "loss causation" required by ERISA with the specificity required by Rule 8 of the Federal Rules of Civil Procedure. Missing are any allegations of "transaction causation;" i.e., that "but for" Callan's alleged failure to disclose the contingent aspect of part of the payment it was receiving from BNY ConvergEx, the Plan would have selected a different broker. Similarly,

---

[1] Plaintiff declined this Court's invitation at the preliminary status conference held on December 18, 2007, to amend his complaint to respond to the defendants' concerns, previously expressed in a letter to this Court, about plaintiff's standing and the sufficiency of his complaint under ERISA. *See* Ex. A, Transcript of Oral Argument at 2:7-13 (Dec. 18, 2007).

plaintiff also does not adequately assert a direct link between any losses suffered by the Plan and Callan's alleged breach, which would be necessary to show the required "loss causation." Plaintiff nowhere alleges that BNY ConvergEx overcharged the Plan for its services or that BNY ConvergEx provided inadequate brokerage services.

*Third*, plaintiff has failed adequately to allege any basis for relief against the BNY Defendants. Because, as plaintiff acknowledges, the BNY Defendants are not plan fiduciaries, they are not subject to suit under ERISA section 502(a)(2). Instead, plaintiff purports to assert a claim against the BNY Defendants under ERISA section 502(a)(3). That provision restricts a party's remedies against non-fiduciaries to "other appropriate equitable relief." Here, plaintiff does not allege that the commissions received and retained by the BNY Defendants were above-market or excessive. Because the complaint has failed to allege that the BNY Defendants were unjustly enriched by virtue of their receipt of commissions for which they provided valuable brokerage services or that any funds currently in the possession of the BNY Defendants belong to the Plan, there can be no basis for the remedies of equitable restitution or disgorgement.

Even assuming plaintiff can establish Article III standing and survive defendants' motion to dismiss, the Court should deny his motion to certify a class of "ERISA pension plans, and their respective participants and beneficiaries, who retained [Callan] for pension consulting services and who used [BNY ConvergEx], directly or indirectly, for brokerage services from October 1998 through 2006."[2]

---

[2]  D.E. 24, Plaintiff's Memorandum of Law in Support of Motion to Certify Class of ERISA Plans ("Pl.'s Mem.") at 1.

As a threshold matter, plaintiff's lack of standing disqualifies him as the representative of any class and, under ERISA, plaintiff cannot represent any plans to which he does not belong, let alone the participants in those plans to whom he is a stranger.

On the Rule 23 front, plaintiff cannot satisfy the requirements of Rule 23(a). He has failed to demonstrate that the members of the putative class are so numerous that joinder is impractical. Plaintiff seeks to represent a class of ERISA pension plans that retained Callan for pension consulting services and that used BNY ConvergEx for brokerage services from October 1998 through 2006. But, as demonstrated below, the number of such ERISA plans that have any possible basis for contending that they relied on any alleged misrepresentation by Callan falls far short of the forty members that plaintiff concedes is the minimum needed to establish numerosity. Plaintiff also has failed to satisfy the commonality and typicality criteria of Rule 23(a) because the relationship between the defendants and plaintiff's plan is unique among the ERISA plans that plaintiff seeks to combine as a class. Callan's contract with the Plan was the only one in which Callan acted as a named fiduciary pursuant to ERISA. In addition, the Plan was only one of three ERISA plans for which Callan performed brokerage provider searches during the class period. In addition, as plaintiff's claim is founded on alleged misrepresentations, he would need to show that each class member relied upon the alleged misrepresentation—an individualized determination that robs the case of the requisite commonality and typicality.

Plaintiff also fails to meet the requirements of Rule 23(b). Plaintiff's suit does not meet the criteria for certification under Rule 23(b)(1)(A) because he principally seeks money damages and the individualized issues that the Court would need to evaluate, on a plan-by-plan basis, eliminate the risk that separate judgments in individual actions would create incompatible

standards of conduct for the defendants.  Plaintiff's suit similarly does not meet the narrow

historical test for certification under Rule 23(b)(1)(B).  Plaintiff cannot proceed under Rule

23(b)(2) because he does not primarily seek injunctive relief, and the limited injunctive relief he

does seek has been rendered moot as the Federal-Mogul plan no longer does business with either

Callan or BNY ConvergEx.  Finally, plaintiff cannot proceed under Rule 23(b)(3) because

common factual issues do not predominate over individual ones.  Each plan's ERISA claims

would turn on evidence unique to that plan, and the individualized issues that would result—such

as whether Callan was a fiduciary to each plan; whether each plan relied on any alleged

misrepresentations; and whether the BNY Defendants received reasonable commissions from

each plan in exchange for brokerage services—would overwhelm the limited common issues.

## BACKGROUND[3]

**The Parties**

Callan is an investment consulting firm that is incorporated in California, and has

maintained its principal place of business there since 1973.  Compl. ¶ 17.  According to the

complaint, Callan provides consulting services to over 270 institutional clients with assets in

excess of $900 billion.  *Id.*  Callan provides its various consulting services to investment

managers, outside consulting firms, and public and private pension plan sponsors, including the

Federal-Mogul plan.  *Id.* ¶¶ 2, 17.  Plaintiff, a participant in the Plan, *id*. ¶ 1, asserts that Callan

was a fiduciary of the Plan under ERISA.  *Id.* ¶ 17.

---

[3]  The facts set forth in this section are based on the allegations in the Class Action Complaint
(the "complaint"), plaintiff's discovery responses, and the declarations of Ann C. DeLuce,
Executive Vice President of Callan Associates, Christopher M. Springer, the Chief Financial
Officer of BNY ConvergEx, and Dorothy D. Schroth, Senior Vice President of LJR
Recapture Services, a division of BNY ConvergEx, offered in support of the defendants'
opposition to plaintiff's motion for class certification.

Prior to October 1998, Callan also offered brokerage services to its clients through its affiliated broker dealer, Alpha. *Id.* ¶ 3. In October 1998, Alpha was sold to BNY ESI & Co., Inc., then a subsidiary of the Bank of New York (now Bank of New York Mellon). *Id.* BNY is a national bank based in New York. *Id.* ¶ 15. BNY ESI & Co., Inc., through a series of changes in name and corporate form, is now called BNY ConvergEx Execution Solutions LLC. *Id.* ¶ 16. BNY ConvergEx, in turn, is a member company of BNY ConvergEx Group, LLC, which is presently an affiliate of BNY. *Id.* Plaintiff does not allege that the BNY Defendants were fiduciaries to the Plan. *See, e.g.*, *id.* ¶¶ 30-32.

**The Plan**

The complaint describes the Plan as an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). Compl. ¶ 18. In a defined benefit plan, the participants are entitled upon retirement to receive certain specified plan benefits. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). The sponsor of a defined benefit plan is obligated to provide participants with the promised benefits even if the plan's investment performance is not sufficient to pay the promised level of benefits. *See id.*

**The Complaint**

At the time of the sale of Alpha, Callan entered into a Services Agreement with BNY ConvergEx, providing that BNY ConvergEx would pay a specified amount to Callan each year for the next eight years. Compl. ¶ 4. Plaintiff alleges that a portion of the amount (eight percent) that BNY ConvergEx agreed to pay Callan on an annual basis was contingent on BNY ConvergEx generating a certain minimum amount of commissions from Callan clients. *Id.* ¶ 4. Plaintiff further alleges that Callan failed to properly disclose the nature of its contingent-fee arrangement with BNY ConvergEx to the Plan. *Id.* ¶ 6. In particular, plaintiff alleges that

Callan misrepresented the nature of its agreement with BNY ConvergEx in the registration statements it filed with the Securities and Exchange Commission ("SEC") by stating that "[a]ccording to the terms of the transaction, BNY [ConvergEx] makes periodic fixed payments to Callan each year." *Id.* ¶ 39.

In that regard, the complaint further alleges that the SEC investigated Callan's arrangement with the BNY Defendants and entered a cease-and-desist order against Callan, on September 19, 2007, based on the disclosures in Callan's Form ADV Part II and certain client communications.[4] Compl. ¶ 41. According to the SEC's cease-and-desist order, between 1999 and 2005, Callan's Forms ADV Part II stated that the Services Agreement obligated Callan to inform its plan sponsors that BNY was its preferred broker, and that "according to the terms of the transaction, BNY [Brokerage] makes periodic *fixed* payments to Callan each year." D.E. 24, Ex. 3, SEC Order at 3 (emphasis in original).[5] In the SEC's view, the payments made by BNY ConvergEx were not fixed as they "were dependent upon the continuation of BNY [ConvergEx] receiving from Callan clients gross brokerage commissions exceeding the minimum threshold." *Id.* at 3. Significantly, the SEC found that "Callan had routinely satisfied the commission threshold since selling [] Alpha to BNY." *Id.* at 3.[6] Neither BNY nor BNY ConvergEx was

---

[4] A Form ADV is a registration statement that certain investment advisers are required to file with the SEC. It has two parts. Part I contains information about the adviser's education, business, and disciplinary history within the last 10 years. Part II includes information on an adviser's services, fees, and investment strategies.

[5] On a motion to dismiss under Rule 12(b)(6), the Court may consider documents referred to in the complaint, even if not attached thereto. *See, e.g., Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001).

[6] Departing from the restrained language of the SEC's cease-and-desist order, plaintiff makes the unfounded allegation that "Callan repeatedly recommended BNY [ConvergEx] to its pension plan clients because Callan received kick-backs from BNY Defendants for steering

[Footnote continued on next page]

named in the SEC's cease-and-desist order, and the SEC did not make any findings that either entity violated any federal laws or regulations.

Callan amended its ADV in September 2005 to provide more detail about its relationship with BNY and BNY ConvergEx. Ex. B, DeLuce Declaration ("DeLuce Decl.") ¶ 12. In December 2005, Callan emailed its then current clients describing its compensation arrangement with BNY ConvergEx. DeLuce Decl. ¶ 12.

The complaint asserts two causes of action against Callan: first, that Callan caused the Plan to enter into ERISA-prohibited transactions with BNY ConvergEx, 29 U.S.C. § 1106, and second, that Callan breached its fiduciary duties to the Plan by causing the Plan to execute such transactions, 29 U.S.C. § 1104. Plaintiff seeks restitution and disgorgement from Callan of any fees it received from the Pension Plan and other plans to which Callan provided its services and who also used BNY ConvergEx as their broker. *See* Compl. ¶¶ 71, 77.

While recognizing that the BNY Defendants are not fiduciaries to the Pension Plan, plaintiff nevertheless seeks to hold the BNY Defendants liable as parties-in-interest pursuant to 29 U.S.C. § 1132(a)(3). The complaint alleges that the BNY Defendants "knowingly participated in Callan's fiduciary breaches and earned substantial commissions from Callan clients that BNY Defendants shared with Callan." *Id.* ¶ 8. The complaint, however, does not

---

[Footnote continued from previous page]

clients to BNY [ConvergEx]." Compl. ¶ 5. The SEC's order, however, said nothing of the kind. The SEC's order explained that the 1998 Services Agreement required Callan (1) to inform its pension plan clients that, should the clients elect to pay for Callan's services through "directed brokerage," BNY ConvergEx was its preferred broker, and (2) to inform the pension plans' investment advisers that, should their clients elect to pay for Callan's services with "soft dollar credits," BNY ConvergEx was its "exclusive broker." D.E. 24, Ex. 3, SEC Order at 2-3. The SEC did not find anything improper with respect to the financial arrangements in and of themselves between BNY ConvergEx and Callan. *See id.*

allege that the BNY Defendants reviewed or participated in drafting any of Callan's Forms ADV Part II filed with the SEC, Compl. ¶¶ 38-39, or that the BNY Defendants had any affirmative obligation to disclose the terms of its purchase of Alpha assets. The complaint also does not allege that the BNY Defendants failed to provide brokerage services to the Plan in exchange for the commission payments they received or that the brokerage services the BNY Defendants rendered were in any way deficient. The complaint requests that the BNY Defendants be ordered to "disgorge" unspecified brokerage commissions and the "profits earned thereon." *Id.* ¶ 83.

The prayer for relief also seeks an order of "equitable restitution" and "other appropriate equitable monetary relief against Defendants." Compl. Part VIII, at ¶ 7. Finally, plaintiff seeks various forms of declaratory and injunctive relief against all defendants, including an accounting of commissions earned in connection with Plan transactions, the permanent removal of the defendants from any position of trust with respect to the Plan, disclosure of the "true nature" of the defendants' Service Agreement, and a permanent injunction against future ERISA violations. *See id.* Part VIII, at ¶ 8.

**The Sale of Alpha Assets**

In November 1998, BNY ConvergEx acquired various Alpha pension plan contracts, which were assigned to BNY ConvergEx as part of the acquisition. Pursuant to the Services Agreement, BNY ConvergEx agreed to pay Callan a certain specified dollar amount (the "Specified Amount") each year from 1998 through 2006. *See* Ex. C, Springer Declaration ("Springer Decl.") ¶¶ 5-6. Only eight percent of the Specified Amount was contingent upon Callan's clients paying a target amount of commissions to BNY ConvergEx. The remainder of the Specified Amount was not. *See id.* For each year between 1998 and 2006, BNY ConvergEx directed that the eight percent payment be made to Callan. Springer Decl. ¶¶ 7-9.

Starting in November 2000, after the second year of the Alpha acquisition, BNY ConvergEx did not perform the computation required to determine whether its gross commissions exceeded the threshold for the rest of the contract period. BNY ConvergEx understood, without needing to perform the computation, that its gross commissions substantially surpassed the threshold; for these years, BNY ConvergEx did not question its obligation to make the 8 percent annual payment. Rather, BNY ConvergEx "treated the payments as fixed." DeLuce Decl. ¶ 11; *see also* Springer Decl. ¶ 8. On January 9, 2007, Callan and BNY ConvergEx terminated the Services Agreement by mutual consent. Springer Decl. ¶ 10.

**The Commission Recapture Agreements**

The Alpha contracts assigned to BNY ConvergEx as part of the Alpha transaction were "commission recapture" contracts. *See, e.g.*, Ex. D, Schroth Declaration ("Schroth Decl.") ¶ 8, Exs. G & H. Commission recapture is a form of institutional discount brokerage pursuant to which the investment managers of a plan can arrange to have transactions executed by a specified broker-dealer, which then rebates to the plan an agreed-upon portion of the commission, either as cash or as payment for services. *Id.* ¶ 4. Commission recapture contracts are separately negotiated with each plan, and there is often substantial variation in their financial terms. *Id.* ¶¶ 4-5; Exs. A-C. Commission recapture agreements typically provide that BNY ConvergEx will provide each client with regular documentation (by written confirmation or monthly statement) of the credited (or rebated) amount of commission recapture allocated to that client. *Id.* ¶ 13. Thus, each plan knows the amount of commissions it is paying BNY ConvergEx and the amount of commission recapture rebates it is receiving.

Many commission recapture agreements specify that the pension plans will direct their investment managers to effect transactions involving plan assets with brokers, such as BNY ConvergEx, consistent with principles of "best execution." *Id.* at ¶¶ 6-7; Exs. D-F. The term

"best execution" refers to the broker's obligation to achieve the most favorable terms for a transaction that are reasonably available. *Id.* ¶ 6. Several of the pension plans that were clients of BNY ConvergEx and Callan, including the Federal-Mogul plan, requested that their investment managers use BNY ConvergEx to execute some or all of their trades only if such transactions could be executed on a "competitive, best execution basis." *Id.*. ¶¶ 6-7. Thus, the Federal-Mogul plan did not require its outside investment manager to place all of the Plan's securities transactions with BNY ConvergEx. *Id.* Ex. F. Instead, the Plan instructed its outside investment manager "to strive for 'best price and best execution'" and to place trades with BNY ConvergEx "only when, in your opinion, you can achieve the objective of best price and best execution." *Id.*

**The Proposed Class**

Plaintiff seeks to represent not merely the Plan and its participants, but also a putative class of "ERISA pension plans, and their respective participants and beneficiaries, who retained [Callan] for pension consulting services and who used [BNY ConvergEx], directly or indirectly, for brokerage services from October 1998 through 2006 (the "Class Period")." Pl.'s Mem. at 1.

During the putative Class Period, Callan had 138 consulting clients that were ERISA-covered plans. DeLuce Decl. ¶ 4. Of those 138 consulting clients, 75 entities were also clients of the BNY Defendants. Schroth Decl. ¶ 9. Of these 75 entities, a total of 55 plans were clients of Alpha prior to BNY's acquisition of Alpha's assets in November 1998. Schroth Decl. ¶ 10. Of the remaining 20 entities, at least four such plans became clients of BNY ConvergEx as a result of BNY's acquisition of a commission recapture firm named Lynch, Jones & Ryan, Inc. ("LJR") in or about July 2005. Schroth Decl. ¶ 10.

With regard to the common clients, during the class period, Callan was a "named fiduciary" *only* in the contract in effect with the Federal-Mogul plan from November 1998 to

June 2001.  DeLuce Decl. ¶ 5.[7]  In no other contract operative during the putative class period did Callan accept the status as a named fiduciary under ERISA.  *Id.*  Of the remaining 74 common clients of Callan and BNY ConvergEx, Callan agreed in one contract to abide by the fiduciary standards set out in ERISA, without acknowledging it was an ERISA fiduciary.  *Id.* ¶ 6. In four contracts with common clients, Callan agreed that it was a fiduciary with respect to the services it provided without specific reference to ERISA or any other statute.  *Id.*  No other contract with a common client refers to fiduciary status.  *Id.* ¶ 7.  Indeed, in Callan's standard form contract during the class period, the plan sponsor acknowledged that it would "retain and exercise all decision-making authority with respect to the management and administration of the retirement plan(s) . . . and investments relating thereto."  *Id.* ¶ 7.[8]

On some limited occasions, Callan performed searches for brokerage services providers at the request of its clients.  In July 2000, Callan conducted a search on behalf of the Federal-Mogul plan for securities brokers who could provide a commission recapture program.  From among the qualified candidates identified, Callan, in its role as named fiduciary,  recommended that the Plan retain BNY ConvergEx as its commission recapture broker.  Compl. ¶¶ 24-25;

---

[7]  After the termination of that contract, Callan entered into a second contract with Federal-Mogul dated June 1, 2001.  DeLuce Decl. ¶ 8.  Unlike the previous contract, Callan did not accept fiduciary status in the contract.  Section 1 of that contract states:  "During the performance of such [consulting] services by Callan, [Federal-Mogul's] Retirement Programs Committee will retain and exercise all decision-making authority and responsibility with respect to all matters."  DeLuce Decl. Ex. H.  Section 9 of that contract states: "[Federal-Mogul] acknowledges and agrees (i) that Callan has no responsibility to manage or in any way direct the investment of any assets whose management is the subject of Callan's consulting services under this agreement . . ."  *Id.*

[8]  Indeed, of the four contracts with common clients that contain a reference to Callan's fiduciary status, two of them also include the above language reserving all decision-making authority to the plan sponsor.  *See* DeLuce Decl. Exs. C & D.

DeLuce Decl. ¶ 9. The Plan fiduciaries followed Callan's recommendation and selected BNY ConvergEx. DeLuce Decl. ¶ 9. During the putative class period, Callan conducted only one other search that resulted in Callan recommending that the client select a particular broker, and that was again on behalf of the Federal-Mogul plan. In 1999, Callan recommended that the Plan retain BNY ConvergEx in order to provide transition management services. DeLuce Decl. ¶ 9.

On two other occasions during the putative class period, Callan conducted a search for a brokerage service provider on behalf of an ERISA client. In neither case did Callan recommend that the ERISA client select a particular broker. In 2004, Fluor Corporation engaged Callan to review brokers that had responded to a Request for Proposal regarding transition management services. DeLuce Decl. ¶ 10(a). Although BNY Global Transition Management, a subsidiary of BNY, was one of the companies that responded to the RFP, Callan provided a somewhat negative assessment of the company in its proposal based upon BNY's weak response to the RFP. *Id.* Fluor did not select BNY Global Transition Management. *Id.*

In 2006, Deluxe Corporation chose BNY ConvergEx to provide transition management services after Callan had evaluated three finalists who responded to a Request for Proposal. *Id.* ¶ 10(b). Deluxe selected BNY ConvergEx after Callan had amended its ADV, and had emailed its clients to provide more detail about its compensation arrangement, including its contingent aspect, with BNY. *Id.* ¶¶ 10(b), 12.

## ARGUMENT

## I.    THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT AGAINST ALL DEFENDANTS.

Plaintiff, a participant in his employer's defined-benefit pension plan, has sued Callan, as a purported fiduciary of that plan, and the BNY Defendants, as alleged parties-in-interest, for claimed violations of ERISA. To maintain his suit, plaintiff—like all other plaintiffs who invoke

this Court's jurisdiction—must establish the core elements of constitutional standing: (1) a concrete and particularized injury (2) fairly traceable to the defendant's actions (3) that is likely to be redressed by a favorable decision. Plaintiff, however, has failed to allege that he suffered *any* personal injury on account of Callan's alleged conduct. Indeed, plaintiff is not suing to redress any personal injury, as the relief he seeks "is for the benefit of the Pension Plan." Compl. ¶ 18. Every federal court of appeals to consider this precise issue—including the Second Circuit—has determined that a plan participant cannot in these circumstances sue under ERISA without showing individualized harm. Therefore, under bedrock standing principles, plaintiff's action must be dismissed.

Plaintiff has also failed to adequately plead the necessary elements of causation to maintain an action under Section 409(a) of ERISA, 29 U.S.C. § 1109(a). The Second Circuit requires ERISA plaintiffs to establish both "transaction causation," that is, reliance by the plan on the alleged misrepresentations made by the plan fiduciary, as well as "loss causation," that is, a direct link between any loss suffered by the plan and the defendant's alleged breach. Plaintiff's complaint, however, does not plead either "transaction causation" or "loss causation" with the specificity required by Rule 8 of the Federal Rules of Civil Procedure. Instead, plaintiff makes only bald assertions, unsupported by any factual allegations, that Callan's alleged actions caused losses to the pension plan. *See, e.g.*, Compl. ¶ 76 ("[a]s a direct and proximate result of these breaches of duty, the Pension Plan suffered losses"). Under well-established pleading standards recently reaffirmed by the Supreme Court, a complaint, like the one here, will not survive a motion to dismiss where its allegations are no more than conclusory recitations of the statutory elements.

Finally, plaintiff has failed adequately to allege that the BNY Defendants were unjustly enriched by their receipt of commissions for the brokerage services they provided to the Plan or that the BNY Defendants currently hold any money or property belonging to the Plan. Accordingly, there can be no basis for the remedy of equitable restitution or disgorgement against the BNY Defendants.

### A.    Standard Of Review.

Defendants have moved to dismiss plaintiff's complaint under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), defendants challenge plaintiff's standing to sue under Article III of the Constitution. Under Rule 12(b)(6), defendants challenge the sufficiency of the allegations in plaintiff's complaint with respect to the causation necessary in an ERISA cause of action, and with respect to the remedies of disgorgement and equitable restitution against the BNY Defendants.

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) addresses whether a court "lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). Plaintiff has the "burden of establishing that he has suffered a concrete injury or is on the verge of suffering one." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006). On a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the Court may consider evidence outside the complaint, including affidavits and discovery responses. *See, e.g.*, *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

A Rule 12(b)(6) motion, by contrast, tests the legal sufficiency of a complaint. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996). Therefore, the Court must accept the well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *See id.* However, to survive a motion to dismiss, "a plaintiff's obligation to provide the

15

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted and alteration in original). Rather, as the Supreme Court explained in *Twombly*, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

The Second Circuit has described *Twombly* as requiring that "a complaint . . . allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, Docket No. 06-4908-cv, 2007 U.S. App. LEXIS 24728, at *7 (2d Cir. Oct. 23, 2007). In other words, the *Twombly* standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

A plaintiff can no longer rest on the old *Conley v. Gibson* rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). As the Supreme Court put it in *Twombly*, the "no set of facts" of standard "has earned its retirement," and is "best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969.

B.    **Plaintiff Lacks Standing Under Article III.**

1.    *Plaintiff Has Failed To Allege That He Personally Has Sustained The Injury-In-Fact Necessary For Article III Standing.*

A plaintiff cannot sue under ERISA unless he has standing under both ERISA itself and under Article III of the Constitution. *See* U.S. Const. art. III; *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care L.L.C.*, 433 F.3d 181, 201 (2d Cir. 2005); *Dickerson v. Feldman,* 426 F. Supp. 2d 130, 134 (S.D.N.Y. 2006) ("Even where statutory standing under ERISA is satisfied, the elements of Article III standing must still be met."). Under ERISA, a plaintiff may establish statutory standing by demonstrating that he falls within one of the enumerated categories of parties—a participant, beneficiary, fiduciary or the Secretary of Labor—listed in Section 502(a). *See Conn. v. Physicians Health Servs. of Conn.*, *Inc.*, 287 F.3d 110, 121 (2d Cir. 2002) (reading Section 502(a) as "strictly limiting 'the universe of plaintiffs who may bring certain civil actions'" under ERISA) (internal quotations in original). To satisfy Article III's case or controversy standard, an ERISA plaintiff must also meet the now familiar injury-in-fact, causation and redressability criteria.

Although plaintiff alleges in his complaint that he has statutory standing under ERISA because he is a current participant in the Plan, *see* Compl. ¶ 10, "statutory standing will not suffice to substitute for Article III standing." *Cent. States*, 433 F.3d at 201. Under Article III, "the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (referring to the *Lujan* elements as the "essential" and "unchanging part[s]" of the case-or-controversy requirement in Article III). First, a plaintiff must allege an injury in fact that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. Second, the injury

alleged "has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (internal quotations and alterations in original). Third, it must be likely that a favorable decision will redress the plaintiff's injury. *See id.* at 561. Congress cannot eliminate any of these "irreducible constitutional" minimum requirements of standing, which are "essential" and "unchanging part[s]" of Article III's case or controversy requirement. *Vermont Agency*, 529 U.S. at 771.

In this case, plaintiff lacks Article III standing because he has not suffered any individualized injury. The Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a *'personal stake'* in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (internal quotations in original and emphasis added). As a consequence, a plaintiff cannot satisfy the injury-in-fact requirement by suing on behalf of a class, because all plaintiffs seeking access to the federal courts "must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (emphasis added); *see also Cent. States*, 433 F.3d at 199.

The same is true under ERISA. Contrary to how plaintiff would have it, for a plan participant to establish Article III standing, it is not enough that the participant show injury to the plan itself. "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines*, 521 U.S. at 820 n.3; *see also Cent. States*, 433 F.3d at 200 ("Statutes do not abdicate the standing requirements of the Constitution."). Plaintiff, as a plan participant, "must plead a direct injury in order to assert claims on behalf of a Plan." *Cent. States*, 433 F.3d at 200 (citing *Harley v. Minnesota Mining &*

18

*Mfg.*, 284 F.3d 901, 906-07 (8th Cir. 2002)).  The Second Circuit has said that obtaining

monetary relief on behalf of a plan under ERISA—the very relief that plaintiff here seeks[9]—

"requires that a plaintiff satisfy the strictures of constitutional standing by 'demonstrat[ing]

individual loss.'"  *Cent. States*, 433 F.3d at 200 (internal quotations and alteration in original).

Indeed, all the other federal courts of appeals to consider this precise issue have unanimously

concluded that plan participants who do not allege personal loss lack Article III standing to sue.

*See id.*; *Harley*, 284 F.3d at 906-07; *Horvath v. Keystone Health Plan E.*, 333 F.3d 450, 455-56

(3d Cir. 2003); *Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006), *cert denied*,

128  S. Ct. 126 (2007).  As the Eighth Circuit held in *Harley*, the "limits on judicial power

imposed by Article III counsel against permitting participants and beneficiaries who have

suffered no injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan."

284 F.3d at 906-07.

Plaintiff simply does not allege that he has personally suffered or is in imminent danger

of suffering a concrete injury resulting from Callan's alleged violations of ERISA, and he has

therefore failed to establish standing.  *See Cent. States*, 433 F.3d at 198.  Indeed, plaintiff's

---

[9]  Although plaintiff's complaint also requests various forms of injunctive relief, such requests are now moot, because—as plaintiff acknowledges—the contingent aspect of Callan's compensation arrangement with BNY has now been fully disclosed.  Compl. ¶¶ 4, 34. Second, as Callan and the Federal-Mogul plan terminated their relationship in 2005, DeLuce Decl. ¶ 8, and the Plan no longer uses BNY ConvergEx as its broker, plaintiff lacks standing to pursue injunctive relief on behalf of the Plan to have any of the defendants permanently removed as a fiduciary or service provider to the Plan, *see* Compl. Part VIII, at ¶ 8, as that relief could not benefit either plaintiff or the Plan.  *See Arizonans for Official English v. Ariz.*, 520 U.S. 43, 67 (1997); *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Novella v. Westchester County, N.Y. Carpenters' Pension Fund*, 02 Civ. 2192 (MBM), 2004 U.S. Dist. LEXIS 26149, at *11 (S.D.N.Y. Dec. 29, 2004) ("In [an ERISA] class action, if the named plaintiff's claims for relief are rendered moot before the completion of the class action, he no longer has standing because he does not have a personal stake in the outcome of the litigation.").

complaint contains an *explicit disclaimer* that he is suing to recover individual losses; as stated in his complaint, "the relief requested in this action is for the benefit of the Pension Plan."  Compl. ¶ 18.

Perhaps most important in this regard, because the Plan is a "defined benefit plan," *see* Compl. ¶ 18 (citing 29 U.S.C. § 1002(35)), plaintiff cannot just assert some injury, but must allege facts that plausibly indicate that he suffered the personalized injury necessary to confer standing.  A defined benefit plan, "as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment."  *Hughes Aircraft*, 525 U.S. at 439; *see also LaRue v. DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020, 1022 n.1 (2008).  In such a plan, "the employer typically bears the entire investment risk and—short of the consequences of plan termination—must cover any underfunding as the result of a shortfall that may occur from the plan's investments."  *Hughes Aircraft*, 525 U.S. at 439.  Therefore, participants in a defined benefit plan, because they are insulated by their employers from any losses that the plan might incur, lack constitutional standing to sue for losses to the plan absent allegations that the losses would necessarily impair their right to receive the promised level of benefit payments.  *See, e.g.*, *Harley*, 284 F.3d at 906.  As the Supreme Court has recently explained, "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan."  *LaRue*, 128 S. Ct. at 1025.

Plaintiff admits that he has not yet applied for benefits from the Plan and that he is not yet eligible to receive such benefits; indeed, plaintiff "admits that if [he] were now eligible to receive benefits, . . . Federal Mogul would be obligated to make the described contributions [sufficient to allow the Pension Plan to pay promised benefits] if the Pension Plan were unable to pay

Plaintiff's benefits." *See* Ex. E, First Amended Responses of Plaintiff Albert T. Beane, Jr., To Defendant Callan Associates, Inc.'s First Set Of Requests For Admission, Nos. 1, 2, and 4. Significantly, plaintiff does not even offer the bare allegation—let alone the necessary concrete and particularized assertions—that his employer, Federal-Mogul, is not currently able, or will not be able in the future, to meet its obligation to Plan participants because Callan allegedly failed to disclose the contingent aspect of the compensation received from BNY ConvergEx. Indeed, any attempt by plaintiff to show the requisite impairment of his interest in the Plan in the future would be sheer speculation, and thus plainly insufficient to satisfy Article III's injury-in-fact requirement.[10] *See Horvath*, 333 F.3d at 457 (holding plan participant's claim "far too speculative to serve as the basis for a claim of individual loss," where it would require the court to assume that plaintiff's employer would pass on any savings to participants if the employer had not allegedly overpaid for health care benefits); *see also Glanton*, 465 F.3d at 1125; *New Orleans ILA Pensions Ass'n v. Board of Trustees of New Orleans Empl'rs Int'l Ass'n AFL-CIO Pension Fund*, Civ. A. No. 07-6349, 2008 WL 215654, at *2-3 (E.D. La. Jan. 24, 2008).

In sum, given plaintiff's "fail[ure] to demonstrate . . . that [he has] been impacted by defendant['s] allegedly wrongful disclosures or misstatements," his claims must be dismissed for lack of Article III standing. *Cent. States*, 433 F.3d at 203.

---

[10]  Plaintiff's response to defendant Callan's request for admission on this point demonstrates that any inability of Federal-Mogul to meet its obligations to Plan participants is at this time pure speculation. *See* Ex. E, First Amended Responses of Plaintiff Albert T. Beane, Jr., To Defendant Callan Associates, Inc.'s First Set Of Requests For Admission, No. 3 ("While Plaintiff cannot be expected to know the course of future events, Plaintiff believes that many things could happen that would interfere with the payments due to him under the Pension Plan. For example, the Plan may become severely under-funded and Federal-Mogul could become insolvent. In addition, those responsible for payment of benefits could wrongfully withhold payments due to Plaintiff.").

### 2. *The Complaint Does Not Even Sufficiently Allege Injury To The Plan.*

Although, to be sure, the complaint contains generalized allegations of losses to the Plan itself, *see, e.g.*, Compl. ¶ 76, it is curiously silent about what the nature of those losses might be. The fiduciaries of the Plan determined that an outside broker was necessary to conduct trades on behalf of the Plan. *Id.* ¶ 24. Thus, the Plan would have incurred expenses related to executing those trades whether the broker was BNY ConvergEx or some other broker. Significantly, the complaint does not allege that BNY ConvergEx failed to provide a competitive price for its services, or failed to satisfy its duty of best execution with respect to any Plan transactions. Nor does the complaint state that BNY ConvergEx did not provide the Plan with the full value of its services for the commissions paid. In short, the complaint does not contain any factual allegations supporting the conclusory assertion that the Plan experienced losses as a result of the defendants' alleged violations of ERISA.

Plaintiff is obligated to set out in his complaint something more than conclusory allegations of injury, especially where, as here, the specific operative events set out in the complaint do not plausibly suggest that the Plan sustained any loss due to the defendants' alleged violations of ERISA. *See, e.g., Port Dock & Stone Corp.*, 2007 U.S. App. LEXIS 24728, at *7 (after *Twombly*, a plaintiff must allege facts that "actively and plausibly suggest" the conclusion that the defendant violated the law). He has not done so.

\*    \*    \*    \*

In sum, plaintiff has not demonstrated the injury-in-fact necessary to achieve Article III standing, either as to himself or, indeed, even as to the Plan.

### C.    Plaintiff's Claims Should Be Dismissed Because He Has Not Adequately Alleged Causation.

The complaint should also be dismissed against all defendants because plaintiff fails to allege the causation necessary to state a cause of action under ERISA.  Under Section 409(a) of ERISA, 29 U.S.C. § 1109(a), a plan fiduciary who breaches any duty prescribed by ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach."  Courts have consistently interpreted the language "resulting from each such breach" to require the plaintiff to show that there was a causal link between the defendant's actions and the losses suffered.  *See, e.g.*, *Kuper v. Iovenko*, 66 F.3d 1447, 1452 (6th Cir. 1995); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1099 (9th Cir. 2004); *Allison v. Bank One- Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002).

ERISA's causation requirement comes in two parts:  A plaintiff must allege both (1) that the plan would not have entered into the transaction "but for" the fiduciary's alleged misrepresentation or failure to disclose, and (2) that any loss suffered by the plan resulted from the alleged breach.  *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 278-79 (2d Cir. 1992).  These requirements are analogous to the concepts of "transaction causation" and "loss causation," respectively, that apply not only in securities fraud cases, *see, e.g.*, *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172-73 (2d Cir. 2005), but also in common law tort cases, *see, e.g.*, *Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760, 765 (7th Cir. 1998); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (loss causation requirement is not a creature of the securities laws).  Plaintiff has, however, failed to offer any factual support for his claim that Callan's alleged failure to disclose the contingent aspect of a small portion of its compensation from BNY was either the "but for" cause of the Plan's decision to use BNY

ConvergEx, or the cause of any losses allegedly suffered by the Plan.  Therefore, plaintiff's

complaint is insufficient as a matter of law.[11]

### 1.    *Plaintiff Does Not Allege Transaction Causation: That The Plan Would Not Have Retained BNY ConvergEx Had Callan Disclosed The Payment Arrangement.*

Plaintiff has failed to allege that the defendants caused the Plan to enter into certain

transactions with BNY ConvergEx that caused it any loss.  As relevant here, in order to show

"transaction causation," the plaintiff must allege that "but for the claimed misrepresentations or

omissions, the plaintiff would not have entered into the detrimental . . . transaction."  *Lentell*, 396

F.3d at 172.  In other words, the plaintiff here must sufficiently allege reliance by the Plan on

Callan's purported misrepresentation.  *See Diduck*, 974 F.2d at 278 (misrepresentation must be

an "essential or inducing" cause of ERISA Plan's actions).

Here, the plaintiff has failed to allege any facts that, if true, would show that the Plan

would have used a different broker "but for" Callan's alleged failure to disclose the contingent

aspect of the compensation it was receiving from BNY ConvergEx.  Instead, the complaint only

contains a bare allegation that Callan, as a result of its alleged misrepresentations or failure to

disclose, caused the Plan to engage in transactions that Callan knew or should have known were

prohibited by ERISA.  *See, e.g.*, Compl. ¶ 69.  That, however, is hardly sufficient.  Pursuant to

controlling Second Circuit precedent, plaintiff must allege facts that show that the Plan would

have made a different decision had Callan disclosed the contingent aspect of its compensation

arrangement under the Services Agreement.  *See Diduck*, 974 F.2d at 278.  The complaint's

---

[11]  If the complaint fails to allege the causation necessary to state a claim against Callan for a breach of fiduciary duty or for engaging in a prohibited transaction, it necessarily also fails to state a claim against the BNY Defendants for "knowingly participating" or knowingly "aiding and abetting" the alleged fiduciary breach by Callan.

failure to do so is fatal to plaintiff's case. *See Twombly*, 127 S. Ct. at 1966 (finding that the "naked assertion" of an element of the offense, "without some further factual enhancement[,] stops short of the line between possibility and plausibility of entitlement to relief" under Rule 8(a)(2)) (internal quotation marks omitted).

As the Second Circuit has noted, the Federal Rules, especially after the Supreme Court's decision in *Twombly*, "oblige[] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Such amplification is necessary here as it does not intuitively follow that Callan's alleged failure to disclose information concerning its compensation arrangement with BNY ConvergEx was, in point of fact, a "but for" cause of the Plan's decision to use BNY ConvergEx. As plaintiff acknowledges, a pension plan typically chooses among broker dealers based on factors that will affect return on investment, such as the price of a broker's services and its ability to achieve best execution. *See* Compl. ¶ 55. Factors such as these, and not how Callan was compensated under the Services Agreement, are what would operate as the "essential or inducing" cause of a plan's choice of broker. There is no allegation that the Plan (or any of its investment managers) were misinformed about the commissions that BNY ConvergEx would charge or its ability to execute at the best price and, therefore, was induced to choose BNY ConvergEx against its best interest. Nor is there any claim that the other brokers were, in fact, able to provide better execution at better prices. There simply are no factual allegations that plausibly indicate the Plan would have opted to contract with a different broker had Callan disclosed that part of the compensation it received from BNY was contingent upon BNY ConvergEx generating a certain amount of commissions from Callan's plan clients.

In short, because plaintiff has failed to adequately allege that Callan's purported failure to disclose was a "but for" cause of the Plan's decision to utilize BNY ConvergEx, his complaint should be dismissed for that reason alone.

### 2.    Plaintiff Has Not Sufficiently Alleged That Callan's Asserted Violations of ERISA Caused Any Losses To The Plan.

To state a cause of action under ERISA, a plaintiff must allege not only "transaction causation," but also "loss causation," that is, a "causal connection . . . between a breach of fiduciary duty and the loss alleged." *Diduck*, 974 F.2d at 279; *see also Lentell*, 396 F.3d at 173 ("to establish loss causation, 'a plaintiff must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered'") (internal quotations, alteration and emphasis in original). It is hornbook law in the common law of trusts, to which courts routinely look for guidance when interpreting ERISA,[12] that "[a] trustee is not liable for a loss resulting from the breach of trust if the same loss would have been incurred if he had committed no breach of trust." Restatement (Second) of Trusts § 212 cmt. e.

Plaintiff has not made any effort to show that Callan's alleged misrepresentations concerning its agreement with BNY ConvergEx caused the Plan any loss, and, therefore, once again, his pleading fails the most basic test of sufficiency. Although plaintiff makes bare allegations that the Plan somehow suffered losses as a "direct and proximate" result of Callan's alleged breach of duty, Compl. ¶¶ 76, 82, the complaint contains no specific allegation with respect to what the nature of those losses might be, or how Callan's actions may have caused them. As discussed previously, the Plan would have incurred expenses for brokerage services in

---

[12]    *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110-11 (1989); *Varity Corp v. Howe*, 516 U.S. 489, 496-97 (1996).

any event, and there is no allegation that BNY ConvergEx charged more than other brokers for comparable services. *See infra*, p. 29. The skeletal allegations in the complaint regarding the Plan's alleged losses represent precisely the type of conclusory assertions, unsupported by factual allegations, that the Supreme Court in *Twombly* condemned as insufficient "to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1964-65. As the Second Circuit said in a related context, to show loss causation a plaintiff must allege that he "suffered an economic loss and that the defendant's fraudulent conduct was the proximate cause of the plaintiff's loss," and such allegations must rise above "bald assertions and conclusions of law." *Amron v. Morgan Stanley Inv. Advisors, Inc.,* 464 F.3d 338, 343-44 (2d Cir. 2006) (citing *Dura Pharm.*, 544 U.S. at 346-47). The allegations of the complaint here fall far short of satisfying that standard.

### D. Plaintiff's Section 502(a)(3) Claim Against The BNY Defendants Should Be Dismissed.

Plaintiff's Section 502(a)(3) claim against the BNY Defendants should be dismissed because he has failed to allege a basis for the limited equitable relief available under that section—namely, the restitution to the Plan of money or property in the possession of the BNY Defendants. *See* 29 U.S.C. § 1132(a)(3).

#### 1. Section 502(a)(3) Is Limited To Equitable Relief Against A Non-Fiduciary.

Section 502(a)(3) does not permit a pension plan or participant to seek legal relief—monetary damages—from a non-fiduciary charged with knowing participation in a fiduciary's breach of its ERISA obligations. *See, e.g.*, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993); *In re Enron Corp. Sec. Deriv. & ERISA Litig.*, 284 F. Supp. 2d 511, 570 (S.D. Tex. 2003). A plaintiff suing a non-fiduciary pursuant to Section 502(a)(3) is limited to "equitable" remedies. *Great-West*, 534

U.S. at 221.  Section 502(a)(3)'s reference to "other appropriate equitable relief" is not an "elastic" term, but encompasses only those categories of relief that were typically available from a court of equity rather than a court of law.  *Id.* at 219 (quoting *Mertens*, 508 U.S. at 256).

A plaintiff cannot avoid the limitations on available remedies set forth in Section 502(a)(3) by recasting a claim for legal damages as one for equitable restitution or disgorgement. As the Supreme Court recognized, "[a]lmost invariably . . . suits seeking (whether by judgment, injunction or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty."  *Great-West*, 534 U.S. at 210.  Drawing on the types of remedies available "in the days of the divided bench," the Court observed that the remedies of equitable restitution and disgorgement were appropriate only under a narrow set of facts.  "[F]or restitution to lie in equity," as opposed to law, "the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  *Id*. at 214.  If the property the plaintiff sought to recover or its proceeds have been dissipated, such that no property remains, the plaintiff's claim is only that of a general creditor and he cannot seek equitable remedies such as a constructive trust or a lien.  *Id.*; *see also Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 22 (2d Cir. 1996) (restitution is available only if wrongdoer would be enriched unjustly by retention of property that is subject of implied or constructive trust).

The Supreme Court and courts in this Circuit have repeatedly dismissed Section 502(a)(3) claims where the plaintiff failed to allege a basis for equitable relief.  *See, e.g., Mertens*, 508 U.S. at 255 (affirming dismissal of complaint seeking relief under Section 502(a)(3) against non-fiduciaries as "nothing other than compensatory damages"); *In re*

*Marsh ERISA Litig.*, No. 04 Civ. 8157 (SWK), 2006 WL 3706169, at *4 (S.D.N.Y. Dec. 14, 2006) (dismissing Section 502(a)(3) claim where plaintiffs failed to allege the existence of specifically identified fund in which their investments were held); *Bona v. Barasch*, No. 01 Civ. 2289 (MBM), 2003 WL 1395932, at *12 (S.D.N.Y. Mar. 20, 2003) (dismissing Section 502(a)(3) claims where plaintiff did not allege that property was either identifiable or in possession of trustee defendants alleged to have manipulated investment contracts with plan).

### 2.  *The Complaint Does Not Adequately Allege A Basis For Disgorgement Or Restitution Against The BNY Defendants.*

Plaintiff's claims against the BNY Defendants brought solely under Section 502(a)(3) should be dismissed because he fails adequately to allege that the BNY Defendants have wrongfully secured a benefit that it would be unconscionable for them to retain.  *See, e.g., Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 251 (2000); *Geller*, 86 F.3d at 22.  Plaintiff nowhere alleges that BNY ConvergEx provided inadequate brokerage services to the Plan or that BNY ConvergEx overcharged in any respect for the brokerage services it rendered to the Plan.  Plaintiff also does not allege that BNY ConvergEx set its commission rates to cover not only the fees it would have ordinarily charged, but also the amount of any contingent payments it allegedly made to Callan under the Services Agreement.  Missing from the complaint is any allegation as to why it would be unjust to permit BNY ConvergEx to retain the commissions it received for providing, as plaintiff acknowledges, brokerage services on behalf of the Plan.  In seeking the disgorgement of unspecified "commissions" received by BNY ConvergEx, plaintiff apparently seeks—as equitable relief—to have the Plan ***reap a 100 percent discount*** from the commission rate the Plan long ago agreed to pay BNY ConvergEx for its valuable and necessary brokerage services.  There are no allegations that warrant such relief.

Also fatal to plaintiff's section 502(a)(3) claim is the absence of any allegation specifying particular property currently in the possession of the BNY Defendants that plaintiff can plausibly allege belongs to the Plan.  The core allegation of the complaint is that Callan did not adequately disclose that BNY ConvergEx made an annual payment to Callan contingent on BNY ConvergEx's receipt of a certain level of brokerage commissions from Callan clients.  Even assuming, however, that BNY ConvergEx somehow inflated the commission rates it independently negotiated with the Plan to cover the amount of the contingent payment—an allegation plaintiff nowhere makes—the fact remains that BNY ConvergEx made the contingent payment to Callan.  That money is no longer in the possession of the BNY Defendants, and no equitable relief therefore can lie against them.  *See, e.g., Great-West*, 534 U.S. at 214 (affirming dismissal of section 502(a)(3) claim where funds to which petitioner claimed entitlement were not in defendant's possession); *New York District Council of Carpenters Pension Plan v. Savasta*, No. 99 CV 11362 (GBD), 2005 WL 22872, at *3 (S.D.N.Y. Jan. 4, 2005) (holding that plaintiff was not entitled to disgorgement of fees paid to defendant advisers for allegedly negligent consulting services to plan because such fees do not constitute identifiable funds in defendants' possession); *cf. Wsol v. Fiduciary Mgmt. Assocs., Inc.*, 266 F.3d 654, 658 (7th Cir. 2001) (affirming judgment in favor of fiduciaries of pension plan alleged to have accepted kickbacks from brokerage firm on ground that plaintiff had failed to prove that defendants held any of their property in trust or were unjustly enriched).

Try as plaintiff might to frame his requested relief as seeking disgorgement or equitable restitution, at bottom plaintiff's claim seeks legal damages.  In his aiding and abetting claim against the BNY Defendants, plaintiff alleges that the Plan suffered "losses and other injuries" as a result of the BNY Defendants' conduct.  Compl. ¶ 82.  Plaintiff's entitlement to a monetary

recovery to compensate the Plan for any such losses, however, turns on whether BNY ConvergEx breached its commission contract with the Plan or engaged in some other conduct that gives rise to such *legal* relief.  As noted above, however, the law is well-settled that a plan participant may not seek such legal remedies under section 502(a)(3).

Finally, plaintiff's request for an order enjoining the BNY Defendants "from any further violations of their ERISA fiduciary responsibilities, obligations, and duties," Compl. Part VII, at 10, should also be dismissed against the BNY Defendants.  As discussed above, the Plan terminated its relationship with Callan, and no risk remains that any alleged past violation will recur.  In addition, as plaintiff recognizes, the BNY Defendants, as parties-in-interest, do not have any fiduciary obligations to the Plan.  And, in any event, the form of the requested injunctive relief is inappropriate.  *See, e.g., Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) (under Federal Rule of Civil Procedure 65(d), "an injunction must be more specific than a simple command that the defendant obey the law.").[13]

## II.    NO CLASS SHOULD BE CERTIFIED AS PLAINTIFF HAS NOT MET THE REQUIREMENTS OF RULE 23.

Plaintiff's lack of standing makes him an inappropriate class representative as a matter of law.  *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 101 n.7 (2d Cir. 2007)

---

[13]  Nor for that matter does the complaint adequately allege any facts that could serve as the basis for an award of equitable relief against Callan.  Plaintiff does not allege that Callan failed to provide the services requested under its contracts for the fees its received from its pension plan clients.  Neither does plaintiff identify any property in Callan's possession that properly belongs to the Plan.

(collecting authorities).  In addition, plaintiff's motion for class certification should be independently denied because he has failed to meet the requirements of Rule 23 for the class he purports to represent.

First, as to the requirements of Rule 23(a), plaintiff has failed to demonstrate that the members of the putative class are so numerous that joinder is impractical.  Indeed, there are at most only a handful of ERISA plans that (a) had both Callan and BNY ConvergEx as service providers, (b) in circumstances where Callan expressly accepted fiduciary responsibility as it did in the case of the Federal-Mogul plan; and (c) where Callan's alleged misrepresentation could have conceivably influenced that plan's decision to retain BNY ConvergEx as its broker.  Plaintiff has also failed to satisfy the commonality and typicality criteria of Rule 23(a) because the relationship between the defendants and plaintiff's plan is unique among the ERISA plans that plaintiff seeks to combine as a class.  Callan's contract with the Federal-Mogul plan during the early part of the class period was the only one in which Callan acted as a named fiduciary pursuant to ERISA.  In addition, the Plan was only one of three ERISA plans for which Callan performed brokerage provider searches during the class period.  The unique characteristics of the Plan's relationship with the defendants demonstrate that class action treatment for all ERISA plans that used both Callan and BNY ConvergEx during the proposed class period is inappropriate.  Moreover, whether any plan in the putative class relied on any alleged misrepresentation by Callan would necessarily require individualized inquiries, making the case unsuitable for class treatment for that reason alone.

Second, plaintiff has failed to show that his proposed class fits within any of the types of classes enumerated in Rule 23(b).  Plaintiff's proposed class does not meet the criteria for certification under Rule 23(b)(1)(A) because he principally seeks money damages, and therefore,

there is no risk that judgment would create incompatible standards of conduct for the defendants. Plaintiff's suit similarly does not meet the narrow historical test for certification under Rule 23(b)(1)(B), as there would be no prejudice to members of the putative class from separate decisions.  Nor can plaintiff certify a class under Rule 23(b)(2) because he does not primarily seek injunctive relief, and the injunctive relief he does seek has been rendered moot as the Federal-Mogul plan no longer does business with either Callan or BNY ConvergEx.  Finally, plaintiff cannot proceed under Rule 23(b)(3) because common issues plainly do not predominate and the class action device would not be superior to individual suits for resolving the highly particularized complaints of the proposed class members.  In short, plaintiff's motion for class certification should be rejected.

### A.    Standards For Certification Of A Class Action.

"The class-action device . . . [is] an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982). (internal quotation marks omitted).  Before certifying a class, the district court must conduct a "rigorous analysis" and be persuaded "that the prerequisites of Rule 23(a) have been satisfied."  *Id.* at 161.  In performing such a rigorous analysis, the Court may not simply rely on the allegations in the complaint, but must "resolve[] factual disputes relevant to each Rule 23 requirement," and be "persuaded to rule, based on the relevant facts and the applicable legal standard, that [each] requirement is met."  *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 41 (2d Cir. 2006); *see also Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982) (district court must "develop a sufficient evidentiary record from which to conclude that the requirements of numerosity, typicality, commonality of question, and adequacy of representation have been met.").  Plaintiff bears the burden of proving

that the requirements of Rule 23 have been met. *See Heerwagen v. Clear Channel Commc'ns.*, 435 F.3d 219, 232 (2d Cir. 2006).

Before discussing those criteria and demonstrating that plaintiff's motion is profoundly deficient in meeting Rule 23's various provisions, defendants address a threshold defect in plaintiff's ability to derivatively represent a class of other plans or participants in a suit under ERISA.

### B.     In A Suit Based Upon ERISA Section 502(a)(2), Plaintiff May Not Represent Plans In Which He Is Not A Participant.

As a preliminary matter, section 502(a)(2) of ERISA itself prohibits plaintiff from pursuing claims on behalf of plans in which he is not a participant. Plaintiff is a participant in the Federal-Mogul plan only and is not a participant in any of the other ERISA plans he seeks to represent. *See* Ex. E, First Amended Responses of Plaintiff Albert T. Beane, Jr., To Defendant Callan Associates, Inc.'s First Set Of Requests For Admission, No. 14. Nevertheless, plaintiff seeks to bring a class action on behalf of each of the various plans that contracted with both Callan and BNY ConvergEx between 1998 and 2006. Because, under section 502(a)(2) of ERISA, a plaintiff may sue derivatively only on behalf of a plan in which he is a participant, plaintiff lacks statutory standing to represent other plans or plan participants.[14] *See, e.g.*, *Physicians Health Servs. of Conn.*, 287 F.3d at 121 (plaintiff must establish statutory standing under ERISA section 502(a)).

---

[14]  Although plaintiff's suit against the BNY Defendants is brought under Section 502(a)(3), which allows an ERISA participant to sue a non-fiduciary both for individual relief, *Varity Corp. v. Howe*, 516 U.S. 489 (1996), and for relief on behalf of the plan, *Harris Trust & Savings Bank v. Salomon Bros. Smith Barney, Inc.*, 530 U.S. 238 (2006), plaintiff seeks only a recovery on behalf of the Plan from the BNY Defendants.

Section 502(a)(2) "permits an individual participant to sue a plan fiduciary for breach of fiduciary duty on behalf of *the relevant plan* itself for losses *the plan* has suffered." *Fisher v. J.P. Morgan Chase & Co.*, 230 F.R.D. 370, 375 (S.D.N.Y. 2005) (first emphasis added; second emphasis in original). The statute, in other words, limits relief to the "relevant plan" in which plaintiff is a participant—here, the Federal-Mogul plan. It does not create a right for plaintiff to bring a derivative action on behalf of plans in which plaintiff does not participate. *See Acosta v. Pacific Enters.*, 950 F.2d 611, 617 (9th Cir. 1991) (plaintiff "lacks standing to sue regarding the administration of the remaining plans, in which he does not participate").

In an analogous case, *In re Mutual Funds Investment Litigation*, 519 F. Supp. 2d 580, 588 (D. Md. 2007), the district court concluded that a plaintiff bringing suit under the Investment Company Act could only sue on behalf of a mutual fund if the plaintiff owned stock in that fund. That conclusion followed from the statutory language, which states that suit can only be brought by "a security holder of [a] registered investment company *on behalf of such company*[] against [an] investment adviser." *Id.* at 587 (citing 15 U.S.C. § 80a-35(b)). The same result is appropriate here, where a derivative plaintiff's ability to sue is limited by Section 502(a)(2) to the plan in which the plaintiff is a participant.

It is well-established that "[a] predicate to [a plaintiff's] right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class." *Akerman v. Oryx Commc'ns, Inc.*, 609 F. Supp. 363, 377 (S.D.N.Y. 1984) (quoting *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3rd Cir. 1970)). That principle applies to plaintiff: Because he could not bring an individual action under section 502(a)(2) on behalf of other plans, he may not use Rule 23 procedures to effectively circumvent the limitations in the statute. *Cf. Kauffman*, 434 F.2d at 734 (shareholder of four mutual funds

cannot bring class action under Rule 23 on behalf of class of 61 other mutual funds in which he did not own stock); *Zucker v. AIM Advisors, Inc.*, 371 F. Supp. 2d 845, 851 (S.D. Tex. 2005) (shareholder of one fund may not bring suit on behalf of "similarly situated" fund without having any "proprietary interest" in that fund).

 Plaintiff relies on inapposite authorities to support the proposition that a participant may represent numerous plans other than his own. *See* Mem. at 9-10. In *Fallick v. Nationwide Mut. Life Ins. Co.*, 162 F.3d 410 (6th Cir. 1998), for example, the Sixth Circuit held that plaintiff may represent a class of participants across several different employee medical benefits plans for *individual* injuries—namely, the denial or reduction of claims—sustained by the class members pursuant to the common standard employed by a single plan administrator. *Fallick* does not address whether a participant in a pension plan, suing for injuries sustained by the plan, may also sue on behalf of other plans in which he is not a participant. Similarly, in *Central States*, no party challenged the ability of the plaintiffs there to sue on behalf of other plans, and consequently, the Second Circuit did not reach the issue. *See, e.g.*, *Cent. States, Se & Sw Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-46 (2d Cir. 2007). Therefore, contrary to how he would have it, *Central States* does not help plaintiff, as issues decided *sub silentio* or merely by implication carry no precedential weight. *See, e.g.*, *Tex. v. Cobb*, 532 U.S. 162, 169 (2001); *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988) (an earlier panel's "sub silentio . . . resolution of [an] issue" is "not binding precedent") (internal quotation marks omitted). The better view, one supported by the underlying text and purposes of ERISA, is that plaintiff may not represent plans in which he does not participate.

## C.    Plaintiff Has Not Satisfied The Criteria Of Rule 23(a).

### 1.    Plaintiff Has Not Demonstrated That The Proposed Class Is So Numerous That Joinder Would Be Impractical.

Even assuming that ERISA section 502(a) allows plaintiff to bring suit on behalf of plans in which he is not a participant, he must still comply with the other requirements of Rule 23.  As an initial matter, plaintiff has not and cannot show that "the class is so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "Relevant considerations [to numerosity] include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members."  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citing 1 Herbert B. Newberg, *Newberg on Class Actions:  A Manual for Group Litigation at Federal and State Levels* § 3.06, at 143 (2d ed. 1985)).

Numerosity, however, "is presumed when a class consists of forty or more members." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 466 (S.D.N.Y. 2005). In fact, plaintiff admits that less than forty class members defeats numerosity.  *See* Pl.'s Mem. at 10-11.  A rigorous analysis of what could conceivably constitute the putative class shows that at most only a handful—far less than the acknowledged forty minimum—of ERISA plans could plausibly be combined here with the Plan in a class.

Plaintiff makes two key errors with respect to the calculation of the number of putative class members.  First, plaintiff incorrectly assumes that the unit of measurement for the class should be the total number of participants across all plans that he seeks to represent.  Plaintiff does not seek relief on behalf of the participants in his or the other plans; rather, he seeks relief *on behalf of the plans*.  *See* Compl. ¶ 18.  Any relief that plaintiff obtains would thus "inure[] to

37

the benefit of the plan[s] as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). Plaintiff's suit is already a collective action as it seeks relief as to the Plan (a defined benefit plan) as a whole. *See LaRue*, 128 S. Ct. at 1022. Consequently, it is the number of *plans*, not the number of *participants*, that matters for numerosity purposes. If plaintiff brought suit on behalf of a class of 10 participants, 1,000 participants, or even 1,000,000 participants in each of the plans in the putative class, the relief would still be the same: the alleged losses sustained by each of the plans. Therefore, the number of participants in the various plans is not the right metric; the number of plans is.

Second, in that regard, the evidence shows that any combination of relevant ERISA plans that were common clients of both Callan and BNY and otherwise met the definition of the proposed class do not come close to meeting the minimum forty-member threshold. Approximately 75 entities were clients of both Callan and the BNY Defendants during the proposed class period. DeLuce Decl. ¶ 4; Schroth Decl. ¶ 9. Not all of these 75 common clients, however, should be considered as part of a putative class, because plaintiff's theory of the case requires that Callan somehow caused each of those ERISA plans to select BNY ConvergEx as that particular plan's broker. *See* Compl. ¶ 6. Indeed, as the facts amply demonstrate, only a handful of plans plausibly fall within that category.

During the putative class period, Callan provided some form of a broker search for three of the 75 common clients: the Federal-Mogul plan (two searches), Fluor Corporation, and Deluxe Corporation. DeLuce Decl. ¶¶ 9-10. In the case of Fluor Corporation, Callan was asked to analyze BNY Global Transition Management, a subsidiary of BNY, along with other candidates that responded to the Request for Proposal. Callan provided a somewhat negative assessment of BNY Global Transition Management. DeLuce Decl. ¶ 10(a). Fluor did not retain

BNY at that time.[15]  *Id.*  In the case of Deluxe Corporation, Deluxe chose BNY ConvergEx *after* Callan had both amended its ADV and had directly informed its clients that part of the compensation it received from BNY was initially contingent upon Callan's clients providing BNY CovergeEx with a certain amount of commissions.  DeLuce Decl. ¶¶ 10(b), 12.  Consequently, as Deluxe retained BNY ConvergEx with full knowledge of the initially contingent component of BNY ConvergEx's payment to Callan, it does not fit within the putative class.  And because Fluor did not retain BNY Global Transition Management, it too falls outside the proposed class.  This leaves only one common client—the Federal-Mogul plan—that meets the class definition:  thirty-nine short of the required forty minimum to satisfy the numerosity requirement.

Moreover, Callan "recommended" (that is, advised a client specifically to select) BNY ConvergEx on only two occasions during the class period, both times for the Federal-Mogul plan, the first in 1999 and the second in 2000.  DeLuce Decl. ¶ 9.  In short, the Federal-Mogul plan was the only ERISA client to whom Callan "recommended" BNY ConvergEx during the class period, thus making it a class of one.

Nor can plaintiff satisfy the numerosity requirement simply because Callan advised all its clients that BNY ConvergEx was its "preferred broker," and allegedly did not disclose the contingent aspect of its compensation arrangement with BNY ConvergEx.  The facts reveal no possible causal connection between the ERISA client's selection of BNY ConvergEx and the alleged misrepresentations for all but a handful of the 75 common clients.  Of the 75 common clients, 55 were already Alpha clients at the time of the sale.  Schroth Decl. ¶ 10.  Any alleged

---

[15]  It appears that Fluor had previously retained BNY ConvergEx as its broker, but not as a result of a provider search performed by Callan.

misrepresentation, therefore, could not have caused these 55 clients to select BNY ConvergEx as those plans were already Alpha clients that transitioned to BNY ConvergEx as a result of the sale. Schroth Decl. ¶ 9. Another four common clients became BNY ConvergeEx clients only in 2005 when BNY acquired Lynch, Jones & Ryan, Inc., a commission recapture brokerage firm. Schroth Decl. ¶ 11. Consequently, those four common clients also could not have been influenced to retain BNY ConvergEx by Callan's alleged misrepresentation.

In sum, of the 75 common clients, the decision of 59 of those clients to retain BNY ConvergEx could not have plausibly been caused by Callan's alleged misrepresentation because they either had been Alpha clients at the time of the sale or became BNY ConvergEx clients through the 2005 acquisition of the Lynch, Jones & Ryan firm. That leaves 16 common clients that fit in neither of those categories. And since Deluxe is one of those 16 common clients, it cannot be included within the putative class as it retained BNY ConvergEx in 2006 after Callan has disclosed the contingency factor in its compensation arrangement with BNY.

There are, thus, at most 15 ERISA clients common to Callan and BNY ConvergEx whose decision to select BNY ConvergEx could have conceivably been influenced by Callan's alleged misrepresentation. Once again, having a class of 15 members falls far short of the minimum of forty class members that plaintiff concedes is necessary to satisfy the numerosity requirement of Rule 23(a)(1). Pl.'s Mem. at 10-11; *Presbyterian Church of Sudan*, 226 F.R.D. at 466.[16]

---

[16] Plaintiff has also failed to demonstrate that the class of ERISA plans lack the financial resources or the ability to institute individual suits, two key factors court consider when evaluating the practicality of joinder. 1 Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3:6 at 250-52 (4th ed. 2002). The Callan Commission Report identified by plaintiff in his memorandum, *see* D.E. 24, Ex. 5, shows that a number of plans paid considerable commissions to BNY comparable to or greater than the commissions paid by Federal-Mogul. Nothing in the record demonstrates that these other plans are indigent or somehow unaware of their ability to sue the defendants

[Footnote continued on next page]

### 2. Plaintiff Cannot Satisfy Commonality and Typicality Because Issues Of Fiduciary Status And Reliance Require Individualized Determinations.

Under Rule 23(a)(2), plaintiff must also show that his claims in the complaint present a question of law or fact common to the class. *See Cent. States*, 504 F.3d at 245. "[N]ot every common question . . . will suffice, however," because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998). Rather, courts look for "a common issue the resolution of which will advance the litigation." *Id.*

Meanwhile, the related test for typicality under Rule 23(a)(3) "limits the class claims to those fairly encompassed by the named plaintiffs' claims." *Id.* at 399 (internal quotation marks omitted). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). The

---

[Footnote continued from previous page]

based upon the theory advanced by the plaintiff. Plaintiff himself admits that "many of the pension plans that are clients of Callan are sponsored by large companies." Pl.'s Memo. at 11. Indeed, plaintiff seeks, among other things, "an order compelling Defendants to disgorge all fees or other compensation received by Defendants in connection with transactions involving the Pension Plan and other members of the putative class." Compl. at 19. This is not a case in which a large pool of participants would not resort to individual suits because the loss for each plaintiff is relatively small. Instead, plaintiff seeks to join by way of the class action device a group of entities with their own fiduciary responsibilities to their participants and who, for all intents and purposes, appear to be aware of a possible claim but have chosen not to pursue it. In such circumstances, plaintiff has not shown the impracticality of joinder. *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 603 (D. Colo. 1990) (denying class certification on numerosity grounds where it appeared that potential class members were aware of the suit and all those who appeared to be interested in the suit had joined).

typicality requirement is "simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399.

The commonality and typicality requirements "tend to merge" and "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13. These requirements similarly protect defendants against the likelihood that an allegation "specific" to the named plaintiff will become the basis for a class-wide, "across-the-board attack." *Id.* at 159.

In case after case, courts have held that ERISA actions fail to satisfy the commonality and typicality requirements of Rule 23(a) when the claims require fact-specific, individualized proof. *See, e.g.*, *Sprague*, 133 F.3d at 398 (holding that the district court abused its discretion by certifying a class of early retirees whose estoppel claim depended on individualized determination of each retiree's reliance on particular statements made by the defendant); *In re American Med. Sys. Inc.*, 75 F.3d 1069, 1081 (6th Cir. 1996) (commonality lacking in misrepresentation claim because individualized determinations on reliance, causation, damages, and statements made to each class member, would be required); *Wiseman v. First Citizens Bank & Trust Co.*, 215 F.R.D. 507, 510 (W.D.N.C. 2003) (commonality lacking because plaintiffs "would have to establish that each member of the proposed class relied on the Defendants' alleged misrepresentations in making his investment decisions").

Plaintiff identifies ten separate questions of law and fact that he believes are common to the class. *See* Mem. at 12-13. These supposedly "common questions," however, are not truly independent of each other. The resolution of the BNY Defendants' liability under ERISA (Nos.

2, 8), Callan's alleged acts of non-disclosure, misrepresentation, and conflict of interest (Nos. 3-5), Callan's alleged breach of fiduciary duty (No. 6), and issues relating to damages and equitable tolling (Nos. 7, 9-10), all depend on the disposition of the first issue listed: "[w]hether Callan was a fiduciary to client pension plans." *Id.* at 12. If Callan was not a fiduciary to a particular plan, then Callan, and by extension, the BNY Defendants, would not be subject to liability under ERISA, and therefore, resolution of the remaining issues would not "advance the litigation." *Sprague*, 133 F.3d at 397.

As discussed in greater detail below, the existence and scope of Callan's fiduciary relationship differ considerably from plan to plan, and depend on the powers assigned to and exercised by Callan in the various contracts with its clients. Therefore, since Callan's fiduciary relationship with the Plan was atypical, and not applicable on a class-wide basis, it cannot serve as the basis for class treatment. Furthermore, even if plaintiff could point to Callan's alleged misrepresentations to its ERISA clients as the common, typical factor, that would still be unavailing as he still must show that each plan in the proposed class detrimentally relied on those alleged misrepresentations, which is an individualized inquiry.

          (a)     Plaintiff Cannot Establish Callan's Fiduciary Status With Respect To Other Plans Based On Its Contract With The Federal-Mogul Plan.

Under ERISA, there are two types of fiduciaries: named fiduciaries and functional fiduciaries. A named fiduciary is "a fiduciary who is named in the plan instrument" or who is otherwise expressly identified as a fiduciary. 29 U.S.C. § 1102(a)(2). If a service provider is not named in the plan documents, however, then fiduciary status "must be determined by focusing on the function performed, rather than on the title held." *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 64 (2d Cir. 2006) (quoting *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987)); *see also Mertens*, 508 U.S. at 262 (noting that ERISA defines fiduciary status

"not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan") (emphasis in original).  A functional fiduciary under ERISA "exercise[s] . . . discretionary authority or control over plan management or administration."  *Siskind v. Sperry Retirement Program*, 47 F.3d 498, 505 (2d Cir. 1995) (citing 29 U.S.C. § 1002(21)(A)).  Such authority must be substantial, however, as "someone who performs purely ministerial functions for a benefit plan is not a fiduciary."  *Blatt*, 812 F.2d at 812 (internal quotation marks omitted); *see also Trustees of Laborers' Local 72 Pension Fund v. Nationwide Life Ins. Co.*, 783 F. Supp. 899, 909 (D.N.J. 1992) (service provider is not a fiduciary where the exercise of discretion has only a "marginal effect" on the plan).

The functional fiduciary test is "an ***intensely factual inquiry***" because "whether or not a party serves as a [functional] fiduciary under ERISA depends upon the actual functions performed by the party, not just the duties described by documents."  *McMorgan & Co. v. First Cal. Mortgage Co.*, 916 F. Supp. 966, 974 (N.D. Cal. 1995) (emphasis added); *see also Saey v. Xerox Corp.*, 31 F. Supp. 2d 692, 699 (E.D. Mo. 1998) ("[t]he existence of a fiduciary relationship can only be determined after a thorough examination of the facts").  Indeed, in enacting ERISA, "Congress intended that the courts look to the totality of the relationship to determine whether an outside professional advisor is a fiduciary to an ERISA plan."  *Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, 869 F. Supp. 278, 287 (D.N.J. 1994).  Therefore, plaintiff cannot obtain class certification based merely on the existence of a fiduciary relationship between Callan and the Federal-Mogul plan; rather, plaintiff must establish that the Callan/Federal-Mogul plan relationship is representative of the relationship that Callan has with the other plans in the putative class.

Callan's arrangement with the Federal-Mogul plan was unique, however.  Of Callan's 138 ERISA clients between 1998 and 2006, the Federal-Mogul plan was the *only* plan in which Callan accepted an appointment as a named fiduciary under ERISA.  *See* DeLuce Decl. ¶ 5. Furthermore, of Callan's other 74 ERISA clients that also used BNY ConvergEx during that period, only four had contracts that included language suggesting that Callan assumed any fiduciary responsibilities at all.  *See id.* ¶ 6.

By contrast, no other contract with a common client refers to fiduciary status.  *See id.* ¶ 7. Indeed, Callan's standard contract during the class period stated that the plan sponsor would "retain and exercise all decision-making authority with respect to the management and administration of the retirement plan(s)," and expressly divested Callan of any "authority or responsibility to manage or in any way direct the investment of any assets that are the subject of Callan's consulting services."  *Id.*  Under such contracts, fiduciary status not only can not be assumed, but is explicitly disclaimed; in such circumstances, courts generally will not read fiduciary duties into the contract.  *See, e.g.*, *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003) ("A person should not be attributed fiduciary status under ERISA and held accountable for the performance of the strict responsibilities required of him in that role if he is not clearly aware of his status as a fiduciary.").

Therefore, while the fiduciary relationship between Callan and the Federal-Mogul plan was written into the contract itself in effect between November 1998 and June 2001, that relationship can only be established for other plans on an individualized, fact-specific basis, if at all.  Under such circumstances, plaintiff—as a plan participant in the Federal-Mogul plan—is not subject to the same defenses that are applicable to other clients, and therefore, his claims on

behalf of the Plan are hardly typical of those of the other Plans in the putative class.  *See, e.g.*, *Robinson*, 267 F.3d at 155.

> (b)    Plaintiff Cannot Provide Class-Wide Proof Of Reliance On Callan's Alleged Misrepresentations.

Courts have also routinely denied class certification for breach of fiduciary duty claims under ERISA because plaintiff has failed to provide class-wide proof of reliance on alleged misrepresentations.  *See, e.g.*, *Tootle v. Arinc, Inc.*, 222 F.R.D. 88, 97 (D. Md. 2004) (commonality and typicality lacking where breach of fiduciary duty claims would involve "an individualized showing regarding each plaintiff's acquisition of information . . . and his reliance on that information"); *Thomas v. Aris Corp. of Am.*, 219 F.R.D. 338, 342 (M.D. Pa. 2003) (holding that individualized determinations defeated class certification because "a fiduciary may not be liable for the breach of a fiduciary duty imposed by ERISA if the fiduciary demonstrates that the plan participant did not rely to his or her detriment upon the violation"); *cf. In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 628 (E.D. Tex. 2004) (noting that misrepresentation claims "require[] individual determinations of materiality and reliance," which "result from differing individualized determinations, which prevent individual adjudications from being dispositive of other class members' interests"), *vacated and remanded by Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007) (noting that typicality requirement "cannot be waved away by artful characterization" of the claims at a higher level of generality).

For example, in *Sprague*, one of the leading appellate cases on point, the Sixth Circuit held that the district court abused its discretion by certifying a class action under ERISA brought by early retirees who alleged that General Motors had induced them to retire by misrepresenting its health coverage.  The court of appeals reasoned that certification should have been denied because each plaintiff's claim "depended on [that] individual's particular interactions with GM."

133 F.3d at 399.  Indeed, each retiree's claim would "require[] proof of what statements were made to a particular person, how the person interpreted those statements, and whether the person justifiably relied on the statements to his detriment."  *Id.* at 398.  Therefore, the Sixth Circuit concluded that plaintiffs' claims were "inappropriate for class treatment."  *See id.*

In this same vein, the Second Circuit explained in *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002), that "liability for fraudulent misrepresentations cannot be established simply by proof of a central, coordinated scheme."  Instead, "to recover for a defendant's fraudulent conduct, even if that fraud is the result of a common course of conduct, each plaintiff must prove that he or she personally received a material misrepresentation, and that his or her reliance on this misrepresentation was the proximate cause of his or her loss."  *Id.*

Accordingly, to proceed as a class action, based on his theory of the case, plaintiff must establish that each plan that he seeks to include in the putative class ***relied*** on an alleged misrepresentation made by Callan.  *See Sprague*, 133 F.3d at 398-99.  The existence of the contingency compensation arrangement must also have been material to the plan's decision to use BNY ConvergEx; *i.e.*, it must be true that the plan would not have chosen BNY ConvergEx if the partly contingent nature of the compensation arrangement had been disclosed.  Plaintiff has provided no such class-wide evidence of reliance here.  Indeed, plaintiff has even failed to provide any evidence of reliance with respect to the Federal-Mogul plan.  And the evidence of record indicates that the disclosure was not material.  The Deluxe Corporation selected BNY ConvergEx after Callan had fully disclosed the contingent aspects of the compensation arrangement under the Services Agreement.  *See supra*, p. 39.  In addition, even in the aftermath of Callan's amendment of its Form ADV Part II, only three common clients stopped using the services of BNY ConvergEx, further indicating that there was no reliance.  Schroth Decl. ¶ 14.

47

**D.    The Putative Class Is Not Certifiable Under Any Subdivision Of Rule 23(b)**.

### 1.    *A Class Should Not Be Certified Under Rule 23(b)(1).*

Besides failing to satisfy the requirements of Rule 23(a), plaintiff is also unable to demonstrate that his putative class falls within any of the categories of class actions listed in Rule 23(b).  Turning first to the two possibilities presented by Rule 23(b)(1), plaintiff is unable to show that, under Rule 23(b)(1)(A), separate actions would result in incompatible standards of conduct for the defendants.  Plaintiff primarily seeks money damages, and the relationships that Callan and the BNY Defendants had with their various clients differed from plan to plan, making individualized determinations appropriate.  Plaintiff's putative class also does not satisfy the narrow criteria for certification under Rule 23(b)(1)(B), because there is no danger of prejudice to plaintiff from denying class treatment and no allegation that a "limited fund" situation exists in this case.

(a)    Separate Lawsuits Will Not Result In Incompatible Standards Of Conduct For Defendants.

Rule 23(b)(1)(A) allows certification of a class if "the prosecution of separate actions . . . would create a risk of . . . inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class."  Rule 23(b)(1)(A).  Certification under this provision is appropriate only where separate actions would prejudice the defendants.  *See In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004).  While "[c]ourts are still struggling to develop guidelines governing the scope of Rule 23(b)(1)(A)," *In re Simon II Litig.*, 407 F.3d 125, 133 n.6 (2d Cir. 2005) (internal quotation marks and citation omitted), the Supreme Court has recognized that Rule 23(b)(1)(A) is focused on cases, unlike here, "where the [defendant] is obliged by law to treat the members of the class alike . . . or where the [defendant] must treat all

alike as a matter of practical necessity." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) .  Rule 23(b)(1)(A) is not meant to apply "where the risk of inconsistent results in individual actions is merely the possibility that the defendants will prevail in some cases and not in others." *In re "Agent Orange" Prod. Liab. Litig*., 100 F.R.D. 718, 724-25 (E.D.N.Y. 1983) (citation omitted), *aff'd in part and rev'd in part on other grounds*, *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987).

Separate lawsuits brought by each of the ERISA plans included in plaintiff's proposed class would not have the risk of resulting in incompatible standards of conduct for defendants. Each plan entered into a separate consulting agreement with Callan and a separate commission recapture agreement with BNY ConvergEx.  Each of those contracts was separately negotiated, *see* Schroth Decl. ¶ 4, and the financial terms often vary significantly.  *Id.* ¶¶ 5-7.  Among the individualized issues that the Court would need to evaluate, on a plan-by-plan basis, in determining defendants' liability to each plan that plaintiff seeks to include in his proposed class include:

    (i)      whether Callan served as an "fiduciary" to that plan;

    (ii)     whether the plan suffered any losses;

    (iii)    whether any such losses were caused by any alleged misrepresentations by defendants;

    (iv)    whether the plan in fact relied on any alleged misrepresentations in entering into its contracts with Callan or its unique commission recapture agreements with BNY ConvergEx;

    (v)     whether any such alleged misrepresentations were material;

    (vi)    whether the BNY Defendants received reasonable compensation from the plan for performing necessary brokerage services on behalf of the plan and its participants; and

    (vii)   whether the BNY Defendants, in fact, hold any property belonging to that plan that could be subject to an order of restitution or disgorgement.

The liability of Callan and the BNY Defendants to any particular ERISA plan therefore would overwhelmingly depend on evidence unique to the dealings between Callan and the BNY Defendants, on the one hand, and the individual ERISA plan, on the other. There is little risk of incompatible adjudications were the Court to deny plaintiff's motion to certify the proposed class. *See Spann v. AOL Time Warner,* 219 F.R.D. 307, 321 (S.D.N.Y. 2003) (declining to certify class under Rule 23(b)(1)(A) where claims of individual class members "would entail an individualized inquiry and could result in differentiated rulings").[17]

> (b)     Adjudication Of The Rights Of One ERISA Plan Would
>          Not Be Dispositive Of The Rights Of Any Other ERISA
>          Plan

Certification is also not appropriate under Rule 23(b)(1)(B). In contrast to Rule 23(b)(1)(A), which focuses on possible prejudice to defendants, "Rule 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. at 453 (quoting *In re Ikon Office Solutions, Inc. Secs. Litig.*, 191 F.R.D. 457, 466 (E. D. Pa. 2000)). Certification under Rule 23(b)(1)(B) has traditionally been limited to classic situations of undisputed common interest or division of a single pre-existing fund or assets, such as (i) suits involving multiple claimants to fixed sums, (ii) shareholder actions to force payment of a dividend or establish other shareholder right, and (iii) suits by investors to stop a company's management from squandering corporate assets. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834-35 (1999).

---

[17]  It bears emphasis that Rule 23(b)(1)(A) was designed to protect the interests of the party ***opposing*** class certification—in this case, Callan and the BNY Defendants. Rather than seek protection through Rule 23(b)(1)(A), all the defendants here oppose plaintiff's class certification motion, a fact that "indicates that that provision is inapposite here." *Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 354 (D.N.J. 1997).

Plaintiff argues that Rule 23(b)(1)(B) is "tailor-made" for cases involving allegations of breach of ERISA fiduciary obligations because an action under 29 U.S.C. § 1132(a)(2) is brought in a representative capacity on behalf of a pension plan as a whole. Pl.'s Mem. 17-18. But plaintiff's argument misses the point. This case does not fit within the classic Rule 23(b)(1)(B) paradigm of a "limited fund" lawsuit in which there are multiple claimants to a fixed amount of assets, thereby necessitating class treatment to ensure that unnamed class members are not deprived of their fair share of the available assets. *See Trautz v. Weisman*, 846 F. Supp. 1160, 1169 (S.D.N.Y. 1994) (The "paradigm Rule 23(b)(1)(B) case is one in which there are multiple claimants to a limited fund . . . and there is a risk that if litigants are allowed to proceed on an individual basis those who sue first will deplete the fund and leave nothing for latecomers.") (internal quotation marks and citation omitted). Plaintiff makes no argument that defendants lack the financial wherewithal to fund any monetary judgment that might be rendered against them.

The cases cited by plaintiff in support of certification under Rule 23(b)(1)(A) or Rule 23(b)(1)(B) do not bear any resemblance to the alleged facts here. Each of those cases involved a suit brought by a participant on behalf of either a single plan or affiliated plans of the same employer, and in none of the cases did the plaintiff allege that the defendants had separate communications with each plan participant. *In re CMS Energy ERISA Litig*., 225 F.R.D. 539, 545 (E.D. Mich. 2004) ("this is not a case where defendants are alleged to have had individualized communications with a participant") (quoting *Rankin v. Rots*, 220 F.R.D. 511, 523 (E.D. Mich. 2004) (ERISA claims brought on behalf of employee benefit plan of Kmart Corp.)); *Kolar v. Rite Aid Corp*., Civ. A. 01-1229, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 2003) (holding that "'inconsistent or varying adjudications' would be intolerable for ***the employees of***

*the same employee benefit plans*") (emphasis added); *Westman v. Textron, Inc.*, 151 F.R.D. 229 (D. Conn. 1993) (certification of class consisting of participants in single plan).

In contrast, numerous cases have recognized that a class may not be certified under Rule 23(b)(1) where the members of the proposed class, like the many plans plaintiff seeks to include in his putative class, would have to separately prove individual issues of reliance, causation, and loss. *See, e.g.*, *Lively v. Dynegy, Inc.*, No. 05-CV-00063, 2007 WL 685861, at *16 (S.D. Ill. Mar. 2, 2007) (denying class certification under Rule 23(b)(1) and 23(b)(2) because ERISA breach of fiduciary duty claim "raises issues of individual reliance on alleged misrepresentations by Plan fiduciaries"); *Nelson v. IPALCO Enters., Inc.*, No. IPO2-477CHK, 2003 WL 23101792, at *10-11 (S.D. Ind. Sept. 30, 2003) (holding that class certification not appropriate under Rule 23(b)(1) with respect to ERISA breach of fiduciary duty claim in light of individual issues of reliance and causation).

## 2. A Class Should Not Be Certified Under Rule 23(b)(2).

Plaintiff's argument that certification would be proper under Rule 23(b)(2) is similarly unavailing. That provision permits certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2), which is available for a class that seeks primarily class-wide declaratory and injunctive relief, is intended for circumstances where "broad, class-wide injunctive or declaratory relief is *necessary* to redress a group-wide injury." *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 162 (2d Cir. 2001) (emphasis added).

Where, as here, a plaintiff seeks both injunctive and monetary relief, a district court must consider "'the relative importance of the remedies sought, given all of the facts and circumstances of the case.'" *Presbyterian Church of Sudan*, 226 F.R.D. at 467 (citation

omitted). The Second Circuit has emphasized that before granting Rule 23(b)(2) certification, a district court should, "at a minimum," make certain "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Robinson*, 267 F.3d at 164. The district court may order certification under Rule 23(b)(2) only where "'the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed.'" *Id*. "Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery." *Id.* (citing *In re Sch. Asbestos Litig*., 789 F.2d 996, 1008 (3d Cir. 1986)).

Claims for monetary recovery, including requests for disgorgement or restitution, are typically not appropriate for class certification under Rule 23(b)(2). *See In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, 146 (2d Cir. 2001) ("Certification under Rule 23(b)(2) is not appropriate . . . in cases in which the appropriate final relief relates exclusively or predominantly to money damages.") (internal quotation marks omitted). Because such claims "require judicial inquiry into the particularized merits of each individual plaintiff's claim," certification under Rule 23(b)(2) is improper. *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 580 (7th Cir. 2000). That is the case here.

(a)    The Monetary Relief Sought By Plaintiff Overwhelms His
Requested Injunctive Relief.

At bottom, plaintiff seeks a monetary recovery in this case. The prayer for relief seeks (i) an order compelling Callan "to restore all losses to the Pension Plan and other members of the putative class;" and (ii) an order compelling Defendants "to disgorge all fees or other

53

compensation received . . . in connection with transactions involving the Pension Plan and other members of the putative class."[18]  Thus, if plaintiff's suit were certified as a class action, each ERISA pension plan would be seeking as a monetary recovery "all losses" it purportedly suffered as a result of the financial arrangement between Callan and the BNY Defendants, as well as the "disgorgement" of all fees and other compensation that ERISA plan paid to Callan and the BNY Defendants.

As discussed above, such claims for monetary relief would be subject to individualized facts unique to each ERISA plan.  On a plan-by-plan basis, the parties would need to present evidence as to whether Callan was a fiduciary to each plan; whether either Callan or the BNY Defendants made any oral or written misrepresentations to each plan; whether each plan suffered losses caused by any such alleged misrepresentations; and whether BNY ConvergEx received reasonable compensation in light of the necessary brokerage services it provided to each plan. These individualized claims for monetary relief would overwhelm any claims for declaratory and injunctive relief that are purportedly common to the proposed class.  *See Langbecker*, 476 F.3d at 317 (reversing district court's certification under Rule 23(b)(2) where resolution of plaintiffs' claims would involve "complex individualized determinations" with respect to purported breach of fiduciary duties and plaintiffs' individual releases of claims).

---

[18]  Plaintiff also seeks, in addition to the foregoing requests of monetary relief, such "other appropriate equitable monetary relief against Defendants."  Compl. Part VIII, at ¶ 7.

(b)     Plaintiff's Requested Injunctive Relief Is Either Moot Or
        Not Appropriate For Class Action Resolution.

Although plaintiff has tacked on a number of requests for injunctive and declaratory

relief in his complaint, those requests are either moot or not appropriate for resolution via a class

action.

Plaintiff's request for an injunction "enjoin[ing] Defendants collectively from any further

violations of their ERISA fiduciary responsibilities, obligations, and duties" is moot.  Compl.

Part VIII, at ¶ 10.  First, Callan amended the statement in its Form ADV Part II that plaintiff

alleged in his complaint was misleading.  DeLuce Decl. ¶ 12.  Second, the Services Agreement

(pursuant to which the BNY Defendants allegedly made annual payments to Callan) terminated

in January 2007.  Springer Decl. ¶ 10.  Plaintiff does not allege that the BNY Defendants have

made any improper payments to Callan since late 2006.  In short, even accepting plaintiff's

allegations, there are no conceivable ongoing violations of ERISA that could be the subject of an

injunctive order.  *See Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 802 (S.D. Ohio

2003) (declining to certify class under Rule 23(b)(2) because harm was not ongoing and

divergent interests among class members).

Plaintiff's request for a declaration that Callan and the BNY Defendants violated their

obligations under ERISA also does not warrant class certification under Rule 23(b)(2).  It is well-

established that "an action seeking a declaration concerning defendant's conduct that appears

designed simply to lay the basis for a damage award rather than injunctive relief [does] not

qualify under Rule 23(b)(2)."  7A Charles Alan Wright et al., Federal Practice and Procedure

§ 1775 (3d ed. 2005).  As the requested declaratory relief would merely declare rights

establishing a basis for a possible monetary recovery against defendants, Rule 23(b)(2)

certification is unavailable.  *See Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 18 (2d Cir.

2003) (Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages").

Nor can plaintiff suggest that injunctive relief would predominate in this lawsuit because his prayer for relief includes a request for an order "permanent[ly] remov[ing] . . . Defendants from any positions of trust with respect to the Pension Plan ***and other members of the putative class***." Compl., Part VIII, at ¶ 8 (emphasis added). Class certification under Rule 23(b)(2) requires that the proposed class be cohesive. *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998). As an initial matter, the Federal-Mogul plan is no longer a contract client of Callan and no longer does business with BNY ConvergEx and therefore injunctive relief could not remedy any alleged injury that plaintiff or the Plan may have suffered. *See supra*, n. 9. Because plaintiff could not bring an action for injunctive relief on behalf of his own plan, he cannot certify a class action under Rule 23(b)(2) to seek the same relief on behalf of other plans. *See* Part II.B. Indeed, allowing plaintiff to sue for injunctive relief to remove Callan as a consultant or BNY ConvergEx as the broker to other plans would invade the prerogative of the fiduciaries of those plans to decide who will serve as their service providers. *Cf. Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991) (association may not sue derivatively on behalf of its members "when conflicts of interest among members of the association require that the members must join the suit individually in order to protect their own interests").

The cases cited by plaintiff in support of Rule 23(b)(2) certification are inapposite. In each of those cases, the court certified a class consisting of participants in a single plan. *See Amara v. CIGNA Corp.*, No. 01 Civ. 2361, 2002 WL 31993224 (D. Conn. Dec. 20, 2002) (class certified consisted of all former and current CIGNA employees who participated in CIGNA

56

Pension Plan); *LaFlamme v. Carpenters Local # 370 Pension Plan*, 212 F.R.D. 448, 456-57

(N.D.N.Y. 2003) (class certified consisted of pension plan participants in union pension plan).

None of those cases confronted the prospect that the vast majority of class members would have

no interest in obtaining the injunctive relief sought by plaintiff.  That, however, is precisely the

case here:  Even in the aftermath of Callan's amendment of its Form ADV Part II, the

overwhelming number of ERISA plans plaintiff seeks to include in his proposed class continued

to use the brokerage services of BNY ConvergEx without change.  Schroth Decl. ¶ 14.[19]

### 3.    A Class Should Not Be Certified Under Rule 23(b)(3).

Finally, Rule 23(b)(3) does not provide a  basis for class certification in this case.  Under

Rule 23(b)(3), plaintiff must demonstrate both that "the questions of law or fact common to the

members of the class predominate over any questions affecting only individual members," and

that "a class action is superior to other available methods for the fair and efficient adjudication of

the controversy.  Fed. R. Civ. P. 23(b)(3).  As the Supreme Court explained in *Amchem*

---

[19]    The absence of any unity of interest among the absent class members provides another powerful reason for the denial of class certification in this case.  Neither Rule 23(b)(1) nor Rule 23(b)(2) provides any mechanism for an absent class member to opt out of the class action lawsuit.  *See Spann v. AOL Time Warner*, 219 F.R.D. at 322 n.12; *In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816 (DLC), 2004 WL 2338151, at *8 (S.D.N.Y. Oct. 18, 2004).  *See also Barnes*, 161 F.3d at 142-43 ("Indeed, a (b)(2) class may require more cohesiveness than a (b)(3) class . . . because in a (b)(2) action, unnamed members are bound by the action without the opportunity to opt out.").  As noted above, plaintiff seeks the permanent removal of Callan and BNY ConvergEx from a position of trust with any of the common ERISA clients that would be included in his proposed class.  Yet there has been no showing that any of these ERISA plans seek such a drastic remedy.  If plaintiff's proposed class were certified, unnamed ERISA plans would be bound by the action without the opportunity to withdraw or to seek relief more appropriate for their individual circumstances.  It would be unjust to certify a large class of ERISA pension plans, without a right to opt-out, where there is no indication of any unity of interest among such plans for the proposed injunctive relief.  Courts have recognized that where, as here, the plaintiff's principal remedy is a monetary recovery, each class member should have an opportunity to opt out of the class action.  *See, e.g., Lemon*, 216 F.3d at 580.

*Products*, the "predominance" and "superiority" requirements were added to Rule 23 because "the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" 521 U.S. at 615.

Rule 23(b)(3)'s requirement that "the questions of law or fact common to the members of the class predominate" is much more stringent than the commonality requirement of Rule 23(a). *Id.* at 623-24 ("Even if Rule 23(a)'s commonality requirement may be satisfied[,] the predominance criterion [of Rule 23(b)(3)] is far more demanding."). A common course of conduct by the defendant is insufficient to establish predominance. *See, e.g., Moore*, 306 F.3d at 1255. Rather, a plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks and citation omitted). Plaintiff here has not done so.

(a)    Individual Issues Predominate Over Common Issues.

If plaintiff's proposed class were certified, this Court would still need to adjudicate on a plan-by-plan basis each ERISA plan's claims based on the unique facts and circumstances relating to each plan's relationship with Callan and the BNY Defendants.

To prevail on its ERISA Section 404 breach of fiduciary duty claim, each plan would need to establish that Callan performed fiduciary services for the plan, that the plan relied on the alleged misrepresentation by Callan regarding the fixed nature of the payments it received from the BNY Defendants, that any such misrepresentation was material, and that the plan suffered losses that were caused by the defendants' conduct. *See supra*, Part II.C.2. Numerous courts

have declined to certify a class where, as here, the plaintiff's misrepresentation claim involved issues of individual reliance and materiality. *See, e.g., Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.,* 319 F.3d 205, 219 (5th Cir. 2003) ("cases that involve individual reliance fail the predominance test"); *In re Elec. Data Sys. Corp. ERISA Litig.,* 224 F.R.D. at 629-31 (declining certification under Rule 23(b)(3) where plaintiff's ERISA Section 404 claim raised individual issues of reliance and materiality); *Andrews v. AT&T*, 95 F.3d 1014, 1025 (11th Cir. 1996) (holding that plaintiffs had to show, on an individual basis, that they relied on the misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damages); *Rothwell v. Chubb Life Ins. Co. of Am.*, 191 F.R.D. 25, 31 (D.N.H. 1998) ("majority view [is] that certification generally is inappropriate when individual reliance is an issue").

The same problems would arise from certification of plaintiff's Section 406 prohibited transaction claim. If plaintiff's Section 406 claim were to survive defendants' motion to dismiss, the BNY Defendants intend to defend such claims by relying on the exemption from liability set forth in ERISA Section 408. That section provides that "[t]he prohibitions provided in this section [prohibited transactions] of this title shall not apply to . . . [the c]ontracting or making reasonable arrangements with a party in interest for . . . legal, accounting or other services necessary for the establishment or operation of the plan." 29 U.S.C. § 1108(b)(1)-(2). As a third party brokerage providing services necessary to the operation of the pension plans advised by Callan, the BNY Defendants were entitled to receive reasonable compensation for their services. 29 U.S.C. § 1108(b)(2). *See Harley*, 284 F.3d at 909 (recognizing that Section 1108(c)(2), of similar scope as the exemption provided in Section 1108(b)(2), "sensibly insulates the fiduciary from liability if the compensation paid was reasonable").

Whether BNY ConvergEx received reasonable compensation in exchange for its brokerage services will require this Court to evaluate evidence relating to the commission recapture rates BNY ConvergEx charged each ERISA plan and the value of the services BNY ConvergEx provided. *See New York State Teamsters Council Health & Hosp. Fund v. DePerno*, 18 F.3d 179, 183 (2d Cir. 1994). This inquiry, by necessity, must be conducted on a plan-by-plan basis because each ERISA plan entered into separate contracts with BNY ConvergEx, often with varying commission rates. Schroth Decl. ¶¶ 5-7. Each plan made its own investment decisions and entered into securities transactions unique to its portfolio, often with the assistance of investment managers, who decided whether to use BNY ConvergEx or a different brokerage firm to process their transactions. *See, e.g.*, Schroth Decl. ¶ 7, Ex. F. Each plan had access to contemporaneous information about the commissions it was paying to BNY ConvergEx, *see* Schroth Decl. ¶ 13, and could have stopped using BNY ConvergEx at any time. Finally, the terms on which BNY ConvergEx executed each plan's securities transactions—and whether such transactions were executed consistent with the principles of best execution—will need to be individually determined.

The same holds true for Callan. Callan negotiated different terms in its consulting contracts with different plans, and therefore, whether a client received fair value for its services would necessarily involve a plan-by-plan inquiry. These individual determinations are inappropriate for class treatment.

> (b)    A Class Action Is Not Superior To Individual Lawsuits
>          Brought By Each ERISA Plan.

The same factors that support the conclusion that common issues do not predominate also preclude a finding, under Rule 23(b)(3), "that a class [] is superior to other available methods for

fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[20] Among the

factors a court should consider are the class members' interests "in individually controlling the

prosecution or defense of separate actions" and "the difficulties likely [] in management of a

class action." *See Amchem Prods.*, 521 U.S. at 615-16. Courts have recognized that class

actions are not suited to litigation "heavily dependent on questions requiring individualized

proof." *Spann*, 219 F.R.D. at 324.

The putative class would involve the claims of 75 ERISA plans spanning an eight-year

time period from 1998 through 2006. The relevant evidence in fact would pre-date 1998,

because at least 55 of the 75 ERISA plans first entered into their commission contracts with

Alpha, prior to BNY ConvergEx's acquisition in November 1998. Springer Decl. Ex. A. As

noted above, defendants' liability would turn on evidence unique to each plan and would require

consideration, on a plan-by-plan basis, of various individual issues, including (a) Callan's

fiduciary status, if any, with respect to each plan; (b) each plan's reliance on any alleged

misrepresentations made by Defendants; and (c) any losses suffered by each plan. *See id.* at 323

(holding that requirements of Rule 23(b)(3) were not met where plaintiff failed to show that it

would be "unnecessary to conduct highly individualized fact-intensive inquiries in the

---

[20] Under Rule 23(b)(3), four nonexclusive factors are pertinent to the superiority determination:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

circumstances" surrounding each individual's entitlement to recover under ERISA). A class action would not result in either a fair or efficient use of judicial resources.[21]

Once again, the cases upon which plaintiff relies all involved single plans with a single employer, where management of the class was not, as here, problematic. In *O'Neil v. Gencorp., Inc.*, No. 88-8498, 1991 WL 33316, at *5 (S.D.N.Y. Mar. 1, 1991), the proposed class consisted of 49 employees of RKO General, Inc., each of whom was a member of RKO's Stock Incentive Employment Plan. In holding that the plaintiff had met the requirements of Rule 23(b)(3), the court noted that the case raised a discrete issue of whether certain compensation paid to the RKO employees should be taken into account in determining their pension entitlement. Similarly inapposite is *Babcock v. Computer Assocs., Int'l, Inc.*, 212 F.R.D. 126, 131-32 (E.D.N.Y. 2003), in which the proposed plan encompassed participants in their employer's benefits plan who claimed that the employer and trustees failed to properly administer the plan by not diversifying the plan's investments.

Because individual issues unique to each ERISA plan predominate over any common issues, and because a class action would not be a superior vehicle for the resolution of any ERISA claims that each ERISA plan might assert against Callan or the BNY Defendants, plaintiff's proposed class should not be certified under Rule 23(b)(3).

---

[21] Plaintiff has made no attempt to explain how the Court could manage the vast number of mini-trials that would necessarily result from class certification. Numerous cases within the Second Circuit have held that the necessity of mini-trials weighs against class certification. *See, e.g., Moore v. PaineWebber, Inc.*, 306 F.3d at 1253; *Dunnigan v. Metropolitan Life Ins.*, 214 F.R.D. 128, 142 (S.D.N.Y. 2003); *Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*, 211 F.R.D. 228, 235 (S.D.N.Y. 2002); *Grandon v. Merrill Lynch & Co., Inc.*, No. 95 Civ. 10742 (SWK), 2003 WL 22118979, at *10 (S.D.N.Y. Sept. 13, 2003).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that plaintiff's complaint be dismissed or that plaintiff's motion for class certification be denied.

Respectfully submitted,

DATE: March 14, 2008

William J. Kilberg (WK-0792)
Paul Blankenstein (PB-8583)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
*Counsel for Callan Associates, Inc.*

Thomas A. Arena (TA-4613)
Dorothy Heyl (DH-1601)
MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
*Counsel for BNY Defendants*

63