# Exhibit B

Christopher M. Springer Declaration

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
ALBERT T. BEANE, JR., individually and on
behalf of all others similarly situated,

                  Plaintiff,

      v.

THE BANK OF NEW YORK MELLON,         07-cv-09444 (RMB) (GWG)
BNY CONVERGEX EXECUTION
SOLUTIONS LLC, and CALLAN
ASSOCIATES, INC.,

                  Defendants.
------------------------------------------------------------x

## DECLARATION OF CHRISTOPHER M. SPRINGER

        Christopher M. Springer, pursuant to 28 U.S.C. § 1746, hereby declares as follow:

        1.     Since in or about May 2000, I have been employed as the Chief Financial Officer of BNY ConvergEx Execution Solutions LLC (or one of its predecessor entities). From in or about November 1997 through in or about April 2000, I was employed as the Controller of BNY ESI & Co. Except where I state that this declaration is based upon my information and belief, I make this declaration based on my personal knowledge and my review of pertinent documents which are referenced below.

        2.     On or about November 1, 1998, pursuant to an Asset Purchase Agreement dated September 9, 1998 (the "Purchase Agreement"), BNY Brokerage agreed to purchase, among other assets, all of the rights of Alpha Management, Inc. ("Alpha") in brokerage agreements with Alpha's plan sponsor clients (such as ERISA pension plans) and investment

managers. (A true and correct copy of the Purchase Agreement, without schedules, is attached hereto as Exhibit A).

3. Attached to the Purchase Agreement was a disclosure schedule listing the names of all pension plan clients and investment managers for which Alpha provided brokerage services during the period from January 1, 1996 through July 31, 1998. (A true and correct copy of Schedule 3.14(a) of the Purchase Agreement is attached hereto as Exhibit B).

4. Contemporaneously with the execution of the Purchase Agreement, Callan Associates, Inc. ("Callan"), BNY Brokerage, and The Bank of New York Company, Inc. entered into a Services Agreement dated September 9, 1998 (the "Services Agreement"). The Services Agreement provided, among other things, that Callan would use its best efforts to introduce plan sponsor clients to BNY Brokerage. (A true and correct copy of the Services Agreement, without schedules, is attached hereto as Exhibit C).

5. Section 2.02 of the Services Agreement provided that, upon satisfaction of certain conditions set forth in Section 2.03(b), BNY Brokerage would pay an "Annual Services Fee" to Callan for each "Annual Period," which was determined to be the annual period from November 1, 1998 through October 31, 1999, and each successive twelve month period through October 31, 2006. The Annual Services Fee was to be comprised of three separate payments; the last of the annual payments (the "Third Payment") – which amounted to approximately 8% of the total Annual Services Fee – was contingent upon BNY Brokerage's satisfaction of a "Gross Commissions" threshold as set forth in Section 2.03(b)(ii) of the Services Agreement.

6. Under Section 2.03(b)(ii) of the Services Agreement, BNY was obligated to make the Third Payment to Callan if, for each Annual Period following the closing of the Services Agreement, BNY Brokerage received "Gross Commissions" in excess of a certain sum

2

specified in the Services Agreement. The Services Agreement defined "Gross Commissions" to mean, for any Annual Period, the aggregate commissions received by BNY Brokerage or one of its brokerage "Affiliates" derived from "Eligible Clients." The Services Agreement defined "Eligible Clients" to include certain ERISA and non-ERISA plans that were clients of Alpha or Callan between January 1, 1997 through November 1, 1998. The term "Affiliates" included any brokerage entity that was controlled by or under common control with BNY Brokerage. Pursuant to Section 2.03(b)(ii) of the Services Agreement, the parties agreed that, within five business days following the end of each Annual Period, BNY Brokerage would provide Callan with a computation of its Gross Commissions for the immediately preceding Annual Period.

       7.      BNY Brokerage performed a formal computation of its Gross Commissions for the first two Annual Periods following the closing of the Services Agreement. On November 8, 1999, I sent to Susan Taylor, a Senior Vice President of Callan, a calculation of the Gross Commissions for the Annual Period from November 1, 1998 through October 31, 1999. That calculation showed that BNY Brokerage had received Gross Commissions above the threshold specified in the Services Agreement. (A true and correct copy of the November 8, 1999 letter from Christopher M. Springer to Susan Taylor, with attachments, is attached hereto as Exhibit D). On December 15, 2000, I sent a calculation of the Gross Commissions for the Annual Period from November 1, 1999 through October 31, 2000. That calculation also showed that BNY Brokerage had received Gross Commissions above the threshold specified in the Services Agreement. (A true and correct copy of the December 15, 2000 letter from Christopher M. Springer to Susan Taylor, with attachments, is attached hereto as Exhibit E).

       8.      For the Annual Periods following October 31, 2000, BNY Brokerage did not perform a formal computation of the amount of its Gross Commissions received from

Eligible Clients. In the two prior Annual Periods, BNY Brokerage had substantially exceeded the Gross Commissions threshold. I considered it unnecessary to conduct a formal computation of BNY Brokerage's Gross Commissions for the Annual Periods following October 31, 2000 because I believed that the Gross Commissions for those periods also exceeded the threshold set forth in the Services Agreement.

9. For each Annual Period between November 1, 1998, and October 31, 2006, BNY Brokerage arranged to have the full Annual Services Fee paid to Callan. Specifically, for each such Annual Period, BNY Brokerage made the Third Payment that was contingent upon satisfaction of the Gross Commissions threshold.

10. Upon information and belief, I understand that on January 9, 2007, Callan and BNY ConvergEx Executions Solutions LLC terminated the Services Agreement by mutual consent pursuant to Section 6.01(a) thereunder. Upon information and belief, I have attached hereto as Exhibit F a true and correct copy of a January 9, 2007 letter from Ronald D. Peyton of Callan to Carey S. Pack, President of BNY ConvergEx Execution Solutions LLC, terminating the Services Agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 11, 2008

Christopher M. Springer

# Exhibit A

Asset Purchase Agreement
CA01356–01413

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit B

Schedule 3.14(a)
CA01457–01494

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit C

Services Agreement
CA01543–01579

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit D

Letters dated November 8, 1999 and Attachments
BNY–BEANE 0004735–0004902

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit E

Letter dated December 15, 2000 and Attachments
BNY–BEANE 0004635–0004730

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit F

Letter dated January 9, 2007
BNY–BEANE 0038947–0038948

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)