**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
ALBERT T. BEANE, JR., individually and on
behalf of all others similarly situated,

          Plaintiff,

      v.                                07-CV-0944 (RMB)

THE BANK OF NEW YORK MELLON,
BNY CONVERGEX EXECUTION
SOLUTIONS LLC and CALLAN
ASSOCIATES, INC.,

          Defendants.
--------------------------------------------------------x

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION**
**TO DISMISS AND REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO CERTIFY CLASS OF ERISA PLANS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

I.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS. ................... 1

   A.   Standard of Review. ............................................................... 1

   B.   Plaintiff Has Article III Standing. ................................................. 2

   C.   Plaintiff's Loss And Causation Allegations Pass Muster. ......................... 12

   D.   The Equitable Monetary Remedies That Plaintiff Seeks From BNY Defendants Are
        Available Against BNY Defendants. ............................................... 16

II.  THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR CLASS
     CERTIFICATION. ..................................................................... 18

   A.   Plaintiff Has Met His Burden On Fed. R. Civ. P. 23(a). .......................... 19

      1.   The Class Is Sufficiently Numerous. ........................................ 19

      2.   Plaintiff Has Satisfied The Elements Of Typicality And Commonality. ................. 20

   B.   Plaintiff Has Met His Burden On Fed. R. Civ. P. 23(b). .......................... 22

      1.   Defendants Fail To Defeat Certification Under Rule 23(b)(1). ................. 22

      2.   Class Certification Is Proper Under Subsection (b)(3). ....................... 24

## TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-154 (1972)........................... 14, 15, 16

*Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406, 1414 (9th Cir. 1988) ... 13

*Amara v. Cigna Corp.*, 534 F.Supp.2d 288, 339 (D. Conn. 2008) ................................. 15

*Amara v. Cigna Corp.*, No. 01-2361, 2002 WL 31993224 (D. Conn. Dec. 20, 2002)................ 15

*Amschwand v. Spherion Corp.*, No. 07-841.................................................................... 3

*Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 154 (1970).................................... 8

*Ballone v. Eastman Kodak Company*, 109 F.3d 117, 122 (2d Cir. 1997)..................................... 16

*Banyai v. Mazur*, No. 00-9806, 2007 WL 959066, *4-5 (S.D.N.Y.  Mar. 29, 2007)........... 2, 8, 19

*Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 150-52 (S.D.N.Y. 1996) ......................... 21

*Beck v. Levering*, 947 F.2d 639 (2d Cir. 1991)............................................................. 4

*Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955 (2007)............................................ 1

*Bennett v. Spear*, 520 U.S. 154, 164  (1997) ................................................................ 8

*Burke v. Kodak Retirement Income Plan,* 336 F.3d 103, 112 (2d Cir. 2003)............................... 15

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care L.L.C.*,
    433 F.3d 181 (2d Cir. 2005) ("*Central States I*") ............................................ passim

*Central States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care,*
    *L.L.C.*, 504 F.3d 229 (2d Cir. 2007) ("*Central States II*")..................................... 7,18

*Chemung Canal Trust Co. v. Sovran Bank*, 939 F.2d 12, 14 (2d Cir. 1991)................................. 9

*Chris-Craft Indus. Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir. 1973) ........................... 16

*Coan v. Kaufman*, 457 F.3d 250, 262-64 (2d Cir. 2006) ....................................... 18, 19

*Cress v. Wilson*, No. 06-2717, 2007 WL 1686687, at *10 (S.D.N.Y. June 6, 2007) .............. v, 18

*DeLuca v. Blue Cross Blue Shield of Mich.*, 475 F.Supp.2d 640, 643-45 (E.D. Mich. 2007).... 2, 8

*Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 88 (2d Cir. 2001) ......................... 14

*Diduck v. Kascycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992)....................... 14

ii

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) .................................. v, 18

*Fin. Inst. Ret. Fund v. Office of Thrift Supervision*, 766 F. Supp. 1302, 1309 (S.D.N.Y. 1991).... 6

*Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18 (2d Cir. 1996)................................................ 3

*Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003) ........................................................ 3

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir.

    2006) ......................................................................................................... 11

*Gollust v. Mendell,* 501 U.S. 115 (1991) ..................................................................... 4, 5, 7, 8

*Great-West Life & Annuity Ins. Co. v. Knudson*, 122 S.Ct. 708, 715 (2002) .............................. 16

*Gruby v. Brady*, 838 F. Supp. 820, 830 (S.D.N.Y. 1993)........................................................ 5, 19

*Harley v. Minn. Mining and Mfg. Co.*, 284 F.3d 901 (8th Cir. 2002) ............................................ 8

*Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 120 S.Ct. 2180, 2189 (2000) ......... 17

*Herman v. South Carolina Nat. Bank*, 140 F.3d 1413, 1421-22 (11th Cir. 1998)....................... 16

*Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003) ......................... 7, 8, 11

*In re Ikon Office Solutions*, 191 F.R.D. 457, 466 (E.D. Pa. 2000) ............................................. 24

*In re JDS Uniphase Corp. ERISA Litig.*, 03-04743 , 2005 WL 1662131, *13 (N.D. Cal. July 14,

    2005) ......................................................................................................... 15

*In re Medco Health Solutions, Inc., Pharmacy Benefits Mgmt. Litig.*, MDL – 1508 (S.D.N.Y.

    Aug. 10, 2006), ........................................................................................ 7, 9

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74 (S.D.N.Y. 2006) ............................................... 19

*In re Tyco Int'l, LTD*, No. 02-1335, 2006 WL 2349338, *6 (D.N.H. Aug. 15, 2006) .......... 15, 16

*In re Westar Energy, Inc., ERISA Litig.*, 2005 WL 2403832, at *11 (D. Kan. Sept. 29, 2005) ... 13

*Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)................................................................... 1

*IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1419 (9th Cir. 1997) ................................... 21

*Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) ............................................. 19

*LaScala v. Scrufari*, 479 F.3d 213, 221 (2d Cir. 2007)............................................................... 13

*LaScala v. Scrufari*, 96 F.Supp.2d 233, 238-39 (W.D.N.Y. 2000)............................................. 25

*Lowen v. Tower Asset Management Inc.*, 829 F.2d 1209, 1221 (2d Cir. 1987) .................... 13, 25

*Lowen v. Tower Asset Management Inc.*, 653 F.Supp. 1542, 1555 (S.D.N.Y. 1987) ................. 25

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) ............................................... 5

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)............................ 3, 10

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) .................................................. 17

*Metro-Goldwyn-Mayer, Inc. v. Ross*, 509 F.2d 930 (2d Cir. 1975).............................. 16

*Milbank, Tweed, Hadley, & McCoy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994) ........................ 14

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) .............................. 14

*Nauman v. Abbot Labs.*, No. 04- 7199, 2007 WL 1052478, at * (N.D. Ill. Apr. 3, 2007) ........... 15

*Nelson v. IPALCO Enters., Inc.*, No. 02-477, 2003 WL 23101792, at *10 (S.D. Ind. Sept. 30,
   2003) ........................................................................................... 23

*Ortiz v. Fireboard Corp.*, 527 U.S. 815, 834 (1999) .................................................. 24

*Pancotti v. Boehringer Ingelheim Pharm., Inc.*, No. 06-1674, 2007 WL 2071624, *4 (D. Conn.
   July 17, 2007)................................................................................. 15

*Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993), ........................... 8

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) ................... 1

*Richards v. Fleetboston Fin. Corp.*, 235 F.R.D. 165, 172 (D. Conn. 2006).................... 21

*Sereboff v. Mid Atlantic Medical Services, Inc.,* 126 S.Ct. 1869 (2006) ....................... 18

*Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998) .................... 12

*Spann v. AOL Time Warner*, 219 F.R.D. 307, 321 (S.D.N.Y. 2003)............................. 23

*Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 144-45 (2d Cir. 1999)........................ 3

*Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972) ........................... 5

*Union of Needletrades v. INS*, 336 F.3d 200, 210 (2d Cir. 2003)................................ 7

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
   454 U.S. 464, 497 (1982)..................................................................... 5

*Varity Corp. v. Howe*, 516 U.S. 489, 515  (1996) ...................................................... 2

*Veltri v. Building Serv. 32B-J Pension Fund,* 393 F.3d 318, 327 (2d Cir. 2004)............ 7

*Vill. of Elk Grove Vill. v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993)............................. 5

*Warth v. Seldin*, 422 U.S. 490, 514 (1975) ............................................................... 5

*Whitfield v. Tomasso*, 682 F.Supp.2d 1287, 1303, 1305 (E.D.N.Y. 1988).................... 16

iv

**Statutes**

15 U.S.C. § 78p(b) ....................................................................................................... 4

29 C.F.R. §2550.408b-2(e) ........................................................................................ 25

29 U.S.C. §§ 1109 ................................................................................................... 1,12

29 U.S.C. §§ 1132(a)(2), (a)(3) ........................................................................... passim

29 U.S.C. §1002(21)(A) ............................................................................................ 22

29 U.S.C. §1103(a) ............................................................................................... 8, 11

29 U.S.C. §1106(b)(3) .......................................................................................... 13, 25

29 U.S.C. §1108(b)(2) ............................................................................................... 24

29 U.S.C. §1132(a)(1)(B) ............................................................................................ 2

ERISA §403(a) ............................................................................................................ 8

ERISA §§404, 406 ....................................................................................................... 5

ERISA §406(b)(3) ................................................................................................. 13, 24

ERISA §408(b)(2) ................................................................................................. 24, 25

ERISA §409 ....................................................................................................... passim

ERISA §502 ............................................................................................................... 2

ERISA §§ 502(a)(1), (a)(2), (a)(3) ....................................................................... passim

**Rules**

Fed. R. Civ. P. 23(a),(b) ........................................................................................... 18

**Treatises**

1 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 2:6 n. 3
   (4th ed. 2002) ....................................................................................................... 18

Plaintiff Beane is a participant in the Federal-Mogul Corporation Pension Plan (the "Pension Plan").  He sues on behalf of the Plan, and a class of similarly situated plans, under ERISA §§502(a)(2), (a)(3), 29 U.S.C. §§1132(a)(2), (a)(3), for the relief provided in ERISA §§409 and 502(a)(3), 29 U.S.C. §§1109, 1132(a)(3).  He sues Callan Associates, Inc. ("Callan") for breaches of fiduciary duty and prohibited transactions, and BNY ConvergEx Execution Solutions LLC ("BNY Brokerage") and Bank of New York Mellon ("BNY") (collectively BNY Defendants) for participating in Callan's ERISA violations.  Defendants moved to dismiss Beane's complaint and opposed Beane's motion to certify a class of ERISA plans.  The Court should deny the motion to dismiss and grant Beane's class certification motion.

## I.       THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS.

All defendants argue that the Court should dismiss Beane's complaint because (1) he lacks standing under Article III, (2) he has failed to allege transaction causation, and (3) he has failed to allege a loss to the Plan.  BNY Defendants also argue that claims against them should be dismissed because Beane has not pleaded a claim for equitable restitution.

### A.       Standard of Review.

The Second Circuit said that the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955 (2007), does not require "a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."[1]  *Twombly* does not alter the rule that Beane's complaint must be construed "liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."[2]

---

[1] *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).
[2] *See Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007).

B.    **Plaintiff Has Article III Standing.**

Defendants' standing argument goes something like this.  The Pension Plan is a "defined benefit" plan, meaning that Beane, who has vested in his retirement benefit, is entitled to receive those benefits when he reaches retirement age.[3]  ERISA requires the plan sponsor to fund those benefits and make up any shortfalls in plan assets, so, the argument goes, Beane is not hurt when the plan loses money because his promised benefits have not been affected.  (*Id.* at 13-14.)  Thus, the argument concludes, even if defendants caused losses to the Pension Plan and violated ERISA, Beane has not been injured within the meaning of Article III.  (*Id.*)  This argument rests on a narrow view of Beane's injuries, fundamentally misperceives the nature of relief available under ERISA, and ignores the controlling authority.

Because the rulings in Article III ERISA cases depend in large measure on the nature of the ERISA suit, we begin there.[4]  ERISA provides for three core types of lawsuits:

- ***Suit by Participant for Plan Benefits.***  A participant can sue for benefits owed to him or to enforce or clarify rights under the terms of his plan.[5]  A suit for benefits is in the nature of a contract claim.[6]

- ***Suit by Participant or Fiduciary Against Fiduciary for Relief to the Plan.***  A participant or fiduciary can sue a fiduciary for the relief provided in ERISA §409.[7]  Section 409 says that a fiduciary whose breach of duty harms the plan is personally liable (1) to make good to the plan any losses resulting from the breach, and (2) to restore to the plan profits made by the fiduciary through the use of plan assets, and is (3) subject to other equitable or remedial relief as deemed

---

[3] Defendants' Joint Memorandum Of Law In Support Of Their Motion To Dismiss And In Opposition To Plaintiff's Motion To Certify Class Of ERISA Plans ("Defs.' Memo.") at 2.

[4] *See Banyai v. Mazur*, No. 00-9806, 2007 WL 959066, *4-5 (S.D.N.Y.  Mar. 29, 2007) (explaining the case law based on the interrelationship between Article III and ERISA's standing and remedial provisions); *DeLuca v. Blue Cross Blue Shield of Mich.*, 475 F.Supp.2d 640, 643-45 (E.D. Mich. 2007) (same).

[5] ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

[6] ERISA §502(a)(1)(B) also permits injunctive (enforce rights) and declaratory (clarify rights) relief.  Courts will not permit a claim under 502(a)(3) for essentially the same relief as (a)(1)(B) because (a)(3) is a "catch-all" provision that does not supplant other remedies.  *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

[7] ERISA §502(a)(2), 29 U.S.C. §1132(a)(2).

appropriate by the Court.[8]  A suit arising under ERISA §502(a)(2) is for relief to the plan, *i.e.*, not for individual relief.[9]

- **Suit by Participant Against Fiduciary or Non-fiduciary for Individual Relief; Suit by Participant or Fiduciary Against Non-Fiduciary for Relief to the Plan.** A participant or fiduciary can sue to (1) enjoin any act or practice that violates ERISA or the terms of the plan, or (2) to obtain other appropriate equitable relief.[10]  A suit by a participant under §502(a)(3) can be for individual relief against a fiduciary[11] or non-fiduciary,[12] or for plan relief against a non-fiduciary.[13] As to remedies, a case pending before the Supreme Court asks whether a participant can sue a fiduciary for individual compensatory relief under §502(a)(3).[14]  Section 502(a)(3) does not permit compensatory relief against a non-fiduciary.[15]  Monetary relief against a non-fiduciary in the form of equitable restitution is available, however, where the plaintiff shows that the non-fiduciary unjustly received a benefit from the plaintiff **or** the non-fiduciary holds funds or property that belong to the plaintiff.  *Id.*

Beane sues Callan under §502(a)(2) for relief to the Pension Plan.  Pursuant to §409, Beane asks that Callan make good any losses to the Plan, restore profits made by Callan by using Plan assets, disgorge fees paid by the Plan to Callan, and disgorge monies received by Callan from commissions collected by BNY Brokerage from Plan brokerage transactions.  As explained above, §502(a)(2) plainly authorizes Beane's suit on behalf of the Pension Plan and equally plainly the relief sought by Beane for the benefit of the Plan is relief permitted in §409.  Beane sues BNY Defendants under §502(a)(3) for relief to the Pension Plan.  Pursuant to §502(a)(3), Beane asks that BNY Defendants disgorge any commissions received by them from the Pension Plan and profits thereon arising from transactions involving Pension Plan assets.  As explained in part Part I.D, *infra*, Beane seeks equitable restitution for the Pension Plan, relief permitted under the precedent of the Supreme Court and the Second Circuit.

---

[8] ERISA §409, 29 U.S.C. §1109.

[9] *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134,140 (1985).

[10] ERISA §502(a)(3), 29 U.S.C. §1132(a)(3).

[11] 516 U.S. at 513.

[12] *Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18 (2d Cir. 1996).

[13] *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 144-45 (2d Cir. 1999).

[14] *See Amschwand v. Spherion Corp.,* No. 07-841.

[15] *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003).

This brings us to Art. III. Beane complains about two kinds of injuries to the Pension Plan, as he must to sue on behalf of the Plan: (1) losses to the Plan arising from defendants' violations of ERISA; and (2) defendants' violation of ERISA §§404 and 406 created for the protection of participant benefits and pension plan assets. Of course, Beane must have standing under Art. III even if he sues on behalf of the Plan. It is not the law, however, that Beane must demonstrate an out-of-pocket loss to himself to satisfy the injury requirement.[16]

In *Gollust v. Mendell,* 501 U.S. 115 (1991), the plaintiffs, shareholders and bondholders of the issuer, sued insiders for disgorgement of profits arising from short-swing trading profits. The Court held that the invasion of a statutorily created right coupled with an "attenuated" financial stake in the outcome of litigation was sufficient to support standing where Congress had explicitly conferred standing to sue. The Court considered both sets of plaintiffs standing under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), to sue on behalf of the issuer. *Id.* at 127. The Court held that the shareholder plaintiffs had a "personal stake" in the litigation even though their financial interest was "indirect" "since any recovery would inure only to the issuer's benefit" and even where their stock had been exchanged for stock in the issuer's new corporate parent. *Id.* The Court also held that the bondholder plaintiffs, too, had a financial interest (albeit "even more attenuated" than the shareholders' interest) in any potential recovery for the issuer because "any recovery by the issuer will increase the value of the bond only because the issuer may become a slightly better credit risk." *Id.* This stake was sufficient to confer constitutional standing. *Id.* at 126-27. *Gollust* fits this case to a tee.

Congress, via ERISA §§502(a)(2) and 502(a)(3), has explicitly authorized Beane to sue

---

[16] Defendants' argument that Beane's claims for injunctive relief are moot (Defs. Memo at 12 n.6) contradicts Second Circuit authority. *See Beck v. Levering*, 947 F.2d 639 (2d Cir. 1991) (A permanent injunction barring defendants from ever serving as fiduciaries or providing services to ERISA plans is available against those who engage in egregious self-dealing.).

and Beane's personal stake in the outcome of this lawsuit is just as compelling as those of the plaintiffs in *Gollust*. Beane, and the other participants in the Pension Plan, have an indivisible interest in the financial integrity of the trust that was established for their sole and exclusive benefit. Improper payments by or losses to the Pension Plan necessarily reduce the assets of that trust and increase the risk that Beane's vested retirement benefits will not be paid as promised, even if the risk is small.[17] Just as increasing the value and creditworthiness of the issuer gave shareholder and bondholders a personal financial stake in *Gollust*, restoring losses and disgorging fees and profits to the Plan will increase the likelihood that Beane's vested benefits will be paid.[18] Thus under *Gollust*, Beane has constitutional standing.

Moreover, an "injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."[19] Beane alleges that Callan violated ERISA §404, which requires fiduciaries to act prudently and for the exclusive benefit of plan participants, and ERISA §406, which *per se* prohibits self-dealing transactions by fiduciaries because of the high potential for abuse. Defendants' invasion of these statutory rights, Beane's rights to have a plan administered and managed according to ERISA, is sufficient injury by itself, even without actual or imminent pecuniary harm. So held the Second Circuit in *Financial Institutions Retirement Fund v. Office of Thrift Supervision*, 964 F.2d 142 (2d Cir. 1992) ("*FIRF*"). In *FIRF*, the trial court had reasoned as follows:

---

[17] *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 497 (1982) ("[T]he Constitution draws no distinction between injuries that are large, and those that are comparatively small.").

[18] *Cf. Gruby v. Brady*, 838 F. Supp. 820, 830 (S.D.N.Y. 1993) (restoration of plan losses would help ensure that benefits are paid); *see also Vill. of Elk Grove Vill. v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993) ("[E]ven a small probability of injury is sufficient to create a case or controversy-to take a suit out of the category of the hypothetical-provided of course that the relief sought would, if granted, reduce the probability." (citation omitted)).

[19] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) (quotations omitted); *Warth v. Seldin*, 422 U.S. 490, 514 (1975); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972).

> [T]he employees contend that one has standing to assert a violation of ERISA's fiduciary obligations even if the plaintiff will not experience personal or pecuniary injury. While it is true that ERISA permits a civil action by a beneficiary to enjoin any act or practice which violates either ERISA or the pension plan itself, 29 U.S.C. §1132(a)(3), the cases cited by the employees generally involve situations where the plan's assets are somehow at risk. As noted, the potential for such losses in the case at bar is, at most, extremely remote. Thus, we find that the employees lack standing to assert these claims of breach of fiduciary duty.[20]

The Second Circuit saw things differently. It noted that the injury requirement can be conferred by statute[21] and, addressing the holding of the district court, it stated:

> The crucial issue in this case then is whether the intervening employee-participants have pleaded a violation of their ERISA-created rights sufficient to satisfy Article III's injury requirement. The district court held that they did not, intimating that injuries cognizable under ERISA must entail at least some risk to plan assets. *See* 766 F. Supp. at 1309 (participants lack standing to challenge [Surplus] allocation because potential risk of loss to plan assets from this decision is remote). We think the statute casts a wider net.

*Id*. Thus, the *FIRF* Court found that the intervener-participants had standing under Article III to challenge the allocation of a surplus in a defined benefit plan[22] like the Pension Plan at issue here, even though there was no immediate or imminent risk of plan losses. By the same token, Beane has standing to sue for breaches of fiduciary duty. More recent Second Circuit authority does not (and cannot) overrule *FIRF*.

In two decisions, the Second Circuit considered the standing of fiduciaries and

---

[20] *Fin. Inst. Ret. Fund v. Office of Thrift Supervision*, 766 F. Supp. 1302, 1309 (S.D.N.Y. 1991).

[21] 964 F.2d at 147 ("Congress may not dispense with the dictates of Article III, [but t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.") (citations and quotations omitted). Remarkably, defendants fail to cite this controlling authority.

[22] Although neither the trial court nor the Second Circuit used the term "defined benefit plan," it is clear from the lower court opinion that the plan at issue was such a plan. *See* 766 F. Supp. at 1305 ("assets of the Fund exceeded the actuarially determined employer liabilities for the Fund's current beneficiaries.").

participants to sue on behalf of welfare benefit plans.[23]  A class of employee welfare benefit

plans represented by fiduciaries and participants alleged that a pharmaceutical benefits manager

("PBM") with whom the plans had contracted breached its duties to the plans.  The PBM

allegedly engaged in various self-interested practices that raised the costs of drugs at the expense

of the plans.[24]  Insured and capitated plans paid a fixed premium in exchange for full payment of

drug costs whereas self-insured plans paid the entire cost of the drugs.  Thus, insured or capitated

plans passed the risk of drug costs to the insurer or PBM, and self-insured plans bore the risk of

drug costs.  *Id.* at 234-35.  The insured and capitated plans alleged that even though their

premiums were fixed, the increased cost of drugs arising from the PBM's breaches of duty

injured the plans because they resulted in higher premiums.

      In *Central States I*, the Second Circuit chastised the trial court for failing to rule on a

challenge to plaintiffs' standing, remanded the case, and noted some authorities outside the

Second Circuit that discussed standing.  This guidance to the trial court did not even mention or

purport to overrule *FIRF* or *Gollust*.[25]  Moreover, the authorities cited by defendants are either

inapposite or contradict controlling Second Circuit law.  *Central States I* cited *Horvath v.*

*Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003) for the proposition that a plaintiff

who seeks "restitution or disgorgement under ERISA [must] satisfy the strictures of

---

[23] *See Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care L.L.C.*, 433 F.3d 181 (2d Cir. 2005) ("*Central States I*"); *Central States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007) ("*Central States II*").

[24] *Central States II*, 504 F.3d at 235.

[25] *Central States I* cannot overrule *FIRF*: "'[O]ne panel of this Court cannot overrule a prior decision of another panel,' unless 'there has been an intervening Supreme Court decision that casts doubt on our controlling precedent.'" *Veltri v. Building Serv. 32B-J Pension Fund,* 393 F.3d 318, 327 (2d Cir. 2004), quoting *Union of Needletrades v. INS*, 336 F.3d 200, 210 (2d Cir. 2003).  No recently decided Supreme Court case casts doubt on the validity of *Financial Institutions* and other prior Second Circuit decisions discussing standing.

constitutional standing by 'demonstr[ating] individual loss'."[26]  The plaintiffs in *Horvath*,

however, sought individual relief for individual injuries under ERISA §502(a)(3), so the Third

Circuit naturally required them to show an individual loss.[27]  Here, in contrast, Beane sues under

§502(a)(2) for relief to the Pension Plan.[28]  The *Central States I* court then noted that the Eighth

Circuit has held that a participant must "plead a direct injury in order to assert claims on behalf

of a plan."[29]  This observation of what another circuit had decided was not a holding.  Moreover,

---

[26] 433 F.3d at 200 (second alteration in original).

[27] In citing *Hovath*, *Central States* did not establish a rule that the invasion of a statutory right confers standing to obtain only injunctive relief, not monetary relief.  To read *Central States* in that fashion would essentially overrule the broad holding of *FIRF*, *sub silentio*, as well as overrule *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993), and *Mendell v. Gollust*, 909 F.2d 724 (2d Cir. 1990), aff'd *sub nom Gollust v. Mendell*, 501 U.S. 115 (1991).  *FIRF* suggest no limits on the type of relief that may be sought to protect a plan and, if limited to injunctive relief, would be rendered meaningless.  A participant could sue to enjoin an imminent misappropriation of plan assets by errant fiduciaries without a showing of injury beyond the invasion of rights created by ERISA, but once plan assets were actually misappropriated the participant could not seek their return without a showing of individual monetary injury.

[28] *See Banyai v. Mazur*, No. 00-9806, 2007 WL 959066, *4-5 (S.D.N.Y.  Mar. 29, 2007) (discussing *Central States I* and *Horvath* and holding that a showing of individual loss was not required to establish Art. III standing to sue for monetary relief to a plan.); *see also DeLuca v. Blue Cross Blue Shield of Mich.*, 475 F.Supp.2d 640, 643-45 (E.D. Mich. 2007) (same).

[29] 433 F.3d at 200 (citing *Harley v. Minn. Mining and Mfg. Co.*, 284 F.3d 901 (8th Cir. 2002).)  As an initial matter, *Harley* did not actually decide the constitutional standing question.  *See Harley*, 284 F.3d at 910 (Bye, J. dissenting) (the majority "side steps" the Article III question).  Rather, it held that the plaintiffs' alleged injuries were not within the zone of interests intended to be protected by ERISA, *id.* at 907, a question of statutory standing and a remarkable conclusion given that ERISA explicitly authorizes participant suits and was enacted for the express purpose of preserving pension plan assets.  If the plaintiff is an enumerated party (a person whom the statute expressly authorizes to sue, such as the plaintiffs in *Harley* or Beane here), then questions about whether Congress intended to benefit a certain type of litigant (the focus of the "zone of interests" inquiry) evaporate.  *See Bennett v. Spear*, 520 U.S. 154, 164-67 (1997) (reviewing precedent where Congressionally conferred standing negates zone of interests); *see also Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 154 (1970) ("Congress can, of course, resolve the question [of prudential standing] one way or another," by explicitly conferring standing.)  Insofar as plaintiff's counsel is aware, other than *Harley*, the zone of interests test has never been used to deny standing to an enumerated party.  *Harley* is wrong for many other reasons, and we will try to summarize them in the space permitted.  *First*, the court erred in finding that a plan surplus belongs to the employer, not to the plan.  284 F.3d at 906.  The assets of a pension plan trust belong to the plan alone.  *See* ERISA §403(a), (c), 29 U.S.C. §1103(a), (c) ("all assets of an employee benefit plan shall be held in trust" and such

the Eighth Circuit's holding that a participant in a defined benefit plan lacks standing to sue for

losses to a plan that has a surplus (the only Circuit Court to have so held) flatly contradicts *FIRF*,

the controlling law of the Second Circuit, which held that participants in a defined benefit plan

had standing under Article III to sue over the allocation of a plan surplus even in the absence of a

loss to the plan or individual pecuniary harm.

On remand from *Central States I*, the trial court addressed the constitutional standing of

the various class representatives.[30]  The trial court considered the "individual" standing of a plan

fiduciary, the individual standing of plan participants, and the representational standing of both.

The court found that there was enough evidence that the fiduciary's *plan* had suffered a financial

injury arising from the defendant's alleged generalized business practices even though the

fiduciary did not know whether the PBM's conduct raised the premiums for the fiduciary's plan.

*Id.* at 11-13.  The injury to the plan was sufficient to confer standing on the plan's fiduciary for

purposes of Art. III.  *Id.* at 13.

The district court then considered the standing of the plaintiff participants.  The court said

_____

assets "shall never inure to the benefit of any employer").  *Second*, the court assumed that
someone other than the participants, like the employer or the plan, could sue to recover any such
loss to the surplus.  284 F.3d at 908 n.5.  Neither a plan nor an employer has standing to sue
under ERISA for violations of sections 404 or 406.  *See Chemung Canal Trust Co. v. Sovran
Bank*, 939 F.2d 12, 14 (2d Cir. 1991).  *Third*, a fiduciary's interest in a plan surplus is no
different than a participant's; if the surplus belongs to the employer, the fiduciary has no more
stake in it than a participant, indeed less so because the fiduciary is not depending on the plan for
retirement income.  *Fourth*, a plan "surplus" is a fluid and fictional concept that does not
represent actual assets that are *extra* or *unnecessary*.  Fundamentally, the fact that a plan may be
"fully-funded" at a given point in time does not assure that the money will be there to pay vested
benefits when due.  It makes no sense to inoculate fiduciaries from liability simply because the
plan may have a surplus on one day, but not another.  But *Harley's* reasoning dictates that a
participant does not have standing when fiduciaries lose $4 billion from a $5 billion trust if the
remaining $1 billion is sufficient to meet actuarially projected liabilities.  If the fiduciaries lose
one more dollar on the next day so that the plan becomes "underfunded," the participant can sue
for that dollar but not the $4 billion.  The infirmity of that logic is evident.

[30] *See In re Medco Health Solutions, Inc., Pharmacy Benefits Mgmt. Litig.*, MDL – 1508
(S.D.N.Y. Aug. 10, 2006), attached hereto as Ex. A.

that, in its view, standing was satisfied by the common interest of the participants, "shared with the fiduciaries and others eligible to bring suit is in the financial integrity of the plan, which has allegedly been compromised" by defendant's self-dealing. *Id.* at 16. The court continued by discussing injuries to two participants separate and apart from the injury to the plan, and found that having to take a generic drug allegedly less efficacious than the brand name drug was sufficient (non-pecuniary) injury. *Id.* at 17, 18.

Last, the court held that both the fiduciaries and the participants had representational standing. It noted that the "'[i]nclusion of the Secretary of Labor [as a person authorized to sue for a plan] is indicative of Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole.'"[31] The court concluded that in *Russell*, the Supreme Court had "assumed Article III standing when it held that '[t]here can be no disagreement with the Court of Appeals' conclusion that §502(a)(2) authorizes a beneficiary to bring an action against a fiduciary who has violated §409."[32] The court finished by examining the history of representational standing in various contexts, and found those settings analogous to ERISA, which grants the participant standing to sue wrongdoers to the plan. *Id.* at 19-20.

Although *Central States I* laid out in *dicta* Art. III cases for the trial court to consider, the Second Circuit actually decided the issue in *Central States II*.[33] It affirmed the trial court's ruling that a fiduciary for an *insured* plan, that is a plan under which the plaintiffs could not show an out-of-pocket loss except by speculating about the possibility of higher premiums, nonetheless had standing to sue on behalf of the plan because the plan was the PBM's client during the class period. *Id.* at 242. The Second Circuit rejected the argument that the fiduciary "must establish specific financial harm before her Plan has standing." *Id.* at 242. In other words,

---

[31] *Id.* at 19 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)).

[32] *Id.* at 19 (quoting *Russell*, 473 U.S. at 140).

[33] In their Art. III argument, defendants' fail to cite this controlling authority.

the court held that a fiduciary ***does not need to show individual loss to sue for the benefit of the plan***.  Under ERISA §502(a)(2), ***there is no distinction whatsoever between a participant's and a fiduciary's standing to sue***.  If a fiduciary does not need to show individual loss to have standing to sue for a loss to the plan, the same is true of a participant.[34]  Of course, in *FIRF* the Second Circuit had already decided that a participant has standing in these circumstances.

Last, but not least, a defined benefit plan like the Pension Plan is very different from the welfare benefit plans at issue in the *Central States* decisions.  ERISA requires that the assets of a pension plan be held in a trust unless the plan is insured. [35]  Welfare plan benefits are generally insured, whereas pension plan assets are generally held in trust and managed for the long-term to provide retirement income to participants.  Given that trust assets must be sufficient to pay promised retirement income for many decades to come, ERISA requires that the trust be maintained in accordance with fiduciary standards.  When retirement trust assets are diminished, the risk that vested retirement benefits will not be paid goes up.  Thus, a fiduciary breach that injures the trust necessarily injures the participants for whom the trust's assets are preserved.  Remedies such as restitution and injunctive relief to remove fiduciaries thus protect the trust's assets (and the participants' retirement income) for the long term.  Welfare plans, like the plans at issue in *Central States*, *Horvath*, and *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc*., 465 F.3d 1123 (9th Cir. 2006), are managed, if at all, to pay premiums or prescription drug providers as the bills are presented.[36]  Typically, the assets in such plans cover only a few months of benefits, earnings on the corpus being negligible.  And welfare benefits

---

[34] Having found that a representative fiduciary had standing, the Second Circuit declined to reach the participants' standing because "only one of the named plaintiffs is required to establish standing in order to seek relief on behalf of the entire class."  504 F.3d at 241.  It noted, however, that a participant's representational standing or standing to assert the "right to the honest services of fiduciaries guaranteed to them by ERISA" were questions for another day.  *Id.* at 243 & n.3.
[35] *See* ERISA §403(a), 29 U.S.C. §1103(a).
[36] *See Central States I*, 433 F.3d at 185 n.2.

generally do not vest, thus fiduciaries are not required to manage a funded trust to assure that vested benefits will be paid upon retirement decades later. These differences and the direct and controlling authority of *FIRF* on the standing of participants in a defined benefit plan lay to rest any doubts that *dicta* in *Central States I* decides Beane's constitutional standing.

## C.   <u>Plaintiff's Loss And Causation Allegations Pass Muster.</u>

A fiduciary who breaches any of the duties imposed by ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach," 29 U.S.C. §1109(a), and a plaintiff must prove that a fiduciary's breach caused the claimed loss to the plan.[37] Nevertheless, defendants' causation argument fails for two reasons: (1) causation is not an element of claims for disgorgement, restitution, or other equitable relief; and (2) Beane's complaint sufficiently pleads loss causation.

First, the plain language of ERISA §409 makes clear that defendants' causation argument applies only to a "loss" remedy. Section 409(a) provides in full that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be [1] personally liable to make good to such plan any losses to the plan ***resulting*** from each such breach, [2] and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and [3] shall be subject to such other equitable or remedial relief as the court may deem appropriate …

29 U.S.C. §1109(a) (emphasis added). It is the word "resulting" that has led courts to demand a showing of causation to prove a case for losses against a fiduciary.[38] Because the other remedial clauses of §409(a) do not contain the term "resulting," no causation requirement to obtain those remedies can be inferred. Nor, for that matter, does a plaintiff need to show a loss to the plan to

---

[37] *See Diduck v. Kascycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992).
[38] *See Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998).

obtain disgorgement or other remedies.[39]  For example, if Beane prevails on his claim that Callan

received consideration from BNY Defendants in connection with Plan transactions, *see* ERISA

§406(b)(3), 29 U.S.C. §1106(b)(3), disgorgement of that consideration and profits earned thereon

are available remedies even if the Plan did not suffer losses.[40]  Thus, even if Beane's claim for

losses founders on causation, he may still pursue remedies where loss causation is not relevant.

Second, Beane has pleaded loss causation.  Defendants argue that not only has Beane

failed to allege a loss to the Pension Plan, he also has failed to plead causation because he did not

allege reliance on Callan's misstatements.  As the Second Circuit has observed, however,

"breaches of a fiduciary relationship in ***any*** context comprise a special breed of cases that often

loosen normally stringent requirements of causation and damages."[41]  Where there is a "serious"

breach of duty, a "'prophylactic rule' should apply; [the plaintiff should] not have to show strict

"but for" causation or proximate cause."[42]  Instead, the plaintiff need only show that the breach

was "a substantial factor" in the plaintiff's losses.  *Id.*

Beane has indeed alleged a loss to the Pension Plan.  (*See* Compl. ¶¶ 76, 82.)  True, he

did not allege that the Plan paid brokerage commissions to BNY Defendants higher than those it

would have paid to another broker.  The data to support that allegation will only become

---

[39] *Cf. LaScala v. Scrufari*, 479 F.3d 213, 221 (2d Cir. 2007) (that plan did not suffer losses had no bearing on whether fiduciary breached his duties); *see also* Defs.' Memo at 22-23 (disgorgement claim requires plaintiff to show that defendant has obtained a benefit from plaintiff that it would be wrongful for him to retain.).

[40] *See*, *Lowen v. Tower Asset Management Inc.*, 829 F.2d 1209, 1221 (2d Cir. 1987) (The district court ordered defendants to disgorge fees and other consideration they received in violation of Section 406.)  *Cf. Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406, 1414 (9th Cir. 1988) (Although participants had been paid their full benefits upon plan termination, broad equitable relief under 409(a) permitted imposition of constructive trust and disgorgement upon breaching fiduciaries who should not be permitted to retain ill-gotten gains.).

[41] *Milbank, Tweed, Hadley, & McCoy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994) (emphasis added); *see also In re Westar Energy, Inc., ERISA Litig.*, 2005 WL 2403832, at *11 (D. Kan. Sept. 29, 2005) (In ERISA cases, generally loss causation is an issue of fact and is thus not properly considered on a motion to dismiss.).

[42] 13 F.3d at 543.

available through discovery.  Moreover, whether BNY Defendants' brokerage commissions and best execution practices were consistent with prevailing industry norms is a subject of expert proof that cannot be decided now.  When a plaintiff pleads duty and breach and information about losses is in the sole possession of the defendants, courts should hesitate to dismiss for failure to plead losses in detail, particularly in fiduciary breach cases.  *See Milbank*, *supra*.

As for causation, *Diduck*, **the only ERISA case** cited by defendants on this point, does not support their argument or stand for the proposition claimed by defendants.  In *Diduck*, the court said that a breach of duty does not establish fraud and went on to discuss the elements of common law fraud, including reliance.[43]  It then concluded that there was insufficient evidence to support the claim that the alleged fraud caused a loss to the plan.[44]  The court did not consider whether a breach of fiduciary duty consisting of a material misstatement, in particular by way of omission, requires a showing of reliance.

More direct authority supports Beane's causation allegations.  Essentially, Beane alleges that Callan failed to disclose the true nature of its commission-sharing arrangement with BNY Defendants.  (Compl. ¶¶ 7, 47, 48.)  ERISA §404 requires a fiduciary to speak truthfully and accurately.[45]  In *Affiliated Ute Citizens of Utah v. Unites States*, 406 U.S. 128, 153-154 (1972), the Supreme Court held that in cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.  This obligation to disclose and this withholding of a material fact

---

[43] 974 F.2d at 276.  Similarly, *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002), cited by defendants for the proposition that individual reliance must be proved, is a case involving RICO claims, not a breach of fiduciary duty.
[44] *Id.* at 279.
[45] *See Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 88 (2d Cir. 2001).

establish the requisite element of causation in fact."[46]  The Second Circuit has not addressed

whether the rule of *Affiliated Ute* applies to ERISA breach of duty claims, but the theory that "it

would be 'practically impossible' for plaintiffs to prove that they relied on information that was

never provided to them" logically applies to any material omission.[47]

Decisions in the context of individual suits for benefits suggest that the Second Circuit

would apply *Affiliated Ute* to ERISA fiduciary breach cases.  The Second Circuit held that a

participant does not need to show reliance on a fiduciary communication about benefits that

omits material information.  Instead, the participant need only show "prejudice" or "likely

harm."[48]  Tracking closely the analysis of *Affiliated Ute*, the Second Circuit reasoned that "[a]

rule requiring detrimental reliance imposes an ***insurmountable hardship*** on many plaintiffs" and

would frustrate Congress' desire to convey accurate information to participants.  *Id.* (emphasis

added).  District courts following *Burke* and its progeny have observed that the Second Circuit

has taken a "protective approach" and "emphasized the broad nature of 'likely harm'" when

examining inaccurate or misleading fiduciary communications.[49]  In sum, Beane does not need to

prove or plead causation to seek remedies other than losses to the Pension Plan and he is not

required to prove or plead reliance to prove causation.

---

[46] *See also Nauman v. Abbot Labs.*, No. 04- 7199, 2007 WL 1052478, at * (N.D. Ill. Apr. 3, 2007) (applying *Affiliated Ute* to ERISA claim alleging material omission and certifying class).

[47] *In re Tyco Int'l, LTD*, No. 02-1335, 2006 WL 2349338, *6 (D.N.H. Aug. 15, 2006) (applying *Affiliated Ute* to ERISA claim alleging material omission and certifying class).

[48] *Burke v. Kodak Retirement Income Plan,* 336 F.3d 103, 112 (2d Cir. 2003).

[49] *See Amara v. Cigna Corp.*, 534 F.Supp.2d 288, 339 (D. Conn. 2008).  In a prior decision, the same court certified a class claim on material omissions.  *See Amara v. Cigna Corp.*, No. 01-2361, 2002 WL 31993224 (D. Conn. Dec. 20, 2002).  Indeed, some district courts have gone even further, holding that "a showing of prejudice or harm is not a prerequisite to liability for failure to comply with ERISA's disclosure requirements or a violation of fiduciary duties under ERISA."  *Pancotti v. Boehringer Ingelheim Pharm., Inc.*, No. 06-1674, 2007 WL 2071624, *4 (D. Conn. July 17, 2007); *see also In re JDS Uniphase Corp. ERISA Litig.*, 03-04743 , 2005 WL 1662131, *13 (N.D. Cal. July 14, 2005) (noting that none of the cases cited by defendants requiring a showing of reliance involved claims under ERISA §502(a)(3)).

Assuming *Affiliated Ute* applies, materiality is the threshold inquiry.[50]  The Second

Circuit holds that fiduciary "misrepresentations are material if they would induce a reasonable

person to rely upon them."[51]  On this record, *i.e.*, on a motion to dismiss, the Court should accept

Beane's allegations of materiality as true.  When a fiduciary to a pension plan tells the pension

plan (and its fiduciaries and participants) that it has a preferred broker and touts that broker's

services, the pension plan would think it important that the fiduciary received compensation from

the broker that was contingent on how many of the fiduciary's clients used the broker.  It defies

common sense to suggest otherwise.

**D.    The Equitable Monetary Remedies That Plaintiff Seeks From BNY Defendants Are Available Against BNY Defendants.**

The Supreme Court says that a party in interest, like BNY Defendants, who knowingly

participates in a fiduciary's breach and engages in a prohibited transaction "must disgorge assets

and profits obtained through participation as parties-in-interest in transactions prohibited by

§406, and … may be enjoined from participating in a fiduciary's breaches, compelled to make

restitution, and subjected to other equitable decrees."[52]  In subsequent cases, the Supreme Court

clarified that §502(a)(3) does not permit damages remedies[53] and that to impose a constructive

trust on a non-fiduciary, the plaintiff must identify the specific funds that the defendant

---

[50] *See Metro-Goldwyn-Mayer, Inc. v. Ross*, 509 F.2d 930 (2d Cir. 1975) (materiality not reliance is the decisive element of causation); *Chris-Craft Indus. Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir. 1973) (determination of materiality logically allows an inference of reliance).

[51] *Ballone v. Eastman Kodak Company*, 109 F.3d 117, 122 (2d Cir. 1997); *see also In re Tyco*, 2006 WL 2349338, *6-7 (plaintiffs can prove materiality by showing that a reasonable person would want to know the omitted information).

[52] *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *see also Herman v. South Carolina Nat. Bank*, 140 F.3d 1413, 1421-22 (11th Cir. 1998) (non-fiduciaries liable for "equitable disgorgement of their profits received from engaging in a prohibited transaction in violation of §406."); *Whitfield v. Tomasso*, 682 F.Supp.2d 1287, 1303, 1305 (E.D.N.Y. 1988) (non-fiduciary liable for knowing participation in breaches of duty and would be required to disgorge all sums received in connection with violations of ERISA).

[53] *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214-15 (2002).

wrongfully holds.[54]  Thus, Beane can seek complete disgorgement of BNY Defendants'

brokerage commissions and profits earned thereon so long as he can identify those funds as

being in BNY Defendants' possession.  Notwithstanding the clear guidance from *Mertens*, *supra*,

BNY Defendants argue that Beane cannot seek equitable restitution from them because:  (1) he

has not alleged that they wrongfully obtained a benefit that it would be unconscionable for them

to retain (Defs.' Memo. at 22-24); and (2) he cannot identify any property possessed by BNY

Defendants that rightfully belongs to the Pension Plan.  Not true.

     First, BNY Defendants obtained benefits from Callan clients in the form of brokerage

business and commissions.  BNY Defendants obtained the brokerage business and commissions

by knowingly participating in Callan's breaches of duty.  Among other things, BNY Defendants

executed a contract with Callan that required Callan to send a welcome letter to new clients and

an annual letter to all clients saying that BNY Brokerage was Callan's preferred broker and

touting BNY Brokerage's services.  (Compl. ¶ 35.)  The contract required Callan to never

recommend another broker regardless of the best interests of Callan's clients.  (Compl. ¶ 81.)

BNY Defendants executed a contract that required Callan to steer its pension plan clients to

BNY Brokerage by making BNY Defendants' payments to Callan contingent, in part, on how

much brokerage business Callan clients conducted through BNY Brokerage.  (Compl. ¶ 49.)

These facts, which the Court must accept as true, are sufficient to establish that BNY Defendants

earned brokerage commissions pursuant to a scheme that depended on routine violations of

ERISA.  To Beane, this seems like wrongfully obtained benefits.

     Second, the funds that Beane seeks from BNY Defendants are identifiable and within

---

[54] *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000).

their possession.[55]  Beane seeks disgorgement of those brokerage commissions (and profits earned thereon) to the Pension Plan; he does not ask BNY Defendants to disgorge the monies that they paid to Callan, which they obviously do not have.  Nor does he ask BNY Defendants to restore to the Plan the difference between what the Plan paid in brokerage commissions and what the Plan would have paid had it traded with a less expensive broker.  Brokerage commissions received by BNY Defendants from the Pension Plan (and other client plans) are readily identifiable from various brokerage commission reports produced in discovery.

## II.    THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.

Defendants' opposition to Beane's motion for class certification begins with standing. (Defs. Memo. at 25.)  As explained above, Beane has standing.  Nevertheless, defendants argue that Beane cannot serve as a class representative for other plans because he does not have statutory standing to represent those plans.  (*Id.* at 25 n. 11.)  This argument is a *nonsequitar* for purposes of Rule 23.  Standing is a jurisdictional question.  If Beane does not have standing, there is no case.  If he has standing, which he does, and seeks to certify a class, the issue is whether Beane's alleged class satisfies the conditions of Rule 23.[56]

---

[55] *Sereboff v. Mid Atlantic Medical Services, Inc.,* 547 U.S. 356 (2006) (relief under §502(a)(3) available because the request for restitution was for identifiable funds in the defendant's possession.)  In Second Circuit cases addressing §502(a)(3) relief, plaintiffs' claims for relief under (a)(3) have largely foundered because the relief sought was essentially legal.  *See, e.g.*, *Coan v. Kaufman*, 457 F.3d 250, 262-64 (2d Cir. 2006) (claim alleging fiduciaries mismanaged and failed to diversify plan was a suit for damages).

[56] *See Central States II*, 504 F.3d at 241 (citing 1 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 2:6 n. 3 (4th ed. 2002) for the proposition that once standing is established, the analysis moves to Rule 23); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23."); *Cress v. Wilson*, No. 06-2717, 2007 WL 1686687, at *10 (S.D.N.Y. June 6, 2007) (following *Fallick*).  Only one of the authorities cited by defendants, *In re Mutual Funds Investment Litig.*, 519 F. Supp. 2d 580 (D. Md. 2007), speaks to this issue, and the court unfortunately conflated standing with Rule 23.

A.    **Plaintiff Has Met His Burden On Fed. R. Civ. P. 23(a).**

    1.    **The Class Is Sufficiently Numerous.**

    Defendants challenge numerosity on two grounds:  (1) the number of plans, not the number of participants in those plans, is the relevant "metric" because Beane seeks relief on behalf of plans; (2) the number of ERISA plans in the class is not sufficiently numerous because only three such plans used Callan to perform a broker search; and (3) the number of ERISA plans in the class is not sufficiently numerous because Beane cannot show that Callan's conduct caused enough of the plans to use BNY Brokerage.  These arguments do not hold water.

    First, the number of participants in the ERISA plans that were common clients of Callan and BNY Defendants is a proper measure of numerosity.[57]  The Second Circuit has strongly suggested a suit by a participant under 502(a)(2) for relief to the plan should be brought as a class action[58] and courts routinely certify classes alleging claims on behalf of a single plan because the number of plan participants satisfies numerosity.[59]  Moreover, defendants' argument proves too much.  If the proper "metric" for a 502(a)(2) claim is the number of plans, hundreds of courts have erred in certifying 502(a)(2) ERISA claims on behalf of one plan.

    Second, the issue is not the number of plans that explicitly hired Callan for the purpose of

---

Class certification was not at issue in either *Conn. v. Physicians Health Servs. Of Conn., Inc.*, 287 F.3d 110 (2d Cir. 2002) (a state does not have standing under ERISA because it is not an enumerated party under the statute) or *Acosta v. Pac. Enters.*, 950 F.2d 611 (9th Cir. 1991) (plaintiff who sought to solicit participants in other plans in proxy fight did not have standing to demand lists of participants in other plans sponsored by the same employer because he did not participate in those plans).

[57] The Court can amend the proposed class definition in its order certifying a class to include participants and beneficiaries so as to bind all affected persons and resolve *res judicata* concerns.

[58] *See Coan v. Kaufman*, 457 F.3d at 261; *Gruby v. Brady*, 838 F. Supp. 820 (S.D.N.Y. 1993); *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y. 2002).

[59] *See, e.g., In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74 (S.D.N.Y. 2006); *see also Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (District court erred in holding that 502(a)(2) suit could not be brought as class action.  "Rule 23(a)(3) imposes only the requirement that the class representatives' claims be typical, not that they be direct.").

conducting a broker search.  Instead, the issue is the number of ERISA plans to whom Callan misrepresented its relationship to BNY Defendants.  As a fiduciary, Callan had a duty to tell the whole truth to its clients.  Callan's ADV Part II and its letters touting BNY Brokerage's services omitted material information.  All of Callan's ERISA plan clients got letters touting BNY Brokerage's services.  At least 75 of them used BNY Brokerage.  (Defs.' Memo. at 27-28.)  Seventy-five satisfies numerosity even if the number of plans, as opposed to participants, is the right "metric."

Third, defendants' argument that Beane cannot show that Callan's material omissions caused its clients to transact with BNY Brokerage because 55 of the 75 clients were clients of BNY Brokerage before the sale of Alpha and the subsequent misrepresentations ignores the ongoing duties of a fiduciary.  As a fiduciary, Callan had an ongoing duty to communicate truthfully to its clients and to act for their sole and exclusive benefit.  The conflicts and material omissions from client communications arose only after the sale of Alpha to BNY Defendants.  Had Callan's clients known of Callan's conflicts, its contingent compensation, and its agreement never to recommend a broker other than BNY Brokerage, Callan's clients may have stopped doing business with Callan and BNY Defendants.  Indeed, many of them appear to have done just that as the scope of Callan's conflicts has been reported.[60]

### 2.    Plaintiff Has Satisfied The Elements Of Typicality And Commonality.

Defendants argue that Beane cannot show commonality or typicality because (1) Callan's fiduciary status to each ERISA plan is not susceptible to common proof, and (2) individual reliance cannot be proved on a class basis.[61]

On the second argument, reliance is not an element of a claim for disgorgement or

---

[60] *See* note 61, *infra*, and accompanying text.
[61] Defendants do not challenge adequacy of representation or ascertainability.

equitable relief and Beane does not need to prove reliance to prove loss causation.  *See* Part I.C.,

*supra*.  Moreover, materiality, the key inquiry in cases of omissions, *see id.*, is subject to

common proof, namely whether a reasonable fiduciary selecting a broker for a plan would want

to know that the plan's investment consultant received contingent compensation from a broker

while identifying the broker as the consultant's preferred broker and touting the broker's services

to the fiduciary.[62]  Further, courts in the Second Circuit routinely certify classes and find that

both typicality and commonality are satisfied when plaintiffs seek relief under §502(a)(2) and

allege that the fiduciaries to the plan omitted material information.[63]

   Defendants' fiduciary status argument depends entirely on the proposition that the

"functional fiduciary test is 'an intensely factual inquiry,'" which, according to them, will require

an examination of the specific relationships, namely the contracts, between Callan and each of its

client plans.  (Defs.' Memo. at 33.)[64]  They ignore Beane's complaint, the relevant clause of

ERISA's definition of fiduciary, and the evidence before the Court.  ***Beane alleges that Callan is***

***a fiduciary because it rendered investment advice for a fee***.  (*See* Compl. ¶¶ 30-32, 68, 73, 79.)

The definition of a fiduciary includes three distinct and disjunctive clauses:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such

---

[62] Callan thought the information was material.  *See* Deposition of David Bonnette (SEC File No. SF-028626-A) at 58-59 (testifying that the SEC investigation into Callan's conflicts was hurting Callan's business), excerpts attached as Ex. B hereto; *see also* Deposition of Ronald D. Peyton (SEC File No. SF-028626-A) at 52-53, 63 (testifying that Callan was concerned about media reports that it received "incentive" compensation from BNY Brokerage and that it changed its Form ADV Part II in response to these concerns), excerpts attached as Ex. C hereto.
[63] *See Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 150-52 (S.D.N.Y. 1996); *see also Richards v. Fleetboston Fin. Corp.*, 235 F.R.D. 165, 172 (D. Conn. 2006) (finding commonality and noting that a material omission does "not require a showing of actual prejudice or individualized harm, but only 'likely prejudice.'")
[64] That Callan did not acknowledge its fiduciary status in contracts, *see id.*, is of little consequence.  *See IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1419 (9th Cir. 1997) ("'magic words in the contract'… does not avoid fiduciary responsibility".)  Tellingly, Callan does not actually deny its fiduciary status in its briefs or declarations.

> plan or exercises any authority or control respecting management or disposition of its assets, (ii) *he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so*, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.[65]

Whether Callan renders investment advice for a fee or other compensation is readily susceptible to common proof.  There is little doubt that Callan receives fees for its services from its 138 or more ERISA plan sponsor clients; it, is after all, a for-profit enterprise.

There is equally little doubt that Callan is an investment advisor for a fee.  Callan readily acknowledges that it is "an investment consulting firm."  (Defs.' Memo. at 1.)  It is a "Registered Investment Advisor" under the Investment Advisors Act of 1940,[66] which suggests to the reasonable person that Callan provides investment advice.  Virtually all of Callan's contracts, including its "standard form contract" (DeLuce Decl. ¶5), say in the first paragraph that the contract is for "investment consulting services" or "asset management consulting services."  (DeLuce Exs. C, D, F, G.)  Callan says that it will acknowledge fiduciary status if asked to do so; Callan says that it considers itself a fiduciary under ERISA with respect to the recommendations it provides to client plans.  (DeLuce Ex. J ¶¶8, 9.)  All of this is common proof on the matter of Callan's status as an investment advisor for a fee.

**B.    Plaintiff Has Met His Burden On Fed. R. Civ. P. 23(b).**

    **1.    Defendants Fail To Defeat Certification Under Rule 23(b)(1).**

Defendants make two challenges to certification under Rule 23(b)(1)[67]:  (1) certification is not appropriate under both Rule 23(b)(1)(A) and (B) because "the relationships that Callan and

---

[65] 29 U.S.C. §1002(21)(A) (emphasis added).

[66] Declaration of Anne C. DeDeLuce ("DeLuce Decl."), Defendants' Index of Exhibits, Ex. A.

[67] Defendants oppose certification under Rule 23(b)(2) based on the type of relief sought. (Defs.' Memo at 40-45.)  To streamline the issues before the Court, Mr. Beane suggests that the Court deny class certification under Rule 23(b)(2) without prejudice.  In the event that injunctive relief becomes the main focus, Mr. Beane will raise Rule 23(b)(2) at the appropriate time.

the BNY Defendants had with their various clients differed from plan to plan, making individualized determinations appropriate"[68]; (2) with respect to Rule 23(b)(1)(B) alone, certification is inappropriate because "[t]his case does not fit within the classic Rule 23(b)(1)(B) paradigm of a 'limited fund' lawsuit…." (*Id.* at 39.)

First, defendants cite *Spann v. AOL Time Warner*, 219 F.R.D. 307, 321 (S.D.N.Y. 2003), for the proposition that certification under Rule 23(b)(1) was inappropriate because the court needed to scrutinize each release signed by putative class members. *Id.* at 321.[69] According to defendants, individualized inquiries on fiduciary status are necessary because "differing" client relationships supposedly stem from different contracts between defendants and their clients. (Defs.' Memo. at 37.) Beane alleges, however, that Callan is a fiduciary because it rendered investment advice for a fee, not because of the specific functions delineated in a contract. (*See* Compl. ¶¶ 30-32, 68, 73, 79.) The key, straightforward question—"did Callan offer investment advice for a fee?"—is susceptible to class treatment, *see* Part II.A.2, *supra*, and thus certification under Rule 23(b)(1)(A) is appropriate. Further, whatever the terms of its contracts for investment consulting services, Callan's duties included unwavering loyalty and truth. Therefore, "inconsistent ... adjudications with respect to individual members of the class []" would establish incompatible standards" for Callan and, thus, certification under Rule 23(b)(1)(B), too, is appropriate.

Second, limited fund cases constitute only one type of case amenable to certification

---

[68] Defs.' Memo. at 36; *id.* at 37-38 (applied to Rule 23(b)(1)(A)); *id.* at 39-40 (applied to Rule 23(b)(1)(B).) Mr. Beane does not allege, at this juncture, that BNY Defendants were fiduciaries, and the allegations against them focus on their relationship with Callan. BNY Defendants' relationships with their clients are not, at this point, central to the Complaint.

[69] Defendants cite two cases that, although certifying classes on some or all of the claims, denied certification under Rule 23(b)(1)(B) because of causation and reliance issues. *See Lively v. Dynegy, Inc.*, No. 05-0063, 2007 WL 685861, at *16 (S.D. Ill. Mar. 2, 2007); *Nelson v. IPALCO Enters., Inc.*, No. 02-477, 2003 WL 23101792, at *10 (S.D. Ind. Sept. 30, 2003). Because causation and reliance are not at issue here, those cases are inapposite. *See* Part I.C, *supra*.

under Rule 23(b)(1)(B).[70]  Another archetypical (b)(1)(B) case is one in which "the shared character of rights claimed … entails that any individual adjudication by a class member disposes of, or substantially effects, the interests of absent class members."  *Id.*  This category encompasses cases where the defendant's fiduciary duties to beneficiaries flow from the same set of facts, meaning that a ruling adverse to one plaintiff would impair absent members' ability to pursue a claim in the future.  That is precisely the reason that so many courts have found ERISA breach of fiduciary duty cases ideally suited to class certification under Rule 23(b)(1)(B).[71]

## 2.    Class Certification Is Proper Under Subsection (b)(3).

As with their challenges to commonality and typicality, defendants' Rule 23(b)(3) attack rests largely on arguments that Callan's fiduciary status, causation, and, losses cannot be proved on a class-wide basis, (Defs.' Memo. at 46, 48-50).  Beane rebuts these arguments above.  *See* Part II.A.2, *supra*, (fiduciary status); *see id.* and Part I.C., *supra* (causation and losses).

Defendants raise one new argument in this part of their brief:  an affirmative defense to Beane's prohibited transaction claim requires individualized proof.  (*Id.* at 47-48.)  Specifically, defendants argue that ERISA §408(b)(2) exempts from §406 contracts with parties in interest (here BNY Defendants) for necessary services (here brokerage services) so long as the plan pays no more than reasonable compensation (here brokerage commissions).[72]  This argument ignores the law and misunderstands the nature of the prohibited transactions at issue here.

Callan received a share of BNY Brokerage's brokerage commissions that was contingent on Callan clients conducting a certain level of brokerage business through BNY Brokerage.  This transaction violated §406(b)(3) because Callan received "consideration" for "its personal

---

[70] *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 834 (1999).
[71] *See*, *e.g.*, *In re Ikon Office Solutions*, 191 F.R.D. 457, 466 (E.D. Pa. 2000) and other cases cited in Pl'.s Class Cert. Mem. at 18 and n.8.
[72] 29 U.S.C. §1108(b)(2).

account" from BNY Defendants in connection with multiple brokerage transactions with client

pension plans.[73]  The key "prohibited transactions" at issue are not, as defendants suggest, the

brokerage transactions performed by BNY Brokerage for pension plans, but, rather, BNY

Defendants' payments to Callan.  BNY Defendants' payments to Callan are "***separate***

***transaction[s] [from the payment for services] which [are] not exempt under section***

***408(b)(2)***."[74]  Indeed, §408(b)(2) "does not contain an exemption" from §406(b) transactions.[75]

Thus, no plan-by-plan inquiry into the compensation paid to BNY Defendants is necessary.

       Respectfully submitted,

DATED:  Washington, DC
          This 4th day of April, 2008

**McTIGUE & PORTER LLP**

By: /s/ Gregory Y. Porter
Gregory Y. Porter (GP 9605)
5301 Wisconsin Avenue, NW, Suite 350
Washington, DC  20015
Tel:  (202) 364-6900
Fax: (202) 364-9960
gporter@mctiguelaw.com

David S. Preminger (DP 1057)
ROSEN PREMINGER & BLOOM LLP
708 Third Ave, Ste 1600
New York, NY 10017-4123
Tel:  (212) 682-1900
Fax: (212) 867-6878
dpreminger@rpblawny.com

*Attorneys for Plaintiffs*

---

[73] *See* 29 U.S.C. §1106(b)(3).
[74] 29 C.F.R. §2550.408b-2(e) (emphasis added).
[75] 29 C.F.R. §2550.408b-2(a); *see Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1216 & n.4 (2d Cir. 1987) (exemptions for plan services do not apply when a party pays a fiduciary a fee in connection with a transaction involving plan assets); *see also LaScala v. Scrufari*, 96 F.Supp.2d 233, 238-39 (W.D.N.Y. 2000) (Section 408(b)(2) does not exempt §406(b) transactions); *Lowen v. Tower Asset Mgmt., Inc.*, 653 F.Supp. 1542, 1555 (S.D.N.Y. 1987) (same).

25

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY CLASS OF ERISA PLANS** Plans was filed electronically with the Court and served this same day via the Court's ECF notification system upon the following:

**David Steven Preminger**
Rosen Preminger & Bloom LLP
708 Third Avenue, Suite 1600
New York, NY 10017
212-422-1001
Fax: 212-363-4436
Email: dpreminger@rpblawny.com

**Dorothy Heyl**
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
(212)530-5000
Fax: (212)530-5219
Email: dheyl@milbank.com

**Paul Blankenstein**
**William J. Kilberg**
Gibson, Dunn and Crutcher (DC)
1050 Connecticut Ave. NW.,
Washington, DC 20008
(202)-955-8693
Fax: (202)-530-9532
Email: pblankenstein@gibsondunn.com
      wkilberg@gibsondunn.com

**Thomas A. Arena**
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
(212)-530-5828
Fax: (212)-822-5828
Email: tarena@milbank.com

April 4, 2008

David T. Bond
**McTigue & Porter LLP**