UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALBERT T. BEANE, JR.,

               Plaintiff,

      v.

THE BANK OF NEW YORK MELLON, BNY
CONVERGEX EXECUTION SOLUTIONS LLC
and CALLAN ASSOCIATES, INC.,

               Defendants.

                               07-cv-9444 (RMB)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT
## OF THEIR MOTION TO DISMISS

Thomas A. Arena (TA-4613)
Dorothy Heyl (DH-1601)
MILBANK, TWEED, HADLEY
& McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Counsel for BNY Defendants*

William Kilberg (WK-0792)
Paul Blankenstein (PB-8583)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Callan Associates, Inc.*

**TABLE OF CONTENTS**

Page

ARGUMENT ....................................................................................................................1

    I.       PLAINTIFF LACKS STANDING UNDER ARTICLE III. ...................................1

           A.     Plaintiff Has Not Alleged or Otherwise Demonstrated Any Increased Risk to his Future Receipt of Pension Benefits. ..........................1

           B.     Plaintiff Lacks Standing to Sue Based Upon an Alleged Injury to the Plan........................................................................................................4

    II.      PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THE COMPLAINT DOES NOT ADEQUATELY ALLEGE CAUSATION..............10

    III.     PLAINTIFF'S SECTION 502(A)(3) CLAIMS AGAINST THE BNY DEFENDANTS SHOULD BE DISMISSED. .......................................................12

CONCLUSION................................................................................................................15

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affiliated Ute Citizens of Utah v. United States,*
406 U.S. 128 (1972) .................................................................................................. 11

*Ala. Power Co. v. Davis,*
431 U.S. 581 (1977) ................................................................................................... 2

*Banyai v. Mazur,*
No. 00 Civ. 980 (SHS), 2007 WL 959066 (S.D.N.Y. Mar. 29, 2007) ................................... 10

*Beck v. Levering,*
947 F.2d 639 (2d Cir. 1991) ....................................................................................... 6

*Cent. States Se. & Sw. Areas Health and Welfare Fund v.*
*Merck-Medco Managed Care, L.L.C.,*
433 F.3d 181 (2d Cir. 2005) ................................................................................. passim

*Central States Southeast & Southwest Areas Health & Welfare Fund v.*
*Merck-Medco Managed Care, L.L.C.,*
504 F.3d 229 (2d Cir. 2007) ..................................................................................... 8, 9

*City of L.A. v. Lyons,*
461 U.S. 95 (1983) ..................................................................................................... 6

*Diduck v. Kaszycki & Sons Contractors, Inc.,*
974 F.2d 270 (2d Cir. 1992) ...................................................................................... 11

*Financial Institutions Retirement Fund v. Office of Thrift Supervision,*
964 F.2d 142 (2d Cir. 1992) ................................................................................ 6, 7, 8

*Firestone Tire & Rubber Co. v. Bruch,*
489 U.S. 101 (1989) ................................................................................................... 9

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.,*
465 F.3d 1123 (9th Cir. 2006) .................................................................................... 9

*Gollust v. Mendell,*
501 U.S. 115 (1991) ................................................................................................... 3

*Great-West Life & Ann. Ins. Co. v. Knudson,*
534 U.S. 204 (2002) ................................................................................................. 14

**Table of Authorities**
**(Continued)**

Page(s)

*Harley v. Minn. Mining & Mfg. Co.*,
    284 F.3d 901 (8th Cir. 2002) ................................................................. 9

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) ................................................................. 2, 5, 6, 7

*IIT, Int'l Inv. Trust v. Cornfeld*,
    619 F.2d 909 (2d Cir. 1980) ................................................................. 5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................. passim

*Raines v. Byrd*,
    521 U.S. 811 (1997) ................................................................. 7, 9

*SEC v. First City Fin. Corp.*,
    890 F.2d 1215 (D.C. Cir. 1989) ................................................................. 11

*SEC v. Manor Nursing Ctrs., Inc.*,
    458 F.2d 1082 (2d Cir. 1972) ................................................................. 10

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ................................................................. 9

*Veltri v. Bldg. Serv. 32B-J Pension Fund*,
    393 F.3d 318 (2d Cir. 2004) ................................................................. 7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................. 4

*Wellman v. Dickinson*,
    682 F.2d 355 (2d Cir. 1982) ................................................................. 10

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ................................................................. 2

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ................................................................. 5

## Statutes and Regulations

29 U.S.C. § 1001, *et seq*. ................................................................. 1

29 U.S.C. § 1106(a)(1)(A) ................................................................. 13

**Table of Authorities**
**(Continued)**

Page(s)

29 U.S.C. § 1106(a)(1)(C) ........................................................................................ 13

29 U.S.C. § 1108(b)(2) ............................................................................................. 13

40 Fed. Reg. 50845 (Oct. 31, 1975)......................................................................... 13

**Other Authorities**

First Restatement of Restitution § 215..................................................................... 14

Restatement (Second) of Trusts § 214 cmt. b .......................................................... 9

Restatement (Second) of Trusts §§ 280-82............................................................... 9

**Constitutional Provisions**

U.S. Const., Art. III.......................................................................................... passim

Defendants Callan Associates, Inc. ("Callan"), and the Bank of New York Mellon ("BNY") and BNY ConvergEx Execution Solutions LLC ("BNY ConvergEx") (together, the "BNY Defendants"), have jointly moved to dismiss the complaint of the plaintiff Albert T. Beane, Jr., because he (1) has not demonstrated any actual or imminent injury and, therefore, lacks standing to sue under Article III of the United States Constitution, and (2) has not adequately pleaded causation under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., against any of the defendants. In response, plaintiff argues that Congress can confer Article III standing solely by creating a statutory right to sue, and that the allegations in his bare-bones complaint suffice to survive a motion to dismiss. Neither argument has merit. Similarly, plaintiff's argument that he has alleged a basis for equitable relief against the BNY Defendants is unpersuasive, and his ERISA Section 502(a)(3) claim should be dismissed.

## ARGUMENT

## I.    PLAINTIFF LACKS STANDING UNDER ARTICLE III.

### A.    Plaintiff Has Not Alleged or Otherwise Demonstrated Any Increased Risk to his Future Receipt of Pension Benefits.

Plaintiff is not currently retired and is thus not eligible to receive the promised pension benefits under the Federal-Mogul Corporation Pension Plan (the "Plan"), a defined benefit plan in which he is a participant. Critically, he does not allege that the promised benefits to current retirees of the Plan have been in any way impaired by the transactions between and among the Plan, Callan and the BNY Defendants that are the subject of his complaint. Instead, plaintiff offers the unsupported conjecture that there is some future risk to the financial integrity of the Plan as a result of those transactions and that compelling the defendants to "restor[e] losses and disgorg[e] fees and profits to the Plan will increase the likelihood that Beane's vested benefits

will be paid." Opp. at 5. Plaintiff's argument of injury-in-fact is built on sheer speculation and suffers from a fundamental failure to understand how defined benefit plans operate.

Nowhere does the plaintiff allege that the payments made by the Plan to Callan and the BNY Defendants have caused any impairment to any current retiree's benefit. Instead, plaintiff postulates that some unknown, unstated future event might conceivably adversely affect his benefit and that the relief sought might possibly prevent that from occurring. But speculating that some unknown bad thing might happen in the future hardly meets the Article III requirement that any future injury-in-fact must, under well-settled law, be "imminent" and not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 561 (1992). As the Supreme Court put it in *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal citations omitted): "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact."

Plaintiff's conjectured future injury, however, is quite far from certain. As pointed out in the defendant's opening brief, in a defined benefit plan, like the Plan here, "the employer typically bears the entire investment risk and—short of the consequences of plan termination— must cover any underfunding as the result of a shortfall that may occur from the plan's investments." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). "***[T]he employer's contribution is adjusted to whatever level is necessary***" to pay for the promised benefit. *Id.* at 440 (quoting *Ala. Power Co. v. Davis*, 431 U.S. 581, 593 n.18 (1977)) (emphasis added). In other words, the employer's contribution increases or decreases with the value of the assets. *Hughes Aircraft*, 525 U.S. at 440. Plaintiff has not alleged or otherwise demonstrated that Federal-Mogul, the Plan's sponsor, has not already cured or will not be able in the future to cure any shortfall caused by the allegedly improper payments to Callan or the BNY Defendants.

Indeed, the possibility that these payments would impair plaintiff's future benefits is so remote as to be virtually non-existent. The reported value of the assets of the Plan as of December 31, 2006, was $756,798,513.00. *See* Ex. A, Federal-Mogul Corporation Forms 5500. The fees paid to Callan during the class period, October 1, 1998 to December 31, 2006, totaled $1,494,508.67, and the net commissions (the gross commissions less the amount returned to the Plan under the commission recapture arrangement with BNY ConvergEx) paid to BNY ConvergEx during that same period were $174,294.22, for a total of $1,668,802.89, or 0.22% of the Plan's assets at the end of the class period. *See* Ex. B, Declaration of Ann C. DeLuce ¶ 2; Ex. C, Declaration of Franklin C. Wong ¶ 2. Assuming that the shortfall has not already been cured, plaintiff makes no allegation that Federal-Mogul lacks the financial wherewithal to increase its future contributions to address a shortfall of $1,668,675.39. The contrary is seemingly the case. In 2005, Federal-Mogul contributed $64,049,311.00 to the Plan, and followed that with a contribution in 2006 of $107,588,489.00. *See* Ex. A, Federal-Mogul Corporation Forms 5500. Consequently, there is no appreciable risk that plaintiff's future benefits will be adversely affected by the contested payments to the defendants.

In these circumstances, the Supreme Court's decision in *Gollust v. Mendell*, 501 U.S. 115 (1991), upon which plaintiff heavily relies, Opp. at 4-5, is of no help. In *Gollust*, the Court held that a shareholder had standing to sue on behalf of the issuer to recover allegedly illegal short-swing profits under Section 16(b) of the Securities Exchange Act of 1934. Noting that the shareholder's indirect financial interest was attenuated, the Court nonetheless found that recovery on behalf of the issuer was enough to give the shareholder standing as the recovery would provide a "marginal increase" in the value of stock held by the plaintiff there. *Id.* at 127. ***Here, by contrast, any recovery by plaintiff on behalf of the Plan would not increase any***

*future benefit to plaintiff by even a single penny.* He would still receive the same promised

benefit that he would otherwise receive. And any decrease in assets the Plan may have sustained

due to the relatively insignificant payments to the defendants has most likely already been made

up by Federal-Mogul's increased contributions. Plaintiff has therefore failed to carry his burden

to demonstrate the requisite injury-in-fact.

      **B.**      **Plaintiff Lacks Standing to Sue Based Upon an Alleged Injury to the Plan.**

Plaintiff maintains that even without "actual or imminent" injury to him, he has standing

based solely on his purported statutory right "to have a plan administered and managed

according to ERISA." Opp. at 5. Plaintiff argues that Congress's creation of a statutory cause of

action confers constitutional standing, relying on the rule that "[t]he actual or threatened injury

required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of

which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal quotation marks

omitted). Plaintiff, however, reads this rule too broadly, as it does not allow plaintiffs to sue for

generalized grievances unmoored from any allegation that he has at least suffered a concrete,

particularized statutory injury.

Article III requires that plaintiffs demonstrate that they have suffered a "distinct and

palpable" personal injury to have standing to sue in federal court. *Warth*, 422 U.S. at 501. It is

undoubtedly true that Congress may create new legal rights that did not previously exist, and

provide a statutory cause of action for plaintiffs to enforce that right: for example, the right to

the disclosure of agency records under the Freedom of Information Act ("FOIA"), or the right to

social-security benefits under the Social Security Act. The denial of a request for records under

the FOIA and a denial of a claim for benefits under the Social Security Act results in an injury to

a statutorily created right that gives rise to standing. But the "[statutory] broadening [of] the

categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) (first alteration added and internal quotation marks omitted). In other words, although Congress may create a new cause of action, thereby conferring statutory standing, Article III still requires the plaintiff to allege that he was personally injured in the manner provided by statute.

Unlike under FOIA or the Social Security Act, however, ERISA does not provide plaintiff with any generalized interest in his Plan's assets. In a defined benefit plan, "*[g]iven the employer's obligation to make up any shortfall, no plan member has a claim to any particular asset that composes a part of the plan's general asset pool*." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999) (emphasis added). Therefore, plaintiff would only have standing under Article III if he alleged that the defendants' conduct increased the risk that Federal-Mogul would default on its future obligations to pay plaintiff's defined benefits. Plaintiff has not alleged or otherwise shown that to be the case. That failure is fatal to plaintiff's standing under Article III. A plan participant suing a plan fiduciary for restitution or disgorgement under ERISA must "satisfy the strictures of constitutional standing by demonstrating *individual loss*[.]" *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 200 (2d Cir. 2005) ("*Central States I*") (emphasis added and internal quotation marks and alteration omitted).[1]

---

1 Although plaintiff now argues that the alleged loss to the Plan increased the likelihood of default, Opp. at 11, plaintiff cannot amend his complaint in a memorandum of law. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("a party is not entitled to amend its complaint through statements made in motion papers") (describing *IIT, Int'l Inv. Trust v. Cornfeld*, 619 F.2d 909, 913 (2d Cir. 1980)). Indeed, he previously declined this

[Footnote continued on next page]

Plaintiff's efforts to distinguish *Central States I* and effectively dispense with the requirement that a plan participant demonstrate individual injury, Opp. at 7-12, are unavailing. His argument rests on outdated precedents that have been rejected or severely qualified by the Supreme Court and the Second Circuit. Plaintiff principally relies upon *Financial Institutions Retirement Fund v. Office of Thrift Supervision*, 964 F.2d 142 (2d Cir. 1992) ("*FIRF*"). There, the Second Circuit held that ERISA "essentially empowers [participants] to bring a civil action to redress *any* violation of the statute's fiduciary requirements." *Id*. at 147-48 (emphasis in original). But *FIRF's* broad holding that any violation of ERISA creates an "injury" sufficient to give participants standing has been substantially limited by *Central States I*, which held that Article III requires ERISA participants seeking monetary relief to show the same personal injury that any other plaintiff must establish to access the federal courts. 433 F.3d at 200. The Second Circuit limited *FIRF* to circumstances where ERISA created a personal right in participants— such as the right to the disclosure of certain plan documents under ERISA Section 104(b)—the invasion of which caused injury.[2] *See id.* Here, however, as participants have no interest in the assets of a defined benefit plan, *Hughes Aircraft*, 525 U.S. at 440, a violation of ERISA in that regard cannot result in any statutory "injury" to plaintiff.

---

[Footnote continued from previous page]
Court's invitation to amend, and therefore, as this Court observed, "he is committed to his pleadings." Tr. of Oral Argument 2:5-13, 11:5 (Dec. 18, 2007).

[2] With respect to his claims for injunctive relief, plaintiff does not seriously contest that the claims are moot, but merely notes that the court could still issue a permanent injunction barring the defendants from ever serving in a position of trust under ERISA. Opp. at 4 n.16 (citing *Beck v. Levering*, 947 F.2d 639, 641 (2d Cir. 1991)). *Beck*, however, is inapplicable here. As defendants noted in their opening brief, in order to have standing to sue for injunctive relief, plaintiff must show that his alleged injuries are substantially likely to recur. Mem. 12 n.6 (citing *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). Because the defendants no longer have any relationship with the Plan, the Plan would not benefit from any injunctive relief, and it is entirely speculative that the Plan would retain any of the defendants in the future.

Plaintiff notes, however, that one panel cannot "overrule" another panel unless intervening Supreme Court decisions cast doubt on the earlier precedent.  Opp. at 7 n.25 (citing *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 327 (2d Cir. 2004)).  That is exactly the circumstance here, as decisions by the Supreme Court subsequent to *FIRF* have not only cast doubt on *FIRF's* continuing viability, but have wholly undermined its thesis that *any* violation of ERISA allows any participant to sue even if that alleged violation caused the participant no personal injury.

First, in *Lujan*, 504 U.S. at 578, the Court noted that while Congress had the power to "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," such as "an individual's personal interest in living in a racially integrated community," or "a company's interest in marketing its product free from competition," Congress could not eliminate the injury-in-fact requirement of Article III standing.  And five years later, *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997), described as "settled" the principle that Congress cannot confer Article III standing merely by creating a statutory cause of action.  Citing to *Raines*, the Second Circuit acknowledged that a participant plaintiff suing under ERISA must also show the same concrete, personal stake in the outcome of the litigation as any other plaintiff seeking to invoke the authority of a federal court.  *Cent. States I*, 433 F.3d at 200.

Second, and perhaps most important, the Supreme Court's decision in *Hughes Aircraft* specifically undermined the holding in *FIRF* that participants in a defined benefit plan had standing to sue regarding the allocation of surplus plan assets when the participants' pension benefits would be unaffected by however the surplus was allocated.  In *Hughes Aircraft*, the Court held that participants have no interest in—and thus no entitlement to—the surplus assets of

7

a defined benefit plan. 525 U.S. at 440-41. And, as previously noted, the Court made plain that participants in defined benefit plans have no general interest in the plan's assets. *Id.* at 440. This is so, the Court explained, because "a decline in the value of a plan's assets does not alter" the participant's benefits, as it is the employer's obligation to make up the shortfall to ensure the payment of the promised benefit. *Id.* If, under ERISA, a participant in a defined benefit plan has no general interest in the plan's assets, he has no statutorily-created right, the invasion of which would cause him an injury sufficient to provide Article III standing. *See Lujan*, 504 U.S. at 578.

Plaintiff next attempts to avoid the holding in *Central States I* by describing it as mere dicta and suggesting instead that the discussion in *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007) ("*Central States II*"), leaves open the possibility that ERISA, by itself, confers Article III standing. This, too, fails on a close examination of the two cases.

In *Central States I*, the Second Circuit held that the facts alleged by the plan trustee and plan participants in support of standing were insufficient as a matter of law. With respect to the trustee, the Court noted that it had failed to establish standing to sue derivatively on behalf of the plan, because there was no evidence of a contractual relationship between the trustee and the Plan. *Cent. States I*, 433 F.3d at 203. With respect to the participant plaintiffs, the court of appeals determined that it was unclear whether there was any evidence that the defendants' conduct caused those plaintiffs—as opposed to the plans to which they belong—any injury. *See Cent. States I*, 433 F.3d at 202. The Second Circuit remanded the case to the district court to determine, *inter alia*, whether the participant plaintiffs had sustained the requisite injury-in-fact. If *FIRF* was controlling as plaintiff maintains, the remand would have been wholly unnecessary. After remand, the Second Circuit again reviewed the case, and affirmed based on a finding that

the plan *trustee* had suffered the requisite injury for Article III purposes, because it had demonstrated the existence of a contractual relationship between the trustee and the Plan, without addressing the standing of the *participant* plaintiffs.  *See Cent. States II*, 504 F.3d at 241-43.

    Plaintiff nevertheless asserts that *Central States II* applies here because fiduciary and participant standing are indistinguishable.  Opp. at 11.  On the contrary, the distinction between fiduciary and participant standing has deep roots in the common law of trusts, which ERISA codified.[3]  At common law, a trustee could always sue on behalf of a plan without showing any personal injury.  *See* Restatement (Second) of Trusts § 280 (1959).  By contrast, "[a] particular beneficiary cannot maintain a suit for a breach of trust which does not involve any violation of duty to him."  Restatement (Second) of Trusts § 214 cmt. b; *see also id.* §§ 280-82; *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006).  The firmly-established common-law distinction between beneficiaries and fiduciaries also operates under ERISA.[4]  *See Glanton*, 465 F.3d at 1125-26.

_____

[3]  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110-11 (1989); *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996).

[4]  Plaintiff latches onto a footnote that appears in *Central States II* to the effect that *Central States I* "should not be read as rejecting" the argument that standing may exist solely by virtue of the defendants' violation of the intangible right to honest services under ERISA, because that argument had not been presented in an "intelligible fashion" to the earlier panel.  *Cent. States II*, 504 F.3d at 243 n.3.  Even if plaintiff here has overcome that defect, *Lujan* and *Raines* make clear that constitutional standing requires a "concrete" injury apart from any alleged statutory violation.

Plaintiff also goes to great lengths to try to distinguish the Eighth Circuit's decision in *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901 (8th Cir. 2002), undoubtedly realizing how damaging the decision is for his position.  Opp. at 8 n.29.  This effort fails, however, because the Second Circuit cited *favorably* to *Harley* in *Central States I* for the proposition that "an ERISA Plan participant or beneficiary must plead a direct injury in order to assert claims on

[Footnote continued on next page]

Finally, it is worth noting that the Article III standing requirements take on particular importance in the context of a class action such as this one. Plaintiff, as a class representative, ought to have a stake in the outcome of the lawsuit in order to vigorously prosecute the case on behalf of absent members. To allow a plaintiff "with no skin in the game" to proceed with this suit, and possibly to represent other plaintiffs who *might* have Article III standing and to bind them to a perhaps adverse judgment, would be unfair to the absent class members and certainly detrimental to their interests.[5]

## II. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THE COMPLAINT DOES NOT ADEQUATELY ALLEGE CAUSATION.

In their opening brief, the defendants demonstrated that the complaint should also be dismissed against all defendants because plaintiff failed to allege the causation necessary to state a cause of action under ERISA. In his opposition, plaintiff argues that (1) loss causation is not an element of his claims for disgorgement and restitution, and (2) that he has, in any event, adequately pleaded loss causation and claims for equitable restitution. Both points fail.

First, plaintiff's assertion that claims for disgorgement and restitution do not require a showing of causation is demonstrably wrong. The Second Circuit has consistently held that, when suing for disgorgement, the plaintiff must show that "the loss complained of must proceed

---

[Footnote continued from previous page]
behalf of a Plan." *Cent. States I*, 433 F.3d at 200. Plaintiff's criticisms of *Harley* cannot trump the Second Circuit's favorable view of that decision.

[5] Although plaintiff is correct that *Banyai v. Mazur*, No. 00 Civ. 980 (SHS), 2007 WL 959066, at *4-5 (S.D.N.Y. Mar. 29, 2007), reaches the contrary conclusion, *Banyai* mistakenly holds that *Central States I* is not applicable to suits brought by a participant on behalf of an ERISA plan, rather than brought for individual relief. But the plaintiffs in *Central States I* did sue derivatively on behalf of their respective plans, and therefore, *Banyai*'s attempt to distinguish *Central States I* on that basis is mistaken. *See Cent. States I*, 433 F.3d at 186.

directly and proximately from the violation claimed and not be attributable to some supervening cause." *Wellman v. Dickinson*, 682 F.2d 355, 368 (2d Cir. 1982) (internal citation omitted); *see also SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972). Likewise, the D.C. Circuit has observed that, "[s]ince disgorgement primarily serves to prevent unjust enrichment, the court may exercise its equitable power only over property causally related to the wrongdoing." *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989). These cases and others like them demonstrate that courts do not abandon traditional causation principles when awarding equitable relief.

Second, plaintiff has not successfully distinguished *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992), an on-point ERISA case that requires plaintiffs alleging breach of fiduciary duty to demonstrate both *transaction* and *loss* causation. Plaintiff's opposition does not even mention the "transaction" causation requirement: that he must allege that the Plan would not have entered into its agreement with the BNY Defendants "but for" Callan's alleged misrepresentations regarding the nature of its commission-sharing arrangement with BNY. *See* Opp. at 12-16.

*Diduck*, however, specifically requires an ERISA plaintiff to plead transaction causation. *Diduck*, 974 F.2d at 278-79. Plaintiff apparently believes that *Diduck* does not apply here because it was a *misrepresentation* case, not an *omission* case, and that in an *omission* case, it is enough to show that a reasonable investor would have considered such facts important. Opp. at 14 (relying on *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972)). But *Affiliated Ute* "involve[d] primarily a failure to disclose," whereas in this case, plaintiff alleges that defendants made multiple material misstatements to pension plan clients. *See* Compl. ¶¶ 39-40, 43-45. Plaintiff cannot avoid the strictures of ERISA pleading established by the Second

11

Circuit merely by characterizing his unambiguously pleaded misrepresentation claim as an omission claim based upon the alleged failure of the defendant to tell the truth. A contrary rule would turn every misrepresentation case into one involving "omissions" and thus eviscerate the established "but-for" causation requirement.

### III.    PLAINTIFF'S SECTION 502(A)(3) CLAIMS AGAINST THE BNY DEFENDANTS SHOULD BE DISMISSED.

Plaintiff concedes in his opposition memorandum that "[t]he **key 'prohibited transactions'** at issue are not . . . the brokerage transactions performed by BNY Brokerage for pension plans, but, rather, BNY Defendants' payments to Callan." Opp. at 25 (emphasis added). Those annual payments, plaintiff contends, "violated §406(b)(3)" because "Callan received 'consideration' for 'its personal account' from BNY Defendants." *Id.* at 24-25. But, as plaintiff acknowledges, he has no basis on which to ask the BNY Defendants "to disgorge the monies that they paid to Callan, which they obviously do not have." *Id.* at 18. Because Section 502(a)(3) limits the available equitable relief to restitution or disgorgement of specifically identified funds **in the possession** of a party-in-interest, plaintiff's claim against the BNY Defendants should be dismissed because the property that is the subject of the "key prohibited transactions" alleged in the complaint is not in the possession of the BNY Defendants.[6]

This infirmity in the complaint is not remedied by plaintiff's request for the recovery of all commission payments received by the BNY Defendants from 1998 through 2006 based on allegations that the BNY Defendants knowingly participated in purported violations of Section

---

[6] Thus, even assuming *arguendo* plaintiff is correct that Section 408(b)(2) does not provide an exemption for purported violations of Section 406(b)(3), *see* Opp. at 25, plaintiff has no basis on which to seek equitable relief of restitution or disgorgement from the BNY Defendants, neither of which is alleged to hold any property belonging to the Plan arising from a transaction prohibited by Section 406(b)(3).

406(a)(1).  *See* Compl. ¶ 56.  Section 406(a)(1) prohibits a fiduciary from causing a party-in-interest to engage in certain transactions with a plan.[7]  Transactions involving broker-dealers, however, are subject to a well-known administrative "class exemption" promulgated by the Department of Labor, which specifically exempts from Section 406 liability brokerage transactions conducted on terms ***"at least as favorable to the plan as an arm's length transaction with an unrelated party"***;[8] otherwise, every broker-dealer that ever executed a brokerage transaction for a pension plan would be subject to an ERISA violation.  Such brokerage transactions are also subject to the statutory exemption set forth in Section 408(b)(2), which permits a plan to make reasonable arrangements with a party-in-interest for "services necessary for the . . . operation of the plan, ***if no more than reasonable compensation is paid therefore***."  29 U.S.C. § 1108(b)(2) (emphasis added).  These exemptions are plainly applicable:  Plaintiff admits that he is not asking the BNY Defendants "to restore to the Plan the difference between what the Plan paid in brokerage commissions and what the Plan would have paid had it traded with a less expensive broker."  Opp. at 18.  Accordingly, given that the complaint nowhere alleges, and plaintiff does not now contend, that the BNY Defendants received unreasonable compensation from the Plan, the administrative and statutory exemptions bar the relief he seeks.

---

[7]  Section 406(a)(1) prohibits a fiduciary from causing a plan to engage in the sale or exchange of any property with a party-in-interest, *see* 29 U.S.C. § 1106(a)(1)(A), and from causing a plan to engage in a transaction involving the "furnishing of goods, services, or facilities" with a party-in-interest, *see id.* § 1106(a)(1)(C).

[8]  Prohibited Transaction Class Exemption 75-1 provides "an exemption for effecting securities transactions on behalf of employee benefit plans, and for functions performed incidental to the effecting of such transactions," subject to the conditions that the transaction be effected on behalf of the plan "on terms at least as favorable to the plan as an arm's length transaction with an unrelated party would be."  40 Fed. Reg. 50845 (Oct. 31, 1975) (emphasis added).

Finally, plaintiff's assertion that the brokerage commissions paid to the BNY Defendants during the proposed class period from 1998 to 2006 "are readily identifiable from various brokerage commission reports produced in discovery," Opp. at 18, does not plug the hole in the complaint. The question is not what funds did the BNY Defendants receive, but what specifically identified funds do they currently hold that belong in good conscience to the Plan. Under the law of trusts upon which ERISA is based, plaintiff may seek equitable relief only with respect to "specifically identified fund[s]" that plaintiff can "trace" into the hands of the BNY Defendants. *See, e.g., Great-West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2002) ("[W]here 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]'.") (quoting links to First Restatement of Restitution § 215) (alterations in original). Because the complaint alleges only that the BNY Defendants were paid commissions over the course of eight years beginning in 1998, not that they remain in continued possession of specific funds that can be traced to the Plan, plaintiff's claim for equitable relief against the BNY Defendants should be dismissed.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in defendants' joint memorandum in support of their motion to dismiss, defendants respectfully request that plaintiff's complaint be dismissed.

Respectfully submitted,

DATE:  April 18, 2008

William J. Kilberg (WK-0792)
Paul Blankenstein (PB-8583)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:  (202) 955-8500
*Counsel for Callan Associates, Inc.*

Thomas A. Arena (TA-4613)
Dorothy Heyl (DH-1601)
MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5000
*Counsel for BNY Defendants*

15

## CERTIFICATE OF SERVICE

I, Thomas M. Johnson, Jr., hereby certify that on this 18th day of April 2008, I caused copies of the foregoing Defendants' Reply Brief in Further Support of Their Motion to Dismiss, on behalf of Defendants The Bank of New York Mellon, BNY ConvergEx Execution Solutions LLC, and Callan Associates, Inc., to be filed electronically with the Court and served this same day via the Court's ECF notification system upon the following:

**Gregory Y. Porter**
McTIGUE & PORTER LLP
5301 Wisconsin Avenue, NW
Suite 350
Washington, DC 20015
Phone: (202) 364-6900
Fax: (202) 364-9960
Email: gporter@mctiguelaw.com

Date: April 18, 2008

Thomas M. Johnson, Jr.
Gibson, Dunn & Crutcher

16