UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                          :

ALBERT T. BEANE, JR.,             :

            Plaintiff,      :

       v.                   :

THE BANK OF NEW YORK MELLON, BNY  :     07-cv-9444 (RMB)
CONVERGEX EXECUTION SOLUTIONS LLC  :
and CALLAN ASSOCIATES, INC.,     :

          Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DEFENDANTS' JOINT MEMORANDUM OF LAW
# IN SUPPORT OF THEIR MOTION TO DISMISS AND
# IN OPPOSITION TO PLAINTIFF'S MOTION
# TO CERTIFY CLASS OF ERISA PLANS

Thomas A. Arena (TA-4613)
Dorothy Heyl (DH-1601)
MILBANK, TWEED, HADLEY
& McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Counsel for BNY Defendants*

William Kilberg (WK-0792)
Paul Blankenstein (PB-8583)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Callan Associates, Inc.*

# TABLE OF CONTENTS

Page

BACKGROUND ........................................................................................................1

ARGUMENT ............................................................................................................4

I.   THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT. ...................................4

    A.   Standard Of Review. ...................................................................................4

    B.   Plaintiff Lacks Article III Standing, As He Has Failed To Allege That He Personally Has Sustained The Requisite Injury-In-Fact. .........................................5

    C.   Plaintiff's Claims Should Be Dismissed Because He Has Not Adequately Alleged The Causation Necessary Under ERISA..................................................11

        1.   Plaintiff Does Not Sufficiently Allege Transaction Causation...................12

        2.   Plaintiff Has Similarly Not Sufficiently Alleged Loss Causation. ............13

    D.   Plaintiff's Claims Against The BNY Defendants Should Be Dismissed. ............14

        1.   The Complaint Fails Adequately To Allege That The BNY Defendants Were ERISA Fiduciaries. ........................................................14

        2.   Plaintiff Fails To Allege That The BNY Defendants Were Unjustly Enriched Or That They Hold Specific Plan Property. .............................17

II.   NO CLASS SHOULD BE CERTIFIED AS PLAINTIFF HAS NOT MET THE REQUIREMENTS OF RULE 23. ..................................................................................18

    A.   Plaintiff Has Not Satisfied The Criteria Of Rule 23(a).........................................19

        1.   The Proposed Class Is Not Sufficiently Numerous. ...............................19

        2.   Issues Of Fiduciary Status And Reliance Require Individualized Determinations............................................................................22

            (a)   Callan's Fiduciary Status With Respect To Other Plans Cannot Be Based On Callan's Contract With The Plan. .............24

            (b)   Plaintiff Cannot Establish The BNY Defendants' Fiduciary Status Except On A Plan-By-Plan Basis.....................................25

            (c)   Reliance On Callan's Alleged Misrepresentations Requires Individualized Determinations........................................27

i

**TABLE OF CONTENTS**
**(continued)**

Page

B.  The Putative Class Is Not Certifiable Under Any Subdivision Of
Rule 23(b). .................................................................................................29

1.  A Class Should Not Be Certified Under Rule 23(b)(1). ...........................29

2.  A Class Should Not Be Certified Under Rule 23(b)(2). ...........................31

3.  A Class Should Not Be Certified Under Rule 23(b)(3). ...........................33

CONCLUSION.................................................................................................................35

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Acosta v. Pacific Enters.*,
950 F.2d 611 (9th Cir. 1991) ................................................................... 18

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972).................................................................................. 12

*Ala. Power Co. v. Davis*,
431 U.S. 581 (1977)..................................................................................... 8

*Allison v. Bank One- Denver*,
289 F.3d 1223 (10th Cir. 2002) .............................................................. 11

*Amara v. CIGNA Corp.*,
No. 01 Civ. 2361, 2002 WL 31993224 (D. Conn. Dec. 20, 2002).......... 33

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................ 29, 33

*Amron v. Morgan Stanley Inv. Advisors, Inc.*,
464 F.3d 338 (2d Cir. 2006) ................................................................... 14

*Andrews v. AT&T*,
95 F.3d 1014 (11th Cir. 1996) .......................................................... 27, 34

*Arizonans for Official English v. Ariz.*,
520 U.S. 43 (1997)...................................................................................... 7

*Babcock v. Computer Assocs., Intl, Inc.*,
212 F.R.D. 126 (E.D.N.Y. 2003) ............................................................ 34

*Barnes v. Am.  Tobacco Co.*,
161 F.3d 127 (3d Cir. 1998) ................................................................... 32

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007)..................................................................... passim

*Bledsoe v. Emery Worldwide Airlines*,
258 F. Supp. 2d 780 (S.D. Ohio 2003) ................................................... 32

*Bona v. Barasch*,
No. 01 Civ. 2289 (MBM), 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003)............... 17

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
Care, L.L.C.,*
504 F.3d 229 (2d Cir. 2007) ...................................................................................... 21

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco
Managed Care L.L.C.,*
433 F.3d 181 (2d Cir. 2005) ..................................................................... 5, 6, 7, 10

*Conn. v. Physicians Health Servs. of Conn., Inc.,*
287 F.3d 110 (2d Cir. 2002) ........................................................................................ 5

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,*
502 F.3d 91 (2d Cir. 2007) ....................................................................................... 18

*De Jesus v. Sears, Roebuck & Co.,*
87 F.3d 65 (2d Cir. 1996) ........................................................................................... 4

*Dickerson v. Feldman,*
426 F. Supp. 2d 130 (S.D.N.Y. 2006) ......................................................................... 5

*Diduck v. Kaszycki & Sons Contractors, Inc.,*
974 F.2d 270 (2d Cir. 1992) ....................................................................... 11, 12, 13

*Dunnigan v. Metropolitan Life Ins.,*
214 F.R.D. 128 (S.D.N.Y. 2003) .............................................................................. 35

*Dura Pharm., Inc. v. Broudo,*
544 U.S. 336 (2005) ....................................................................................... 11, 14

*Fallick v. Nationwide Mut. Life Ins. Co.,*
162 F.3d 410 (6th Cir. 1998) ............................................................................. 18, 19

*Farm King Supply Inc. v. Edward D. Jones & Co.,*
884 F.2d 288 (7th Cir. 1989) .................................................................................... 15

*Field Day, LLC v. County of Suffolk,*
463 F.3d 167 (2d Cir. 2006) ....................................................................................... 4

*Financial Institutions Retirement Fund v. Office of Thrift Supervision,*
964 F.2d 142 (2d Cir. 1992) ..................................................................................... 10

*Firestone Tire & Rubber Co. v. Bruch,*
489 U.S. 101 (1989) .................................................................................................. 13

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*General Tel. Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982).........................................................................................22

*Glanton v. AdvancePCS, Inc.*,
    465 F.3d 1123 (9th Cir. 2006), *cert denied*, 128  S. Ct. 126 (2007)......................7, 8

*Grandon v. Merrill Lynch & Co., Inc.*,
    No. 95 Civ. 10742 (SWK), 2003 WL 22118979 (S.D.N.Y. Sept. 13, 2003) .........................35

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)...............................................................................16, 17, 18

*Harley v. Minnesota Mining & Mfg.*,
    284 F.3d 901 (8th Cir. 2002) ...............................................................6, 7, 8, 34

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*,
    530 U.S. 238 (2000)........................................................................................17

*Horvath v. Keystone Health Plan E.*,
    333 F.3d 450 (3d Cir. 2003) ..............................................................................7, 8

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)....................................................................................7, 8, 10

*In re "Agent Orange" Prod. Liab. Litig.*,
    100 F.R.D. 718 (E.D.N.Y. 1983), *aff'd in part and rev'd in part*, 818 F.2d 145
    (2d Cir. 1987).................................................................................................29

*In re Am. Med. Sys. Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ..............................................................................22

*In re CMS Energy ERISA Litig.*,
    225 F.R.D. 539 (E.D. Mich. 2004) ......................................................................30

*In re Elec. Data Sys. Corp. "ERISA" Litig.*,
    224 F.R.D. 613 (E.D. Tex. 2004) ....................................................................27, 34

*In re Global Crossing Secs. & ERISA Litig.*,
    225 F.R.D.  436 (S.D.N.Y. 2004) ........................................................................28

*In re Marsh ERISA Litig.*,
    No. 04 Civ. 8157 (SWK), 2006 WL 3706169 (S.D.N.Y.  Dec. 14, 2006) ...............................17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Mutual Funds Investment Litigation,*
  519 F. Supp. 2d 580 (D. Md. 2007) ................................................................ 18

*In re Visa Check/Mastermoney Antitrust Litig. v. Visa, United States,*
  280 F.3d 124 (2d Cir. 2001) ................................................................. 31, 33

*In re WorldCom, Inc. ERISA Litig.,*
  No. 02 Civ. 4816 (DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ................................. 33

*Iqbal v. Hasty,*
  490 F.3d 143 (2d Cir. 2007) ................................................................. 5, 13

*ITPE Pension Fund v. Hall,*
  334 F.3d 1011 (11th Cir. 2003) ................................................................. 25

*Kolar v. Rite Aid Corp.,*
  Civ. A. 01-1229, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003) ................................. 30

*Kuper v. Iovenko,*
  66 F.3d 1447 (6th Cir. 1995) ................................................................. 11

*LaFlamme v. Carpenters Local # 370 Pension Plan,*
  212 F.R.D. 448 (N.D.N.Y. 2003) ................................................................. 33

*Langbecker v. Elec. Data Sys. Corp.,*
  476 F.3d 299 (5th Cir. 2007) ................................................................. 27

*LaRue v. DeWolff, Boberg & Assocs.,*
  128 S. Ct. 1020 (2008) ................................................................. 7, 8

*LaScala v. Scrufari,*
  96 F. Supp. 2d 233 (W.D.N.Y. 2000) ................................................................. 15

*Lentell v. Merrill Lynch & Co., Inc.,*
  396 F.3d 161 (2d Cir. 2005) ................................................................. 11, 12

*Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.,*
  211 F.R.D. 228 (S.D.N.Y. 2002) ................................................................. 35

*Lively v. Dynegy, Inc.,*
  No. 05-CV-00063, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007) ................................. 31

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Los Angeles v. Lyons*,
  461 U.S. 95 (1983).................................................................................................. 7

*Lowen v. Tower Asset Mgmt., Inc.*,
  829 F.2d 1209 (2d Cir. 1987) ............................................................................... 15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)......................................................................................... 6, 9, 10

*McLaughlin v. Am. Tobacco Co.*,
  2008 U.S. App. LEXIS 7093 (2d Cir. 2008) ........................................................ 28

*McMorgan & Co. v. First Cal. Mortgage Co.*,
  916 F. Supp. 966 (N.D. Cal. 1995) ....................................................................... 23

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248 (1993)........................................................................................... 16, 17

*Metzler v. Solidarity of Labor Organizations Health & Welfare Fund*,
  95 Civ. 7247, 1998 U.S. Dist. Lexis 12565 (KMW) (S.D.N.Y. Aug. 14, 1998)...... 16

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ............................................................. 27, 28, 33, 35

*Movitz v. First Nat'l Bank of Chicago*,
  148 F.3d 760 (7th Cir. 1998) ................................................................................ 11

*Nelson v. IPALCO Enters., Inc.*,
  No. IPO2-477CHK, 2003 WL 23101792 (S.D. Ind. Sept. 30, 2003)...................... 31

*New York Dist. Council of Carpenters Pension Fund v. Savasta*,
  No. 99 CV 11362 (GBD), 2005 WL 22872 (S.D.N.Y.  Jan.  4, 2005).................... 18

*New York State Teamsters Council Health & Hosp. Fund v. DePerno*, 18 F.3d
  179 (2d Cir. 1994)................................................................................................. 34

*Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
  135 F.3d 266 (3d Cir. 1998) ................................................................................. 15

*Nowak v. Ironworkers Local 6 Pension Fund*,
  81 F.3d 1182 (2d Cir. 1996) ................................................................................... 4

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*O'Neil v. Gencorp., Inc.*,
No. 88 Civ. 8498, 1991 WL 33316 (S.D.N.Y. Mar. 1, 1991) ................................... 34

*O'Shea v. Littleton*,
414 U.S. 488 (1974)................................................................................................... 18

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)................................................................................................... 30

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
507 F.3d 117 (2d Cir. 2007) ................................................................................... 5, 6

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
226 F.R.D. 456 (S.D.N.Y. 2005) .............................................................................. 19

*Raines v. Byrd*,
521 U.S. 811 (1997)............................................................................................... 5, 10

*Robinson v. Metro-N. Commuter R.R. Co.*,
267 F.3d 147 (2d Cir. 2001) ........................................................................ 22, 25, 31

*Rothwell v. Chubb Life Ins. Co. of Am.*,
191 F.R.D. 25 (D.N.H. 1998) ............................................................................ 27, 34

*Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.*,
319 F.3d 205 (5th Cir. 2003) ............................................................................. 27, 34

*Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*,
869 F. Supp. 278 (D.N.J. 1994) ............................................................................... 24

*Siskind v. Sperry Ret. Program*,
47 F.3d 498 (2d Cir. 1995) ....................................................................................... 23

*Spann v. AOL Time Warner*,
219 F.R.D. 307 (S.D.N.Y. 2003) .................................................................. 30, 33, 34

*Sprague v. GMC*,
133 F.3d 388 (6th Cir. 1998) ............................................................... 22, 23, 27, 28

*State Employees Bargaining Agent Coalition v. Rowland*,
494 F.3d 71 (2d Cir. 2007) ......................................................................................... 4

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Thomas v. Aris Corp. of Am.*,
219 F.R.D. 338 (M.D. Pa. 2003)............................................................27, 34

*Tootle v. Arinc, Inc.*,
222 F.R.D. 88 (D. Md. 2004)..................................................................27, 34

*Trautz v. Weisman*,
846 F. Supp. 1160 (S.D.N.Y. 1994) ............................................................ 30

*Varity Corp v. Howe*,
516 U.S. 489 (1996)..................................................................................... 13

*Warth v. Seldin*,
422 U.S. 490 (1975)..................................................................................... 6, 9

*Westman v. Textron, Inc.*,
151 F.R.D. 229 (D. Conn. 1993) ................................................................. 30

*Wiseman v. First Citizens Bank & Trust Co.*,
215 F.R.D. 507 (W.D.N.C. 2003)................................................................ 22

*Wright v. Or. Metallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2004) .................................................................... 11

**Constitutional Provisions**

U.S. Const. art. III.......................................................................................... 5

**Statutes**

29 U.S.C. § 1002(2)(A)................................................................................... 1

29 U.S.C. § 1002(21)(A)................................................................................ 23

29 U.S.C. § 1002(35) ................................................................................. 1, 7

29 U.S.C. § 1102(a)(2)................................................................................... 23

29 U.S.C. § 1104 ............................................................................................. 3

29 U.S.C. § 1106 ............................................................................................. 3

29 U.S.C. § 1106(b)(1) ................................................................................... 3

**TABLE OF AUTHORITIES**
(continued)

Page(s)

29 U.S.C. § 1108(b)(1)-(2) ................................................................................ 34

29 U.S.C. § 1108(c)(2) ....................................................................................... 34

**Rules**

29 C.F.R. § 2510.3-21(d) ......................................................................... 14, 16, 25

Fed. R. Civ. P. 23 ..................................................................................... 19, 34

**Other Authorities**

7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1775 (3d ed. 2005) ........................................................................................................ 32

Restatement (Second) of Trusts § 212 cmt. e ............................................... 13

Defendants The Bank of New York Mellon ("BNY"), BNY ConvergEx Execution Solutions LLC (collectively, the "BNY Defendants"), and Callan Associates, Inc. ("Callan") jointly submit this memorandum of law in support of their motion to dismiss the amended complaint and in opposition to plaintiff's motion for class certification.

## BACKGROUND[1]

According to the complaint, Callan provides consulting services to over 270 institutional clients with assets in excess of $900 billion. Compl. ¶ 20. Callan's clients include investment managers, outside consulting firms, as well as public and private pension plan sponsors, including the Federal-Mogul Corporation Pension Plan (the "Federal-Mogul plan" or the "Plan"). *Id.* ¶¶ 2, 20. The complaint describes the Plan as an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). Compl. ¶ 21. Plaintiff, a participant in the Plan, *id.* ¶ 1, asserts that Callan was a fiduciary of the Plan under ERISA. *Id.* ¶ 20.

Prior to October 1998, Callan offered brokerage services to its clients through its affiliated broker dealer, Alpha. *Id.* ¶ 3. In October 1998, specified assets of Alpha were sold to BNY ESI & Co., Inc., then a subsidiary of the Bank of New York (now The Bank of New York Mellon). *Id.* BNY ESI & Co., Inc., through a series of changes in name, corporate form, and ownership interests, is now called BNY ConvergEx Execution Solutions LLC ("BNY ConvergEx"). *Id.* ¶ 19. BNY ConvergEx is a member company of BNY ConvergEx Group, LLC, which is presently an affiliate of BNY. *Id.*

---

[1] The facts set forth in this section are based on the First Amended Complaint (the "complaint"), plaintiff's discovery responses, and the declarations attached to this memorandum.

Pursuant to a Services Agreement, executed contemporaneously with the acquisition of Alpha, BNY ConvergEx agreed to pay Callan a certain specified dollar amount (the "Specified Amount") each year from 1998 through 2006. *See* Ex. A, Springer Declaration ("Springer Decl.") ¶¶ 5-6. Eight percent of the Specified Amount was contingent upon Callan's clients paying a target amount of commissions to BNY ConvergEx. The remainder of the Specified Amount was not. *See id.* For each year between 1998 and 2006, BNY ConvergEx directed that the eight percent payment be made to Callan.[2]  Springer Decl. ¶¶ 7-9.

Plaintiff alleges that Callan was a fiduciary of the Plan and failed to properly disclose the nature of its contingent-fee arrangement with BNY ConvergEx. Compl. ¶ 6. In particular, plaintiff alleges that Callan misrepresented the nature of its agreement with BNY ConvergEx in the registration statements—specifically, Callan's Form ADV Part II[3]—it filed with the Securities and Exchange Commission ("SEC") by stating that "[a]ccording to the terms of the transaction, BNY [ConvergEx] makes periodic fixed payments to Callan each year." *Id.* ¶ 47. Callan amended its ADV in September 2005 to provide more detail about its relationship with BNY and BNY ConvergEx. Ex. B, DeLuce Declaration ("DeLuce Decl.") ¶ 11 (March 13, 2008). In December 2005, Callan emailed its then current clients describing its compensation

---

[2]  Starting in November 2000, after the second year of the Alpha acquisition and continuing for the remainder of the contract, BNY ConvergEx did not perform the computation required to determine whether the gross commissions attributable to Callan's clients exceeded the threshold. BNY ConvergEx understood, without needing to perform the computation, that those gross commissions substantially surpassed the threshold and "treated the payments as fixed." DeLuce Decl. ¶ 11; *see also* Springer Decl. ¶ 8. On January 9, 2007, Callan and BNY ConvergEx terminated the Services Agreement. Springer Decl. ¶ 10.

[3]  A Form ADV is a registration statement that certain investment advisers are required to file with the SEC. It has two parts. Part I contains information about the adviser's education, business, and disciplinary history within the last 10 years. Part II includes information about an adviser's services, fees, and investment strategies.

arrangement with BNY ConvergEx, including the contingent nature of eight percent of the annual payment.  DeLuce Decl. ¶ 11.

The complaint asserts two causes of action against Callan: first, that Callan caused the Plan to enter into ERISA-prohibited transactions with BNY ConvergEx, 29 U.S.C. § 1106, and second, that Callan breached its fiduciary duties to the Plan by causing the Plan to execute such transactions, 29 U.S.C. § 1104.  Plaintiff seeks restitution and disgorgement from Callan of any fees it received from the Pension Plan and other plans to which Callan provided its services and who also used BNY ConvergEx as their broker.  *See* Compl. ¶¶ 83, 89.

Plaintiff alleges that BNY ConvergEx and BNY, as its affiliate corporation, are also fiduciaries of the Plan within the meaning of ERISA.  *See id.* ¶¶ 18-19.  Plaintiff seeks to hold the BNY Defendants accountable as fiduciaries to the Plan because their institutional brokerage services allegedly "involved the exercise and control" over plan assets and because they allegedly "exercised discretionary control" over confidential Plan information, which plaintiff alleges is an asset of the Plan.  *See id.* ¶¶ 2, 35, 44.  Plaintiff asserts that the BNY Defendants' alleged receipt of brokerage commissions and use of confidential Plan information constituted prohibited transactions, *see* 29 U.S.C. § 1106(b)(1) and (3), and breached purported duties that the BNY Defendants owed the Plan.  *See id.* ¶¶ 104, 109.  The complaint also seeks to hold the BNY Defendants liable, on the alternative theory that they aided and abetted Callan's alleged fiduciary breach.  *See id.* ¶ 93.

Plaintiff seeks to represent not merely the Plan itself, but also a putative class of "ERISA pension plans who retained [Callan] for pension consulting services and who used [BNY ConvergEx], directly or indirectly, for brokerage services from October 1998 through 2006 (the "Class Period")."  Pl.'s Mem. at 1.

3

## ARGUMENT

I.     **THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT.**

A.     **Standard Of Review.**

Defendants have moved to dismiss plaintiff's complaint under both Federal Rule of Civil Procedure 12(b)(1), challenging plaintiff's standing under Article III, and under Rule 12(b)(6), challenging whether the allegations in the complaint are sufficient to state a cause of action under ERISA.  A motion to dismiss under Rule 12(b)(1) addresses whether a court "lacks the statutory or constitutional power to adjudicate the case."  *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).  Where standing is at issue, plaintiff has the "burden of establishing that he has suffered a concrete injury or is on the verge of suffering one," *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006); in that regard, the Court may consider evidence outside the complaint, including affidavits and discovery responses.  *See, e.g.*, *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

A Rule 12(b)(6) motion, by contrast, tests the legal sufficiency of a complaint.  *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996).  Therefore, the Court must accept the well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *See id.*  However, to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted and alteration in original).  Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.[4]

> **B.      Plaintiff Lacks Article III Standing, As He Has Failed To Allege That He Personally Has Sustained The Requisite Injury-In-Fact.**

A plaintiff cannot sue under ERISA unless he has standing under both ERISA and under Article III. *See* U.S. Const. art. III; *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care L.L.C.*, 433 F.3d 181, 201 (2d Cir. 2005) ("*Central States I*"); *Dickerson v. Feldman*, 426 F. Supp. 2d 130, 134 (S.D.N.Y. 2006). A plaintiff may establish ERISA standing by demonstrating that he is one of the parties—a participant, beneficiary, fiduciary or the Secretary of Labor—listed in Section 502(a). *See Conn. v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 121 (2d Cir. 2002). To satisfy Article III, an ERISA plaintiff must also meet the now familiar injury-in-fact, causation and redressability criteria.

Although plaintiff alleges that he has statutory standing under ERISA because he is a current participant in the Plan, *see* Compl. ¶ 13, "statutory standing will not suffice to substitute for Article III standing." *Central States I*, 433 F.3d at 201. In this case, plaintiff lacks Article III standing because he has not suffered any individualized injury. The Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a *'personal stake'* in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (internal quotations in original and emphasis added). That injury

---

[4] The Second Circuit has described *Twombly* as requiring that "a complaint . . . allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007). In other words, the standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

must be "concrete and particularized" and "actual and imminent, not 'conjectural or

hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citation

omitted).  All plaintiffs seeking access to the federal courts "must allege and show that they

*personally* have been injured . . . ."  *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (emphasis added).

     The same is, of course, true under ERISA.  Contrary to how plaintiff would have it, for a

plan participant to establish Article III standing, it is not enough that the participant show injury

to the plan itself.[5]  "Congress cannot erase Article III's standing requirements by statutorily

granting the right to sue to a plaintiff who would not otherwise have standing."  *Raines*, 521 U.S.

at 820 n.3.  Plaintiff, as a plan participant, "must plead a direct injury in order to assert claims on

behalf of a Plan."  *Central States I*, 433 F.3d at 200 (citing *Harley v. Minnesota Mining & Mfg.*,

284 F.3d 901, 906-07 (8th Cir. 2002)).  Obtaining monetary relief on behalf of a plan under

ERISA—the very relief that plaintiff here seeks[6]—"requires that a plaintiff satisfy the strictures

---

[5]  Although, to be sure, the complaint contains generalized allegations of losses to the Plan itself, *see, e.g.*, Compl. ¶ 88, it is curiously silent about what the nature of those losses might be. The fiduciaries of the Plan determined that an outside broker was necessary to conduct trades on behalf of the Plan.  *Id.* ¶ 25.  Thus, the Plan would have incurred expenses related to executing those trades whether the broker was BNY ConvergEx or some other broker.  Significantly, the complaint does not allege that BNY ConvergEx failed to provide a competitive price for its services, failed to satisfy its duty of best execution with respect to any Plan transactions, or otherwise did not provide the Plan with the full value of its services for the commissions paid. Although the complaint does state that Callan clients did not have the benefit of a "competitive and transparent" market in selecting a broker, because Callan allegedly provided the BNY Defendants with confidential information, Compl. ¶ 44, plaintiff does not allege what the nature of that information might be or how it could have influenced any particular plan's choice of BNY ConvergEx on the open market.  Plaintiff is obligated to set out in his complaint something more than conclusory allegations of injury, especially where, as here, the specific operative events set out in the complaint do not plausibly suggest that the Plan sustained any loss due to the defendants' alleged violations of ERISA.  *See, e.g.*, *Port Dock & Stone Corp.*, 507 F.3d at 121 (after *Twombly*, a plaintiff must allege facts that "actively and plausibly suggest" the conclusion that the defendant violated the law).  He has not done so.

[6]  Although plaintiff's complaint also requests various forms of injunctive relief, such requests are now moot, because—as plaintiff acknowledges—the contingent aspect of Callan's

[Footnote continued on next page]

of constitutional standing by 'demonstrat[ing] individual loss.'"  *Central States I*, 433 F.3d at 200 (internal quotations and alteration in original).  Indeed, all the other federal courts of appeals to consider this precise issue have unanimously concluded that plan participants who do not allege personal loss lack Article III standing to sue.  *See id.*; *Harley*, 284 F.3d at 906-07; *Horvath v. Keystone Health Plan E.*, 333 F.3d 450, 455-56 (3d Cir. 2003); *Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006), *cert. denied*, 128 S. Ct. 126 (2007).  As the Eighth Circuit held in *Harley*, the "limits on judicial power imposed by Article III counsel against permitting participants and beneficiaries who have suffered no injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan."  284 F.3d at 906-07.

Plaintiff simply does not allege that he has personally suffered or is in imminent danger of suffering a concrete injury resulting from Callan's alleged violations of ERISA.  *See Central States I*, 433 F.3d at 198.  Perhaps most important in this regard, because the Plan is a "defined benefit plan," *see* Compl. ¶ 21 (citing 29 U.S.C. § 1002(35)), to meet the Article III injury-in-fact test, plaintiff must allege facts that, if true, would plausibly indicate that the benefit promised by the Plan here has been impaired, or is in imminent danger of being impaired.

A defined benefit plan, "as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment."  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999); *see also LaRue v. DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020, 1022 n.1 (2008).  In such

---

[Footnote continued from previous page]
compensation arrangement with BNY has now been fully disclosed.  Compl. ¶¶ 4, 40.  Moreover, as Callan and the Federal-Mogul plan terminated their relationship in 2005, DeLuce Decl. ¶ 8, and the Plan no longer uses BNY ConvergEx as its broker, plaintiff lacks standing to pursue injunctive relief on behalf of the Plan to have any of the defendants permanently removed as a fiduciary or service provider to the Plan, *see* Compl. Part VIII, at ¶ 10, as that relief could not benefit either plaintiff or the Plan.  *See Arizonans for Official English v. Ariz.*, 520 U.S. 43, 67 (1997); *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

a plan, "the employer typically bears the entire investment risk and—short of the consequences of plan termination—must cover any underfunding as the result of a shortfall that may occur from the plan's investments." *Hughes Aircraft*, 525 U.S. at 439.  "***[T]he employer's contribution is adjusted to whatever level is necessary***" to pay for the promised benefit.  *Id.* at 440 (quoting *Ala. Power Co. v. Davis*, 431 U.S. 581, 593 n.18 (1977)) (emphasis added).  As the Supreme Court has recently explained, "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." *LaRue*, 128 S. Ct. at 1025.  Therefore, participants in a defined benefit plan, because they are insulated from plan losses, lack constitutional standing to sue for losses to the plan absent allegations that the plan losses would necessarily impair their right to receive the promised level of benefit payments.  *See, e.g.*, *Harley*, 284 F.3d at 906.

Plaintiff admits that he is not yet eligible to receive benefits; indeed, plaintiff "admits that if [he] were now eligible to receive benefits, . . . Federal Mogul would be obligated to make the described contributions [sufficient to allow the Pension Plan to pay promised benefits] if the Pension Plan were unable to pay Plaintiff's benefits."  *See* Ex. C, Pl. Resp. to Requests for Admission.  Significantly, plaintiff does not even offer the bare allegation that his employer, Federal-Mogul, is not currently able, or will not be able in the future, to meet its obligation to Plan participants because of the alleged conduct of Callan and/or the BNY Defendants; any attempt by plaintiff to do so would be sheer speculation, and thus plainly insufficient to satisfy Article III.  *See* Ex. D; *see also Horvath*, 333 F.3d at 457; *Glanton*, 465 F.3d at 1125.

In fact, the possibility that the Plan's payments to Callan and BNY ConvergEx have impaired plaintiff's future benefits is so remote as to be virtually non-existent.  The reported value of the assets of the Plan as of December 31, 2006, was $756,798,513.00.  *See* Ex. D,

Federal-Mogul Corporation Forms 5500.  The fees paid to Callan during the class period totaled

$1,494,508.67, and the net commissions (the gross commissions less the amount returned to the

Plan under the commission recapture arrangement with BNY ConvergEx) paid to BNY

ConvergEx during that same period were $174,294.22, for a total of $1,668,802.89, or 0.22% of

the Plan's assets at the end of the class period.  *See* Ex. E, DeLuce Declaration ¶ 2 (Apr. 17,

2008); Ex. F, Wong Declaration ¶ 2.  Assuming that the shortfall has not already been cured by

Federal Mogul's annual contributions to the Plan during the class period, plaintiff makes no

allegation that Federal-Mogul lacks the financial wherewithal to increase its future contributions

to address any currently existing shortfall of $1,668,675.39.  The contrary is seemingly the case.

In 2005, Federal-Mogul contributed $64,049,311.00 to the Plan, and followed that with a

contribution in 2006 of $107,588,489.00.  *See* Ex. D, Federal-Mogul Corporation Forms 5500.

Consequently, there is no appreciable risk that plaintiff's future benefits will be adversely

affected by the contested payments to the defendants.

Nor can plaintiff achieve Article III standing through some purported personal right to

have a plan administered and managed according to ERISA.  Although "[t]he actual or

threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights,

the invasion of which creates standing," *Warth*, 422 U.S. at 500 (internal quotation marks

omitted), a plaintiff may not sue for generalized grievances unmoored from any allegation of a

concrete, particularized statutory injury.  *See Lujan*, 504 U.S. at 578.

It is undoubtedly true that Congress may create new legal rights that did not previously

exist, and provide a statutory cause of action for plaintiffs to enforce that right.  But the

"[s]tatutory broadening [of] the categories of injury that may be alleged in support of standing is

a different matter from abandoning the requirement that the party seeking review must himself

9

have suffered an injury." *Lujan*, 504 U.S. at 578 (first alteration added and internal quotation marks omitted). In other words, although Congress may create a new cause of action, thereby conferring statutory standing, Article III still requires the plaintiff to allege that he was personally injured in the manner provided by statute.

ERISA does not, however, provide plaintiff with any generalized interest in his Plan's assets. In a defined benefit plan, "***[g]iven the employer's obligation to make up any shortfall, no plan member has a claim to any particular asset that composes a part of the plan's general asset pool***." *Hughes Aircraft*, 525 U.S. at 440. If plaintiff has no general interest in the assets of the Plan, a violation of ERISA that results in the expenditure of plan assets causes no statutory injury personal to plaintiff, unless that expenditure would somehow impair his promised benefit. Therefore, plaintiff would only have standing under Article III if he could establish—which he cannot—that the defendants' conduct increased the risk that Federal-Mogul would default on its future obligations to pay plaintiff's defined benefits.[7] See *Central States I*, 433 F.3d at 200. He has not even alleged facts that, if true, would do so.

---

[7] The Second Circuit's decision in *Financial Institutions Retirement Fund v. Office of Thrift Supervision*, 964 F.2d 142 (2d Cir. 1992) ("*FIRF*"), does not call for a contrary conclusion. In *FIRF*, the Second Circuit held that ERISA "essentially empowers [participants] to bring a civil action to redress *any* violation of the statute's fiduciary requirements." *Id*. at 147-48 (emphasis in original). But *FIRF's* broad holding has been substantially limited by *Central States I*, which held that Article III requires ERISA participants seeking monetary relief to show the same personal injury that any other plaintiff must establish to access the federal courts. 433 F.3d at 200. The Second Circuit limited *FIRF* to circumstances where ERISA created a personal right in participants—such as the right to the disclosure of certain plan documents under ERISA Section 104(b)—the invasion of which caused injury. *See id*. Here, however, as participants have no interest in the assets of a defined benefit plan, *Hughes Aircraft*, 525 U.S. at 440, a violation of ERISA in that regard cannot result in any statutory "injury" to plaintiff. In addition, decisions by the Supreme Court subsequent to *FIRF* have wholly undermined its thesis that *any* violation of ERISA allows any participant to sue even if that alleged violation caused the participant no personal injury. *See, e.g.*, *Lujan*, 504 U.S. at 578; *Raines*, 521 U.S. at 820 n.3.

10

Finally, it is worth noting that the Article III standing requirements take on particular importance in a class action such as this. Plaintiff, as a class representative, ought to have a personal stake in the lawsuit's outcome sufficient to motivate him to vigorously prosecute the case on behalf of absent members. To allow a plaintiff, like the plaintiff here, "with no skin in the game" to proceed with this suit on behalf of a class, and possibly to represent a class of plans who *might* have Article III standing and to bind them to a perhaps adverse judgment, would be unfair to the absent class members and certainly detrimental to their interests.

## C. Plaintiff's Claims Should Be Dismissed Because He Has Not Adequately Alleged The Causation Necessary Under ERISA.

Under Section 409(a) of ERISA, 29 U.S.C. § 1109(a), a plan fiduciary who breaches any duty prescribed by ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." Section 409(a) thus requires that the plaintiff show that there is a nexus between the defendant's actions and the losses suffered. *See, e.g.*, *Kuper v. Iovenko*, 66 F.3d 1447, 1452 (6th Cir. 1995); *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1099 (9th Cir. 2004); *Allison v. Bank One-Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002). At the pleading stage, a plaintiff must allege both (1) that the plan would not have entered into the transaction "but for" the fiduciary's alleged misrepresentation or failure to disclose, and (2) that any loss suffered by the plan resulted from the alleged breach. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 278-79 (2d Cir. 1992). These requirements are analogous to the concepts of "transaction causation" and "loss causation," respectively, that apply not only in securities fraud cases, *see, e.g.*, *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172-73 (2d Cir. 2005), but also in common law tort cases, *see, e.g.*, *Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760, 765 (7th Cir. 1998); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346

(2005) (loss causation requirement is not a creature of the securities laws).  Plaintiff has not

sufficiently alleged either transaction or loss causation.

> ### 1.     *Plaintiff Does Not Sufficiently Allege Transaction Causation.*

As relevant here, in order to show "transaction causation," the plaintiff must allege that

"but for the claimed misrepresentations or omissions, the plaintiff would not have entered into

the detrimental . . . transaction."  *Lentell*, 396 F.3d at 172 (internal quotations omitted).  In other

words, the plaintiff here must sufficiently allege reliance by the Plan on Callan's purported

misrepresentation.  *See Diduck*, 974 F.2d at 278 (misrepresentation must be an "essential or

inducing" cause).

Here, the plaintiff has failed to allege any facts that, if true, would show that the Plan

would have used a different broker "but for" Callan's alleged failure to disclose the contingent

aspect of the compensation it was receiving from BNY ConvergEx.  Instead, the complaint only

alleges that Callan, as a result of its alleged misrepresentations or failure to disclose, caused the

Plan to engage in transactions that Callan knew or should have known were prohibited by

ERISA.  *See, e.g.*, Compl. ¶ 81.  That, however, is not good enough.  Plaintiff must allege facts

that show that the Plan would have made a different decision had Callan disclosed the contingent

aspect of its compensation arrangement under the Services Agreement.  *See Diduck*, 974 F.2d at

278.[8]  The complaint's failure to do so is fatal to plaintiff's case.  *See Twombly*, 127 S. Ct. at

---

[8]  *Diduck* specifically requires an ERISA plaintiff to plead transaction causation.  *Diduck*, 974
F.2d at 278-79.  In his prior opposition to defendants' motion to dismiss, plaintiff argued that
*Diduck* does not apply here because it was a *misrepresentation* case, not an *omission* case, and
that in an *omission* case, it is enough to show that a reasonable investor would have considered
such facts important.  *See, e.g., Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128,
153 (1972)).  But *Affiliated Ute* "involve[d] primarily a failure to disclose," whereas in this case,
plaintiff alleges that defendants made multiple material misstatements to pension plan clients.
*See* Compl. ¶¶ 39-40, 43-45.  Plaintiff cannot avoid the strictures of ERISA pleading established

[Footnote continued on next page]

1966 (the "naked assertion" of an element of the offense, "without some further factual

enhancement[,] stops short of the line between possibility and plausibility of entitlement to

relief") (internal quotation marks omitted).

The Federal Rules "oblige[] a pleader to amplify a claim with some factual allegations in

those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*,

490 F.3d 143, 157-58 (2d Cir. 2007). Such amplification is necessary here as it does not

intuitively follow that Callan's alleged failure to disclose information concerning its

compensation arrangement with BNY ConvergEx was a "but for" cause of the Plan's decision to

use BNY ConvergEx. As plaintiff acknowledges, a pension plan typically chooses among

broker-dealers based on factors such as the price of a broker's services and its ability to achieve

best execution. *See* Compl. ¶ 55. Those factors, and not how Callan was compensated under the

Services Agreement, are what would operate as the "essential or inducing" cause of a plan's

choice of broker. There simply are no factual allegations that plausibly indicate the Plan would

have opted to contract with a different broker had Callan disclosed the contingent feature of the

compensation from BNY ConvergEx.

## 2. *Plaintiff Has Similarly Not Sufficiently Alleged Loss Causation.*

It is hornbook law in the common law of trusts, to which courts routinely look for

guidance when interpreting ERISA,[9] that "[a] trustee is not liable for a loss resulting from the

breach of trust if the same loss would have been incurred if he had committed no breach of

_____

[Footnote continued from previous page]
by the Second Circuit merely by characterizing his unambiguously pleaded misrepresentation
claim as an omission claim based upon the alleged failure of the defendant to tell the truth. A
contrary rule would turn every misrepresentation case into one involving "omissions" and thus
eviscerate the established "but for" causation requirement.

[9] *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110-11 (1989); *Varity Corp. v.
Howe*, 516 U.S. 489, 496-97 (1996).

trust." Restatement (Second) of Trusts § 212 cmt. e; *see Diduck*, 974 F.2d at 279. Plaintiff has not made any effort to show that Callan's alleged misrepresentations concerning its agreement with BNY ConvergEx caused the Plan any loss. Although plaintiff makes bare allegations that the Plan somehow suffered losses as a "direct and proximate" result of Callan's alleged breach of duty, Compl. ¶¶ 82, 88, the complaint contains no specific allegation with respect to what the nature of those losses might be, or how Callan's actions may have caused them. As discussed previously, the Plan would have incurred expenses for brokerage services in any event, and there is no allegation that BNY ConvergEx charged more than other brokers for comparable services. The complaint's skeletal allegations regarding the Plan's alleged losses represent precisely the type of conclusory assertions, unsupported by factual allegations, that the Supreme Court in *Twombly* condemned as insufficient "to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1964-65. As the Second Circuit said in a related context, to show loss causation a plaintiff must allege that he "suffered an economic loss and that the defendant's fraudulent conduct was the proximate cause of the plaintiff's loss," and such allegations must rise above "bald assertions and conclusions of law." *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 343-44 (2d Cir. 2006) (citing *Dura Pharm.*, 544 U.S. at 346-47). The allegations of the complaint here fall far short of satisfying that standard.

### D. Plaintiff's Claims Against The BNY Defendants Should Be Dismissed.

#### 1. *The Complaint Fails Adequately To Allege That The BNY Defendants Were ERISA Fiduciaries.*

Each of the newly added claims against the BNY Defendants (Counts IV through VI) is predicated on the legally insufficient proposition that the mere execution of securities transactions renders a broker-dealer a plan fiduciary. The law is squarely to the contrary.

The Department of Labor's regulations expressly provide that a broker-dealer shall not be deemed to be an ERISA fiduciary "solely because such person executes transactions for the purchase or sale of securities on behalf of such plan" where the broker-dealer acted pursuant to specific instructions from a plan's investment manager.  29 C.F.R. § 2510.3-21(d).  Missing from the complaint, however, are any allegations that BNY ConvergEx effected any securities transactions without having received such instructions from the Plan.  Nor does the complaint allege that the BNY Defendants ever gave any recommendations to the Plan as to the advisability of entering into any securities transactions.  *See Farm King Supply Inc. v. Edward D. Jones & Co.*, 884 F.2d 288, 294 (7th Cir. 1989).  Absent any such allegations, plaintiff cannot pin fiduciary status on the BNY Defendants.[10]

Plaintiff alternatively alleges that the BNY Defendants were fiduciaries to the Plan because they purportedly "exercised discretionary control over confidential Pension Plan information."  Compl. ¶ 19.  Plaintiff, however, nowhere identifies any information specific to the Federal-Mogul Plan the BNY Defendants received.  And, even assuming the complaint adequately alleged that the BNY Defendants received confidential Plan information, plaintiff

---

[10]  Plaintiff's allegation that BNY ConvergEx was a fiduciary because as a registered broker-dealer it was required to follow principles of best execution in executing securities transactions, Compl. ¶ 36, is legally erroneous.  A broker is under a duty to obtain the best execution that is reasonably available of their customers' orders, absent instructions to the contrary.  *See, e.g.*, *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 270 (3d Cir. 1998).  If a broker-dealer's obligation to comply with principles of best execution were sufficient to render that entity an ERISA fiduciary, the exemption provided by Section 2510.3-21(d) would be rendered a nullity.  Plaintiff's allegation that the BNY Defendants' receipt of brokerage commissions from the Plan constituted a violation of Section 406(b)(3) also fails because that section prohibits a fiduciary from receiving consideration from a ***third party*** for transactions involving the plan to which they owe their fiduciary duty.  *See Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1216 (2d Cir. 1987); *LaScala v. Scrufari*, 96 F. Supp. 2d 233, 238-39 (W.D.N.Y. 2000).  Here, the BNY Defendants received brokerage commissions directly from the Plan pursuant to an arms' length, written agreement with the Plan itself.

fails to allege that the BNY Defendants exercised any "authority or control" over this information. At bottom, plaintiff equates the mere receipt of information with the exercise of authority and control.

Finally, the supposedly confidential information referenced in the complaint is not even a plan asset over which the BNY Defendants could have assumed any fiduciary responsibilities. In determining what constitutes a plan asset, courts have followed one of two approaches: (i) a documentary approach that looks at the governing documents between a plan and its employer sponsor; and (ii) a functional approach that assesses whether the information could have been used to the benefit of the fiduciary at the expense of the plan participants. *See, e.g.*, *Metzler v. Solidarity of Labor Organizations Health & Welfare Fund*, 95 Civ. 7247, 1998 U.S. Dist. Lexis 12565 (KMW), at *15-16 (S.D.N.Y. Aug. 14, 1998). Plaintiff's allegation fails under both tests. Plaintiff neither alleges that the governing Plan documents identify this purportedly confidential information as a plan asset nor that the Plan suffered any harm from the BNY Defendants' "use" of this confidential information. Significantly, the complaint nowhere alleges that the BNY Defendants obtained their brokerage relationship with the Plan through the improper use of any such information or that they failed to provide necessary brokerage services at a reasonable price.[11]

---

[11] Plaintiff's allegation that the BNY Defendants violated Section 406(b)(1) by using confidential Plan information "in their own interest" also fails because plaintiff does not allege any specific facts that the BNY Defendants, as fiduciaries, did anything with that information other than to market themselves to clients. There are no specific allegations that the Plan suffered any harm from the purported use of its confidential information.

## 2. *Plaintiff Fails To Allege That The BNY Defendants Were Unjustly Enriched Or That They Hold Specific Plan Property.*

Section 502(a)(3) does not permit a pension plan or participant to seek legal relief—monetary damages—from a non-fiduciary.  *See, e.g.*, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993).  A plaintiff suing a non-fiduciary pursuant to Section 502(a)(3) is limited to only those "equitable" remedies, such as restitution or disgorgement, that were typically available from a court of equity rather than a court of law.  *Great-West*, 534 U.S. at 219 (quoting *Mertens*, 508 U.S. at 256).  For an ERISA plaintiff to succeed on a claim for equitable restitution, the plaintiff must establish that the defendants wrongfully secured a benefit that belonging to the plaintiff.  *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 251 (2000).  In addition, "the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  *Great-West*, 534 U.S. at 205.  If the specific property the plaintiff seeks to recover or its proceeds have been dissipated, the plaintiff's claim is only that of a general creditor and Section 502(a)(3) provides no basis for relief.  *Id.*[12]

Plaintiff's Section 502(a)(3) claim fails on two grounds.  First, he fails adequately to allege that the BNY Defendants have wrongfully secured commissions that it would be unconscionable for them to retain.  Plaintiff does not allege that BNY ConvergEx provided inadequate brokerage services to the Plan or that BNY ConvergEx overcharged in any respect for the brokerage services it rendered to the Plan.  Plaintiff similarly does not allege that BNY

---

[12] The Supreme Court and courts in this Circuit have repeatedly dismissed Section 502(a)(3) claims where the plaintiff failed to allege a basis for equitable relief.  *See, e.g.*, *Mertens*, 508 U.S. at 255 (affirming dismissal of complaint seeking relief under Section 502(a)(3) against non-fiduciaries as "nothing other than compensatory damages"); *In re Marsh ERISA Litig.*, No. 04 Civ. 8157 (SWK), 2006 WL 3706169, at *4 (S.D.N.Y.  Dec. 14, 2006); *Bona v. Barasch*, No. 01 Civ. 2289 (MBM), 2003 WL 1395932, at *12 (S.D.N.Y. Mar. 20, 2003).

ConvergEx set its commission rates to cover not only the fees it would have ordinarily charged, but also the amount of any contingent payments it allegedly made to Callan.

Also fatal to plaintiff's Section 502(a)(3) claim is the absence of any allegation specifying particular property currently in the possession of the BNY Defendants that plaintiff can plausibly allege belongs to the Plan. The central allegation of the complaint is that Callan did not adequately disclose that BNY ConvergEx made an annual payment to Callan contingent on BNY ConvergEx's receipt of a certain level of brokerage commissions from Callan clients. But even if true, the complaint recognizes that those funds are no longer in the possession of the BNY Defendants. No equitable relief, therefore, can lie against them. *See, e.g.*, *Great-West*, 534 U.S. at 214 (affirming dismissal of Section 502(a)(3) claim where funds to which petitioner claimed entitlement were not in defendant's possession); *New York Dist. Council of Carpenters Pension Fund v. Savasta*, No. 99 CV 11362 (GBD), 2005 WL 22872, at *3 (S.D.N.Y. Jan. 4, 2005) (holding that plaintiff was not entitled to disgorgement of fees paid to defendant advisers for allegedly negligent consulting services to plan because such fees do not constitute identifiable funds in defendants' possession).

## II.    NO CLASS SHOULD BE CERTIFIED AS PLAINTIFF HAS NOT MET THE REQUIREMENTS OF RULE 23.

Plaintiff's lack of standing makes him an inappropriate class representative as a matter of law. *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 101 n.7 (2d Cir. 2007).[13] In addition, plaintiff's motion for

---

[13]    Plaintiff is only a participant in the Federal-Mogul plan and is not a participant in any of the other ERISA plans he seeks to represent. *See* Ex. C. Under section 502(a)(2) of ERISA, a plaintiff may sue derivatively only on behalf of a plan in which he is a participant; plaintiff thus lacks statutory standing to represent other plans. *See, e.g.*, *Physicians Health Servs. of Conn.*, 287 F.3d at 121. The statute, in other words, limits relief to the "relevant plan" in which plaintiff

[Footnote continued on next page]

class certification should be independently denied because he has failed to meet the requirements of Rule 23 for the class he purports to represent.

### A.    Plaintiff Has Not Satisfied The Criteria Of Rule 23(a).

#### 1.    The Proposed Class Is Not Sufficiently Numerous.

As an initial matter, plaintiff cannot establish that "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Numerosity "is presumed when a class consists of forty or more members." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 466 (S.D.N.Y. 2005). In fact, plaintiff admits that less than forty class members defeats numerosity. *See* Pl.'s Mem. at 12. As explained below, the number of pension plans that could conceivably constitute the putative class is far short of forty.[14]

---

[Footnote continued from previous page]
is a participant—here, the Federal-Mogul plan. It does not create a right for plaintiff to bring a derivative action on behalf of plans in which plaintiff does not participate. *See Acosta v. Pacific Enters.*, 950 F.2d 611, 617 (9th Cir. 1991) *see also In re Mutual Funds Investment Litigation*, 519 F. Supp. 2d 580, 588 (D. Md. 2007).

Plaintiff relies on inapposite authorities to support the contrary proposition. *See* Pl.'s Mem. at 11-12. In *Fallick v. Nationwide Mut. Life Ins. Co.*, 162 F.3d 410 (6th Cir. 1998), the case upon which plaintiff principally relies, the Sixth Circuit held that the plaintiff there could represent a class of participants in other health plans for *individual* injuries—namely, the denial or reduction of claims—sustained by the class members pursuant to the common standard employed by a single plan administrator. *Fallick* does not address whether a participant, like plaintiff here, suing only for injuries sustained by the plan, may also sue on behalf of other plans in which he is not a participant. Likewise, in *Central States*, *Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-46 (2d Cir. 2007) ("*Central States II*"), no party challenged the ability of the plaintiffs there to sue on behalf of other plans, and consequently, the Second Circuit did not reach the issue. The remaining cases relied on by plaintiff either did not involve certification of a class of ERISA plans at all or involved a class of plans brought by a plan *trustee*, not a plan *participant*. *See* Pl.'s Mem. at 11-12 (listing authorities).

[14]    Plaintiff previously also sought to represent a class of *participants* of the various pension plans that had a relationship with the defendants during the class period, and argued that he could satisfy numerosity by counting the participants in each plan. *See* D.E. 24, Pl.'s Mem. at 11. He has now abandoned that argument.

Approximately 75 entities were clients of both Callan and the BNY Defendants during the proposed class period.[15]  DeLuce Decl. ¶ 4;  Ex. H, Schroth Declaration ("Schroth Decl.") ¶ 9.  Not all of these 75 common clients, however, should be considered as members of a putative class, because plaintiff's theory of the case requires that Callan somehow caused each of those ERISA plans to select BNY ConvergEx as that particular plan's broker.  *See* Compl. ¶ 6.

During the putative class period, Callan provided some form of a broker search for only *three* of the 75 common clients:  the Federal-Mogul plan (two searches), Fluor Corporation, and Deluxe Corporation.  DeLuce Decl. ¶¶ 9-10.  In the case of Fluor Corporation, Callan was asked to analyze BNY Global Transition Management, a subsidiary of BNY, along with other candidates that responded to the Request for Proposal.  Callan provided a somewhat negative assessment of BNY Global Transition Management.  DeLuce Decl. ¶ 10(a).  Fluor did not retain BNY at that time and therefore falls outside the putative class.  *Id.*  In the case of Deluxe Corporation, Deluxe chose BNY ConvergEx *after* Callan had both amended its ADV and had directly informed its clients that part of the compensation it received from BNY was initially contingent upon Callan's clients providing BNY CovergeEx with a certain amount of commissions.  DeLuce Decl. ¶¶ 10(b), 11.  Consequently, as Deluxe retained BNY ConvergEx with full knowledge of the initially contingent component of BNY ConvergEx's payment to Callan, it does not fit within the putative class.  This leaves only one common client—the

---

[15]   Although estimating that the proposed class may contain "at least eighty" members, (Pl. Br. at 13 n.8), plaintiff does not offer any proof to support that assertion or to challenge the defendants' unqualified declarations that they showed 75 common ERISA clients during the class period.

Federal-Mogul plan—that meets the class definition:  well short of the required forty

minimum.[16]

Nor can plaintiff satisfy the numerosity requirement simply because Callan advised all its

clients that BNY ConvergEx was its "preferred broker," and allegedly did not disclose the

contingent aspect of its compensation arrangement with BNY ConvergEx.  Of the 75 common

clients, 55 were already Alpha clients at the time of the sale.  Schroth Decl. ¶ 10.  Any alleged

misrepresentation, therefore, could not have caused those 55 clients to select BNY ConvergEx as

those plans were already Alpha clients that transitioned to BNY ConvergEx as a result of the

sale.  Schroth Decl. ¶ 9.  Another four common clients became BNY ConvergeEx clients only in

2005, when BNY acquired Lynch, Jones & Ryan, Inc., a commission recapture brokerage firm.

Schroth Decl. ¶ 11.  Consequently, those four common clients also could not have been

influenced to retain BNY ConvergeEx by Callan's alleged misrepresentation.

In sum, of the 75 common clients, the decision of 59 of those clients to retain BNY

ConvergEx could not have plausibly been caused by Callan's alleged misrepresentation because

they either had been Alpha clients at the time of the sale or became BNY ConvergEx clients

through the 2005 acquisition of the Lynch, Jones & Ryan firm.  That leaves 16 common clients

that fit in neither of those categories.  And since Deluxe is one of those 16 common clients, it

cannot be included within the putative class as it retained BNY ConvergeEx in 2006 after Callan

had disclosed to its clients the contingency factor in its agreement with BNY.

---

[16]  Moreover, Callan "recommended" (that is, advised a client specifically to select) BNY
ConvergEx on only two occasions during the class period, both times for the Federal-Mogul
plan, the first in 1999 and the second in 2000.  DeLuce Decl. ¶ 9.  In short, the Federal-Mogul
plan was the only ERISA client to whom Callan "recommended" BNY ConvergEx during the
class period, thus making it a class of one.

There are, thus, at most 15 ERISA common clients whose decision to select BNY ConvergEx could have conceivably been influenced by Callan's alleged misrepresentation. A class of at most 15 members falls far short of the minimum of forty class members that plaintiff concedes is necessary to satisfy the numerosity requirement of Rule 23(a)(1).

## 2. *Issues Of Fiduciary Status And Reliance Require Individualized Determinations.*

Under Rule 23(a)(2), plaintiff must also show that his claims in the complaint present a question of law or fact common to the class. *See Cent. States*, *Se & Sw Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) ("*Central States II*"). "[N]ot every common question . . . will suffice, however," because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998). Rather, courts look for "a common issue the resolution of which will advance the litigation." *Id.*

Meanwhile, the related test for typicality under Rule 23(a)(3) "limits the class claims to those fairly encompassed by the named plaintiffs' claims." *Id.* at 399 (internal quotation marks omitted). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). "[T]he typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399.

The commonality and typicality requirements "tend to merge" and "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their

absence." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  These

requirements similarly protect defendants against the likelihood that an allegation "specific" to

the named plaintiff will become the basis for a class-wide, "across-the-board attack."  *Id.* at 159.

　　Courts have consistently held that ERISA actions fail to satisfy the commonality and

typicality requirements of Rule 23(a) when the claims require fact-specific, individualized proof.

*See, e.g.*, *Sprague*, 133 F.3d at 398; *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1081 (6th Cir. 1996);

*Wiseman v. First Citizens Bank & Trust Co.*, 215 F.R.D. 507, 510 (W.D.N.C. 2003).  Plaintiff

identifies eleven separate questions of law and fact that he believes are common to the class.  *See*

Pl.'s Mem. at 14.  These supposedly "common questions," however, are not truly independent of

each other.  The BNY Defendants' liability under ERISA (Nos. 3-4, 7-8), Callan's alleged failure

to disclose and conflict of interest (Nos. 5-6), and issues relating to damages and equitable

tolling (Nos. 9-11), all depend on the disposition of the first and second issues listed:  whether

Callan and the BNY Defendants are ERISA fiduciaries.  *See id.*  If the defendants are not

fiduciaries to a particular plan, then Callan, and by extension, the BNY Defendants, would not be

subject to liability under ERISA, and therefore, resolution of the remaining issues would not

"advance the litigation."  *Sprague*, 133 F.3d at 397.

　　As discussed below, the existence and scope of defendants' fiduciary relationships differ

considerably from plan to plan, and depend on the powers assigned to and exercised by the

defendants in the various contracts with their clients.  Because Callan's fiduciary relationship

with the Plan was atypical, and not applicable on a class-wide basis, it cannot serve as the basis

for class treatment.  Furthermore, even if Callan's alleged misrepresentations to its ERISA

clients served as the common, typical factor, plaintiff still must show that each plan in the

proposed class detrimentally relied on those alleged misrepresentations, which is an individualized inquiry. The same is true for the BNY Defendants.

(a)    Callan's Fiduciary Status With Respect To Other Plans
       Cannot Be Based On Callan's Contract With The Plan.

Under ERISA, there are two types of fiduciaries: A named fiduciary is "a fiduciary who is named in the plan instrument" or who is otherwise expressly identified as a fiduciary. 29 U.S.C. § 1102(a)(2). A functional fiduciary is not named in the plan documents, but actually "exercise[s] . . . discretionary authority or control over plan management or administration." *Siskind v. Sperry Ret. Program*, 47 F.3d 498, 505 (2d Cir. 1995) (citing 29 U.S.C. § 1002(21)(A)). The functional fiduciary test is "an ***intensely factual inquiry***" because "whether or not a party serves as a [functional] fiduciary under ERISA depends upon the actual functions performed by the party, not just the duties described by documents." *McMorgan & Co. v. First Cal. Mortgage Co.*, 916 F. Supp. 966, 974 (N.D. Cal. 1995) (emphasis added). Indeed, in enacting ERISA, "Congress intended that the courts look to the totality of the relationship to determine whether an outside professional advisor is a fiduciary to an ERISA plan." *Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, 869 F. Supp. 278, 287 (D.N.J. 1994). Therefore, plaintiff cannot obtain class certification based merely on the existence of a named fiduciary relationship written into the contract between Callan and the Plan during part of the class period; rather, plaintiff must establish that the Callan/Federal-Mogul plan relationship is representative of the relationship that Callan has with the other plans in the putative class.

Callan's initial contractual arrangement with the Plan was unique, however. Of Callan's 138 ERISA clients during the class period, including the 75 common clients with the BNY Defendants, the Plan was the *only* plan in which Callan accepted an appointment as a named fiduciary under ERISA. *See* DeLuce Decl. ¶ 5. Furthermore, only four of the other 74 common

clients had contracts that included language suggesting that Callan assumed any fiduciary responsibilities at all.[17]  *See id.* ¶ 6.

By contrast, Callan's standard contract during the class period stated that the client would "retain and exercise all decision-making authority with respect to the management and administration of the retirement plan(s)," and expressly disclaimed that Callan had any "authority or responsibility to manage or in any way direct the investment of any assets that are the subject of Callan's consulting services." *Id.* ¶ 7.  Where, as here, fiduciary status has been specifically disclaimed, courts generally will not read fiduciary duties into the contract.  *See, e.g.*, *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003).

Therefore, while the fiduciary relationship between Callan and the Plan was written into the contract itself in effect between November 1998 and June 2001, that relationship can be established for other common clients only on an individualized, fact-specific basis, if at all. Under such circumstances, plaintiff—as a plan participant in the Plan—is not subject to the same defenses that are applicable to other clients, and therefore, his claims on behalf of the Plan are hardly typical of those of other Plans.  *See, e.g.*, *Robinson*, 267 F.3d at 155.

>              (b)    Plaintiff Cannot Establish The BNY Defendants' Fiduciary
>                     Status Except On A Plan-By-Plan Basis

The BNY Defendants' alleged fiduciary status, like Callan's, also cannot be established except on an individualized, plan-by-plan basis.  Contrary to plaintiff's contention (Pl.'s Mem. at

---

[17]   In no other contract operative during the putative class period did Callan accept the status as a named fiduciary under ERISA.  DeLuce Decl. ¶ 5.  Of the remaining 74 common clients of Callan and BNY ConvergEx, Callan agreed in one contract to abide by the fiduciary standards set out in ERISA, without acknowledging it was an ERISA fiduciary.  *Id.* ¶ 6.  In four contracts with common clients, Callan agreed that it was a fiduciary with respect to the services it provided without specific reference to ERISA or any other statute.  *Id.*  No other contract with a common client refers to fiduciary status.  *Id.* ¶ 7.

4), a broker-dealer does not become an ERISA fiduciary simply because the broker-dealer "buy[s] and sell[s] securities for institutional clients."  As discussed above, *see* Part I.D.1, *supra*, the applicable ERISA regulations expressly provide that a broker-dealer shall not be deemed to be an ERISA fiduciary "because such person executes transactions for the purchase or sale of securities on behalf of such plan" pursuant to instructions from a plan's investment manager.  29 C.F.R. § 2510.3-21(d).  Even assuming the complaint were to allege—which it does not—that BNY ConvergEx effected securities transactions without such instructions, the issue of whether the BNY Defendants could avail themselves of this exemption would need to be resolved by consideration of the unique facts specific to each plan.

Plaintiff for the first time contends that BNY ConvergEx purportedly acknowledged to "pension plans" that it was an ERISA fiduciary, *see* Pl.'s Mem. at 5 & n.3, basing this assertion on language in agreements between BNY ConvergEx and two of its pension plan clients (out of the 75 plans plaintiff seeks to include in the proposed class).  First, the agreements relied upon by plaintiff are not representative of the entire proposed class.  They relate to "transition brokerage services" provided by the Global Transition Management ("GTM") division of BNY ConvergEx.  At various points during the proposed class period, BNY ConvergEx provided transition brokerage services to 44 of the 75 plans in the proposed class.  Ex. G, Bassily Declaration ¶ 7 ("Bassily Decl.").  These services are different from the standard commission recapture services BNY ConvergEx provided to the proposed pension plans.  *See id*. ¶ 3.

More importantly, both agreements expressly state that BNY ConvergEx's GTM Division "will ***not*** be acting as a fiduciary pursuant to the provisions of the ERISA."  Pl.'s Mem. at Ex. 3, 4 (emphasis added).  Plaintiff, inexplicably, fails to cite these contractual provisions, but instead cites to other contractual language that "BNY," which plainly refers to The Bank of New

York (not to "GTM" which is separately identified in the agreement), will serve as a fiduciary

"**with respect to the services BNY provides to the Plan separate and apart from the terms of**

**this Agreement**." *Id.* at Ex. 3, 4 (emphasis added). As the two agreements reflect, those services

pertain to the fact that the plan assets were "domiciled" at The Bank of New York or a non-

brokerage affiliate. *Id*. at Ex. 3, 4.[18] Nothing in these agreements suggests that BNY ConvergEx

was to serve as a fiduciary in connection with executing securities transactions for the plans.

        (c)      Reliance On Callan's Alleged Misrepresentations Requires
                Individualized Determinations.

Courts have also routinely denied class certification for breach of fiduciary duty claims

under ERISA because plaintiff has failed to provide class-wide proof of reliance on alleged

misrepresentations. *See, e.g.*, *Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.*,

319 F.3d 205, 219 (5th Cir. 2003); *Andrews v. AT&T*, 95 F.3d 1014, 1025 (11th Cir. 1996);

*Rothwell v. Chubb Life Ins. Co. of Am.*, 191 F.R.D. 25, 31 (D.N.H. 1998); *Tootle v. Arinc, Inc.*,

222 F.R.D. 88, 97 (D. Md. 2004); *Thomas v. Aris Corp. of Am.*, 219 F.R.D. 338, 342 (M.D. Pa.

2003); *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 628 (E.D. Tex. 2004),

*vacated and remanded on other grounds, Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299,

314 (5th Cir. 2007) (noting that typicality requirement "cannot be waved away by artful

characterization" of the claims at a higher level of generality). For example, in *Sprague*, the

Sixth Circuit held that the district court abused its discretion in certifying a class action under

---

[18]    To the best of the BNY Defendants' knowledge, BNY ConvergEx expressly agreed to serve
as a fiduciary to only two plans in plaintiff's proposed class. Bassily Decl. ¶ 7. In both of these
instances, the services related to transition management, not commission recapture. *Id.*
Moreover, in each of these instances, the pension plan client and BNY ConvergEx
acknowledged that BNY ConvergEx's transition management services would be subject to the
broad class exemption from Section 406 liability promulgated by the Department of Labor in
Prohibited Transaction Exemption 86-126. *See, e.g.*, Bassily Decl., Ex. C.

ERISA in which the complaint alleged that General Motors had induced individuals to retire

early by misrepresenting its health coverage.  The court held that no class should have been

certified because each putative class member's claim "depended on [that] individual's particular

interactions with GM," which would "require[] proof of what statements were made to a

particular person, how the person interpreted those statements, and whether the person justifiably

relied on the statements to his detriment."  133 F.3d at 398-99.

In this same vein, the Second Circuit explained in *Moore v. PaineWebber, Inc.*, 306 F.3d

1247, 1253 (2d Cir. 2002), that "liability for fraudulent misrepresentations cannot be established

simply by proof of a central, coordinated scheme."  Instead, "to recover for a defendant's

fraudulent conduct, even if that fraud is the result of a common course of conduct, each plaintiff

must prove that he or she personally received a material misrepresentation, and that his or her

reliance on this misrepresentation was the proximate cause of his or her loss."  *Id.*; *see also*

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 224-25 (2d Cir. 2008).

Accordingly, to proceed as a class action, based on his theory of the case, plaintiff must

establish that each pension plan that he seeks to include in the putative class ***relied*** on an alleged

misrepresentation made by Callan.  *See Sprague*, 133 F.3d at 398-99.  Plaintiff has provided no

such class-wide evidence of reliance here.  Indeed, plaintiff has even failed to provide any

evidence of reliance with respect to the Plan.  And the evidence of record indicates that the

disclosure was not material.  The Deluxe Corporation selected BNY ConvergEx after Callan had

fully disclosed the contingent aspects of the compensation arrangement under the Services

Agreement.  *See supra* at 20.  In addition, even in the aftermath of Callan's amendment of its

Form ADV Part II, only three common clients stopped using the services of BNY ConvergEx, further indicating that there was no reliance.  Schroth Decl. ¶ 13.[19]

### B.    The Putative Class Is Not Certifiable Under Any Subdivision Of Rule 23(b).

Besides failing to satisfy the requirements of Rule 23(a), plaintiff cannot demonstrate that his putative class falls within any of the categories listed in Rule 23(b).

#### 1.    A Class Should Not Be Certified Under Rule 23(b)(1).

Rule 23(b)(1)(A) allows certification of a class if "the prosecution of separate actions . . . would create a risk of . . . inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class."  Certification under this provision is appropriate only where separate actions would prejudice the defendants.  *See In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004).  The Supreme Court has recognized that Rule 23(b)(1)(A) is focused on cases, unlike here, "where the [defendant] is obliged by law to treat the members of the class alike . . . or where the [defendant] must treat all alike as a matter of practical necessity." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Rule 23(b)(1)(A) is not meant to apply "where the risk of inconsistent results in individual actions is merely the possibility that the defendants will prevail in some cases and not in others."  *In re "Agent Orange" Prod. Liab. Litig.*, 100 F.R.D. 718, 724-25 (E.D.N.Y. 1983) (citation omitted), *aff'd in part and rev'd in part on other grounds*, 818 F.2d 145 (2d Cir. 1987).

Separate lawsuits brought by each of the ERISA plans included in plaintiff's proposed class would not create a risk of incompatible standards of conduct for defendants.  Each plan

---

[19]   There is no indication that any of these three clients made their decision to discontinue using BNY because of the disclosure.

entered into a separate consulting agreement with Callan and a separate brokerage agreement with BNY ConvergEx.  Each of those contracts was separately negotiated, *see* Schroth Decl. ¶ 4, and the financial terms often vary significantly.  *Id.* ¶¶ 5-7.  Among the individualized issues the Court would need to evaluate, on a plan-by-plan basis, in determining defendants' liability to each plan in plaintiff's proposed class are:  (i) whether Callan and/or the BNY Defendants served as a "fiduciary" to that plan; (ii) whether the defendants made any alleged misrepresentations to the plans; (iii) whether any losses were caused by any alleged misrepresentations by defendants; (iv) whether the plan in fact relied on any alleged misrepresentations in entering into its contracts with Callan or its unique commission recapture agreements or transition service agreements with BNY ConvergEx; (v) whether any such alleged misrepresentations were material; (vi) whether the defendants misused any confidential plan information in BNY ConvergEx becoming a broker for the plan; (vii) whether the BNY Defendants received reasonable compensation for performing necessary brokerage services; and (viii) whether the BNY Defendants hold any property belonging to the plan that could be subject to an order of restitution or disgorgement. The liability of Callan and the BNY Defendants to any particular ERISA plan therefore would overwhelmingly depend on evidence unique to the dealings between Callan and the BNY Defendants, on the one hand, and the individual ERISA plan, on the other.  *See Spann v. AOL Time Warner*, 219 F.R.D. 307, 321 (S.D.N.Y. 2003).

Certification is also not appropriate under Rule 23(b)(1)(B), which has traditionally been limited to situations involving either undisputed common interest or division of a single pre-existing fund or assets, such as (i) suits involving multiple claimants to fixed sums, (ii) shareholder actions to force payment of a dividend or establish other shareholder right, and (iii) suits by investors to stop a company's management from squandering corporate assets.

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834-35 (1999).  This case does not involve any of these scenarios.  There is not a fixed amount of assets in dispute, and there are no allegations that the defendants lack the financial wherewithal to fund any monetary judgment that might be rendered against them.  *See Trautz v. Weisman*, 846 F. Supp. 1160, 1169 (S.D.N.Y. 1994).

The cases cited by plaintiff in support of certification under Rule 23(b)(1)(A) or Rule 23(b)(1)(B) do not bear any resemblance to the alleged facts here.  Each of those cases involved a suit brought by a participant on behalf of either a ***single plan or affiliated plans of the same employer***; none alleged that the defendants had separate fiduciary relationships, and separate communications, with each plan participant.  *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 545 (E.D. Mich. 2004); *Kolar v. Rite Aid Corp.*, Civ. A. 01-1229, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 2003); *Westman v. Textron, Inc.*, 151 F.R.D. 229 (D. Conn. 1993).  In contrast, numerous cases recognize that a class may not be certified under Rule 23(b)(1) where, as here, the putative class members would have to separately prove individual issues of fiduciary status, reliance, causation, and loss.  *See, e.g.*, *Lively v. Dynegy, Inc.*, No. 05-CV-00063, 2007 WL 685861, at *16 (S.D. Ill. Mar. 2, 2007); *Nelson v. IPALCO Enters., Inc.*, No. IPO2-477CHK, 2003 WL 23101792, at *10-11 (S.D. Ind. Sept. 30, 2003).

### 2.    *A Class Should Not Be Certified Under Rule 23(b)(2).*

Plaintiff's argument that certification would be proper under Rule 23(b)(2) is similarly meritless.  Rule 23(b)(2) is intended for circumstances where "broad, class-wide injunctive or declaratory relief is ***necessary*** to redress a group-wide injury."  *Robinson*, 267 F.3d at 162 (emphasis added).  The Second Circuit has emphasized that before granting Rule 23(b)(2) certification, a district court should, "at a minimum," make certain "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both

reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Robinson*,

267 F.3d at 164.[20]  Claims for monetary recovery, including requests for disgorgement or

restitution, are typically not appropriate for class treatment under Rule 23(b)(2).  *See In re Visa*

*Check/Mastermoney Antitrust Litig. v. Visa, United States*, 280 F.3d 124, 146 (2d Cir. 2001).

      Plaintiff predominantly seeks a monetary recovery in this case.  The prayer for relief

seeks (i) an order compelling Callan "to restore all losses to the Pension Plan and other members

of the putative class;" and (ii) an order compelling Defendants "to disgorge all fees or other

compensation received . . . in connection with transactions involving the Pension Plan and other

members of the putative class."  Although plaintiff also seeks injunctive and declaratory relief,

those claims are either moot or not appropriate for class resolution.  Plaintiff's request for an

injunction "enjoin[ing] Defendants collectively from any further violations of their ERISA

fiduciary responsibilities, obligations, and duties" is moot.  *See* p. 6 n.6, *infra*.  Callan amended

the statement in its Form ADV Part II in 2005 that plaintiff alleged in his complaint was

misleading, *see* DeLuce Decl. ¶ 11, and the Services Agreement (pursuant to which the BNY

Defendants allegedly made annual payments to Callan) terminated in January 2007, *see* Springer

Decl. ¶ 10.  There are no conceivable ongoing ERISA violations that would merit an injunction.

*See Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 802 (S.D. Ohio 2003).[21]

---

[20]  The district court may order certification under Rule 23(b)(2) only where "'the positive
weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant
even though compensatory or punitive damages are also claimed.'"  *Id.*  "Insignificant or sham
requests for injunctive relief should not provide cover for (b)(2) certification of claims that are
brought essentially for monetary recovery."  *Id.*  (citation omitted).

[21]  Plaintiff's request for a declaration that Callan and the BNY Defendants violated their
obligations under ERISA also does not warrant class certification under Rule 23(b)(2) because
"an action seeking a declaration concerning defendant's conduct that appears designed simply to
lay the basis for a damage award rather than injunctive relief [does] not qualify under

[Footnote continued on next page]

Nor does plaintiff's request for an order "permanent[ly] remov[ing] . . . Defendants from any positions of trust with respect to the Pension Plan **and other members of the putative class,**" Compl., Part VIII, at ¶ 10 (emphasis added), warrant class certification under Rule 23(b)(2).  The interests of a Rule 23(b)(2) class must be cohesive.  *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998).  As an initial matter, the Federal-Mogul plan is no longer a client of Callan and no longer does business with BNY ConvergEx.  Because plaintiff would have no basis to sue for injunctive relief on behalf of his own plan, he cannot certify a class to seek the same relief on behalf of other plans.[22]  *See supra* at 6 n.6.  Moreover, allowing plaintiff to sue for injunctive relief to remove Callan and BNY ConvergEx as service providers to other plans would invade the prerogative of the fiduciaries of those plans.[23]

### 3.    *A Class Should Not Be Certified Under Rule 23(b)(3).*

Under Rule 23(b)(3), plaintiff must demonstrate both that "the questions of law or fact common to class members of the class predominate over any questions affecting only individual

---

[Footnote continued from previous page]

Rule 23(b)(2)."  7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1775 (3d ed.  2005); *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 18 (2d Cir. 2003).

[22]    The cases cited by plaintiff in support of Rule 23(b)(2) certification are inapposite because, in those cases, the court certified a class consisting of participants in a single plan, not a class consisting of multiple plans.  *See Amara v. CIGNA Corp.*, No. 01 Civ. 2361, 2002 WL 31993224 (D. Conn. Dec. 20, 2002); *LaFlamme v. Carpenters Local # 370 Pension Plan*, 212 F.R.D. 448, 456-57 (N.D.N.Y. 2003).

[23]    The evidence overwhelmingly suggests that the vast majority of putative class members have no interest in obtaining the injunctive relief sought by plaintiff:  Even in the aftermath of Callan's amendment of its Form ADV Part II, most ERISA plans in plaintiff's proposed class have continued to use the brokerage services of BNY ConvergEx.  Schroth Decl. ¶ 13.  The absence of any unity of interest among the absent class members provides yet another powerful reason for the denial of class certification in this case.  Neither Rule 23(b)(1) nor Rule 23(b)(2) provides any mechanism for an absent class member to opt out of the class action lawsuit.  *See Spann*, 219 F.R.D. at 322 n.12; *In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816 (DLC), 2004 WL 2338151, at *8 (S.D.N.Y. Oct. 18, 2004).  If plaintiff's proposed class were certified, unnamed ERISA plans would be bound by the action without the opportunity to withdraw or to seek relief more appropriate for their individual circumstances.

members." Rule 23(b)(3)'s predominance requirement is much "more demanding" than the

commonality requirement of Rule 23(a). *Amchem Products*, 521 U.S. at 623-24. A common

course of conduct by the defendant is insufficient to establish predominance. *See, e.g.*, *Moore*,

306 F.3d at 1255. Rather, a plaintiff must demonstrate that "the issues in the class action that are

subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over

those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney*

*Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks and citation omitted).

Plaintiff here has not done so.

      To prevail on their Section 404 and 405 claims, each plan would need to establish that

both Callan and the BNY Defendants performed fiduciary services for the plan, that the plan

relied on a misrepresentation regarding the fixed nature of the payments Callan received from the

BNY Defendants, that any such misrepresentation was material, and that the plan suffered losses

that were caused by the defendants' conduct. *See* Part I.C.2, *supra*. Numerous courts have

declined to certify a class where, as here, the plaintiff's misrepresentation claim involved issues

of individual reliance and materiality. *See, e.g.*, *Sandwich Chef*, 319 F.3d at 219; *Andrews*, 95

F.3d at 1025; *Rothwell*, 191 F.R.D. at 31; *Tootle*, 222 F.R.D. at 97; *Thomas*, 219 F.R.D. at 342;

*In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. at 628.

      Plaintiff's Section 406(a) and 406(b) prohibited transaction claims raise similar issues of

individualized proof. The BNY Defendants and Callan would be prepared to establish, on a

plan-by-plan basis, that they each entered into arms' length transactions with the plans and

provided necessary services at a fair price. *See* 29 U.S.C. § 1108(b)(1)-(2); *id.* § 1108(c)(2); *see*

*also Harley*, 284 F.3d at 909; *New York State Teamsters Council Health & Hosp. Fund v.*

*DePerno*, 18 F.3d 179, 183 (2d Cir. 1994).

The same factors that support the conclusion that common issues do not predominate also preclude a finding, under Rule 23(b)(3), "that a class [] is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Spann*, 219 F.R.D. at 324.  Because the defendants' liability would turn on evidence unique to each plan and would require consideration, on a plan-by-plan basis, of various individual issues, a class action would not result in either a fair or an efficient use of judicial resources.[24]

## CONCLUSION

For the foregoing reasons, defendants respectfully request that plaintiff's complaint be dismissed or, in the event the Court denies defendants' motion to dismiss, that plaintiff's motion for class certification be denied.

DATE:  May 30, 2008                          Respectfully submitted,

_Thomas A. Arena / TMJ_                       _Paul Blankenstein_

Thomas A. Arena (TA-4613)                     William J. Kilberg (WK-0792)
Dorothy Heyl (DH-1601)                        Paul Blankenstein (PB-8583)
MILBANK, TWEED, HADLEY &                      GIBSON, DUNN & CRUTCHER LLP
MCCLOY LLP                                    1050 Connecticut Avenue, N.W.
1 Chase Manhattan Plaza                       Washington, D.C. 20036
New York, NY 10005                            Telephone:  (202) 955-8500
Telephone:  (212) 530-5000                    *Counsel for Callan Associates, Inc.*
*Counsel for BNY Defendants*

---

[24]  Once again, the cases upon which plaintiff relies all involved single plans with a single employer, where management of the class was not, as here, problematic.  *See, e.g., O'Neil v. Gencorp., Inc.*, No. 88 Civ. 8498, 1991 WL 33316, at *5 (S.D.N.Y. Mar. 1, 1991); *Babcock v. Computer Assocs., Intl, Inc.*, 212 F.R.D. 126, 131-32 (E.D.N.Y. 2003).  Plaintiff has made no attempt to explain how the Court could manage the vast number of mini-trials that would necessarily result from class certification, which weighs strongly against class certification.  *See, e.g., Moore*, 306 F.3d at 1253; *Dunnigan v. Metropolitan Life Ins.*, 214 F.R.D. 128, 142 (S.D.N.Y. 2003); *Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*, 211 F.R.D. 228, 235 (S.D.N.Y. 2002); *Grandon v. Merrill Lynch & Co., Inc.*, No. 95 Civ. 10742 (SWK), 2003 WL 22118979, at *10 (S.D.N.Y. Sept. 13, 2003).