# Exhibit B
Ann C. DeLuce Declaration, March 13, 2008

Case 1:07-cv-09444-RMB-GWG   Document 54-4   Filed 05/30/2008   Page 1 of 20

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALBERT T. BEANE, JR., | § § | Case No. 1:07-cv-09444-RMB |
| *Plaintiff,* | § § | |
| v. | § § | |
| THE BANK OF NEW YORK MELLON, BNY CONVERGEX EXECUTION SOLUTIONS LLC AND CALLAN ASSOCIATES, INC. | § § § § | |
| *Defendants.* | § § | |

### DECLARATION OF ANN C. DELUCE

I, Ann C. DeLuce, declare and state as follows:

1.  I am the Executive Vice President of Legal and Corporate Communications at Callan Associates, Inc., a named defendant in the above-captioned matter. I offer this Declaration in support of the joint opposition of the defendants Bank of New York Mellon, BNY ConvergEx Solutions LLC (the "BNY Defendants") and Callan Associates, Inc. ("Callan") to the motion of the plaintiff seeking to have the Court certify a class in this case. The statements set forth in this Declaration are based upon my personal knowledge and upon information that I acquired during the regular performance of my duties as Executive Vice President of Callan.

2.  Callan was founded in 1973 and is headquartered in San Francisco, California. Callan provides support services to a broad array of institutional investors. Among other things, Callan provides consulting services to sponsors of various employee benefits plans, including defined benefit pension plans. Callan currently employs about 170 people.

3.  I have an M.B.A. in Finance/Investments from the University of Southern California and a B.A. in Mathematics/Applied Science from the University of California at Los Angeles. I joined Callan in 1989 and have managed many of Callan's divisions, including

Callan's educational services, research efforts and corporate marketing and communications functions. During the course of my employment with Callan I have worked on Callan's contractual arrangements with clients, Callan's ADV filings and Callan's searches performed on behalf of clients.

4.   During the putative class period, October 1998 through December 2006, Callan had 138 consulting clients that were ERISA-covered plans.[1] (Exhibit A is a list of those clients). Of those 138 clients, I understand from the Declaration submitted in support of the defendants' joint opposition by Dorothy C. Schroth, that 75 clients of those ERISA plans were also clients of BNY ConvergEx. The consulting services that Callan provided to those clients varied, as did the nature of Callan's relationship with those clients. As reflected in the different contracts with these clients, Callan, in the vast majority of these relationships, did not accept fiduciary status in the contract. In four of the contracts with those 75 common clients, however, Callan explicitly acknowledged some sort of fiduciary relationship, and in one contract with the Federal-Mogul Corporation Pension Plan (the "Federal-Mogul plan") Callan assumed named fiduciary status under the Employee Retirement Income Security Act of 1974 ("ERISA").

5.   Attached as Exhibit B is a true and correct copy of an agreement entered into between Callan and the Federal-Mogul plan on November 1, 1998. This agreement differed significantly from Callan's standard form contract and contains unique provisions regarding Callan's status as a named fiduciary. Section 1 of the agreement states: "[Federal-Mogul] hereby appoints Callan and Callan hereby accepts its appointment as a named fiduciary (as such

---

[1] This number includes only those clients that had an ongoing relationship with Callan and does not include any clients who worked with Callan on either a solo project or a project-by-project basis.

2

term is described in Section 402(a)(2) of the Employee Retirement Income Security Act of 1974, as amended . . .)." I am not aware of any other consulting contract entered into by Callan during the 1998-2006 period in which Callan accepted an appointment as a "named fiduciary" under ERISA. Callan has not agreed to any such provision in any other contract, let alone with any of the other 74 common clients.

6.  Of the other 74 ERISA clients common to both Callan and the BNY Defendants from 1998-2006, in one contract – with Blue Cross and Blue Shield Association – Callan agreed to abide by the fiduciary standards set out in ERISA, but it does not acknowledge that is was an ERISA fiduciary. See Exhibit C. In contracts with three other common clients – Boilermaker Blacksmith National Pension Trust, National Roofing, and Soft Drink and Brewery Workers Local 812 – Callan states that it is a fiduciary with respect to the services it provides, without any specific reference to ERISA or any other statute. See Exhibits D-F.

7.  I am not aware of any other contract with any of the 70 remaining ERISA common clients in which Callan identified itself as a fiduciary. Indeed, Callan's standard contract used during the 1998-2006 period makes clear that the discretionary authority over the plan's management and assets does not reside with Callan. Section 1 of the standard contract states: "During the performance of such services by Callan, Sponsor will retain and exercise all decision-making authority with respect to the management and administration of the retirement plan(s) funded by Fund XYZ and investments relating thereto." See Exhibit G. Section 9 of the contract states: "Callan shall discharge its duties as a consultant in accordance with the terms of this Agreement and applicable law. Sponsor acknowledges and agrees (i) that Callan has no authority or responsibility to manage or in any way direct the investment of any assets that are the subject of Callan's consulting services provided under the terms of this Agreement . . ."

3

8. In this regard, after the termination of the initial contract, Callan entered into a second contract with the Federal-Mogul plan dated June 1, 2001, that conformed to the standard contract. See Exhibit H. On August 26, 2005, Federal-Mogul notified Callan that it was terminating that 2001 contract effective September 30, 2005. See Exhibit I. The letter stated: "The decision to transfer the investment consulting responsibilities was not based on your prior performance, but rather a change in the Company's investment management and asset allocation philosophy to a bundled approach developed under SEI Investments."

9. In 2005, the SEC and DOL jointly issued a set of questions that they recommended plan sponsors ask of their prospective and current consultants. In response, Callan prepared a document entitled "Callan Associates Inc. Responses to the DOL and SEC Recommended Questions for Selecting and Monitoring Pension Consultants: Tips for Plan Fiduciaries." See Exhibit J. It was fairly common practice for consulting firms to prepare these answers and post them on their websites. In response to question 9 of that document, "Does Callan consider itself a fiduciary under ERISA with respect to the recommendations we provide the plan?", Callan answered "Yes." Callan used the term "recommended" to mean a specific endorsement to a client that it should select a particular service provider for a particular service. Callan only "recommended" a particular provider when it was acting as a named fiduciary. As best as I am aware, Callan has only recommended BNY ConvergEx to provide a particular service in two instances, both related to the Federal-Mogul plan. In 1999, Callan recommended that the Federal-Mogul plan retain BNY ConvergEx to provide transition management services. In 2000, Callan recommended that the Federal-Mogul plan retain BNY ConvergEx to provide commission recapture brokerage services. In both cases, the Federal-Mogul plan chose to retain BNY ConvergEx.

10.     I am not aware of any other circumstances during the time period of 1998 through 2006 in which Callan "recommended" a brokerage service provider to an ERISA plan. There are, however, two other occasions during the putative class period in which Callan conducted a search for a brokerage provider for an ERISA client.

(a) In 2004, Callan was engaged by the Fluor Corporation to review the companies that responded to a Request for Proposals (RFP) for transition management services. BNY Global Transition Management, a subsidiary of BNY, was one of the companies that responded to the RFP. Callan's assessment of the BNY Global Transition Management's proposal was somewhat negative. Fluor did not retain BNY Global Transition Management as a result of that provider search.

(b) In 2006, Callan was engaged by the Deluxe Corporation ("Deluxe") to review the companies that responded to a Request for Proposal (RFP) for transition management services. BNY ConvergEx was one of the three finalists considered and was eventually retained by Deluxe to provide those services. Deluxe made its decision to retain BNY ConvergEx after Callan had amended its ADV in September 2005 and notified its clients in December 2005 regarding the "contingent" aspect of the compensation it received from BNY under the Services Agreement.

11.     On April 27, 2005, Carey S. Pack, President of BNY Brokerage, sent a letter to Callan regarding BNY Brokerage's payments to Callan pursuant to the Service Agreement. A copy of the letter is attached as Exhibit K. That letter states that the contingent aspect of BNY ConvergEx's payment under the Service Agreement with Callan was "based upon a minimum level of gross commission from the commission recapture client base as of the close of the acquisition." Mr. Pack further advised: "The threshold has been met easily each year. Indeed, BNY Brokerage has not even made the calculation necessary to determine whether the threshold

5

has been met in several years, and we do not intend to do so for the remaining term of the agreement. As a practical matter, we have treated the payments as fixed."

12. Callan emailed its clients in December 2005 to describe more fully its relationship with BNY and BNY Brokerage. A copy of the relevant portions of the September 2005 amended ADV and the December 2005 email are attached as Exhibits L and M, respectively.

I state under penalty of perjury that the foregoing is true and correct.

San Francisco, California
March 13, 2008

*Ann C. DeLuce*
Ann C. DeLuce

# Exhibit A

List of Callan ERISA Clients

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit B

Named Fiduciary Agreement Between Federal-Mogul and Callan

CA03432-03443

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit C

Agreement Between Blue Cross and Callan

CA03256-03269

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit D

Agreement Between Boilermaker Blacksmith and Callan

CA03270-03276

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit E

Agreement Between National Roofing and Callan

CA03609-03626

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit F

Agreement Between Soft Drink and Brewery Workers and Callan

CA03812-03814

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit G

Callan Standard Agreement

CA07209-07213

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit H

2001 Agreement Between Federal-Mogul and Callan

CA03447-03452

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit I

April 26, 2005 Letter from Federal-Mogul to Callan

CA03270-03276

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit J

Callan Responses to DOL and SEC Recommended Questions

CA00352-00355

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit K

April 27, 2005 Letter from BNY to Callan

CA07184

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit L

Callan September 2005 Form ADV Part II

CA01146-01153

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit M

Callan December 2005 Email

CA00482-00486

**FILED UNDER SEAL**

Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)