# Exhibit G
Kal Bassily Declaration

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALBERT T. BEANE, JR., individually and on
behalf of all others similarly situated,

                Plaintiff,

                v.

THE BANK OF NEW YORK MELLON,         07-Civ-09444 (RMB) (GWG)
BNY CONVERGEX EXECUTION
SOLUTIONS LLC, and CALLAN
ASSOCIATES, INC.,

                Defendants.
------------------------------------------------------------x

## DECLARATION OF KAL BASSILY

KAL BASSILY, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am a Managing Director at BNY Global Transition Management ("GTM"), a division at BNY ConvergEx Execution Solutions, LLC. (For ease of reference, I will refer to BNY ConvergEx Group and its predecessor entities as "BNY Brokerage.") I have been employed by BNY Brokerage since January 2004.

2. I make this declaration based upon my personal knowledge and upon a review of documents maintained by BNY Brokerage's GTM's division conducted by me and others at my direction. I also base this declaration upon information I have learned in the course of my professional employment, including conversations with other BNY Brokerage officers and employees.

3. GTM's transition management business consists of handling very large composite orders to buy and sell securities for various clients, including pension plans. In a typical transition management engagement, a client is in the process of replacing its investment

adviser or changing its investment strategy, and seeks to rebalance its asset composition in accord with the new adviser's instructions or the client's new investment strategy. As part of its mandate, GTM will sell a client's securities that will not be part of the new portfolio, and buy replacement securities as directed by the client or the client's investment manager.

4. Each transition management engagement is distinct, and, as a general matter, each such engagement is evidenced by either a written agreement between GTM and the client or a letter of direction executed by the client.

5. In nearly all such engagements, GTM does not agree to act as a fiduciary in providing brokerage services for our transition management clients. In some contracts and letters of direction, the client will expressly acknowledge that GTM is not entering into a fiduciary relationship with the client. *See, e.g.,* Exhibit A, Transition Services Agreement between BNY GTM and Carpenters Trust of Western Washington, dated October 25, 2006 ("Client agrees that GTM: (1) will not provide investment advice as to the merit of any particular strategy or investment . . . (3) will not provide investment advice regarding the appropriate asset allocation for the Plan; (4) will not exercise investment discretion with respect to any Plan assets; and (5) will not be acting as a fiduciary."). In other instances of non-fiduciary engagements, GTM and its client will agree that GTM and its employees will not act in a "discretionary capacity." *See, e.g.,* Exhibit B, Transition Services Agreement between BNY GTM and Belo Corporation, dated May 6, 2002. In both cases, GTM proceeds on the understanding that GTM is not acting as a fiduciary on behalf of the client.

6. In some transition management engagements, a client will request that GTM agree to act as a fiduciary. When GTM agrees to assume fiduciary responsibilities for a transition management client, the relationship is evidenced by a written agreement. The

2

agreement specifies that GTM's brokerage services will be performed in accordance with Prohibited Transaction Exemption 86-128 ("PTE 86-128").

       7.    I have reviewed a list of 75 pension plans that I have been informed were common clients of Callan Associates Inc. and BNY Brokerage during the period from November 1998 through October 2006 (the "Relevant Period"). According to records maintained by BNY Brokerage, GTM provided transition management services to 46 of the 75 pension plans on one or more occasions during the Relevant Period. Based on a review of BNY Brokerage's records conducted at my direction, I am aware that BNY Brokerage entered into written transition services agreements with at least 25 of these 46 clients. In only two instances did GTM agree that it would act as a fiduciary in connection with providing transition management services. On both occasions, the client acknowledged that GTM would not exercise investment discretion and would abide by the terms of PTE 86-128. *See, e.g.*, Exhibit C, Transition Services Agreement between BNY GTM and Deluxe Corporation, dated September 20, 2006.

       I declare under penalty of perjury under the laws of the Unites States of America that the foregoing is true and correct.

Executed on May 28, 2008

                                                  _____
                                                  Kal Bassily

# Exhibit A

Transition Services Agreement between BNY GTM and Carpenters Trust of Western Washington, dated October 25, 2006

BNY-BEANE_0038563-0038565

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit B

Transition Services Agreement between BNY GTM and Belo Corporation, dated May 6, 2002

BNY-BEANE_0038578-0038580

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit C

Transition Services Agreement between BNY GTM and Deluxe Corporation, dated September 20, 2006

BNY-BEANE_0038571-0038574

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)