# Exhibit H

Dorothy D. Schroth Declaration

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ALBERT T. BEANE, JR., individually and on
behalf of all others similarly situated,

               Plaintiff,

       v.

THE BANK OF NEW YORK MELLON,           07-Civ-09444 (RMB) (GWG)
BNY CONVERGEX EXECUTION
SOLUTIONS LLC, and CALLAN
ASSOCIATES, INC.,

               Defendants.
---------------------------------------------------------x

## DECLARATION OF DOROTHY D. SCHROTH

      DOROTHY D. SCHROTH, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

      1.    I am a Senior Vice President of LJR Recapture Services, a division of BNY ConvergEx Execution Solutions LLC. (For ease of reference, I will refer to BNY ConvergEx Execution Solutions LLC and its predecessor entities as "BNY Brokerage"). I have been employed by BNY Brokerage since March 2002, when The Bank of New York Company, Inc. ("BNY") purchased Autranet Inc. ("Autranet"), a broker-dealer, where I was employed at the time of BNY's acquisition.

      2.    I make this declaration based upon my personal knowledge and upon a review of BNY Brokerage records conducted by me and/or persons working at my direction.

      3.    For the first five years of my employment at BNY Brokerage, I was responsible for client services related to BNY Brokerage's "soft dollar" business. Soft dollars refers to arrangements in which money managers direct brokerage to broker-dealers and request

that the broker-dealers allocate a percentage of the brokerage commissions to pay for brokerage and research services.

4.    Since July 2007, I have been responsible for client services in the "commission recapture" business. Commission recapture is a form of institutional discount brokerage, often used by pension plans to reduce their expenses and increase their cash flow. Under commission recapture arrangements, pension plans arrange to have securities transactions executed by a specified broker-dealer, and the broker-dealer rebates to the plan an agreed-upon portion of the commission, either as cash or as payment for services. As a general matter, commission recapture agreements are separately negotiated with each pension plan. The agreements set forth, among other terms, the percentage of commissions that BNY Brokerage will rebate or otherwise credit to the pension plan.

5.

Redacted paragraph filed under seal, pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

6.    In some instances, BNY Brokerage pension plan clients sent letters of instruction to their investment managers, requesting that the investment manager use BNY Brokerage for some or all of the plan's securities transactions only if such transactions could be

2

executed on a "competitive, best execution basis." The term "best execution" refers to the broker's obligation to achieve the most favorable terms reasonably available for a transaction. *See, e.g.*, Exh. D (February 4, 2003 Letter of Instruction from Becton, Dickinson and Company to Bank of Ireland Asset Management (U.S.) Limited); Exh. E (November 17, 2003 Letter of Instruction from Exelon to Deutsche Asset Management, stating that "[a]ll securities transactions in our account should be consistent with your obligation to seek best execution of our orders" and that "[c]omission charges should continue to be based on your normal negotiated rate").

7.     Included in BNY Brokerage's records for the Federal Mogul Pension Plan is an August 1, 2000 letter from the Manager of Pension Investments to Lincoln Capital Management Company ("Lincoln Capital"), one of Federal Mogul's investment managers. Federal Mogul instructed Lincoln Capital to "direct a minimum of 30% and a maximum of 40% of the account's transactions" through BNY Brokerage. Federal Mogul stated that Lincoln Capital was "obligated to strive for 'best price and best execution'" and that it should direct trades to BNY Brokerage "only when, in your opinion, you can achieve the objective of best price and best execution." *See* Exh. F.

8.     I have been advised that in or about November 1998, BNY Brokerage acquired certain assets of Alpha Management Inc. ("Alpha"), a broker-dealer previously affiliated with Callan Associates, Inc. ("Callan"). Among the assets acquired by BNY Brokerage were commission recapture agreements that Alpha had entered into with pension plan clients. I understand that in connection with the Alpha transaction, these commission recapture agreements were assigned to BNY Brokerage.

9.     I have reviewed what I have been advised is a list of approximately 138 Callan pension plan clients between November 1, 1998 and October 31, 2006. Based on a

review of BNY Brokerage records conducted at my direction, 75 of the approximately 138 Callan pension plan clients retained BNY Brokerage to provide brokerage services during the period from November 1, 1998 through October 31, 2006.

10.     At my direction, a comparison was made of the 75 pension plans against the list of Alpha pension plan clients set forth in Schedule 3.14(a) to what I have been advised is the Purchase Agreement dated September 9, 1998. Section 3.14 of the Purchase Agreement stated that this list set forth the names of the Alpha clients for the period from January 1, 1996 through July 31, 1998. (A copy of Schedule 3.14(a) is attached as Exhibit B to the accompanying Declaration of Christopher Springer executed on March 11, 2008). Of the 75 pension plans that were clients of BNY Brokerage during the period from November 1, 1998 through October 31, 2006, a total of 55 plans previously had been Alpha clients as reflected on Schedule 3.14(a).

11.     Of the remaining 20 pension plan clients that were not previously Alpha clients, at least four such pension plans became clients of BNY Brokerage as a result of the Bank of New York's acquisition of a commission recapture firm named Lynch, Jones & Ryan, Inc. ("LJR") in or about July 2005.

12.

Redacted paragraph filed under seal, pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

Redacted paragraph filed under seal, pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

13.    As a matter of general practice, BNY Brokerage provides each commission recapture client with regular documentation (by written confirmation or monthly statement) reflecting the credited (or rebated) amount of commission recapture allocated to that client.

14.    Based on a review of BNY Brokerage records, I am aware that of approximately 138 ERISA pension plan clients for which Callan was providing consulting services during the period from November 1, 1998 through October 31, 2006, at least 38 were commission recapture clients of BNY Brokerage as of June 30, 2005. I have been advised that in or about September 2005 Callan amended its Form ADV Part II to provide additional information concerning its relationship with BNY Brokerage. I believe that of the foregoing 38 pension plan clients of BNY Brokerage as of June 30, 2005, at least 35 remained BNY Brokerage clients as of December 2006.

I declare under penalty of perjury under the laws of the Unites States of America that the foregoing is true and correct.

Executed on March 13, 2008

_____
Dorothy D. Schroth

# Exhibit A

Commission Recapture Brokerage Agreement
BNY–BEANE 00017148–00017150

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit B

Commission Recapture Agreement
BNY–BEANE 0038251–0038253

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit C

Letter dated October 12, 1999
BNY–BEANE 0018652–0018655

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit D

Letter dated February 4, 2003
BNY–BEANE 0013796–0013797

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit E

Letter dated November 17, 2003
BNY–BEANE 0014187

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit F

Letter dated August 1, 2000
BNY–BEANE 0038761–0038762

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit G

Letter dated November 12, 1998
BNY–BEANE 0012850

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit H

Letter dated February 24, 1997
BNY–BEANE 0037859

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)

# Exhibit I

Commission Recapture Agreement
BNY–BEANE 0014009–0014011

**FILED UNDER SEAL**
Pursuant to Stipulation and Order Governing the Use of Confidential Information (Dkt. #20)