**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
ALBERT T. BEANE, JR., individually and on
behalf of all others similarly situated,

                Plaintiff,

         v.                             07-CV-09444 (RMB)(GWG)

THE BANK OF NEW YORK MELLON,
BNY CONVERGEX EXECUTION
SOLUTIONS LLC and CALLAN
ASSOCIATES, INC.,

                Defendants.
--------------------------------------------------------x

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND REPLY MEMORANDUM IN SUPPORT OF
MOTION TO CERTIFY CLASS OF ERISA PLANS**

## TABLE OF CONTENTS

I.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS. .................... 1

  A.   Plaintiff Has Article III Standing. ................................................................ 1

  B.   Plaintiff Has Stated Claims Under ERISA. .............................................. 12

    1.   Standard of Review. ............................................................................ 12

    2.   Plaintiff's Causation Allegations Pass Muster. .......................... 13

    3.   Plaintiff Has Alleged That BNY Defendants Are Fiduciaries. ................................. 18

    4.   The Equitable Monetary Remedies That Plaintiff Seeks From BNY Defendants Are Available Against BNY Defendants. ...................................................... 19

II.   THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION. ................................................................................ 21

  A.   Plaintiff Has Met His Burden On Fed. R. Civ. P. 23(a). ........................... 22

    1.   The Class Is Sufficiently Numerous. ................................................ 22

    2.   Plaintiff Has Satisfied The Elements Of Typicality And Commonality. ................... 24

  B.   Plaintiff Has Met His Burden On Fed. R. Civ. P. 23(b). ........................... 28

    1.   Defendants Fail To Defeat Certification Under Rule 23(b)(1). ................................. 28

    2.   Class Certification Is Proper Under Subsection (b)(3). .............................................. 29

# TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-154 (1972) .................................. 14, 15

*Amalgamated Clothing & Textile Workers v. Murdoch*, 861 F.2d 1406, 1414 (9th Cir. 1988) ... 17

*Amara v. Cigna Corp.*, __ F.Supp.2d __, 2008 WL 450421, at 43 (D. Conn. 2008) ................... 15

*Amara v. Cigna Corp.*, No. 01-2631, 2002 WL 31993224 (D. Conn. Dec. 20, 2002) ................ 15

*Amschwand v. Spherion Corp.*, No. 07-841 ........................................................................... 2

*Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 154 (1970) .................................. 8

*Ballone v. Eastman Kodak Company*, 109 F.3d at 122 ............................................................ 16

*Banyai v. Mazur*, No. 00-9806, 2007 WL 959066, *4-5 (S.D.N.Y.  Mar. 29, 2007) .............. 2, 11

*Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 150-52 (S.D.N.Y. 1996) ......................... 28

*Beck v. Levering*, 947 F.2d 639 (2d Cir. 1991) .......................................................................... 3

*Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955 (2007) ........................................ 13

*Bennett v. Spear*, 520 U.S. 154, 164  (1997) ............................................................................ 8

*Burke v. Kodak Retirement Income Plan,* 336 F.3d 103, 112 (2d Cir. 2003) ............................ 15

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care L.L.C.*,

    433 F.3d 181 (2d Cir. 2005) ("*Central States I*") ...................................................... 6, 7, 11, 13

*Central States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care,*

    *L.L.C.*, 504 F.3d 229 (2d Cir. 2007) ("*Central States II*") .................................................. 6, 22

*Chris-Craft Indus. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir. 1973) ................................... 15

*Coan v. Kaufman*, 457 F.3d 250, 259-61 (2d Cir. 2006) ....................................................... 12, 21

*Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548 (1949) .................................................... 12

*Cress v. Wilson*, No. 06-2717, 2007 WL 1686687, at *10 (S.D.N.Y. June 6, 2007) ............. vi, 22

*DeLuca v. Blue Cross Blue Shield of Mich.*, 475 F.Supp.2d 640, 643-45 (E.D. Mich. 2007).. 2, 11

*Devlin v. Blue Cross and Blue Shield*, 274 F.3d 76, 88 (2d Cir. 2001) ....................................... 14

*Fallick v. Nationwide*, 162 F.3d 410, 423 (6th Cir. 1998) ..................................................... vi, 22

*Fin. Inst. Ret. Fund v. Office of Thrift Supervision*, 766 F. Supp. 1302, 1309 (S.D.N.Y. 1991).... 5

*Financial Institutions Retirement Fund v. Office of Thrift Supervision*, 964 F.2d 142 (2d Cir. 1992) ................................................................................................................... 5, 6, 8, 10

*Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18 (2d Cir.1996)................................................ 2

*Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003)........................................................ 2

*Gollust v. Mendell,* 501 U.S. 115 (1991) ........................................................................... passim

*Great-West Life & Annuity Ins. Co. v. Knudson*, 122 S.Ct. 708, 715 (2002) .............................. 20

*Gruby v. Brady*, 838 F. Supp. 820, 830 (S.D.N.Y. 1993)............................................................ 4

*Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.,* 120 S.Ct. 2180, 2189 (2000) ......... 20

*Herman v. South Carolina Nat. Bank*, 140 F.3d 1413, 1421-22 (11th Cir. 1998)........................ 20

*Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003) ........................... 10, 11

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), ....................................................... 9, 10

*In re Ikon Office Solutions*, 191 F.R.D. 457 at 466 (E.D. Pa. 2000) ........................................... 30

*In re JDS Uniphase Corp. ERISA Litig.*, 03-04743 , 2005 WL 1662131, *13 (N.D. Cal. July 14, 2005) ................................................................................................................................. 15

*In re Medco Health Solutons, Inc., Pharmacy Benefits Mgmt. Litig.*, MDL – 1508 (S.D.N.Y. Aug. 10, 2006), ............................................................................................................... 6, 7

*In re Tyco Int'l, LTD*, No. 02-1335, 2006 WL 2349338, *6 (D.N.H. Apr. 15, 2006)........... 15, 16

*In re Westar Energy, Inc., ERISA Litig.*, 2005 WL 2403832, at *11 (D. Kan. Sept. 29, 2005) ... 14

*Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)................................................................. 13

*IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1419 (9th Cir. 1997) ..................................... 25

*LaScala v. Scrufari*, 479 F.3d 213, 221 (2d Cir. 2007)........................................................ 17, 30

*Lowen v. Tower Asset Management Inc.*, 829 F.2d 1209, 1221 (2nd Cir. 1987).............. 17, 30, 31

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) .......................................................... 4

*Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)............................................... 7

*Massachusetts Mut. Life Ins. Co. v. Russell*, 105 S.Ct. 3085, 3091 (1985).................................. 2

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ............................................................... 20

*Metro-Goldwyn-Mayer, Inc. v. Ross*, 509 F.2d 930 (2d Cir. 1975)............................................. 15

*Metzler v. Sol. of Lab. Org. Health & Welfare Fund*, 95 Civ. 7247, 1998 U.S. Dist. Lexis 12565 (KMW),........................................................................................................................ 20

*Milbank, Tweed, Hadley, & McCoy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994) .......................... 18

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2007) ............................................. 16

*Nauman v. Abbot Labs.*, No. 04- 7199, 2007 WL 1052478, at * (N.D. Ill. Apr. 3, 2007) .......... 15

*Ortiz v. Fireboard Corp.*, 527 U.S. 815, 834 (1999) .................................................................. 29

*Pancotti v. Boehringer Ingelheim Pharm., Inc.*, No. 06-1674, 2007 WL 2071624, *4 (D. Conn. July 17, 2007)........................................................................................................................ 15

*Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2d Cir. 1993), ....................................... 10

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) .............................. 14

*Richards v. Fleetboston Fin. Corp.*, 235 F.R.D. 165, 172 (D. Conn. 2006)................................. 28

*Sereboff v. Mid Atlantic Medical Services, Inc.,* 126 S.Ct. 1869 (2006) ...................................... 21

*Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998) .................................. 17

*Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 144-45 (2d Cir.1999)......................................... 2

*Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1216 & n.4 (2d Cir. 1987) .......................................... 30

*Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972) ............................................ 4

*Union of Needletrades v. INS*, 336 F.3d 200, 210 (2d Cir. 2003)................................................... 6

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 497 (1982)........................................................................................................ 4

*Varity Corp. v. Howe*, 116 S.Ct. 1065, 1079 (1996).................................................................... 2

*Veltri v. Building Serv. 32B-J Pension Fund,* 393 F.3d 318, 327 (2d Cir. 2004)........................... 6

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765(2000)11, 12

*Vill. of Elk Grove Vill. v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993).............................................. 4

*Warth v. Seldin*, 422 U.S. 490, 514 (1975) .................................................................................. 4

*Whitfield v. Thomasso*, 682 F.Supp.2d 1287, 1303, 1305 (E.D.N.Y. 1988).................................. 20

**Statutes**

15 U.S.C. § 78p(b) ....................................................................................................................... 3

29 C.F.R. §2550.408b-2(e) ........................................................................ 30

29 U.S.C. § 1002(21)(A).......................................................................... 26

29 U.S.C. § 1103 ............................................................................... 9, 10

29 U.S.C. § 1109 .................................................................................... 1

29 U.S.C. § 1132(a)(2) ............................................................................ 1

29 U.S.C. § 1002(21)(A).......................................................................... 25

29 U.S.C. §1106(b)(3) ....................................................................... 17, 30

29 U.S.C. §1108(b)(2) ........................................................................... 30

29 U.S.C. §1132(a)(1)(B) ......................................................................... 2

29 U.S.C. §1132(a)(3)........................................................................... 1, 5

ERISA § 3(21)(A) ................................................................................. 26

ERISA § 403 ................................................................................... 9, 10

ERISA §406 ....................................................................................... 4

ERISA §406(b)(3) ........................................................................... 17, 30

ERISA §408(b)(2)................................................................................. 30

ERISA §409 ................................................................................. passim

ERISA §502(a)(1)(B)............................................................................... 2

ERISA §502(a)(2)........................................................................... passim

ERISA §502(a)(3)........................................................................... passim

## Other Authorities

Applicability of the Investment Advisers Act to Financial Planners, PensionConsultants, and

    Other Persons Who Provide Investment Advisory Services as a Component of Other Financial

    Services, SEC Rel. No. IA-1092, 52 FR 38400-01 ................................................. 26

The Regulation of Investment Advisors by the Securities and Exchange Commission, Robert E.

    Plaze (Nov. 22, 2006) .......................................................................... 26

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................ 1

Fed. R. Civ. P. 23(a) ................................................................................................ 22

**Treatises**

ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 2:6 n. 3

  (4th ed. 2002) ...................................................................................................... 22

Plaintiff Beane hereby files his combined reply in support of his motion for class certification, and opposition to the  motion to dismiss filed by Callan Associates, Inc. ("Callan"), and BNY ConvergEx Execution Solutions LLC ("BNY Brokerage") and Bank of New York Mellon ("BNY") (collectively "BNY Defendants").

I.    **THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS.**

    A.    **Plaintiff Has Article III Standing.**

Callan and BNY Defendants (collectively "Defendants") move to dismiss under Fed. R. Civ. P. 12(b)(1) alleging that Beane lacks standing. They argue plaintiffs have no interest in the assets of a defined benefit plan so they have no injury if the fiduciaries violate their ERISA duties.[1] This view of ERISA cannot be squared with the statute or Congressional intent to protect pension plan assets from misuse and abuse by plan fiduciaries.

Defendants argue that Beane, as a participant vested in his retirement plan, is entitled merely to receive benefits when he reaches retirement age. (Defs.' Memo at 7.) ERISA requires the plan sponsor to fund those benefits and make up any shortfalls in plan assets, so, the argument goes, Beane is not hurt when the plan loses money because his promised benefits have not been affected. (*Id.* at 10.) Thus, even if defendants caused losses to the Federal-Mogul Corporation Pension Plan (the "Pension Plan" or the "Plan") and violated ERISA, Beane has not been injured within the meaning of Article III. (*Id.*) This argument rests on a narrow view of Beane's injuries, fundamentally misperceives the nature of relief available under ERISA, and ignores controlling authority.

Article III ERISA decisions depend on the nature of a given suit.[2] ERISA provides for

---

[1] Defendants' Joint Memorandum Of Law In Support Of Their Motion To Dismiss And In Opposition To Plaintiff's Motion To Certify Class Of ERISA Plans ("Defs.' Memo.") at 10 n. 7.
[2] *See Banyai v. Mazur*, No. 00-9806, 2007 WL 959066, *4-5 (S.D.N.Y. Mar. 29, 2007) (explaining the case law based on the interrelationship between Article III and ERISA's standing

three core lawsuits:

- ***Suit by Participant for Benefits.*** A participant can sue for benefits or to enforce rights under the terms of his plan.[3] A suit for benefits is like a contract claim.[4]

- ***Suit by Participant or Fiduciary Against Fiduciary for Relief to the Plan.*** A participant or fiduciary can sue a fiduciary for the relief provided in ERISA § 409.[5] Section 409 says that a fiduciary whose breach of duty harms the plan is personally liable (1) to make good to the plan any losses resulting from the breach, and (2) to restore to the plan profits made by the fiduciary through the use of plan assets, and is (3) subject to other equitable or remedial relief as deemed appropriate by the Court.[6] A suit arising under ERISA § 502(a)(2) is for relief to the plan, *i.e.*, not for individual relief.[7]

- ***Suit by Participant Against Fiduciary or Non-fiduciary for Individual Relief; Suit by Participant or Fiduciary Against Non-Fiduciary for Relief to the Plan.*** A participant or fiduciary can sue to (1) enjoin any act or practice that violates ERISA or the terms of the plan, or (2) to obtain other appropriate equitable relief.[8] A suit by a participant under § 502(a)(3) can be for individual relief against a fiduciary[9] or non-fiduciary,[10] or for plan relief against a non-fiduciary.[11] As to remedies, a case pending before the Supreme Court asks whether a participant can sue a fiduciary for individual compensatory relief under § 502(a)(3).[12] Section 502(a)(3) does not permit compensatory relief against a non-fiduciary.[13] Monetary relief against a non-fiduciary in the form of equitable restitution is available, however, where the plaintiff shows that the non-fiduciary unjustly received a benefit from the plaintiff ***or*** the non-fiduciary holds funds or property that belong to the plaintiff. *Id.*

Beane sues Defendants under § 502(a)(2) for relief to the Pension Plan. Under § 409,

Beane asks that Defendants make good any losses to the Plan, restore profits made by

---

and remedial provisions); *DeLuca v. Blue Cross Blue Shield of Mich.*, 475 F.Supp.2d 640, 643-45 (E.D. Mich. 2007) (same).

[3] ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

[4] ERISA § 502(a)(1)(B) also permits injunctive and declaratory relief. Courts will not permit a claim under 502(a)(3) for essentially the same relief because (a)(3) does not permit relief that is available under more specific provisions. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

[5] ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

[6] ERISA § 409, 29 U.S.C. § 1109.

[7] *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134,140 (1985).

[8] ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

[9] 516 U.S. at 513.

[10] *Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18 (2d Cir. 1996).

[11] *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 144-45 (2d Cir. 1999).

[12] *See Amschwand v. Spherion Corp.*, No. 07-841.

[13] *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003).

Defendants from using Plan assets, disgorge fees and commissions paid by the Plan to Defendants, and disgorge monies received by Callan from commissions collected by BNY Brokerage from Plan brokerage transactions. As noted, § 502(a)(2) authorizes Beane's suit on behalf of the Pension Plan. The relief Beane seeks is permitted in § 409.[14]

Beane alleges two kinds of injuries: (1) Plan losses from defendants' ERISA violations; and (2) injuries from violation of ERISA §§ 404 and 406 (created for the protection of participant benefits and pension plan assets). Beane must have Article III standing when suing on behalf of the Plan, but, need not demonstrate an out-of-pocket loss to himself.[15]

In *Gollust v. Mendell,* 501 U.S. 115 (1991), the plaintiffs, shareholders and bondholders of the issuer, sued insiders for disgorgement of profits arising from short-swing trading profits. The Court held that the invasion of a statutorily created right coupled with an "attenuated" financial stake in the outcome of litigation was sufficient to support standing where Congress had explicitly conferred standing to sue. The Court considered both sets of plaintiffs standing under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), to sue on behalf of the issuer. *Id.* at 127. The Court held that the shareholder plaintiffs had a "personal stake" in the litigation even though their financial interest was "indirect" "since any recovery would inure only to the issuer's benefit[.]" *Id.* The Court also held the bondholder plaintiffs, had a financial interest in any potential recovery for the issuer because "any recovery by the issuer will increase the value of the bond only because the issuer may become a slightly better credit risk." *Id.* This

---

[14] Beane sues BNY Defendants under § 502(a)(3) for relief to the Pension Plan. Pursuant to § 502(a)(3), Beane asks that BNY Defendants disgorge any commissions received by them from the Pension Plan and profits thereon arising from transactions involving Pension Plan assets. As explained in part Part I.B.4, *infra*, Beane seeks equitable restitution for the Pension Plan, relief permitted under the precedent of the Supreme Court and the Second Circuit.

[15] Defendants' argument that Beane's claims for injunctive relief are moot (Defs.' Memo at 6 n.6) contradicts Second Circuit authority. *See Beck v. Levering*, 947 F.2d 639 (2d Cir. 1991) (A permanent injunction barring defendants from ever serving as fiduciaries or providing services to ERISA plans is available against those who engage in egregious self-dealing.).

stake was sufficient to confer constitutional standing. *Id.* at 126-27. *Gollust* fits this case to a tee.

Congress, via ERISA §§ 502(a)(2) and 502(a)(3), has explicitly authorized Beane to sue. Beane's personal stake in the outcome of this lawsuit is just as compelling as those of the plaintiffs in *Gollust*. Beane, and the other participants in the Pension Plan, have an indivisible interest in the financial integrity of the trust that was established for their sole and exclusive benefit. Improper payments by or losses to the Pension Plan necessarily reduce the assets of that trust and increase the risk that Beane's retirement benefits will not be paid as promised.[16] Under *Gollust*, Beane has constitutional standing.

An "injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."[17] Beane alleges that Defendants violated ERISA § 404, which requires fiduciaries to act prudently and for the exclusive benefit of plan participants, and ERISA § 406, which *per se* prohibits self-dealing transactions by fiduciaries because of the high potential for abuse. Defendants' invasion of these statutory rights, Beane's rights to have a plan administered and managed according to ERISA, is sufficient injury in and of itself under Article III, even without actual or imminent pecuniary harm. So held the Second Circuit in *Financial Institutions Retirement Fund v. Office of Thrift Supervision*, 964 F.2d 142 (2d Cir. 1992) ("*FIRF*"). In *FIRF*, the trial court had reasoned as follows:

> [T]he employees contend that one has standing to assert a violation of ERISA's fiduciary obligations even if the plaintiff will not experience personal or

---

[16] *See Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 497 (1982) ("[T]he Constitution draws no distinction between injuries that are large, and those that are comparatively small."). *Cf. Gruby v. Brady*, 838 F. Supp. 820, 830 (S.D.N.Y. 1993) (restoration of plan losses would help ensure that benefits are paid); *see also Vill. of Elk Grove Vill. v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993) ("[E]ven a small probability of injury is sufficient to create a case or controversy-to take a suit out of the category of the hypothetical-provided of course that the relief sought would, if granted, reduce the probability." (citation omitted)).

[17] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) (quotations omitted); *Warth v. Seldin*, 422 U.S. 490, 514 (1975); *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972).

> pecuniary injury. While it is true that ERISA permits a civil action by a
> beneficiary to enjoin any act or practice which violates either ERISA or the
> pension plan itself, 29 U.S.C. § 1132(a)(3), the cases cited by the employees
> generally involve situations where the plan's assets are somehow at risk. As
> noted, the potential for such losses in the case at bar is, at most, extremely remote.
> Thus, we find that the employees lack standing to assert these claims of breach of
> fiduciary duty.[18]

The Second Circuit saw things differently. It said that the injury requirement can be conferred by

statute[19] and, addressing the holding of the district court, it stated:

> The crucial issue in this case then is whether the intervening employee-
> participants have pleaded a violation of their ERISA-created rights sufficient to
> satisfy Article III's injury requirement. The district court held that they did not,
> intimating that injuries cognizable under ERISA must entail at least some risk to
> plan assets. *See* 766 F. Supp. at 1309 (participants lack standing to challenge
> [Surplus] allocation because potential risk of loss to plan assets from this decision
> is remote). We think the statute casts a wider net.

*Id*. Thus, the *FIRF* Court found that the intervenor-participants had standing under Article III to

challenge the allocation of a surplus in a defined benefit plan.[20] By that logic Bean has standing.

Moreover, in two recent decisions,  the Second Circuit considered the standing of

fiduciaries and participants to sue on behalf of welfare benefit plans.[21] A class of employee

welfare benefit plans represented by fiduciaries and participants alleged that a pharmaceutical

benefits manager ("PBM") with whom the plans had contracted breached its duties to the plans.

The PBM allegedly engaged in various self-interested practices that raised the costs of drugs at

the expense of the plans. 504 F.3d at 235. Insured and capitated plans paid a fixed premium in

---

[18] *Fin. Inst. Ret. Fund v. Office of Thrift Supervision*, 766 F. Supp. 1302, 1309 (S.D.N.Y. 1991).

[19] 964 F.2d at 147 ("Congress may not dispense with the dictates of Article III, [but t]he actual or
threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights,
the invasion of which creates standing.") (citations and quotations omitted).

[20] It can be concluded from the lower court's opinion that the plan at issue was a "defined
benefit" plan. *See* 766 F. Supp. at 1305 ("assets of the Fund exceeded the actuarially determined
employer liabilities for the Fund's current beneficiaries.").

[21] *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care
L.L.C.*, 433 F.3d 181 (2d Cir. 2005) ("*Central States I*"); *Cent. States Se. & Sw. Areas Health
and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007)
("*Central States II*").

exchange for full payment of drug costs whereas self-insured plans paid the entire cost of the

drugs. Thus, insured or capitated plans passed the risk of drug costs to the insurer or PBM and

self-insured plans bore the risk of drug costs. *Id.* at 234-35. The insured and capitated plans

alleged that even though their premiums were fixed, the increased cost of drugs arising from the

PBM's breaches of duty injured the plans because they resulted in higher premiums.

In *Central States I*, the Second Circuit chastised the trial court for failing to rule on a

challenge to plaintiffs' standing, remanded the case, and noted some authorities outside the

Second Circuit that discussed standing. This guidance to the trial court did not even mention or

purport to overrule *FIRF* or *Gollust*.[22]

On remand from the Second Circuit, the trial court addressed the constitutional standing

of the various class representatives.[23] The trial court held that the fiduciaries (*id.* at 11-13) and

plan participants (*id.* at 17-18) had individual standing. The court added that plan participants

also had standing because of their common interest "shared with the fiduciaries and others

eligible to bring suit is in the financial integrity of the plan, which has allegedly been

compromised" by defendant's self-dealing. *Id.* at 16. Finally, the court held that both the

fiduciaries and the participants had representational standing. It noted that the "'[i]nclusion of the

Secretary of Labor [as a person authorized to sue for a plan] is indicative of Congress' intent that

actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan

---

[22] *Central States I* cannot overrule *FIRF*: "'[O]ne panel of this Court cannot overrule a prior decision of another panel,' unless 'there has been an intervening Supreme Court decision that casts doubt on our controlling precedent.'" *Veltri v. Bldg. Serv. 32B-J Pension Fund,* 393 F.3d 318, 327 (2d Cir. 2004), quoting *Union of Needletrades v. INS*, 336 F.3d 200, 210 (2d Cir. 2003). No recently decided Supreme Court case casts doubt on the validity of *FIRF* and other prior Second Circuit decisions discussing standing.

[23] *See In re Medco Health Solutions, Inc., Pharmacy Benefits Mgmt. Litig.*, MDL – 1508 (S.D.N.Y. Aug. 10, 2006), attached hereto as Ex. 1.

as a whole.'"[24] The court concluded that in *Russell*, the Supreme Court had "assumed Article III standing when it held that '[t]here can be no disagreement with the Court of Appeals' conclusion that § 502(a)(2) authorizes a beneficiary to bring an action against a fiduciary who has violated § 409.'"[25] The court finished by examining the history of representational standing in various contexts, and found those settings analogous to ERISA, which grants the participant standing to sue wrongdoers to the plan. *Id.* at 19-20.

The Second Circuit decided the standing issue in *Central States II*. It affirmed the trial court's ruling that a fiduciary for an *insured* plan, that is a plan under which the plaintiffs could not show an out-of-pocket loss except by speculating about the possibility of higher premiums, had standing to sue on behalf of the plan because the plan was the PBM's client during the class period. *Id.* at 242. The Second Circuit rejected the argument that the fiduciary "must establish specific financial harm before her Plan has standing." *Id.* at 242. In other words, the court held that a fiduciary ***does not need to show individual loss to sue for the benefit of the plan***. Under ERISA § 502(a)(2), ***there is no distinction whatsoever between a participant's and a fiduciary's standing to sue***. If a fiduciary does not need to show individual loss to have standing to sue for a loss to the plan, the same is true of a participant.[26] Whatever common law may have said about a beneficiary's right to sue, Congress has said that participants in ERISA plans can sue on behalf of their plans.

The appellate authorities cited in *Central States I* either conflict with *FIRF* and *Central States II* or do not apply here. In *Harley v. Minn. Mining and Mfg. Co.*, 284 F.3d 901 (8th Cir.

---

[24] *Id.* at 19 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985).)

[25] *Id.* at 19 (quoting *Russell*, 473 U.S. at 140).

[26] The Second Circuit declined to reach the participants' standing because "only one of the named plaintiffs is required to establish standing in order to seek relief on behalf of the entire class." 504 F.3d at 241. It noted, however, that whether the participants representational standing or standing to assert the "right to the honest services of fiduciaries guaranteed to them by ERISA" were questions for another day. *Id.* at 243 & n.3.

2002), the Eighth Circuit held that a participant did not have standing under prudential considerations to sue on behalf of an overfunded plan to recover losses to the plan. The court did not actually decide the constitutional standing question. *See Harley*, 284 F.3d at 910 (Bye, J. dissenting) (the majority "side steps" the Article III question). Rather, it held that the plaintiffs' alleged injuries were not within the zone of interests intended to be protected by ERISA, *id.* at 907, a question of statutory standing and a remarkable conclusion given that ERISA explicitly authorizes participant suits and was enacted for the express purpose of preserving pension plan assets.[27] The Eighth Circuit's holding that a participant in a defined benefit plan lacks prudential standing to sue for losses to a plan that has a surplus (the only Circuit Court to have so held) flatly contradicts *FIRF*, the controlling law of the Second Circuit, which held that participants in a defined benefit plan had standing under Article III to sue over the allocation of a plan surplus even in the absence of a loss to the plan or individual pecuniary harm.

The flaws in the *Harley* court's and Defendants' reasoning can be traced to their misreading of the Supreme Court's decision in *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999). *Harley* and Defendants reason that participants have no interest in the assets of a defined

---

[27] If the plaintiff is an enumerated party (a person whom the statute expressly authorizes to sue), then questions about whether Congress intended to benefit a certain type of litigant (the focus of the "zone of interests" inquiry) evaporate. *See Bennett v. Spear*, 520 U.S. 154, 164-67 (1997) (reviewing precedent where Congressionally conferred standing negates zone of interests); *see also Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 154 (1970) ("Congress can, of course, resolve the question [of prudential standing] one way or another," by explicitly conferring standing.) As plaintiff's counsel is aware, other than *Harley*, the zone of interests test has not been used to deny standing to an enumerated party.

  *Harley* is wrong for many reasons. *First*, the court erred in finding that a plan surplus belongs to the employer, not to the plan. Assets of a pension plan trust belong to the plan alone. *See* ERISA § 403(a),(c), 29 U.S.C. § 1103(a),(c). *Second*, the court assumed that someone else, like the employer, the fiduciaries, or the plan could sue to recover any such loss to the surplus.[27] Neither plans nor employers have standing to sue under ERISA for violations of sections 404 or 406. *Third*, a fiduciary's interest in a plan surplus is no different than a participant's. *Fourth*, a plan "surplus" is a fluid concept and a legal fiction that does not represent actual assets that are *extra* or *unnecessary*. Fundamentally, the fact that a plan may be "fully-funded" at a given point in time does not assure that the money will be there to pay participant benefits.

benefit plan. 284 F.3d at 906; Defs' Memo at 10. *Hughes*, in fact, does not say anything of the kind. In *Hughes*, participants in a defined benefit plan challenged the decision of the plan sponsor to create additional benefits and fund those benefits with *surplus* plan assets. Standing was not at issue. The Supreme Court held the employer did not violate ERISA's *vesting rules* because the participants were owed their vested benefits and nothing more. 525 U.S. at 440-41. The Court also held that the employer did not violate ERISA § 403, 29 U.S.C. § 1103, which prohibits plan assets from being used to benefit the plan sponsor, because surplus plan assets were used to pay participant benefits. *Id.* at 441-43. Finally, the Court ruled that the act of amending the plan could not be a breach of fiduciary duty. *Id.* at 443-45.

The Court was silent about a participant's interest in suing a fiduciary to restore losses to a plan. Rather, the Court reasoned a claim under the vesting rules could not be based on some purported interest in a plan's surplus assets because vesting in a fixed benefit does not confer a share of any specific plan assets, including a plan's surplus. *Id.* at 440. *Hughes* said that a defined benefit plan pays benefits "from the same single, unsegregated pool or fund of assets." *Id.* at 443. Thus, as distinguished from a defined contribution plan, a participant has no claim to any particular share of the trust. Rather, the participant has indivisible interest in the financial integrity of the trust.[28] *Hughes* does not stand for the proposition that participants in defined benefit plans have no interest in plan assets. Indeed, overfunded or not, the assets of a pension plan trust belong to the plan and are to be used for the exclusive purpose of paying benefits.[29] Beane does not claim a share of the surplus or any other portion of the trust. Rather, he asks that Pension Plan assets lost and misappropriated by plan fiduciaries be restored to the plan.

Defendants also cite to *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450 (3d Cir.

---

[28] *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (participants have a "common interest" in "the financial integrity of the plan.)
[29] *See* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

2003) and *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123

(9th Cir. 2006) for the proposition that Beane lacks standing. But the plaintiffs in *Horvath* sought

individual relief for individual injuries under ERISA § 502(a)(3), so the Third Circuit naturally

required them to show an individual loss.[30] Here, in contrast, Beane sues under § 502(a)(2) and

§ 502(a)(3) for relief to the Pension Plan.[31]

 As for *Glanton*, the court did not say whether the plaintiffs sued for relief to the plan

under section 502(a)(2) or for individual relief under section 502(a)(3). Further, the court was

focused on redressability, not injury.[32] The court started with the argument that if plaintiffs

prevailed in their lawsuit, their plans' "drug costs will decrease," and thus the plans "*might* then

reduce contributions or co-payments."[33] The Ninth Circuit said this result was entirely

speculative because one could not know what the plans would do with any money that might be

recouped. Here, Beane makes a less extravagant claim: Restoring losses and disgorging fees and

profits to the Pension Plan will increase plan assets and enhance the security of Beane's (and

other participants') retirement income.

---

[30] In citing *Horvath*, *Central States I* did not establish a rule that the invasion of a statutory right confers standing to obtain only injunctive relief, not monetary relief. To read *Central States* in that fashion would essentially overrule the broad holding of *FIRF*, *sub silentio*, as well as overrule *Ragin v. Harry Macklowe Real Est. Co.*, 6 F.3d 898 (2d Cir. 1993), and *Mendell v. Gollust*, 909 F.2d 724 (2d Cir. 1990), *aff'd sub nom Gollust v. Mendell*, 501 U.S. 115 (1991). *FIRF* suggest no limits on the type of relief that may be sought to protect a plan. A participant could sue to enjoin an imminent misappropriation of plan assets by errant fiduciaries without a showing of injury beyond the invasion of rights created by ERISA, but once plan assets were actually misappropriated the participant could not seek their return without a showing of individual monetary injury.

[31] *See Banyai v. Mazur*, No. 00-9806, 2007 WL 959066, *4-5 (S.D.N.Y. Mar. 29, 2007) (discussing *Central States I* and *Horvath* and holding that a showing of individual loss was not required to establish Art. III standing to sue for monetary relief to a plan.); *see also DeLuca v. Blue Cross Blue Shield of Mich.*, 475 F.Supp.2d 640, 643-45 (E.D. Mich. 2007) (same).

[32] 465 F.3d at 1125 ("plaintiffs must show a likelihood that the injury they have suffered will be redressed by a favorable outcome to the litigation").

[33] *Id.* (emphasis added).

The *Glanton* plaintiffs also argued that they had standing to sue as representatives of the plan (presumably pursuant to 502(a)(2)), analogizing to *qui tam* actions and citing *Vt. Agency of Nat. Resources v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000), which held that *qui tam* plaintiffs have standing under Article III. The Ninth Circuit rejected this argument, reasoning that *qui tam* actions, as the Supreme Court said in *Vermont Agency*, have a long history and lineage whereas there was no similar tradition at common law of allowing beneficiaries to sue on behalf of a trust.[34] The Ninth Circuit's focus on lineage and history was misplaced. *Vermont Agency* looked to history and lineage to find standing *only* because a *qui tam* plaintiff's interest in the lawsuit was not connected to the violation of any legally protected right: "A *qui tam* relator has suffered no such invasion—indeed, the 'right' he seeks to vindicate does not even fully materialize until the litigation is completed and the relator prevails."[35] In contrast, the Supreme Court observed that Congress could create *new* legal rights, "which in turn will confer standing to vindicate an injury caused to the claimant."[36] That is precisely what Congress did with ERISA. It created a new legal right in a participant to sue on behalf of the trust for breaches of fiduciary duty.

Also, courts have long permitted derivative actions, which were recognized in equity as a way for individuals to pursue claims against faithless fiduciaries when the corporation or association, not individual shareholders or members, was the injured party. In that situation, equity allowed the derivative plaintiff to step into the shoes of the injured entity and to seek "the restitution he could not demand on his own." *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548 (1949), *quoted in Lewis v. Knutson*, 699 F.2d 230, 238 (5th Cir. 1983). *See also Coan v. Kaufman*, 457 F.3d 250, 259-61 (2d Cir. 2006). In shareholder derivative cases, the courts do not require individual shareholders to prove that the value of their stock has decreased as a result of

---

[34] 465 F.3d at 1125-26 & n.2.

[35] 529 U.S. at 773.

[36] *Id.*

the challenged action or that a favorable ruling will increase the value of their personal holdings. *See Lewis*, *supra*. Rather, an "attenuated financial stake" in the outcome of a case coupled with a right to sue for the corporation is sufficient for Article III standing. *See Gollust*, *supra*.

Finally, welfare plans, the kind of plan at issue in *Glanton*, *Horvath*, and even *Central States* are quite different from defined benefit pension plans like the Pension Plan at issue here. Pension plan assets are generally held in trust and managed for the long-term to provide retirement income to participants whereas welfare plan benefits generally are provided and paid for through insured or self-insured plans on a pay-as-you-go basis.[37] To ensure that pension trust assets are sufficient to pay promised retirement income for many decades to come, ERISA requires that the trust be maintained in accordance with fiduciary standards. When retirement assets are diminished, the risk that promised retirement income will not be paid goes up. Thus, a fiduciary breach that injures the trust necessarily injures the participants for whom the trust's assets are preserved. Remedies such as restitution and injunctive relief to remove fiduciaries thus protect the trust's assets (and the participants' retirement income) for the long term.

### B.    Plaintiff Has Stated Claims Under ERISA.

All Defendants move to dismiss Plaintiff's complaint for failure to state an ERISA claim for relief under Fed. R. Civ. P. 12(b)(6). Specifically, Defendants argue that Plaintiff has failed to adequately plead loss and transaction causation under ERISA. BNY Defendants also argue that Plaintiff's claims against them should be dismissed for the additional reasons that he has failed to plead they are ERISA fiduciaries, they were unjustly enriched, and hold property properly belonging to Plaintiff's retirement plan.

### 1.    Standard of Review.

---

[37] Welfare plans are managed to make payments to health care providers (or insurance companies). Typically, the assets in such plans cover only a few months of benefits. *See Central States I*, 433 F.3d at 185 n.2

The Second Circuit said that the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955 (2007), does not require "a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."[38] *Twombly* does not alter the rule that Beane's complaint must be construed "liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."[39]

## 2.    Plaintiff's Causation Allegations Pass Muster.

A fiduciary who breaches any of the duties imposed by ERISA is "personally liable" to restore losses to a plan "resulting" from his breaches of duty. 29 U.S.C. § 1109(a). A plaintiff must prove that a fiduciary's breach caused the claimed loss to the plan.[40]

### a.    *Plaintiff has alleged that Defendants caused numerous transactions that violated ERISA.*

Defendants argue that Plaintiff has failed to plead that their material omissions caused the Pension Plan to engage in the wrongful transactions because he has not alleged reliance. (Defs' Memo at 12-13.) Their argument rests on the flawed assumption that the standards for pleading securities and common law fraud apply here. As the Second Circuit has observed, however, "breaches of a fiduciary relationship in ***any*** context comprise a special breed of cases that often loosen normally stringent requirements of causation and damages."[41] Where there is a "serious" breach of duty, a "'prophylactic rule' should apply; [the plaintiff should] not have to show strict

---

[38] *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

[39] *See Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007).

[40] *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992).

[41] *Milbank, Tweed, Hadley, & McCoy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994) (emphasis added); *see also In re Westar Energy, Inc., ERISA Litig.*, 2005 WL 2403832, at *11 (D. Kan. Sept. 29, 2005) (In ERISA cases, generally loss causation is an issue of fact and is thus not properly considered on a motion to dismiss.).

"but for" causation or proximate cause."[42] This standard is met here.

Beane alleges that Callan did not disclose the true nature of its commission-sharing arrangement with BNY Defendants. [43] (Compl. ¶ 58.) In *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-154 (1972), the Supreme Court held:

> [cases] involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact.[44]

The Second Circuit has yet to consider the rule of *Affiliated Ute* in an ERISA breach of duty case, but the logic that "it would be 'practically impossible' for plaintiffs to prove that they relied on information that was never provided" logically applies to any material omission.[45]

Decisions in individual benefit suits suggest that the Second Circuit would apply *Affiliated Ute* to ERISA fiduciary breach cases. It has held a participant need not show reliance on a fiduciary communication about benefits that omits material information. Instead, the participant need only show "prejudice" or "likely harm."[46] Tracking closely the analysis of *Affiliated Ute*, the Second Circuit reasoned that "[a] rule requiring detrimental reliance imposes an ***insurmountable hardship*** on many plaintiffs" and would frustrate Congress' intent. *Id.* (emphasis added). District courts following *Burke* and its progeny have observed that the Second Circuit has taken a "protective approach" and "emphasized the broad nature of 'likely harm'"

---

[42] 13 F.3d at 543. A plaintiff only need show the breach was "a substantial factor" in his losses.
[43] *See Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 88 (2d Cir. 2001).
[44] *See also Nauman v. Abbot Labs.*, No. 04- 7199, 2007 WL 1052478, at * (N.D. Ill. Apr. 3, 2007) (applying *Affiliated Ute* to ERISA claim alleging material omission and certifying class).
[45] *In re Tyco Int'l, LTD*, No. 02-1335, 2006 WL 2349338, *6 (D.N.H. Aug. 15, 2006) (applying *Affiliated Ute* to ERISA claim alleging material omission and certifying class).
[46] *Burke v. Kodak Ret. Income Plan,* 336 F.3d 103, 112 (2d Cir. 2003).

when examining inaccurate or misleading fiduciary communications.[47]

Assuming *Affiliated Ute* applies, materiality, not reliance, is the issue.[48] The Second Circuit holds that fiduciary "misrepresentations are material if they would induce a reasonable person to rely upon them."[49] On this record, *i.e.*, on a motion to dismiss, the Court should accept Beane's allegations of materiality as true. When a fiduciary to a pension plan tells the pension plan (and its fiduciaries and participants) that it has a preferred broker and touts that broker's services, the pension plan would think it important that the fiduciary received compensation from the broker that was contingent on how many of the fiduciary's clients used the broker. The pension plan would also want to know that the fiduciary's contract with the broker prevented the fiduciary from mentioning any other broker and required the fiduciary to provide confidential client information to the broker. It defies common sense to suggest otherwise. Thus, Callan's omission of such material information is a "substantial factor" in the Pension Plan's losses.[50]

The authority cited by Defendants is not germane. In *Diduck*, the court said that a breach of duty does not establish fraud and went on to discuss the elements of common law fraud,

---

[47] *See Amara v. Cigna Corp.*, 534 F.Supp.2d 288, 339 (D. Conn. 2008). In a prior decision, the same court certified a class claim on material omissions. *See Amara v. Cigna Corp.*, No. 01-2361, 2002 WL 31993224 (D. Conn. Dec. 20, 2002). Indeed, some district courts have gone even further, holding that "a showing of prejudice or harm is not a prerequisite to liability for failure to comply with ERISA's disclosure requirements or a violation of fiduciary duties under ERISA." *Pancotti v. Boehringer Ingelheim Pharm., Inc.*, No. 06-1674, 2007 WL 2071624, *4 (D. Conn. July 17, 2007); *see also In re JDS Uniphase Corp. ERISA Litig.*, 03-04743 , 2005 WL 1662131, *13 (N.D. Cal. July 14, 2005) (noting that none of the cases cited by defendants requiring a showing of reliance involved claims under ERISA § 502(a)(3).).

[48] *See Metro-Goldwyn-Mayer, Inc. v. Ross*, 509 F.2d 930 (2d Cir. 1975) (materiality not reliance is the decisive element of causation); *Chris-Craft Indus. Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir. 1973) (determination of materiality logically allows an inference of reliance).

[49] *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 122 (2d Cir. 1997); *see also In re Tyco*, 2006 WL 2349338, *6-7 (plaintiffs can prove materiality by showing that a reasonable person would want to know the omitted information).

[50] *See Milbank, Tweed*, 13 F.3d at 543.

including reliance.[51] It then concluded that there was insufficient evidence to support the claim that the alleged fraud caused a loss to the plan.[52] The court did not consider whether a breach of fiduciary duty consisting of a material misstatement, in particular by way of omission, requires a showing of reliance. Defendants' reliance on other authorities, *Lentell v. Merril Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) and *Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760 (7th Cir. 1998), is similarly misplaced.

### b. Plaintiff has alleged that Defendants' misconduct caused losses to the Plan.

Defendants argue that Plaintiff has failed to allege that the Plan suffered losses from their breaches of duty. (Defs' Memo at 13-14.) As a threshold matter, this argument applies only to a loss remedy, not the other remedies sought by Plaintiff. The plain language of ERISA § 409 makes this clear:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be [1] personally liable to make good to such plan any losses to the plan ***resulting*** from each such breach, [2] and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and [3] shall be subject to such other equitable or remedial relief as the court may deem appropriate …

29 U.S.C. § 1109(a) (emphasis added). It is the word "resulting" that has led courts to demand a showing of causation to prove a case for losses against a fiduciary.[53] Because the other remedial clauses of § 409(a) do not contain the term "resulting," a showing of loss causation cannot be inferred to obtain those remedies.[54] If Beane prevails on his claim that Callan received

---

[51] 974 F.2d at 276. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002), cited by defendants involves RICO claims, not a breach of fiduciary duty.

[52] 974 F2d at 279.

[53] *See Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998).

[54] *Cf. LaScala v. Scrufari*, 479 F.3d 213, 221 (2d Cir. 2007) (that plan did not suffer losses had no bearing on whether fiduciary breached his duties); *see also* Defs.' Memo at 17 (disgorgement

consideration from BNY Defendants in connection with Pension Plan transactions, *see* ERISA § 406(b)(3), 29 U.S.C. § 1106 (b)(3), disgorgement of that consideration and profits earned thereon are available remedies even if the Pension Plan did not suffer any losses.[55]  Thus, Beane may pursue remedies for which causation is not required.

Beane has alleged a loss to the Pension Plan flowing from Defendants' misconduct. (*See* Compl. ¶¶ 88, 94, 100, 110.) He alleges that Callan routinely provided confidential client information to BNY Brokerage.  Such confidential client information gave BNY Defendants an advantage over competing brokers for Callan client business such that Callan clients did not have the benefit of a truly competitive and transparent broker selection process. (Compl. ¶ 44.) Callan also agreed never to mention a broker other than BNY Brokerage to its pension plan clients.[56] A fact-finder could reasonably conclude that the Pension Plan obtained less than best pricing as a result of these breaches of duty. True, Beane has not alleged that the Plan paid brokerage commissions to BNY Defendants higher than what it might have paid to another broker. The data to support that allegation will only become available through discovery. Moreover, whether BNY Defendants' brokerage commissions and best execution practices were consistent with prevailing industry norms is a subject of expert proof that cannot be decided now. When a plaintiff pleads duty and breach and information about losses is in the sole possession of the defendants, courts should hesitate to dismiss for failure to plead losses in detail, particularly in fiduciary breach cases. *See Milbank*, *supra*.

---

claim requires plaintiff to show that defendant has obtained a benefit from plaintiff that it would be wrongful for him to retain.).

[55] *See*, *Lowen v. Tower Asset Mgmt. Inc.*, 829 F.2d 1209, 1221 (2d Cir. 1987) (The district court ordered defendants to disgorge fees and other consideration they received in violation of Section 406.) *Cf. Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406, 1414 (9th Cir. 1988) (Although participants had been paid their full benefits upon plan termination, broad equitable relief under 409(a) permitted imposition of constructive trust and disgorgement upon breaching fiduciaries who should not be permitted to retain ill-gotten gains.).

[56] *See* Services Agreement [Dkt. No. 43-1 at  § 2.01(b)].

### 3.    Plaintiff Has Alleged That BNY Defendants Are Fiduciaries.

BNY Defendants argue that "the mere execution of securities transactions [does not] render[] a broker-dealer a fiduciary." (Defs' Memo at 14.) Maybe so, but Beane alleges much more than mere execution. First, he alleges facts that, if proven, show that the institutional broker services provided by BNY Brokerage to its pension plan clients involve discretion over plan assets. As a registered broker-dealer, BNY Brokerage is required to follow principles of best execution. Best execution requires the broker to provide the most advantageous, or best price, order execution for customers. Because how and where an order is executed can affect the cost of a transaction and the price of the security, the manner of execution necessarily involves discretion over plan assets. A broker may direct trades to different places such as floor traders, electronic communication networks, third party market maker, or internally (*i.e.*, from its own inventory). A broker may be more inclined to internalize an order to profit on the spread or send an order to a regional exchange or willing third market maker and receive payment for order flow. (Compl. ¶ 36.)

Second, Beane alleges that BNY Brokerage routinely acknowledges to its pension plan clients that it is a fiduciary under ERISA for services it provides to pension plan clients. (Compl. ¶ 36.) In a form letter describing its "Global Transition Management" service, BNY Brokerage says "it is a fiduciary to the Plan with respect to the services it provides pursuant to this Agreement, subject to the standards contained in [ERISA]."[57]

Third, Beane alleges that Callan tells its pension plan clients that services provided by BNY Brokerage involve fiduciary discretion under ERISA. (Compl. ¶ 36.) For example, Callan says that "transition management is short-term asset management and requires the skill and prudence of an investment fiduciary," and lists BNY Brokerage as a provider of transition

---

[57] (BNY Global Transition Management Form Letter, CA02681-83, Ex. 4 hereto).

management services.[58]

Beane also alleges that BNY Defendants, by contractual agreement with Callan, routinely obtained and made use of confidential pension plan information to help it solicit business from Callan's pension plan clients. (Compl. ¶¶ 35, 44-45.) As BNY Defendants note, information is a plan asset if "it could have been used to the benefit of the fiduciary at the expense of plan participants."[59] Here, Beane alleges that BNY Brokerage routinely obtained confidential pension plan information from Callan and that it used this information to solicit brokerage business from pension plans at the expense of pension plan clients. (Compl. ¶¶ 44-45.) Presumably, BNY Brokerage believed the information had value, otherwise it would not have asked for it. Indeed, BNY Defendants' annual $5.5 million payment to Callan was conditioned on Callan providing this information.

### 4.  The Equitable Monetary Remedies That Plaintiff Seeks From BNY Defendants Are Available Against BNY Defendants.

The Supreme Court says that a party in interest, like BNY Defendants, who knowingly participates in a fiduciary's breach and engages in a prohibited transaction "must disgorge assets and profits obtained through participation as parties-in-interest in transactions prohibited by § 406, and … may be enjoined from participating in a fiduciary's breaches, compelled to make restitution, and subjected to other equitable decrees."[60] In subsequent cases, the Supreme Court

---

[58] FOIA 01270 (Ex. 5 hereto); *see also* Callan Associates Inc., Transition Management: Beyond the Basics (Mar. 2004), CA 01963-67, at 01966 ("the transition manager will act as a fully-discretionary fiduciary and will perform the transition with the utmost care and prudence"), Ex. 6 hereto.

[59] Defs' Memo at 16, citing *Metzler v. Sol. of Lab. Org. Health & Welfare Fund*, 95 Civ. 7247, 1998 U.S. Dist. Lexis 12565 (KMW), at *15-16 (S.D.N.Y. Aug. 14, 1995).

[60] *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *see also Herman v. S.C. Nat. Bank*, 140 F.3d 1413, 1421-22 (11th Cir. 1998) (non-fiduciaries liable for "equitable disgorgement of their profits received from engaging in a prohibited transaction in violation of § 406."); *Whitfield v. Tomasso*, 682 F.Supp.2d 1287, 1303, 1305 (E.D.N.Y. 1988) (non-fiduciary liable for knowing

clarified that § 502(a)(3) does not permit damages remedies[61] and that to impose a constructive trust on a non-fiduciary, the plaintiff must identify the specific funds that the defendant wrongfully holds.[62] Thus, Beane can seek complete disgorgement of BNY Defendants' brokerage commissions and profits earned thereon so long as he can identify those funds as being in BNY Defendants' possession. Notwithstanding the clear guidance from *Mertens*, *supra*, BNY Defendants argue that Beane cannot seek equitable restitution because: (1) he has not alleged that they wrongfully obtained a benefit that it would be unconscionable for them to retain (Defs.' Memo. at 17); and (2) he cannot identify any property possessed by BNY Defendants that rightfully belongs to the Pension Plan. Not true.

First, BNY Defendants obtained benefits from Callan clients in the form of brokerage business and commissions. BNY Defendants obtained the brokerage business and commissions by knowingly participating in Callan's breaches of duty. Among other things, BNY Defendants executed a contract with Callan that required Callan to send a welcome letter to new clients and an annual letter to all clients that said BNY Brokerage was Callan's preferred broker. (Compl. ¶ 41.) The contract required Callan to never recommend another broker.[63] BNY Defendants executed a contract that required Callan to steer its pension plan clients to BNY Brokerage by making BNY Defendants' payments to Callan contingent, in part, on how much brokerage business Callan clients conducted through BNY Brokerage. (Compl. ¶ 54.) These facts, which the Court must accept as true, are sufficient to establish that BNY Defendants earned brokerage commissions pursuant to a scheme that depended on routine violations of ERISA. To Beane, this seems like wrongfully obtained benefits.

---

participation in breaches of duty and would be required to disgorge all sums received in connection with violations of ERISA).

[61] *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214-15 (2002).

[62] *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000).

[63] *See*, Services Agreement [Dkt. No. 43-1 at § 2.01(b)].

Second, the funds that Beane seeks from BNY Defendants are identifiable and within their possession.[64] Beane seeks disgorgement of those brokerage commissions (and profits earned thereon) to the Pension Plan; he does not ask BNY Defendants to disgorge the monies that they paid to Callan, which they obviously do not have. Nor does he ask BNY Defendants to restore to the Plan the difference between what the Plan paid in brokerage commissions and what the Plan would have paid had it traded with a less expensive broker. Brokerage commissions received by BNY Defendants from the Pension Plan (and other client plans) are readily identifiable from various brokerage commission reports produced in discovery.

## II.   THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.

Defendants' opposition to Beane's motion for class certification begins with standing. (Defs' Memo. at 18.) As explained above, Beane has standing.  Defendants argue that Beane cannot serve as a class representative for other plans because he does not have statutory standing to represent those plans. (*Id.* at 18-19 n. 13.) This argument is a *nonsequitar* for purposes of Rule 23. Standing is a jurisdictional question. If Beane does not have standing, there is no case. If he has standing, which he does, and seeks to certify a class, the issue is whether Beane's alleged class satisfies the conditions of Rule 23.[65]

---

[64] *Sereboff v. Mid A. Med. Serv., Inc.,* 547 U.S. 356 (2006) (relief under § 502(a)(3) available because the request for restitution was for identifiable funds in the defendant's possession.) In Second Circuit cases addressing § 502(a)(3) relief, plaintiffs' claims for relief under (a)(3) have largely foundered because the relief sought was essentially legal. *See, e.g.*, *Coan v. Kaufman*, 457 F.3d 250, 262-64 (2d Cir. 2006) (claim alleging fiduciaries mismanaged and failed to diversify plan was a suit for damages).

[65] *See Central States II*, 504 F.3d at 241 (citing 1 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 2:6 n. 3 (4th ed. 2002) for the proposition that once standing is established, the analysis moves to Rule 23); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23."); *Cress v. Wilson*, No. 06-2717, 2007 WL 1686687, at *10 (S.D.N.Y. June 6, 2007) (following *Fallick*). Only one

A.  **Plaintiff Has Met His Burden On Fed. R. Civ. P. 23(a).**

   1.  **The Class Is Sufficiently Numerous.**

Beane seeks to certify a class of ERISA pension plans who retained Callan for pension consulting services and who used BNY Brokerage, directly or indirectly, for brokerage services from October 1998 through 2006. (Compl. ¶ 71.) Defendants admit that 75 plans are in this class. (Defs' Memo at 20 n. 15.) Nevertheless, Defendants challenge numerosity on two grounds.

First, Defendants argue that the class is limited to three plans who hired Callan during the Class Period for the express purpose of helping the plan to find a broker. (Defs' Memo at 20.) This argument rests on the erroneous proposition that Defendants' fiduciary duties to their client plans were limited to the narrow context of a formal broker search. Not so. As a fiduciary, Callan had a duty to tell the truth and act solely in the interest of its clients. Callan's ADV Part II and its letters touting BNY Brokerage's services omitted material information. Such material facts included that (1) Callan received money from BNY Defendants that was contingent on Callan pension plan clients generating sufficient business for BNY Brokerage, and (2) Callan would forfeit $5.5 million a year if it suggested a broker other than BNY Brokerage to its clients or if Callan did not provide confidential client information to BNY Brokerage to help it win pension plan business. All of Callan's ERISA plan clients got the letter. And at least 75 of them used BNY Brokerage. (Defs' Memo. at 20.) Seventy-five is enough for numerosity.

Second, Defendants argue that plan clients of Callan who were already clients of Alpha Brokerage or BNY Brokerage before Callan's sale of Alpha to BNY Brokerage as well as clients

---

of the authorities cited by defendants, *In re Mutual Funds Inv. Litig.*, 519 F. Supp. 2d 580 (D. Md. 2007), even speaks to this issue, and the court improperly conflated standing with Rule 23 in any event. Class certification was not at issue in either *Conn. v. Physicians Health Servs. Of Conn., Inc.*, 287 F.3d 110 (2d Cir. 2002) (a state does not have standing under ERISA because it is not an enumerated party under the statute) or *Acosta v. Pac. Enters.*, 950 F.2d 611 (9th Cir. 1991) (plaintiff did not have standing to demand a list of participants in other plans sponsored by the same employer because he did not participate in those plans).

whom BNY Brokerage acquired from the purchase of another brokerage, 59 in all, cannot be members of the class. (Defs' Memo. at 21.) Defendants reason that Callan's material omissions cannot have caused any plans that were already clients of BNY Brokerage or Alpha to do business with BNY Brokerage because such plans were already in business with the brokerages. This argument fails on both the prohibited transaction and fiduciary breach claims.

Beane's core prohibited transaction claims are that Defendants dealt with plan assets (confidential client information and plan funds) for their own account, Defendants acted for their own benefit in transactions involving plan assets, and Callan received consideration for its personal account from BNY Defendants in connection with plan transactions. *See* ERISA § 406(b)(1)-(3), 29 U.S.C. § 1106(b)(1)-(3). These violations do not require proof that Defendants' misconduct *caused* the plans to hire or continue to do business with Defendants. Thus, the fact that 59 plan clients had business relationships that preceded the prohibited transactions alleged by Beane is immaterial.

Regarding Beane's fiduciary breach claims, Defendants' argument regarding preexisting common clients essentially recasts their transaction causation argument—that Bean cannot show on a class basis that Callan's material omissions caused client plans to do business with Callan and BNY Brokerage—and ignores the fact that Defendants' duties were ongoing. As explained above, causation in a case alleging a breach by omission focuses on the materiality of the omission, not on reliance. A plan can hardly rely on information that has been withheld from it. Plaintiffs can prove materiality on a class basis by establishing that a reasonably prudent fiduciary would want to know material facts about a consultant's relationship to a broker, such as its conflicts, its contingent compensation, and its agreement never to recommend a broker other than BNY Brokerage. Indeed, many Callan clients appear to have acted on that information as

23

the scope of Callan's conflicts has been reported.[66] As a fiduciary, Callan had an ongoing duty to communicate truthfully to its clients and to act for their sole and exclusive benefit. The same is true of BNY Defendants. The conflicts and material omissions in Callan's client communications arose only after Callan's sale of Alpha to BNY Defendants.

**2.    Plaintiff Has Satisfied The Elements Of Typicality And Commonality.**

Defendants argue that Beane cannot show commonality or typicality because (1) Defendants' fiduciary status to each ERISA plan is not susceptible to common proof, and (2) individual reliance cannot be proved on a class basis.[67]

*a.    Callan's fiduciary status is subject to common proof.*

Callan's fiduciary status argument depends entirely on the proposition that the "functional fiduciary test is 'an intensely factual inquiry,'" which, according to Callan, can only be established "on an individualized, fact-specific basis." (Defs.' Memo. at 24, 25.)[68] This argument ignores Beane's complaint, the relevant clause of ERISA's definition of fiduciary, and the evidence before the Court. ***Beane alleges that Callan is a fiduciary because it rendered investment advice for a fee***. (*See* Compl. ¶ 88) The definition of a fiduciary is disjunctive and states in relevant part:

> [A] person is a fiduciary with respect to a plan to the extent…(ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so....[69]

Whether Callan renders investment advice for a fee or other compensation is readily susceptible to common proof. There is little doubt that Callan receives fees for its services from its 138 or

---

[66] *See* note 61, *infra*, and accompanying text.

[67] Defendants do not challenge adequacy of representation or ascertainability.

[68] That Callan did not acknowledge its fiduciary status in contracts, *see id.*, is of little consequence. *See IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1419 (9th Cir. 1997) ("'magic words in the contract'… does not avoid fiduciary responsibility".)

[69] 29 U.S.C. § 1002(21)(A).

more ERISA plan sponsor clients.

Callan readily acknowledges that it is an "investment consulting firm."[70] It is a "Registered Investment Advisor" under the Investment Advisors Act of 1940.[71] Virtually all of Callan's contracts, including its "standard form contract" (DeLuce Decl. ¶5), say in the first paragraph that the contract is for "investment consulting services" or "asset management consulting services." (DeLuce Exs. C, D, F, G.) Callan says that it will acknowledge fiduciary status if asked to do so; Callan says that it considers itself a fiduciary under ERISA with respect to the recommendations it provides to client plans. (DeLuce Ex. J ¶¶ 8, 9.) All of this is common proof on the matter of Callan's status as an investment advisor for a fee. But there is more.

The Securities and Exchange Commission (SEC), responsible for regulating investment advisors, has explained that the kind of financial advice provided by pension consultants is investment advice.[72] Specifically, all of the following are investment advice: advice about market trends; advice about the selection and retention of other advisers (*e.g.*, investment managers); advice about the advantages of investing in securities versus other types of investments (*e.g.*, coins or real estate); providing a selective list of securities; and asset allocation advice is advice about securities.[73] Callan routinely provides this kind of advice to its pension plan clients.[74]

---

[70]Callan website, About Callan ("Callan Associates Inc. is one of the largest independently owned investment consulting firms in the country.") http://www.callan.com/about/ <Last visited June 16, 2008>

[71] Declaration of Anne C. DeLuce ("DeLuce Decl."), Defendants' Index of Exhibits, Ex. A.

[72]*See* Applicability of the Investment Advisers Act to Financial Planners, Pension Consultants, and Other Persons Who Provide Investment Advisory Services as a Component of Other Financial Services, SEC Rel. No. IA-1092, 52 FR 38400-01, at 2, 4, attached hereto as Ex. 7.

[73] See Robert E. Plaze, Associate Director Division of Investment Management United States Securities and Exchange Commission, The Regulation of Investment Advisors by the Securities and Exchange Commission (Nov. 22, 2006) at 3, attached hereto as Ex. 8.

[74] *See, e.g.*, Callan's Defined Contribution Plan Consulting Services, Ex. 9 hereto (describing services that provide advice on plan investment structure, *i.e.* asset allocation and investment manager searches and reviews, among other things).

Thus, common proof will establish that Callan was a fiduciary to class member plans because it provided investment advice for a fee to the class.

     **b.**  ***BNY Defendants' fiduciary status is subject to common proof.***

   BNY Brokerage is a fiduciary for two reasons: (1) its institutional broker services involve a great deal of discretion over plan assets (Compl. ¶ 36); and (2) it exercises control over plan assets in the form of confidential client information. (*Id.* ¶ 36.)[75]

   BNY Brokerage's institutional broker services fall into two basic categories: day-to-day brokerage transactions in the ordinary course of a fiduciary's portfolio management and transition management—the process of moving a large pot of assets from one investment fund to another. As a registered broker-dealer, BNY Brokerage is required to follow principles of best execution in both circumstances, which, as explained in Part I.B.2(b), *supra*, involves discretion over plan assets. Whether or not the general practice of best execution makes BNY Brokerage a fiduciary is a common question because the service is essentially the same for all clients. Similarly, whether BNY Brokerage's transition management services involve discretion over plan assets involves common questions of law and fact.

   BNY Defendants argue, however, that an exemption to fiduciary status for broker-dealers requires individualized proof that BNY Brokerage followed explicit execution instructions. (Defs' Memo at 26.) First, the exemption does not apply to the transition management service.[76] Or, in the language of class certification, whether or not the exemption applies is a common

---

[75] BNY is a fiduciary to the Pension Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because its wholly-owned subsidiary and/or affiliate BNY Brokerage performs institutional brokerage services for its client plans and exercises control over plan assets in the form of confidential client information. (Compl. ¶ 34.)

[76] BNY Defendants admit that BNY Brokerage performed transition brokerage services to 44 of the 75 plans that were common clients of Callan and BNY Brokerage. (Defs' Memo at 26.) So, even if BNY Brokerage was not a fiduciary because of its day-to-day brokerage services, it may still be a fiduciary for 44 plans (enough for numerosity).

question of law. Even assuming the exemption applies here, it would not defeat class certification in light of the common threshold questions described above. Moreover, as explained above, both BNY Brokerage and Callan have conceded that transition management is a fiduciary function. *See* Part I.B.3, *supra*.

Finally, whether or not confidential pension plan information is a plan asset, the control of which makes BNY Brokerage a plan fiduciary, is susceptible to common proof. Callan provided the same basic information about its pension plan clients to BNY Defendants.[77] If that information is a plan asset for one client, the same is true for all clients.

### c.    Causation can be proved with common proof.

Defendants argue that a class cannot be certified on misrepresentation claims because reliance, a necessary element of that claim, requires individualized proof.

First, causation, and therefore reliance, is not an element of a prohibited transaction claim or a claim for disgorgement or equitable relief. *See* Part I.C., *supra*. Second, materiality, the key inquiry omissions cases, *see id.*, is subject to common proof—whether a reasonable fiduciary selecting a broker for a plan would want to know that the plan's investment consultant received contingent compensation from a broker while identifying the broker as the consultant's preferred broker.[78] Courts in the Second Circuit routinely certify classes and find that both typicality and commonality are satisfied when plaintiffs seek relief under § 502(a)(2) and allege that the

---

[77] *See* Services Agreement [Dkt. No. 43-1 at  § 4.04].

[78] Callan thought the information was material. *See* Deposition of David Bonnette (SEC File No. SF-028626-A) at 58-59 (testifying that the SEC investigation into Callan's conflicts was hurting Callan's business), excerpts attached as Ex. 2 hereto; *see also* Deposition of Ronald D. Peyton (SEC File No. SF-028626-A) at 52-53, 63 (testifying that Callan was concerned about media reports that it received "incentive" compensation from BNY Brokerage and that it changed its Form ADV Part II in response to these concerns), excerpts attached as Ex. 3 hereto.

fiduciaries to the plan omitted material information.[79]

**B.    Plaintiff Has Met His Burden On Fed. R. Civ. P. 23(b).**

    **1.    Defendants Fail To Defeat Certification Under Rule 23(b)(1).**

Defendants challenge certification under Rule 23(b)(1)(a) and (b),[80] arguing that the Court would have to examine the circumstances of every purportedly unique relationship between Callan, BNY Defendants and the various plans to determine fiduciary status, misrepresentations, reliance, and causation. (Defs.' Memo at 29-31.) This argument merely rehashes their challenges to commonality and typicality. As explained above, each of the purportedly individualized issues described by Defendants is susceptible to common class proof and raises common legal and factual issues. Beane alleges that Callan is a fiduciary because it rendered investment advice for a fee. (*See* Compl. ¶¶ 32-33.) That question is susceptible to class treatment, *see* Part II.A.2, *supra*, and thus certification under Rule 23(b)(1)(A) is appropriate. Further, whatever the terms of its contracts for investment consulting services, Callan's duties included unwavering loyalty and truth. Therefore, "inconsistent ... adjudications with respect to individual members of the class [] would establish incompatible standards" for Callan and, thus, certification under Rule 23(b)(1)(B), too, is appropriate. Similarly, with respect to BNY Defendants, key questions are whether institutional broker and transition management services involve discretion over plan assets and whether confidential plan information is a plan asset.

Defendants also argue that this case is not the kind of limited fund case generally

---

[79] *See Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 150-52 (S.D.N.Y. 1996); *see also Richards v. Fleetboston Fin. Corp.*, 235 F.R.D. 165, 172 (D. Conn. 2006) (finding commonality and noting that a material omission does "not require a showing of actual prejudice or individualized harm, but only 'likely prejudice.'")

[80] Defendants oppose certification under Rule 23(b)(2) based on the type of relief sought. (Defs.' Memo at 31-33.) To streamline the issues before the Court, Mr. Beane suggests that the Court deny class certification under Rule 23(b)(2) without prejudice. In the event that injunctive relief becomes the main focus, Mr. Beane will raise Rule 23(b)(2) at the appropriate time.

certified under Rule 23(b)(1)(B). (Defs' Memo at 30-31.) But limited fund cases constitute only one kind of case susceptible to certification under Rule 23(b)(1)(B).[81] Another archetypical (b)(1)(B) case is one in which "the shared character of rights claimed … entails that any individual adjudication by a class member disposes of, or substantially effects, the interests of absent class members." *Id.* This category encompasses cases where the defendant's fiduciary duties to beneficiaries flow from the same set of facts, meaning that a ruling adverse to one plaintiff would impair absent members' ability to pursue a claim in the future. That is precisely the reason that so many courts have found ERISA breach of fiduciary duty cases ideally suited to class certification under Rule 23(b)(1)(B).[82]

### 2.    Class Certification Is Proper Under Subsection (b)(3).

As with their challenges to commonality and typicality, defendants' Rule 23(b)(3) attack rests largely on arguments that Callan's fiduciary status, causation, and losses cannot be proved on a class-wide basis (Defs.' Memo. at 22-23). Beane rebutted these arguments above. Defendants raise one new argument that an affirmative defense to Beane's prohibited transaction claim requires individualized proof. (Defs.' Memo at 34.) Defendants argue that ERISA § 408(b)(2) exempts from § 406 contracts with parties in interest (here BNY Defendants) for necessary services (here brokerage services) so long as the plan pays no more than reasonable compensation (here brokerage commissions).[83] This argument misinterprets the law.

Callan received a share of BNY Brokerage's brokerage commissions that was contingent on Callan clients conducting a certain level of brokerage business through BNY Brokerage. This transaction violated § 406(b)(3) because Callan received "consideration" for "its personal

---

[81] *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 834 (1999).
[82] *See*, *e.g.*, *In re Ikon Office Solutions*, 191 F.R.D. 457, 466 (E.D. Pa. 2000) and other cases cited in Pl'.s Class Cert. Mem. at 20 and n.11.
[83] 29 U.S.C. § 1108(b)(2).

account" from BNY Defendants.[84] The key "prohibited transactions" at issue are not, as

defendants suggest, the brokerage transactions performed by BNY Brokerage, but, rather, BNY

Defendants' payments to Callan and other violations of 406(b). BNY Defendants' payments to

Callan are "*separate transaction[s] [from the payment for services] which [are] not exempt

under section 408(b)(2)*."[85] Indeed, § 408(b)(2) "does not contain an exemption" from § 406(b)

transactions.[86] Stated differently, and for purposes of this motion, whether any exemption applies

to the 406(b) violations alleged here is a common legal question. Thus, no plan-by-plan inquiry

into the compensation paid to BNY Defendants is necessary.

        Respectfully submitted,

DATED:  Washington, DC
           This 16th day of June, 2008

**McTIGUE & PORTER LLP**

By: /s/ Gregory Y. Porter
Gregory Y. Porter (GP 9605)
5301 Wisconsin Avenue, NW, Suite 350
Washington, DC 20015
Tel: (202) 364-6900
Fax: (202) 364-9960
gporter@mctiguelaw.com

David S. Preminger (DP 1057)
ROSEN PREMINGER & BLOOM LLP
708 Third Ave, Ste 1600
New York, NY 10017-4123
Tel: (212) 682-1900
Fax: (212) 867-6878
dpreminger@rpblawny.com

*Attorneys for Plaintiffs*

---

[84] *See* 29 U.S.C. § 1106(b)(3).

[85] 29 C.F.R. § 2550.408b-2(e) (emphasis added).

[86] 29 C.F.R. § 2550.408b-2(a); *see Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1216 &
n.4 (2d Cir. 1987) (exemptions for plan services do not apply when a party pays a fiduciary a fee
in connection with a transaction involving plan assets); *see also LaScala v. Scrufari*, 96
F.Supp.2d 233, 238-39 (W.D.N.Y. 2000) (408(b)(2) does not exempt 406(b) transactions);
*Lowen v. Tower Asset Mgmt., Inc.*, 653 F.Supp. 1542, 1555 (S.D.N.Y. 1987) (same).

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REPLY MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY CLASS OF ERISA PLANS** Plans was filed electronically with the Court and served this same day via the Court's ECF notification system upon the following:

**David Steven Preminger**
Rosen Preminger & Bloom LLP
708 Third Avenue, Suite 1600
New York, NY 10017
212-422-1001
Fax: 212-363-4436
Email: dpreminger@rpblawny.com

**Dorothy Heyl**
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
(212)530-5000
Fax: (212)530-5219
Email: dheyl@milbank.com

**Paul Blankenstein**
**William J. Kilberg**
Gibson, Dunn and Crutcher (DC)
1050 Connecticut Ave. NW.,
Washington, DC 20008
(202)-955-8693
Fax: (202)-530-9532
Email: pblankenstein@gibsondunn.com
        wkilberg@gibsondunn.com

**Thomas A. Arena**
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
(212)-530-5828
Fax: (212)-822-5828
Email: tarena@milbank.com

June 16, 2008

David T. Bond
**McTigue & Porter LLP**