UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALBERT T. BEANE, JR.,

                Plaintiff,

       v.

THE BANK OF NEW YORK MELLON, BNY
CONVERGEX EXECUTION SOLUTIONS LLC
and CALLAN ASSOCIATES, INC.,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

x
::
::
::
::
::   07-cv-9444 (RMB)
::
::
::
x

## JOINT REPLY BRIEF OF DEFENDANTS IN
## FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Thomas A. Arena (TA-4613)
Dorothy Heyl (DH-1601)
MILBANK, TWEED, HADLEY
& McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Counsel for BNY Defendants*

William Kilberg (WK-0792)
Paul Blankenstein (PB-8583)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Callan Associates, Inc.*

# TABLE OF CONTENTS

<u>Page</u>

ARGUMENT ..................................................................................................................1

    I.      PLAINTIFF LACKS STANDING UNDER ARTICLE III ....................................2

    II.     PLAINTIFF HAS NOT ADEQUATELY ALLEGED CAUSATION...................7

    III.    PLAINTIFF'S CLAIMS AGAINST THE BNY DEFENDANTS MUST
           BE DISMISSED ...............................................................................................8

           A.     Plaintiff Fails Adequately To Allege That The BNY Defendants
                  Are ERISA Fiduciaries To The Plan ..........................................................8

           B.     Plaintiff's Section 502(a)(3) Claim Should Be Dismissed .........................9

CONCLUSION............................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affiliated Ute Citizens of Utah v. United States,*
  406 U.S. 128 (1972)................................................................................................ 7

*Banyai v. Mazur*, No. 00 Civ. 980 (SHS),
  2007 WL 959066 (S.D.N.Y. Mar. 29, 2007) ...................................................... 5

*Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care,*
  *L.L.C.,*
  433 F.3d 181 (2d Cir. 2005) ........................................................................ 2, 4, 5

*Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care,*
  *L.L.C.,*
  504 F.3d 229 (2d Cir. 2007) ............................................................................... 5

*City of Los Angeles. v. Lyons,*
  461 U.S. 95 (1983)................................................................................................6

*Diduck v. Kaszycki & Sons Contractors, Inc.,*
  974 F.2d 270 (2d Cir. 1992) ............................................................................... 7

*Financial Institutions Retirement Fund v. Office of Thrift Supervision,*
  964 F.2d 142 (2d Cir. 1992) ............................................................................... 4

*Glanton v. AdvancePCS, Inc.,*
  465 F.3d 1123 (9th Cir. 2006) ..................................................................... 2, 4, 5

*Gollust v. Mendell,*
  501 U.S. 115 (1991) ............................................................................................ 6

*Harley v. 3M,*
  284 F.3d 901 (8th Cir. 2002) .............................................................................. 4

*Hein v. Freedom from Religion Found., Inc.,*
  127 S. Ct. 2553 (2007)........................................................................................ 1

*Horvath v. Keystone Health Plan E., Inc.,*
  333 F.3d 450 (3d Cir. 2003) ........................................................................... 4, 5

*Hughes Aircraft Co. v. Jacobson,*
  525 U.S. 432 (1999)......................................................................................... 3, 4

*In re Debs,*
  158 U.S. 564 (1895)............................................................................................ 2

*LaRue v. DeWolff, Boberg & Associates, Inc.,*
  128 S. Ct. 1020 (2008)........................................................................................ 3

*Local 875 I.B.T. Pension Fund v. Pollack,*
  992 F. Supp. 545 (E.D.N.Y. 1998) ..................................................................... 9

**Table of Authorities**
**(Continued)**

Page(s)

*LoPresti v. Terwilliger*,
    126 F.3d 34 (2d Cir. 1997) ........................................................................ 9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................... 4

*Patient Advocates v. Prysunka*,
    316 F. Supp. 2d 46 (D. Me. 2004) ............................................................ 9

*Raines v. Byrd*,
    521 U.S. 811 (1997)............................................................................... 1, 4

*SEC v. First City Fin. Corp.*,
    890 F.2d 1215 (D.C. Cir. 1989) ............................................................... 8

*SEC v. Manor Nursing Ctrs., Inc.*,
    458 F.2d 1082 (2d Cir. 1972) ................................................................... 8

*Sprint Commc'ns Co., L.P., et al. v. APCC Servs. Inc., et al.*,
    554 U.S. ___ (2008), slip op ..................................................................... 1

*Vt. Agency of Nat. Res. v. United States, ex rel. Stevens*,
    529 U.S. 765 (2000).................................................................................. 1

*Wangberger v. Janus Capital Group*, Nos. 06-2003, 2176, 2177,
    2008 U.S. App. LEXIS 12690 (4th Cir. June 16, 2008)............................ 3

*Warth v. Seldin*,
    422 U.S. 490 (1975).................................................................................. 1

*Wellman v. Dickinson*,
    682 F.2d 355 (2d Cir. 1982) ..................................................................... 8

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ..................................................................... 6

**Statutes**

29 U.S.C. § 1002(21)(A)................................................................................ 9

29 U.S.C. § 1108(b)(2) ................................................................................ 10

**Other Authorities**

Restatement (Second) of Trusts (1959) ..................................................... 2, 5

**Regulations**

29 C.F.R. § 2510.3-21(d)............................................................................... 8

40 Fed. Reg. 50845 (Oct. 31, 1975)............................................................ 10

Defendants Callan Associates, Inc. ("Callan"), and the Bank of New York Mellon ("BNY") and BNY ConvergEx Execution Solutions LLC ("BNY ConvergEx") (together, the "BNY Defendants"), jointly submit this reply brief in further support of their motion to dismiss plaintiff's amended complaint (hereinafter, the "complaint").

## ARGUMENT

Federal courts are courts of limited jurisdiction. Article III ensures that federal courts do not sit to resolve generalized grievances, but only actual "cases" and "controversies" in which a plaintiff has suffered some concrete individualized harm. *Hein v. Freedom from Religion Found., Inc.*, 127 S. Ct. 2553, 2563-64 & n.2 (2007). Consequently, the Supreme Court has consistently held that plaintiffs may not sue for injuries suffered by third parties. *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (collecting sources).[1] Plaintiff nevertheless claims that he is not bound by these long and well-established principles and may sue on behalf of the Federal-Mogul Pension Plan ("the Plan") for injuries suffered by the Plan, without alleging he has suffered or will in the immediate future suffer any personal injury. *See* Pl.'s Opp. 3. According to plaintiff, he has been empowered by ERISA with a roving commission to root out and remedy perceived violations of the statute not only in the plan in which he participates, but also in plans to which he is a perfect stranger—all without any need to show that he has been personally injured by the challenged conduct or would benefit from a favorable outcome. ERISA neither grants—nor could it grant—plaintiff relief from the "irreducible" Article III minimum requirements of standing. *Vt. Agency of Natural Res.*, 529 U.S. at 771; *Raines v. Byrd*, 521 U.S.

---

[1] That rule is subject to narrow, circumscribed exceptions, such as the historical examples of *qui tam* suits brought by a private party on behalf of the federal government, *see Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000), or suits brought by an assignee of a legal claim for money owed, *see Sprint Commc'ns Co., L.P., et al. v. APCC Servs. Inc., et al.*, 554 U.S. ___ (2008), slip op.

811, 820 n.3 (1997).

In this same vein, plaintiff asserts that he need not even allege that the Plan relied on any of defendants' purported misrepresentations, Pl.'s Opp. at 14, or that defendants' purported breaches of fiduciary duty were the *cause* of any Plan losses, *id.* at 16-17. Plaintiff seeks substantial monetary recovery from the defendants without ever proving that the challenged conduct of the defendants caused the Plan any injury.

## I.     PLAINTIFF LACKS STANDING UNDER ARTICLE III.

Section 502(a)(2) of ERISA, on which plaintiff relies, provides that either the Secretary of Labor, a fiduciary, a participant, or a beneficiary may sue for breaches of fiduciary duty. But every party who has statutory standing under ERISA must also "satisfy the strictures of constitutional standing" under Article III. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 200 (2d Cir. 2005) ("*Central States I*"). The Secretary always has standing to enforce the laws of the United States. *See, e.g.*, *In re Debs*, 158 U.S. 564, 583 (1895). Similarly, the Plan trustee would have Article III standing here to sue on behalf of the Plan, because it has long been recognized at common law that trustees are the *de jure* owners of trust assets and thus can sue for injuries sustained by the trust even if no beneficiary was personally injured. *See Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006); Restatement (Second) of Trusts § 214 cmt. b, § 280 (1959). Plan participants or beneficiaries, however, cannot sue without alleging some diminution of their *individual* plan benefits, not merely a general concern for the financial integrity of the plan. To allow participants to sue without alleging such injury not only violates Article III, but invades the province of the principal plan fiduciaries, who are primarily responsible for redressing ERISA violations and are in the best position to monitor the performance of third-party service providers like the defendants Callan and BNY ConvergEx.

2

Indeed, the federal courts of appeal have concluded that a plan participant must allege individualized injury to sue for monetary relief on behalf of a plan.[2]  And the Supreme Court has repeatedly made clear that the only cognizable interest that a plaintiff participant has in a defined benefit plan (like the Federal-Mogul Plan here) is in his fixed, predetermined retirement payments or "accrued benefit."  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020, 1025 (2008).  That is because, in a defined benefit plan, "the employer typically bears the entire investment risk and—short of the consequences of plan termination—must cover any underfunding as the result of a shortfall that may occur from the plan's investments."  *Hughes Aircraft*, 525 U.S. at 439.  Therefore, "[g]iven the employer's obligation to make up any shortfall, ***no plan member has a claim to any particular asset that composes a part of the plan's general asset pool***."  *Id.* at 440 (emphasis added).  Or, as the Supreme Court put it in *LaRue*, misconduct by fiduciaries or third-party service providers to a defined benefit plan "will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan."  128 S. Ct. at 1025.  Plaintiff has failed to show that there is any risk of default by the Plan here.

On this very issue, the Fourth Circuit recently observed that, while a participant in a defined *contribution* plan had Article III standing to sue for alleged losses to Plan assets, *no* standing would exist if the plaintiff were a participant in a defined benefit plan.  *See Wangberger v. Janus Capital Group*, Nos. 06-2003, 2176, 2177, 2008 U.S. App. LEXIS 12690, at *3-4 (4th Cir. June 16, 2008).  The Fourth Circuit reasoned that, "when [a defined-benefit] plan was injured, it did not necessarily affect a participant's defined benefit . . . and a plaintiff who received a defined benefit could receive no more *even if the plan had been defrauded*."  *Id.* at

---

[2] *See* Defs.' Br. 7 (collecting authorities).

3

*26 (emphasis added); *see also Harley v. 3M*, 284 F.3d 901, 906 (8th Cir. 2002). In short, plaintiff finds himself in the unenviable position of having to distinguish numerous Supreme Court and courts of appeal cases to support the erroneous proposition that without suffering any personal injury he may nonetheless sue on behalf of the Plan for general losses to Plan assets.[3]

The main authority that plaintiff relies on for his argument that ERISA creates a freestanding right for participants to sue to vindicate losses sustained by their plan without alleging any actual personal harm is *Financial Institutions Retirement Fund v. Office of Thrift Supervision*, 964 F.2d 142 (2d Cir. 1992) ("*FIRF*"). But, as noted in defendants' opening brief, the Second Circuit in *Central States I* has since limited *FIRF*'s broad holding to claims for *injunctive* relief in circumstances where ERISA creates a personal right in the participant (such as a right to receive plan documents). The *Central States I* court made clear that claims for *restitution* and *disgorgement*, by contrast, even on behalf of a plan, still require the traditional Article III showing of individualized injury by a participant-plaintiff. Defs.' Mem. 10 n.7.[4] *Central States I*, in turn, relied on the Third Circuit's opinion in *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003), which distinguished *FIRF* on the very same basis.

---

[3] His efforts to distinguish these cases nonetheless fail. The Court in *Hughes Aircraft* placed emphasis on the fact that the participants, like plaintiff here, had presented no evidence that the plan would be unable to fund their accrued benefits. *See* 525 U.S. at 440-42. Similarly, notwithstanding the dissent's characterization of the majority opinion, the Eighth Circuit in *Harley* analyzed *both* constitutional and prudential standing requirements, and the Second Circuit cited favorably to that opinion in *Central States I*. *See Harley*, 284 F.3d at 906; *Central States I*, 433 F.3d at 200. Likewise, although *Glanton* discusses redressability as an element of Article III standing, it also analyzed extensively why plan participants may not bring "representative" suits on behalf of a plan without alleging individual harm. *See* 465 F.3d at 1125-27.

[4] *FIRF* is also distinguishable because, to the extent that it relied on older, more diluted conceptions of Article III standing, it has been undermined by intervening decisions of the Supreme Court. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992); *Raines*, 521 U.S. at 820 n.3.

*See* 333 F.3d at 456.  Contrary to plaintiff's suggestion, the distinction drawn in *Central States I* between an injunction to remedy a statutorily created personal right, and monetary relief on behalf of the plan sought by a participant not injured by the challenged conduct, is not mere dicta.  Indeed, if the participants in *Central States I* had standing to sue merely because their "statutorily-created" rights were violated, no remand would have been necessary, because plaintiffs had clearly alleged that defendants had breached their ERISA duties.  In short, the core holding of *Central States I* is that, when a participant makes claims for monetary relief under ERISA, Article III requires a showing of pecuniary harm, not a mere breach in trust or loyalty.  That holding decides this case.[5]

Perhaps aware of the deficiencies in his broadside attack on Article III, plaintiff argues in the alternative that he has standing based on the wholly speculative allegation that there is an

---

[5] Plaintiff makes various unsuccessful efforts to distinguish *Central States I*.  First, he claims that the participants there and in *Horvath* sued only in their individual capacity, not on behalf of a plan.  *See* Pl.'s Opp. 10 & n.31 (citing *Banyai v. Mazur*, No. 00 Civ. 980 (SHS), 2007 WL 959066, at *4-5 (S.D.N.Y. Mar. 29, 2007)).  But the plaintiffs in *Central States I* did sue derivatively on behalf of their respective plans, and therefore, plaintiff's attempt to distinguish *Central States I* on that basis is mistaken.  *See Cent. States I*, 433 F.3d at 186.  Second, plaintiff notes that in *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007) ("*Central States II*"), the Court found after remand that a Plan *trustee* had standing to sue without any showing of personal injury.  But as explained above, *infra* p. 2, the plan trustee's standing derived from his firmly-established status at common law as the constructive owner of the trust.  *See also Glanton*, 465 F.3d at 1125-26.  Trust beneficiaries, by contrast, could not sue for breach of trust at common law without a showing of individual harm.  *See, e.g.*, Restatement (Second) of Trusts § 214 cmt. b (1959).  The same is true here.  Third, and finally, plaintiff latches onto a footnote in *Central States II* to the effect that *Central States I* "should not be read as [necessarily] rejecting" the argument that plaintiff's interest in the intangible right to honest services under ERISA is sufficient to confer standing.  *Cent. States II*, 504 F.3d at 243 n.3.  But *Central States II* did not accept that proposition and to do so would completely undermine the distinction in *Central States I* between suits for damages and suits for injunctive relief, because *any* plan participant can always characterize a pure statutory violation as infringement of a right to "honest services."

"increase[d] risk" that the Plan might at some future point become underfunded so that he may not ultimately receive the defined benefits he was promised. Pl.'s Opp. 4. But this argument fails as well. First, plaintiff has failed to allege in his complaint that his "accrued benefits" are at increased risk of default, even though he has amended the complaint after the defendants' initial motion emphasized that precise failure.[6] Second, the increased risk of plan default that plaintiff asserts in his motion papers is too abstract and hypothetical to meet the Article III requirement for an actual or imminent injury.[7] Indeed, plaintiff has failed even to address the evidence provided by defendants in their initial memorandum that Federal-Mogul plainly has the financial wherewithal to make up any shortfall caused by the allegedly wrongful payments to defendants, as its annual contributions to the Plan in 2005 and 2006 dwarfed the total fees paid to the defendants during the entire class period. *See* Defs.' Mem. 9.

Nor does the Supreme Court's decision in *Gollust v. Mendell*, 501 U.S. 115 (1991), aid plaintiff. In *Gollust*, the Court held that a shareholder had standing to sue on behalf of the issuer to recover allegedly illegal short-swing profits under Section 16(b) of the Securities Exchange Act of 1934. Noting that the shareholder's indirect financial interest was attenuated, the Court nonetheless found that recovery on behalf of the issuer was enough to give the shareholder standing as the recovery would provide a "marginal increase" in the value of stock held by the plaintiff there. *Id.* at 127. **Here, by contrast, any recovery by plaintiff on behalf of the Plan would not increase any future benefit to plaintiff by even a single penny.** He would still

---

[6] It is well-established that "a party is not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

[7] *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of defendants' conduct that "must be both 'real and immediate,' not 'conjectural' or 'hypothetical'") (citations omitted).

receive the same promised benefit that he would otherwise receive. And any potential decrease in the Plan's assets due to the relatively insignificant payments to the defendants has most likely already been made up by Federal-Mogul's increased contributions.

In short, win or lose, Plaintiff will receive the exact same pension benefit from his Plan. He thus has no personal stake in the outcome and thus lacks the standing necessary under Article III to maintain this suit in federal court.

## II.    PLAINTIFF HAS NOT ADEQUATELY ALLEGED CAUSATION.

Plaintiff claims that he has no obligation to plead causation for an ERISA cause of action, relying primarily on *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), a case which involves omissions, rather than the affirmative misrepresentations that plaintiff here alleges. And plaintiff makes no meaningful effort to distinguish *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992), a Second Circuit case that specifically applies to ERISA breach of fiduciary cases, and requires plaintiffs to plead both *transaction* and *loss* causation. Moreover, even plaintiff concedes that he must show that the breach would cause him "prejudice" or "likely harm," Pl.'s Opp. 14, and that the alleged misrepresentations were "material" or a "substantial factor" in the Plan's losses, *id.* at 15. But even under plaintiff's supposedly relaxed test, his complaint still fails, because (as he candidly admits) he has not alleged that BNY ConvergEx failed to provide its clients with best execution or that it charged too much for commissions. *See id.* at 17. Absent either allegation, there is no basis for the Court to conclude that defendants' conduct caused the Plan any loss.

Nor is plaintiff correct that it is simply unnecessary for him to plead loss causation when suing for disgorgement and other equitable relief. *See id.* at 16-17. On the contrary, the Second Circuit has consistently held that, when suing for disgorgement, "the loss complained of must proceed directly and proximately from the violation claimed and not be attributable to some

supervening cause." *Wellman v. Dickinson*, 682 F.2d 355, 368 (2d Cir. 1982) (internal citation omitted); *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972).  The D.C. Circuit has likewise stated that, "[s]ince disgorgement primarily serves to prevent unjust enrichment, the court may exercise its equitable power only over property causally related to the wrongdoing."  *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989).  These cases and others like them demonstrate that courts do not abandon traditional causation principles when awarding equitable relief.

### III.    PLAINTIFF'S CLAIMS AGAINST THE BNY DEFENDANTS MUST BE DISMISSED.

#### A.    Plaintiff Fails Adequately To Allege That The BNY Defendants Are ERISA Fiduciaries To The Plan.

Citing no authority, plaintiff contends that the obligation of every broker-dealer to comply with principles of best execution is sufficient, in and of itself, to render the broker-dealer a fiduciary. Pl.'s Opp. 18.  Plaintiff's unprecedented view of the law, if accurate, would eviscerate the DOL's ERISA regulations expressly providing that a broker-dealer shall not be deemed to be an ERISA fiduciary where the broker-dealer executes transactions pursuant to specific instructions from a plan's investment managers.  *See* 29 C.F.R. § 2510.3-21(d). Nowhere does the complaint allege that BNY ConvergEx did not act pursuant to specific instructions from the Plan.

Plaintiff next refers to the allegation in the complaint that BNY ConvergEx "routinely acknowledge[d]" to unidentified pension plan clients that it was an ERISA fiduciary.  Pl.'s Opp. 18.  This generalized allegation cannot mask the absence of any particularized pleading that BNY ConvergEx ever made such a representation to the Plan.  The complaint does not allege that BNY ConvergEx ever specifically acknowledged its fiduciary status to the Plan, and plaintiff fails to allege that BNY ConvergEx ever agreed to serve as a fiduciary in any contract

with the Plan.[8]

Finally, plaintiff unconvincingly attempts to base the BNY Defendants' purported

fiduciary status on their alleged use of confidential plan information.  The complaint, however,

does not identify any purportedly confidential plan information specific to the Plan that the BNY

Defendants received; nor does the complaint allege that the BNY Defendants exercised control

over the information in a way that enabled them to "manage" or "control" the disposition of the

Plan's assets, *see* 29 U.S.C. § 1002(21)(A)[9]; and the complaint does not adequately allege that

any such information, in and of itself, was an asset of the Plan.[10]  *See Local 875 I.B.T. Pension*

*Fund v. Pollack*, 992 F. Supp. 545, 570 (E.D.N.Y. 1998).

### B.    Plaintiff's Section 502(a)(3) Claim Should Be Dismissed.

Plaintiff recognizes that Section 502(a)(3) limits a participant's potential remedies to the

restitution or disgorgement of specifically identified funds ***in the possession*** of a party-in-

interest.  He also concedes that he has no basis for a Section 502(a)(3) claim against the BNY

Defendants arising from "[t]he ***key 'prohibited transactions'*** at issue"—namely, the alleged

annual payments to Callan under the Services Agreement.  *See* Pl.'s Opp. 30 (emphasis added).

---

[8] The only support cited by plaintiff for this broad factual claim is an unsigned form letter
produced by Callan (not BNY ConvergEx), which states that BNY ConvergEx would be acting
as a fiduciary in connection with transition management services.  Plaintiff fails to allege that
this form letter was ever sent to the Plan.  Pl.'s Opp. 18, Ex. 4.  To the contrary, as the BNY
Defendants previously established, BNY ConvergEx ***routinely disclaimed*** in correspondence
to pension plans that it would be acting as a fiduciary in connection with transition
management services.  *See* Defs.' Mem., Ex. G., Bassily Decl. ¶ 7.

[9] *See, e.g., LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (mere receipt of plan assets
insufficient basis to conclude that defendant "managed" plan assets).

[10] There are no well-pleaded allegations that the generic pension plan information Callan
allegedly provided the BNY Defendants had any transferable value.  *See, e.g., Patient
Advocates v. Prysunka*, 316 F. Supp. 2d 46, 49 (D. Me. 2004) ("[u]nlike stocks, bonds, cash,
investment contracts, and other 'hard' assets, claims information typically is not acquired for
its value or held as an investment").  Nor does plaintiff allege that the governing Plan
documents identify such amorphous information to be a "plan asset."

Plaintiff nevertheless argues that his Section 502(a)(3) claim should survive because he theoretically has a basis on which to seek the disgorgement of brokerage commissions paid by the Plan to BNY ConvergEx.

The governing ERISA regulations, however, specifically exempt brokerage transactions from Section 406 liability where such transactions are conducted on terms "at least as favorable to the plan as an arm's length transaction with an unrelated party."  Prohibited Transaction Exemption 75-1, 40 Fed. Reg. 50845 (Oct. 31, 1975).[11]  Because, as plaintiff acknowledges, the complaint does not allege "that the Plan paid brokerage commissions to BNY Defendants higher than what it might have paid to another broker" Pl.'s Opp. 17, his Section 502(a)(3) claim should be dismissed.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in defendants' joint memorandum in support of their motion to dismiss, plaintiff's complaint should be dismissed with prejudice.

DATE:  June 30, 2008                    Respectfully submitted,


                                        /s/ Paul Blankenstein
Thomas A. Arena (TA-4613)               William J. Kilberg (WK-0792)
Dorothy Heyl (DH-1601)                  Paul Blankenstein (PB-8583)
MILBANK, TWEED, HADLEY &                GIBSON, DUNN & CRUTCHER LLP
MCCLOY LLP                              1050 Connecticut Avenue, N.W.
1 Chase Manhattan Plaza                 Washington, D.C. 20036
New York, NY 10005                      Telephone:  (202) 955-8500
Telephone:  (212) 530-5000              *Counsel for Callan Associates, Inc.*
*Counsel for BNY Defendants*

---

[11]*See also* 29 U.S.C. § 1108(b)(2) (exempting from Section 406 liability transactions between a plan and a party-in-interest for "services necessary for the . . . operation of the plan, ***if no more than reasonable compensation is paid therefore***") (emphasis added).

## CERTIFICATE OF SERVICE

I, Paul Blankenstein, hereby certify that on this 30th day of June 2008, I caused copies of

the foregoing Defendants' Reply Brief in Further Support of Their Motion to Dismiss, on behalf

of Defendants The Bank of New York Mellon, BNY ConvergEx Execution Solutions LLC, and

Callan Associates, Inc., to be filed electronically with the Court and served this same day via the

Court's ECF notification system upon the following:

**Gregory Y. Porter**
McTIGUE & PORTER LLP
5301 Wisconsin Avenue, NW
Suite 350
Washington, DC 20015
Phone: (202) 364-6900
Fax: (202) 364-9960
Email: gporter@mctiguelaw.com

Date: June 30, 2008

/s/ Paul Blankenstein
Paul Blankenstein
Gibson, Dunn & Crutcher

11