**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
ALBERT T. BEANE, JR., individually and on
behalf of all others similarly situated,

                Plaintiff,

         v.                                     07-CV-09444 (RMB)(GWG)

THE BANK OF NEW YORK MELLON,
BNY CONVERGEX EXECUTION
SOLUTIONS LLC and CALLAN
ASSOCIATES, INC.,

                Defendants.
------------------------------------------------------------x


**PLAINTIFF'S NOTICE OF SUPLLEMENTAL AUTHORITY IN**
**SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Sprint Communications Co. v. APCC Servs., Inc.*, 128 S.Ct. 2531 (2008), decided on June 23, 2008, overrules *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901 (8th Cir. 2002), and any other case that says a participant in an ERISA plan does not have constitutional standing to sue on behalf of his injured plan under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), on the grounds that the participant himself has not suffered a personal injury or that the relief sought will flow not to the plaintiff, but to his plan.[1]  A copy of the *Sprint* decision is attached hereto as Exhibit A for the Court's convenience.

*Sprint* holds that a plaintiff may sue for an injury to another person even if the plaintiff has no personal stake in the outcome of the case, provided there has been an injury to a person, the relief sought will remedy that injury, and the plaintiff has the legal authority to bring the claim in place of the injured person.  The Federal-Mogul Corporation Pension Plan (the "Pension Plan" or the "Plan") has suffered injuries.  The relief sought by Plaintiff Beane seeks to redress the injuries to the Pension Plan.  As a participant in the Pension Plan, Beane has legal authority to sue on behalf of the plan under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).  Thus, Beane has standing under *Sprint*.

> The question presented in *Sprint* was
>
> whether an assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor.[2]

---

[1] *Sprint* overrules *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598 (6th Cir. 2007) and *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006), which held that participants in welfare benefit plans lacked Article III standing to sue for injuries to their respective plans.  It does not, however, overrule *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003), which held that participants had to show injury to themselves, not the plan, under Article III to sue for individual relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

[2] 128 S.Ct. at 2533

1

The petitioners made three arguments against standing. First, they argued the assignees had not suffered any personal injury; rather it was the assignors who had been injured.[3] The Court said that in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), it had already held that an assignee can sue for injuries suffered by the assignor.[4]

Second, petitioners argued that redressability was not satisfied because all relief would flow to the assignors, none to the party in court.[5] The Court explained that petitioners misunderstood redressability. The issue was not, as petitioners urged, whether the remedy would flow to the party in court, but, rather, whether the remedy sought would redress the injury complained of, in this case the injury suffered by the assignor. "[F]ederal courts routinely entertain suits," the Court noted, "which will result in relief for parties that are not themselves directly bringing suit."[6] For example, the Court said, trustees sue to benefit trusts, guardians ad litem sue to benefit their wards, receivers sue to benefit receiverships, and executors sue to benefit estates. *Id.*[7] And in none of those settings does the person suing suffer the injury complained of or the relief go to the plaintiff.

Third, petitioners argued that the assignees lacked a "personal stake" in the case because they would not benefit from the outcome.[8] The Court responded that the "personal stake" requirement was not a separate test, but simply shorthand for the specific standing requirements.[9]

---

[3] *Id.* at 2542.
[4] 128 S.Ct. at 2542
[5] *Id.*
[6] *Id.* at 2543.
[7] *See also United Food and Commercial Workers Union Local 715 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996) (quoting *In re Oil Spill by the Amoco Cadiz Off the Coast of France on Mar. 16, 1978,* 954 F.2d 1279, 1319 (7th Cir. 1992)) ("'[R]epresentative damages litigation is common-from class actions under Fed. R. Civ. P. 23(b)(3) to suits by trustees representing hundreds of creditors in bankruptcy to *parens patriae* actions by state governments to litigation by and against executors of decedents' estates.'")
[8] *Id.*

2

Plaintiff Beane has standing to sue on behalf of the Pension Plan for the same reasons that assignees and trustees have standing to sue on behalf of absent parties. Beane has the legal right to sue, as explicitly conferred by Congress, *see* ERISA § 502(a)(2), whereas the assignee's right to sue arises from a contract transferring legal title to a claim and the trustee's right to sue arises when she has been appointed by the settlor of the trust. Beane sues for an injury to his Pension Plan, as the assignee sues for an injury to the assignor and the trustee sues for an injury to the trust. The relief sought here will flow to Beane's Pension Plan just as the relief sought by the assignees in *Sprint* would flow to the assignors or the relief sought by a trustee will flow to the trust. And, although the Supreme Court rejected "personal stake" as a separate standing requirement, Beane has more of a stake in this case than did the assignees in *Sprint*. He is, after all, suing for the benefit of a trust that was established for his and other participants' sole and exclusive benefit and for the sole and exclusive purpose of providing retirement income to participants like him.

It is true, of course, that *Sprint* looked to "history" and "tradition," not statutes, to guide its Article III inquiry.[10] The focus on history and tradition is inapt, however, when Congress has said a person can sue.[11] Thus, the Ninth Circuit erred in *Glanton* when it looked to the common law of trusts for the proposition that trustees, but not beneficiaries, can sue on behalf of a trust.[12]

---

[9] *Id.*

[10] 128 S.Ct. at 2535.

[11] *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("lineage" and "history" may inform the standing inquiry, but if Congress creates a legal right by statute, the statute "will confer standing to vindicate an injury caused to the claimant."); *United Food and Commercial Workers*, 517 U.S. at 557 (statute can confer standing to sue on behalf of another).

[12] *See Glanton*, 465 F.3d at 1125 n.2. The *Glanton* court distinguished *United Food and Commercial Workers*, 517 U.S. 544, and other representational standing authorities on the grounds that the representative parties in those precedents supposedly had a direct stake in the litigation. 465 F.3d at 1126. *Sprint*, however, repudiated personal stake as a separate standing

3

Although the proposition may be true at common law and courts look to the law of trusts to inform their understanding of ERISA, the common law cannot be invoked where it flatly contradicts the statute.[13]  With ERISA, Congress created in clear and unambiguous language a new legal right in a participant to represent his employee benefit plan in court.

This is not a novel proposition.  The Supreme Court has long-recognized "representational standing."  Indeed, the Court acknowledges that "the general prohibition on a litigant's raising another person's legal rights is a judicially self-imposed limit on the exercise of federal jurisdiction, *not a constitutional mandate*."[14]  The doctrine of representational standing "rests on the premise that in certain circumstances, particular relationships (recognized either by common-law tradition *or by statute*) are sufficient to rebut the background presumption … that litigants may not assert the rights of absent third parties."[15]  Here, the particular relationship between the Pension Plan and Beane arises by statute.  Congress's clear statutory language conferring on Beane the right to sue on behalf of any employee benefit plan in which he participates and the clear relationship between Beane and the Pension Plan rebut the prudential presumption (there is no constitutional prohibition as *United Food and Commercial Workers*

---

inquiry.  Moreover, there is simply no basis to conclude, as the *Glanton* court did, that "Trustees and executors … have a stake in the litigation because they are acting on behalf of the estate, which owns the claims being litigated," whereas participants suing on behalf a trust under ERISA § 502(a)(2) have no such stake.  *Id.*  Participants, like ERISA trustees, act on behalf of the trust when they sue under section 502(a)(2).

[13] *See Hughes Aircraft v. Jacobson*, 525 U.S. 432, 447 (1999) (noting that although "trust law may offer a starting point for analysis in some situations, it must give way if it is inconsistent with the language of the statute, its structure, or its purposes.") (quotations omitted).  Even where ERISA is silent on a question, the common law of trusts may not provide the answer because "ERISA's standards and procedural protections partly reflect a congressional determination that the common law of trusts did not offer completely satisfactory protection."  *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996).

[14] *United Food and Commercial Workers*, 517 U.S. at 557 (emphasis added; quotations, citations, and alterations omitted).

[15] *Id.* (emphasis added; footnotes omitted).

explains) that he may not sue on behalf of the Pension Plan. To paraphrase the Supreme Court, "[b]ecause Congress authorized [participants] to sue for [plan losses], and because the only impediment to that suit is a general limitation, judicially fashioned and prudentially imposed, ***there is no question that Congress may abrogate the impediment.***"[16]

*Harley* rests on the proposition that participants in fully funded defined benefit plans cannot establish an "actual injury ***to themselves***." *Harley*, 284 F.3d at 908. *Sprint*, however, does not require any injury to the party bringing suit in a representative capacity. *Sprint* requires three things: (1) the party bringing suit is legally authorized to sue; (2) a concrete injury has been suffered by the person from whom the claim originates; and (3) the relief sought will remedy that injury. No personal stake in the case or benefit from the relief is required of the suing party. In sum, under *Sprint*, participants in ERISA plans have standing to sue as representatives of their employee benefit plans even when they have not been personally injured.

DATED:   Washington, DC
            This 28th day of July, 2008

MCTIGUE & PORTER LLP

By:   /s/ Gregory Y. Porter
Gregory Y. Porter
McTigue & Porter LLP
5301 Wisconsin Avenue, NW, Suite 350
Washington, DC  20015
Tel:  (202) 364-6900
Fax: (202) 364-9960
gporter@mctiguelaw.com

David S. Preminger (DP 1057)
Keller Rohrback L.L.P.
275 Madison Avenue, Suite 1425
New York, New York, USA 10016
Tel:  (212) 878-8890
Fax:  (212) 867-6878
dpreminger@kellerrohrback.com

*Attorneys for Plaintiff*

---

[16] *Cf. United Food and Commercial Workers*, 517 U.S. at 558 (emphasis added).

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing **PLAINTIFF'S NOTICE OF SUPLLEMENTAL AUTHORITY IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** Plans was filed electronically with the Court and served this same day via the Court's ECF notification system upon the following:

**David Steven Preminger**
Keller Rohrback L.L.P.
275 Madison Avenue, Suite 1425
New York, New York, USA 10016
Tel: (212) 878-8890
Fax: (212) 867-6878
dpreminger@kellerrohrback.com

**Dorothy Heyl**
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
(212)530-5000
Fax: (212)530-5219
Email: dheyl@milbank.com

**Paul Blankenstein**
**William J. Kilberg**
Gibson, Dunn and Crutcher (DC)
1050 Connecticut Ave. NW.,
Washington, DC 20008
(202)-955-8693
Fax: (202)-530-9532
Email: pblankenstein@gibsondunn.com
      wkilberg@gibsondunn.com

**Thomas A. Arena**
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
(212)-530-5828
Fax: (212)-822-5828
Email: tarena@milbank.com

July 28, 2008

David T. Bond
**McTigue & Porter LLP**

6