UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ALBERT T. BEANE, JR., individually and on
behalf of all others similarly situated,

                                Plaintiffs,        07 Civ. 09444 (RMB)

            - against -

                                        **ORDER**

THE BANK OF NEW YORK MELLON,
BNY CONVERGEX EXECUTION SOLUTIONS
LLC, and CALLAN ASSOCIATES, INC.,

                              Defendants.
-----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03.31.09

## I.   Introduction

This class action was initiated on October 27, 2007 by Albert T. Beane, Jr. ("Beane") on behalf of the Federal-Mogul Corporation Pension Plan ("Pension Plan"), and on behalf of a putative class of similarly situated pension plans (together with the Pension Plan, "Plaintiffs") pursuant to Sections 502(a)(2) and 502(a)(3) of the Employment Retirement Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(2), and 1132(a)(3), against The Bank of New York Mellon ("BNY"), BNY Convergex Execution Solutions LLC ("BNYB") (together, "BNY Defendants"), and Callan Associates, Inc. ("Callan") (collectively with the BNY Defendants, "Defendants") for violations of ERISA Sections 404, 405, and 406, as amended, 29 U.S.C. §§ 1104, 1105, and 1106. (First Am. Class Action Compl. dated May 9, 2008 ("Am. Compl."), at ¶¶ 10–12, 18–20.) Plaintiffs alleged that Callan breached its fiduciary duties to Plaintiffs because "Callan concealed the true nature of its commission-sharing arrangement with BNY Defendants by making inaccurate and misleading statements in its public disclosures"; and "BNY Defendants knowingly aided and abetted Callan's efforts to conceal the commission-sharing arrangement from Callan pension plan clients." (Am. Compl. ¶¶ 33, 56, 57.)

Plaintiffs state, among other things, that prior to reaching a settlement "the parties [] engaged in extensive discovery"; "[e]ach side [] served and responded to numerous interrogatories, requests for production and requests for admission"; "[t]he parties [] exchanged over 60,000 pages of documents and [conducted] the depositions of six of Callan's officers and directors"; and Plaintiffs "conducted a 30(b)(6) deposition of Callan itself." (See Mem. in Supp. of Pl.'s Mot. for Final Approval of Settlement and Certification of Settlement Class, dated Dec. 11, 2008 ("Settlement Mem."), at 5; (Mem. in Supp. of Class Counsel's Pet. for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Case Contribution Compensation for Class Representative Albert T. Beane Jr., dated Dec. 11, 2008 ("Fees Mem.") at 5.) At the time of the settlement in principle, Defendants' motion to dismiss "as well as Plaintiff's motion for class certification were [fully briefed and] pending." (Id.)

On or about September 15, 2008, the parties entered into a Stipulation and Agreement of Settlement ("Settlement"), and established a $2,200,000 settlement fund ("Settlement Fund"). On or about October 24, 2008, the Court entered an Order granting preliminary approval of the Settlement ("Preliminary Approval Order").

The Settlement provides, among other things, the following:

- The "Class" shall be defined as "ERISA pension plans who retained Callan Associates, Inc. ('Callan') for pension consulting services and who used BNY ConvergEx Solutions LLC ('BNY Brokerage'), directly or indirectly, for brokerage services from October 30, 1998 through January 9, 2007 (the 'Class Period')." (Preliminary Approval Order at 1.)

- "Defendants have concluded that further conduct of the litigation would be protracted and expensive, and have also taken into account the uncertainty and risks inherent in any litigation . . . [and] therefore, determined that it is desirable and beneficial to each Defendant that the litigation be settled . . . ." (Settlement at 3.) And, "Counsel for the Plaintiff also are mindful of the inherent problems proving, and possible defenses to, the [ERISA] violations asserted in the litigation." (Settlement at 4.)

- The "Defendants will cause to be deposited two million two hundred thousand dollars ($2.2 million) . . . in an interest-bearing escrow account maintained by Gilardi & Co. LLC . . . and

2

[upon] a Final Judgment approving the settlement, the Settlement Funds shall be released to the Plans." (Settlement § 2.1.)

- "Defendants shall not oppose or take any position on [Class Counsel's] petition for fees and expenses, provided that [Class Counsel] seeks no more than 30 percent of the Settlement Fund." (Settlement § 2.16.) And, "Defendants shall not oppose an incentive payment of $5,000 to the named representative plaintiff, Albert T. Beane, Jr. to be paid from the Settlement Fund." (Settlement § 2.13.)

- "Nothing in this Settlement Agreement shall be considered to be an admission or evidence of liability by any Defendant." (Settlement § 2.4.)

Pursuant to the Preliminary Approval Order, McTigue & Porter LLP ("Class Counsel") "posted the Settlement Agreement and [its] exhibits . . . on the website identified in the Class Notice and caused the court-approved Class Notice to be mailed to appropriate representatives of each [of the 78 ERISA] plan[s] that [are] class member[s] ['Class Members']." (See Settlement Mem. at 2.) On December 11, 2008, Plaintiffs submitted a memorandum of law in support of final approval of the Settlement and for certification of the settlement class. (See Settlement Mem.) On the same date, Class Counsel petitioned ("Fee Petition") the Court for an award of attorneys' fees, and reimbursement of costs and expenses in the amount of 28.5% of the Settlement Fund or $627,000, plus $37,914.60 in litigation expenses. (See Fees Mem. at 2.) Class Counsel also petitioned the Court for a $5,000 award to class representative Beane ("Incentive Payment").[1] (Id.) As of January 2, 2009, "Class Counsel [has] received no objection to the Settlement Agreement, the Plan of Allocation or the Petition for Award of Attorneys' Fees and Expenses." (Decl. of Gregory Y. Porter Regarding Compliance with Mailing and Publication Requirements of Order Preliminarily Approving Class Action Settlement, dated Jan. 2, 2009 ("Porter Decl."), at ¶ 7.)

---

[1] Defendants have not opposed Plaintiffs' motion for final approval of the Settlement or Class Counsel's Fee Petition.

3

On or about January 5, 2009, the Court held a "fairness" hearing pursuant to Fed. R. Civ. P. 23(e)(2). (See Tr. of Proceedings, dated Jan. 5, 2009 ("Fairness Tr.").) No person present opposed the proposed Settlement or the Fee Petition. (See Fairness Tr.) The Court heard from Class Counsel who spoke in favor of the Settlement and its application for attorneys' fees, and from Defendants' counsel who also spoke in favor of the Settlement. (Id.)

**For the reasons set forth below, the Settlement is approved and the Fee Petition is granted in part and denied in part.**

## II.  Legal Standard

The Court "determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms," in light of "the judicial policy favor[ing] the settlement of class actions." Gilliam v. Addicts Rehab. Ctr. Fund., No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *9 (S.D.N.Y. Mar. 24, 2008). Courts must ensure: (1) that the settlement was the product of arm's length negotiations; and (2) that class counsel "'possessed the experience and ability, and . . . engaged in the discovery, necessary to effective[ly] represent [ ] . . . the class's interests.'" D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (quoting Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982); see also Taft v. Ackermans, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *14 (S.D.N.Y. Jan. 31, 2007). The Court also determines whether the settlement is fair, adequate and reasonable by considering the (nine) factors enumerated initially in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants

4

to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

In re AOL Time Warner ERISA Litig., No. 02 Civ. 8853, 2006 U.S. Dist. LEXIS 70474, at *8 (S.D.N.Y. Sept. 27, 2006) (citations omitted).

A party seeking attorneys' fees bears the "burden of 'establishing entitlement to an award . . . .'" Cruz v. Local Union No. 3 of the IBEW, 34 F.3d 1148, 1160 (2d Cir. 1994) (citation omitted). Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." Goldberger v. Integrated Resources, Inc., 209 F.3d at 47; see also Banyai v. Mazur, No. 00 Civ. 9806, 2008 U.S. Dist. LEXIS 99850, at *7 (S.D.N.Y. Dec. 2, 2008). Under the percentage method of awarding legal fees, the "court sets some percentage of the recovery as a fee," but "look[s] to the same 'less objective' factors that are used to determine the multiplier for the lodestar." In re Polaroid ERISA Litig., No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983, at *6 (S.D.N.Y. July 19, 2007); see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 123 (2d Cir. 2005). "[N]o matter which method is chosen . . . district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 466 (S.D.N.Y. 2004) (quoting Goldberger, 209 F.3d at 50).

IV. **Analysis**

**Settlement**

The Settlement is approved as fair, reasonable, and adequate to the Class for the following reasons:

(1)    The Settlement was the product of "negotiations, [that] once started, were conducted at arm's length" between experienced counsel. (Settlement Mem. at 8); see also States of N.Y. and Md. v. Nintendo of America, Inc., 775 F. Supp. 676, 680–81 (S.D.N.Y. 1991). And, experienced Class Counsel "engaged in sufficient investigation and discussions about the merits of the action to evaluate fully the merits of the claims and the obstacles to success." In re EVCI Career Colleges Holding Corp. Sec. Litig., No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *18–19 (S.D.N.Y. July 27, 2007). The Settlement is thus "entitled to a strong initial presumption of fairness." In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. at 461; see also Wal-Mart Stores, 396 F.3d at 116.

(2)    The Grinnell factors favor approval of the Settlement. The first Grinnell factor – the "complexity, expense and likely duration of the litigation" – supports the Settlement because, among other reasons, significant additional time, effort, and expense would be incurred to complete discovery, pre-trial motions, trial, post-trial motions, and to pursue likely appeals. (Settlement Mem. at 3); see In re Vecco Instruments Sec. Litig., No. 05 MDL 1695, 2007 U.S. Dist. LEXIS 85629, at *21 (S.D.N.Y. Nov. 7, 2007) (describing risks and expense of trial and likely appeals).

The second Grinnell factor – "reaction of the class to the settlement" – favors approval of the Settlement because no Class Member objected to the Settlement. (Porter Decl. ¶ 7); see

6

D'Amato, 236 F.3d at 86–87; In re AOL Time Warner ERISA Litig., 2006 U.S. Dist. LEXIS 70474, at *20 ("the lack of objections may well evidence the fairness of the Settlement").

The third Grinnell factor – "the stage of the proceedings and the amount of discovery completed" – weighs in favor of approving the Settlement because "the parties had already engaged in significant amounts of discovery (including the production of over 60,000 pages of documents)," "the depositions of six of Callan's officers and directors," and "Class Counsel had already consulted experts regarding damages and matters of proof," (Settlement Mem. at 5, 8, 10), which provided the parties with "sufficient information to make an informed judgment on the reasonableness of the settlement proposal," Diamond v. Fogelman, No. 90 Civ. 900, 1992 U.S. Dist. LEXIS 9734, at *9 (E.D.N.Y. June 26, 1992).

The fourth through seventh Grinnell factors – namely, the risks faced by the Class in establishing liability and damages, maintaining the class action, and collecting on any judgment – all support settlement. Plaintiffs recognize that they faced litigation risks because, among other things, "experts advised that it would be very difficult, costly, and time-consuming to prove that BNYB engaged in less than best execution for the Class Members because it would require extensive expert analysis of thousands of trades conducted over an eight-year time span" and "the problem of establishing damages, and the complexity of proving their existence, presented significant risk to the successful prosecution of this case through trial"; and "Defendants likely could withstand a greater judgment, but [there was] risk of an adverse judgment." (Settlement Mem. at 10); see also Gilliam, 2008 U.S. Dist. LEXIS 23016, at *12–13.

The eighth and ninth Grinnell factors – "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation" – also support

7

settlement. Grinnell, 495 F.2d at 455. Plaintiffs state, among other things, that "the 'contingent' payment identified in the [Securities and Exchange Commission's ('SEC') cease and desist order, entered in or about September 2007] amounts to four million dollars"; "the proposed settlement amount recovers more than half of that sum"; and "Plaintiffs would face considerable difficulty and expense in attempting to prove additional damages."[2] (Settlement Mem. at 10.) "The Settlement [] in this matter represents a compromise between the strengths of Plaintiffs' case and the possible success of [Defendants'] defenses." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 185 (W.D.N.Y. 2005).

**Class Certification**

The Court provisionally certified the Class in the Preliminary Approval Order. (Prelim. Approval Order ¶ 3.)

"A class seeking to be certified for purposes of effectuating a settlement must satisfy the applicable requirements of Rules 23(a) and 23(b), i.e., numerosity, commonality, typicality, adequacy of representation, predominance of common issues, and superiority." In re Top Tankers, No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, at *28 (S.D.N.Y. July 31, 2008) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). The Class satisfies Fed. R. Civ. P. 23(a). It is "impracticable" to join the 78 potential Class Members. See Varljen v. H.J.

---

[2] "In September 2007, Callan entered into a cease and desist order ('C&D') with the SEC." (Settlement Mem. at 4.) The C&D states, among other things, that "[t]his matter concerns the incomplete disclosure of potential conflicts of interest by Callan Associates, a registered investment adviser and one of the nation's largest pension consultants. . . . Although Callan disclosed in its Form ADV Part II that it had a contractual relationship with BNY that required Callan to identify BNY as its preferred or exclusive broker, Callan failed to disclose that it was receiving annual payments that were contingent on Callan clients generating a certain level of commissions for BNY. The omission of this potential conflict caused Callan's public disclosures to be misleading." (Order Instituting Administrative and Cease-and-Desist Proceedings, dated Sept. 19, 2007, available at http://sec.gov/litigation/admin/adminarchive/adminarc2007.shtml.) "The 'payments that were contingent' were eight annual payments of $500,000, totaling $4 million." (Settlement Mem. at 4.)

Meyers & Co., No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205, at *2 (S.D.N.Y. Nov. 8, 2000). Plaintiffs allege questions of law and fact that are "common to the class," including whether "Callan failed to disclose that it was receiving annual payments [from BNYB] that were contingent on Callan clients generating a certain level of commissions for BNYB," whether Callan "breached its duty of loyalty to [Class Members] by putting its own and BNY Defendants' commission-generating interests ahead of the interests of its clients," and whether "BNY Defendants breached their fiduciary and co-fiduciary duties to [Class Members] by placing their commission-generating interests ahead of their pension plan clients." (Am. Compl. ¶¶ 6, 7, 9). See Marisol A. v. Guiliani, 126 F.3d 372, 376 (2d Cir. 1997) (commonality and typicality "tend to merge into one another"); In re AOL Time Warner ERISA Litig., 2006 U.S. Dist. LEXIS 70474, at *8 ("ERISA breach of fiduciary duty actions regularly present common questions of law and fact."). And, as noted above, Class Counsel appears "qualified, experienced, and generally able to conduct the litigation." Marisol A., 126 F.3d at 378.

The Court also finds that Fed. R. Civ. P. 23(b)(1)(B) is satisfied because "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B); see also Amchem, 521 U.S. at 623, 625; In re Polaroid ERISA Litig., 240 F.R.D. 65, 78 (S.D.N.Y. 2006) ("ERISA litigation of this nature presents a paradigmatic example of a Rule 23(b)(1) class."); In re AOL Time Warner ERISA Litig., 2006 U.S. Dist. LEXIS 70474, at *12.

### Class Representative Incentive Payment

Class Counsel seeks the approval of a $5,000 Incentive Payment to Beane as class representative, (Settlement Mem. at 4), arguing, among other things, that "such payments should

be encouraged in ERISA class actions since enforcement of the ERISA laws by private litigants is expressly contemplated by the statute and is in the public interest"; and Beane "bore all the risk of serving as representative plaintiff." (Settlement Mem. at 16–17.)

The Court does not find that a payment to Beane – who will receive the indirect benefit of a better funded Pension Plan – is either necessary or appropriate. See, e.g., Silverberg v. People's Bank, 23 Fed. Appx. 46, 48 (2d Cir. 2001); Brown v. Steinberg, No. 84 Civ. 4654, 1990 U.S. Dist. LEXIS 13516, at *11 (S.D.N.Y. Oct. 12, 1990) ("the court perceives no circumstances warranting a special award" to class representatives) (quoting Weseley v. Spear, Leeds & Kellogg, 711 F. Supp. 713, 720 (E.D.N.Y. 1989)). "In calculating incentive payments, courts consider 'the existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim and of course, the ultimate recovery.'" Frank, 228 F.R.D. at 187 (quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)). Plaintiffs' application for an Incentive Payment does not demonstrate a "level of special circumstances warranting an incentive award." Silverberg, 23 Fed. Appx. at 48. There is "no indication that [Beane] assumed a risk or inconvenience not shared by the other class members which is of such magnitude to merit" an incentive award, In re Laidlaw Sec. Litig., No. 91 Civ. 1829, 1992 U.S. Dist. LEXIS 13935, at *9 (E.D. Pa. Sept. 15, 1992), and Plaintiffs "do not provide specific evidence of [any] purported risk's magnitude," In re AOL Time Warner ERISA Litig., No. 02 Civ. 8853, 2007 U.S. Dist. LEXIS 79545, at *14 (S.D.N.Y. Nov. 28, 2007). Based upon the attorney time sheets provided to the Court by Class Counsel, Beane appears to have worked with counsel for

approximately 2.21 hours via "phone calls" regarding the matter. (See Ltr. from J. Brian McTigue to the Hon. Richard M. Berman, dated Feb. 11, 2009 ("McTigue Ltr."), at 2.) He "did not perform any extraordinary services to the class." Weseley, 711 F. Supp. at 720. Nor have Plaintiffs claimed that there is "the need to reimburse [Beane] for specific expenses," Sheppard, 2002 U.S. Dist. LEXIS 16314, at *19 n.9, or that "any other burdens [were] sustained by [Beane] in lending himself . . . to the prosecution of the claim," Frank, 228 F.R.D. at 187.

### Attorneys' Fees and Costs

Class Counsel argues, among other things, that they should receive $627,000 or 28.5% of the $2.2 million Settlement Fund plus $37,914.60 in costs and expenses because it "expended 1,879.81 hours of attorney time and 1,025.42 of paralegal and staff time" plus "24.7 hours" of liaison counsel time which were necessary to perform "the initial factual investigation," "brief[] a motion for class certification," "brief the opposition to Defendants' joint motion to dismiss," and "successfully negotiate[] the instant settlement"; and "Class Counsel has served without pay for its services during the pendency of this action" when "there was substantial risk of an unfavorable outcome." (Fees Mem. at 5, 8–10.)

Employing the percentage method of fixing Class Counsel's compensation (while relying upon the lodestar method as a "cross-check"), the Court finds, for the reasons that follow, that 16% of the $2,200,000 Settlement Fund or $352,000 is a fair and reasonable fee under Goldberger and related cases.

The first Goldberger factor relates to "the time and labor expended by counsel." Because the Court is awarding fees on a percentage basis, the Court need not "exhaustively scrutinize" counsel's hourly submissions, Goldberger, 209 F.3d at 49–50, but "[e]ven in a cursory review of the time spent for specific tasks, this Court finds what appears to be [some] excessive hours

spent and inappropriate staffing," In re KeySpan Corp. Sec. Litig., No. 01 Civ. 5852, 2005 U.S. Dist. LEXIS 29068, at *16 (E.D.N.Y. Aug. 25, 2005). The four senior attorneys on the case, whose hourly rates range from $425 to $640, billed a total of 1,580.26 hours or 82.9% of the total attorney time. (Decl. of J. Brian McTigue in Supp. of Pl.'s Pet., dated Dec. 11, 2008 ("McTigue Decl."), at Ex. 2.) The two more junior attorneys, whose hourly rates range from $200 to $325, billed a total of 324.25 hours, or 17% of the total attorney time. (Id.) The remaining 1,025.42 hours were charged by two paralegals and two document reviewers at $150 to $200 an hour. (Id.) "It appears that some of the work done by [] senior attorney[s] [i.e., 1,580.26 hours] could have been performed by a junior attorney" at a lower billing rate. Rossa v. PI Mgmt. Assoc., No. 02 Civ. 1702, 2006 U.S. Dist. LEXIS 27127, at *11–12 (S.D.N.Y. May 5, 2006). Mr. McTigue and Mr. Porter (partners charging $500 an hour) billed for certain tasks that seemingly could have been performed by more junior attorneys or paralegals, including, among other things, "review document production"; "prepare class list for submission"; "research doc production"; and "research and draft opposition to motion to dismiss." (See McTigue Ltr. at Ex. A.) And, many of the paralegal time entries are too imprecise and vague for meaningful review, including, among other things, billings for "research"; "review and code documents"; "case administration"; and "Lextranet." (McTigue Ltr. at Ex. A.) See Schruefer v. Winthorpe Grant, Inc., No. 99 Civ. 9365, 2003 U.S. Dist. LEXIS 11179, at *11 (S.D.N.Y. July 2, 2003) (reducing lodestar for imprecise and vague time entries such as "various phone conferences"; "review file"; "legal research"; and "case administration").

As to the second and third Goldberger factors – "the magnitude and complexities of the litigation" and "the risk of [contingency] litigation" – the issues faced by Plaintiffs were not significantly different or greater than those faced by plaintiffs in other similar ERISA class

action litigations. See Taft v. Ackermans, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *29 (S.D.N.Y. Jan. 31, 2007).

The fourth Goldberger factor – "the quality of representation" – was acceptable and expected. "Courts should not necessarily award an increased fee where counsel simply displays the general level of skill expected." Ling v. Cantley & Sedacca, LLP, No. 04 Civ. 4566, 2006 U.S. Dist. LEXIS 4711, at *8 (S.D.N.Y. Feb. 8, 2006).

As to the fifth Goldberger factor – "the requested fee in relation to the settlement" – a fee of 16%, or $352,000, of the $2,200,000 Settlement Fund is reasonable and consistent with fees granted in other ERISA class actions. See, e.g., In re AOL Time Warner ERISA Litig., 2007 U.S. Dist. LEXIS 79545, at *3 (awarding approximately 17.9% of a $100M settlement fund); In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. at 469 (awarding approximately 15% of a $78M settlement fund); Banyai v. Mazur, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *18 (S.D.N.Y. Mar. 30, 2007) (awarding 8.45% of a $40M settlement); see also In re NTL, Inc. Sec. Litig., No. 02 Civ. 3013, 2007 U.S. Dist. LEXIS 13661, at *30 (S.D.N.Y. Mar. 1, 2007) (Peck, M.J.), adopted by, In re NTL, Inc. Sec. Litig., No. 02 Civ. 3013, 2007 U.S. Dist. LEXIS 32285 (S.D.N.Y. May 1, 2008) (awarding 15% of a $9M settlement fund).

As to the sixth Goldberger factor – "public policy considerations" – a fee award of 16% balances the "overarching concern for moderation" with the public policy enforcing ERISA. See Goldberger, 209 F.3d at 53.

The reasonableness of a $352,000 legal fee award is confirmed by a lodestar "cross-check." Goldberger, 209 F.3d at 50. Class Counsel's proposed lodestar is $1,014,549.25 – which is 46.1% of the Settlement Fund. (McTigue Decl. at Ex. 2.) The hourly rates charged by Class Counsel – e.g., $640 for Mr. Preminger and $500 for Mr. McTigue and Mr. Porter – are

generous, considering that Mr. Preminger, Mr. McTigue, and Mr. Porter billed 984.01 hours and "[t]he disproportionately high percentage of work performed by . . . [these attorneys] resulted in a disproportionately higher lodestar." KeySpan, 2005 WL 3093399, at *16. Approximately $495,463 of Class Counsel's proposed $1,014,549.25 lodestar is attributed to Mr. Preminger, Mr. McTigue and Mr. Porter, while only approximately $97,830 of the lodestar is attributable to the two junior attorneys on the matter. (McTigue Decl. at Ex. 2.) Class Counsel "fail[ed] to delegate work to junior, less expensive attorneys [and this is] grounds for reducing [the] award of attorney's fees." Rossa, 2006 U.S. Dist. LEXIS 27127, at *11-12. "A negative multiplier of plaintiff counsel's lodestar is not out of the ordinary in common fund cases, particularly where awarding a positive multiplier of the lodestar may 'swallow up' a significant portion of the settlement funds." Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2007 U.S. Dist. LEXIS 48151, at *18 (S.D.N.Y. July 5, 2007) (collecting cases); see also In re NTL, Inc. Sec. Litig., No. 02 Civ. 3013, 2007 U.S. Dist. LEXIS 13661, at *30 (S.D.N.Y. Mar. 1, 2007) (Peck, M.J.), adopted by, In re NTL, Inc. Sec. Litig., No. 02 Civ. 3013, 2007 U.S. Dist. LEXIS 32285 (S.D.N.Y. May 1, 2008) ("Here . . . the multiplier is negative (even at the requested 20%, the multiplier is negative) . . . [and] the lodestar cross-check demonstrates that a 15% fee is reasonable because it will not bring a windfall to co-lead plaintiffs' counsel.").

Class Counsel's request for reimbursement of expenses in the amount of $37,914.60 appears reasonable. See In re Ashanti Goldfields, No. 00 Civ. 717, 2005 U.S. Dist. LEXIS 28431, at *5 (E.D.N.Y. Nov. 15, 2005) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."). Plaintiffs submitted a list of all costs "reasonable and necessary for the prosecution of this litigation." (Fees Mem. at 16.) The requested fees include, among other things, court fees ($1,320.50), photocopying and reproduction ($4,031.51),

deposition transcription ($5,676.90), postage and messenger services ($2,113.10), transportation and lodging ($10,372.33); telephone bills ($702.44); and expert and electronic litigation database support ($13,697.82). (See McTigue Decl. at Ex. 2.) The expenses incurred "are the type for which 'the paying, arms' length market' reimburses attorneys." In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. at 468; see also In re Top Tankers, 2008 U.S. Dist. LEXIS 58106, at *59 (approving expenses in full for "photocopying of documents, on-line research, messenger services, postage, express mail and next day delivery, long distance telephone and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of [the class action]"). "For this reason, they are properly chargeable to the Settlement fund." In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. at 468.

## V.  Conclusion and Order

For the foregoing reasons, Plaintiffs' motion for final approval of the Settlement [#76] is granted and Class Counsel's petition for attorneys' fees, costs, and an incentive payment [#78] is granted in part and denied in part. The Court awards 16% of the $2,200,000 Settlement Fund or $352,000 in attorneys' fees and $37,914.60 in expenses.

The parties are directed to participate in a status conference regarding the progress of the distribution to the Class on Wednesday, April 22, 2009, at 9:00 a.m., in Courtroom 21D, 500 Pearl Street, New York, New York. Attorneys' fees and expenses are not to be distributed to Class Counsel until at least 75% of the Settlement Fund has been distributed to the Class.

Dated: New York, New York  
       March 31, 2009

_____  
**RICHARD M. BERMAN, U.S.D.J.**